1  [Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| Abdi Nazemian, et al., | Case No. 4:24-cv-01454-JST |
| Plaintiffs, | Case No. 4:24-cv-02655-JST |
| vs. | **JOINT CASE MANAGEMENT STATEMENT** |
| NVIDIA Corporation, | Hearing Date: August 20, 2024 |
| Defendant. | Time: 2:00 PM |
| | Place:  via Zoom |
| Andre Dubus III, et al., | Judge: Hon. Jon S. Tigar |
| Plaintiffs, | |
| vs. | |
| NVIDIA Corp., | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 26(f)(2), Civil Local Rule 16-9(a), the Standing Order For All Judges of The Northern District Of California (updated Nov. 30, 2023), and the Court's Case Management Orders, Dkt. 22 (*Nazemian* docket) and Dkt. 39 (*Dubus* docket), counsel for Plaintiffs Abdi Nazemian, Brian Keene, Stewart O'Nan, Andre Dubus III, Susan Orlean, and the proposed class (together "Plaintiffs") and Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") (collectively the "parties"), have met and conferred and respectfully submit this Joint Case Management Statement in advance of the Case Management Conference on August 20, 2024.

**1.  Jurisdiction and Service**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action alleges violations of the Copyright Act (17 U.S.C. § 501). NVIDIA does not challenge personal jurisdiction. All parties have been served.

**2.  Facts**

**Plaintiffs' Statement**

The Complaints in the *Nazemian* Action and the *Dubus* Action each allege one count of direct copyright infringement against Defendant NVIDIA Corporation. Plaintiffs are writers who own copyrights in works allegedly used to train Defendant's large language models ("LLMs"), namely the NeMo Megatron models. The Complaints each allege that Defendant copied Plaintiffs' registered Works to train (i.e., the process by which an Artificial Intelligence ("AI") program can "learn" how to anticipate and provide outputs to prompts) its LLMs in violation of the Copyright Act, 17 U.S.C. § 501. Defendant's LLMs copied The Pile and Books3 datasets, which include the *Nazemian* and *Dubus* Plaintiffs' Infringed Works, and used these copies to train its LLMs. Defendant's models—built on Plaintiffs' Infringed Works—to directly compete with Plaintiffs' Works. Plaintiffs have been injured by Defendant's conduct.

**Defendant's Statement**

In this lawsuit, Plaintiffs seek to create a new right to control the use of uncopyrightable facts and ideas in the public domain.  Their complaint runs counter to decades of settled precedent, and would radically alter the scope of copyright law, far outside the realm of artificial intelligence.

Plaintiffs' complaint asserts a single claim for direct copyright infringement.  Plaintiffs do not allege that the outputs of NVIDIA's AI models have ever copied protected expression.  Instead, Plaintiffs solely target the process by which AI models are trained.  Training measures statistical correlations in the aggregate, across a vast body of data, and encodes them into the parameters of a model.  Plaintiffs do not try to claim a copyright over those statistical correlations, asserting instead that the training data itself is "copied" for the purposes of infringement.  But Plaintiffs cannot use copyright to preclude access to facts and ideas, and the highly transformative training process is protected entirely by the well-established fair-use doctrine.  Indeed, to accept Plaintiffs' theory would mean that an author could copyright the rules of grammar or basic facts about the world.  That has never been the law, for good reason.

### 3.  Legal Issues

**Plaintiffs' Position**

The legal and factual issue at the core of this case is whether Defendant's unlawful copying has violated the Copyright Act, 17 U.S.C. § 501, *et seq*. NVIDIA has indicated that it will rely upon a fair use defense. But NVIDIA will not be able to carry its burden to prove fair use. For example, NVIDIA has not disputed that it copied Plaintiffs' work to train its AI models without consent, credit, or compensation. By relying on works taken without creators' permission, any argument on fair use will fall short. *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 562 (1985) (explaining that fair use defense "presupposes good faith"); *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2018 WL 3197696, at *11 (C.D. Cal. June 25, 2018) ("[C]ourts have concluded that fair use is not an available defense to intermediate copying when a defendant is in unauthorized possession of a plaintiff's source code."). That is before considering the sheer volume of infringements, which, of course, counsels against fair use. *See Harper & Row*, 471 U.S. at 569 ("'Isolated instances of minor

infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented.'") (quoting S. Rep. No. 473 at 65 (1975)).

There are numerous other questions of law or fact common to the class, and those issues predominate over any question affecting individual class members. *See* Section 9, *infra*.

**Defendant's Position**

Among other issues, this case presents two interrelated questions: *First*, whether Plaintiffs' claims represent an impermissible attempt to copyright facts and grammar.  *Second*, whether any copying by NVIDIA is a fair use.

Although generative AI is a recent phenomenon, the legal principles governing this case were established long ago: Copyright law protects specific expressions, but does not grant property rights over facts, ideas, data, or information.  As the Supreme Court has explained: "[N]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991).  "[T]his is not some unforeseen byproduct of a statutory scheme.  It is, rather, the essence of copyright and a constitutional requirement . . . . [C]opyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work . . . . This result is neither unfair nor unfortunate.  It is the means by which copyright advances the progress of science and art." *Id.* at 349-50 (internal quotations and citations omitted); *Baker v. Selden*, 101 U.S. 99, 102-04 (1879); U.S. Const., Art. I, § 8, cl. 8; 17 U.S.C. § 102(b).

In addition, fair use protects the ability to copy particular expressions for a transformative purpose.  As an example, the Ninth Circuit Court of Appeals ruled that making intermediate copies of entire source code files was fair use where the copying provided access to the unprotected ideas and functions embedded in that code and the defendant created a transformative new product. *Sony Computer Entertainment Inc. v. Connectix Corp.*, 203 F.3d 596, 602-08 (9th Cir. 2000).  As another example, the Second Circuit Court of Appeals ruled that copying entire books to create a searchable

database was fair use. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224-25 (2d Cir. 2015).  NVIDIA disputes Plaintiffs characterizations of the facts and law and specifically denies that NVIDIA has ever acted in bad faith.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18, (1994) ("If the use is otherwise fair, then no permission need be sought or granted."); *Google, LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021) ("our decision in *Campbell* expressed some skepticism about whether bad faith has any role in a fair use analysis. We find this skepticism justifiable").

### 4.  <u>Motions</u>

There are no pending motions at this time.

As noted in Section 10 (Related Cases) below, the *Nazemian* and *Dubus* Actions have been judicially related. Plaintiffs are discussing formal consolidation.

As noted in Section 8 (Discovery) below, the parties have not yet agreed upon a stipulated ESI Protocol and Protective Order, but are continuing to meet and confer on those topics.

The parties hope to resolve discovery disputes without judicial intervention, but anticipate that discovery motions may be necessary. Plaintiffs also anticipate a class certification motion, and possible summary judgment motions.

**Defendant's Position:**

To the extent Plaintiffs do not agree to consolidate the *Nazemian* and *Dubus* Actions, NVIDIA may file a motion to consolidate.  In addition, as noted in Section 8 (Discovery) below, NVIDIA proposes a phased approach to discovery, consistent with *O'Nan v. Databricks, Inc.*, No. 3:24-cv-01451-CRB, Dkt. No. 53 (N.D. Cal. Mar. 8, 2024) (hereinafter, "*O'Nan*").  At the completion of the first phase of discovery regarding fair use, NVIDIA intends to file a summary judgment motion as to the named Plaintiffs before class certification.  Should Plaintiffs also seek to file a cross-motion for summary judgment at the same time, NVIDIA will consider at that time whether to waive its rights under the one-way intervention rule.

### 5.  <u>Amendment of Pleadings</u>

NVIDIA has answered the complaints in both actions.  The parties do not anticipate any substantive amendments to the pleadings at this time.  As set out above in Section 4 (Motions) the

parties are discussing consolidation. To the extent the actions are consolidated, Plaintiffs will file a consolidated complaint, and NVIDIA will file a consolidated answer in response.

**6.  Evidence Preservation**

The parties have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Rule 26(f) regarding reasonable and proportionate steps to preserve evidence relevant to the issues evident in the case. The parties are aware of their obligations and have taken reasonable steps to preserve potentially relevant evidence. The parties will continue to meet and confer concerning ESI.

The parties have confirmed that they are unaware of any source of ESI that is reasonably expected to be subject to discovery that has been destroyed, not maintained, or is not reasonably accessible.

**7.  Disclosures**

Plaintiffs and Defendant have served their Federal Rule of Civil Procedure 26(a) initial disclosures.  The Parties will supplement initial disclosures as necessary, consistent with Rule 26(e).

**8.  Discovery**

 Plaintiffs had an initial Rule 26(f) meet and confer with Defendant on June 19, 2024. Counsel for all parties met and conferred on a coordinated discovery plan, addressed Rule 26(f) requirements, identified locations of potential ESI, and continued negotiations on discovery stipulations. Plaintiffs and NVIDIA agree to coordinate all discovery, including discovery stipulations.

**a.   Scope of Discovery**

The parties agree that discovery is governed by the Federal Rules of Civil Procedure. The Parties anticipate they may have to account for some discoverable data being too voluminous to produce through standard discovery practices, and will work together to evaluate potential alternatives for the production of any such relevant data if necessary. The parties will continue to meet and confer on this topic.

1    The parties will meet and confer on any discovery disputes that may arise in an effort to

2    resolve them without court intervention. The parties agree to electronic service in all instances where

3    such service is necessary.

4    **Plaintiffs' Statement:** Plaintiffs anticipate conducting discovery, including requesting

5    documents and eliciting testimony from NVIDIA regarding, among other things: the development

6    and training of Defendant's NeMo Megatron LLMs; the training data for the NeMo Megatron

7    LLMs; Defendant's copying of The Pile dataset and Books3, and general awareness of, and policies

8    about, using copyrighted materials and/or pirated libraries in training data; sources of funding for

9    the development of the NeMo Megatron LLMs; financial market and profitability of the NeMo

10   Megatron LLMs; licensing deals and negotiations for training data; knowledge of, and participation

11   within, the AI training data market. Plaintiffs reserve all rights to update, add, or amend this list as

12   additional information becomes available.

13   Given the numerous common legal and factual issues in this case, Plaintiffs do not believe

14   that phasing or bifurcating discovery is necessary or appropriate in this matter. Regarding

15   Defendants' proposed sequencing of summary judgment motions (presumably with respect to fair

16   use) and class certification, Defendants' proposed schedule is at odds with Rule 23. Plaintiffs, of

17   course, dispute that fair use is suitable for resolution by dispositive motion practice, as it is instead

18   an issue that "must go to a jury." *Thomson Reuters Enter. Centre GmbH v. Ros Intelligence Inc.*, __

19   F. Supp. 3d __, 2023 WL 6210901, at *7 (D. Del. Sep. 25, 2023) (denying summary judgment on

20   fair use in generative AI case). In any event, any determination regarding fair use would be an issue

21   common to the class, and thus does not require determination prior to class certification. Further,

22   NVIDIA's proposal would deny Plaintiffs the opportunity to seek summary judgment before class

23   certification due to the one-way intervention rule. *Moore v. Mars Petcare US, Inc.*, No. 16-CV-

24   07001-MMC, 2021 WL 6063577, at *2 (N.D. Cal. Dec. 22, 2021). Nothing prevents NVIDIA from

25   seeking early summary judgment before class certification even if a schedule contemplates

26   dispositive motions after class certification. Such a motion, however, would waive the right to have

27   any judgment bind the proposed class. *Schwarzschild*, 69 F.3d at 297. Should the Court be inclined

28   to adopt NVIDIA's proposed sequencing of summary judgment and class certification, it should

allow Plaintiffs and NVIDIA to file summary judgment prior to litigating class certification, but only if NVIDIA expressly waives objections to one-way intervention. *See* Order Directing Response Re: Case Schedule, *O'Nan v. Databricks Inc.*, No. 24-cv-01451-CRB (N.D. Cal. July 1, 2024), ECF No. 51 (requiring express waiver of one-way intervention objections if court adopts schedule setting summary judgment before class certification).

*Subjects of Discovery from Defendant:* The following is a non-exhaustive list of subjects regarding which Plaintiffs have sought or plan to seek discovery. Plaintiffs reserve all rights to expand upon these subject areas as the case proceeds:

- The interactions between class members (including Plaintiffs) and Defendant, including but not limited to requests and/or demands from the owners of works used to train Defendant's LLMs regarding Defendant's use of those works.

- Defendant's conduct that caused the LLMs to ingest and distribute Plaintiffs' and the Class's works, including but not limited to Defendant's knowledge regarding those actions and their consequences.

- The planning for, and the creation, operation, modification, distribution and maintenance of Defendant's LLMs, including but not limited to source code.

- Defendant's efforts to obtain licenses or other permission to use works used to train its LLMs.

- Defendant's organizational structure and corporate documents.

- Contracts, licenses, or other agreements between Defendant and any of Defendant's subsidiaries, affiliates, or joint ventures, and any Plaintiffs or third parties that relate to Defendant's LLMs.

- Information regarding all material used to train Defendant's LLMs, including the materials themselves.

- Facts related to affirmative defenses raised by Defendant.

- Defendant's policies and practices regarding any use of copyrighted material.

- Defendant's interactions with government or regulatory entities regarding Defendant's LLMs, including document submissions, requests for information or

documents, testimony, and correspondence.

- Defendant's participation and/or involvement in other lawsuits, private administrative proceedings, or regulatory proceedings regarding generative AI LLMs.

**Defendant's Statement:**

NVIDIA reserves all rights to object to Plaintiffs' efforts to seek discovery into such matters listed above.  NVIDIA does not contemplate that the scope of discovery in this case will be extensive or believe that there is any reason to depart from the Federal Rules of Civil Procedure or the Court's Model Orders.

NVIDIA proposes a phased approach to discovery, allowing the Court and parties to address the key issue of fair use early and efficiently.  In the *O'Nan* case—which has the same named plaintiffs, plaintiffs' counsel, and AI training-related copyright allegations as *Nazemian* and *Dubus* (and was even filed in this District the same day as the *Nazemian* complaint)—Judge Breyer recently adopted a phased approach, addressing discovery and summary judgment motions regarding fair use in the first phase.  *O'Nan et al v. Databricks, Inc. et al.*, No. 3:24-cv-01451-CRB, Dkt. No. 53 (N.D. Cal. Mar. 8, 2024).  NVIDIA believes that the same approach would promote judicial, party, and third-party economy here as well.  Accordingly, it proposes a phased approach to discovery.

*Subjects of Discovery from Plaintiffs*: NVIDIA anticipates seeking discovery, including documents and testimony from Plaintiffs regarding, among other things, the following topics:[1]

- Plaintiffs' purported ownership of and copyright interest in the works the subject of the Complaints (the "asserted works");

- Copyright registrations associated with the asserted works;

- Plaintiffs' asserted works, including their creation, publication, and contents;

- Plaintiffs' marketing, licensing and distribution of the asserted works;

- The market for Plaintiffs' works;

---

[1]   NVIDIA reserves all rights to update, add, or amend this list as additional information becomes available, including to refine it to just those subjects relevant to NVIDIA's fair use affirmative defense should the Court phase discovery as requested.

- Plaintiffs' lack of harm from NVIDIA's conduct alleged in the Complaint; and

- Any alleged injury suffered by Plaintiffs from NVIDIA's conduct.

### b.   Completion of Discovery

The Court has not set a deadline for the close of fact discovery.  Plaintiffs propose that fact discovery (both merits and class) should be completed by October 25, 2025, with *Daubert* motions filed (and expert discovery completed) by November 22, 2025. Under Plaintiff's proposed schedule, there will be no need for the Court to reset another round of deadlines for class discovery.

Should the Court adopt NVIDIA's proposed phasing of discovery, NVIDIA proposes that fact discovery related to the fair use defense be completed by March 5, 2025, expert discovery related primarily to the fair use defense be completed by July 2, 2025, and that a further Case Management Conference be conducted after the Court rules on the intended summary judgment motion on fair use, to determine a further schedule, should it prove necessary.

### c.   Discovery Limitations

The parties have met and conferred regarding the discovery limits set forth in the Federal Rules of Civil Procedure.

**Plaintiffs' Statement:**

Given the nature of the legal and factual issues in this case, Plaintiffs believe that expansion of the discovery limits as set forth in the Federal Rules of Civil Procedure will be necessary in this case. Plaintiffs have conferred with Defendant regarding the likelihood they will require expansion of the number of depositions and interrogatories and believe it is premature to limit the number of depositions and interrogatories.

Plaintiffs seek to have a protocol established for depositions and an inspection protocol for training data and source code.

Plaintiffs also seek an expert discovery order.

**Defendant's Statement:**

NVIDIA believes the limits imposed by the Federal Rules of Civil Procedure should apply to this case, with the clarification that those limits should apply per side and not per party (*i.e.*, 25 Interrogatories per side, 10 depositions per side).  Plaintiffs have not articulated a basis to depart

1   from these default rules, and NVIDIA reserves its right to object to any future request by Plaintiffs

2   for expansion of the applicable discovery limits.  Plaintiffs have not yet provided drafts or details of

3   their proposed deposition protocol, inspection protocol, and expert discovery order.  NVIDIA is

4   willing to consider Plaintiffs' proposals subject to a review of their details.

5        **d.   Preservation and Production of Electronically Stored Information**

6      The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored

7   Information ("ESI Guidelines"). The parties have and are continuing to meet and confer regarding

8   a joint stipulated ESI Protocol, and will seek guidance from the Court to the extent there are any

9   disputed issues.

10      **Plaintiffs' Statement:**

11      Neither the Standard Model Stipulated Order nor the Patent Model Stipulated Order

12   regarding Discovery of Electronically Stored Information are suitable to effectively govern and

13   manage the complex discovery that will arise in this case. The Patent Model Stipulated Order has

14   proven unworkable in similar cases presenting similar issues. Plaintiffs would like the opportunity

15   to brief this issue before the court and intend to submit affidavits from discovery experts who will

16   opine that the Model Stipulated Orders, when drafted, were not intended for use with cases like this

17   one, and are specifically inappropriate in this case, given its facts, size, and complexity. In

18   recognition of this, ESI Orders in other class actions challenging various generative AI models,

19   including large language models like the ones at issue here, have departed from the Model Orders,

20   and particularly, the Patent Model Order. *See, e.g.*, *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223-

21   AMO (RMI) (N.D. Cal. July 31, 2024) (resolving discovery dispute in generative AI class action

22   where *both* proposed ESI protocols were departures from the Model Orders); *Kadrey v. Meta*

23   *Platforms, Inc.*, No. 23-cv-03417-VC (N.D. Cal. Apr. 10, 2024), ECF No. 101 (entering ESI order

24   in generative AI class action that is a departure from model order).

25      **Defendant's Statement:**

26      NVIDIA does not believe that there is any reason to depart from the Court's Patent Model

27   Stipulated Order regarding Discovery of Electronically Stored Information (the "Patent Model

28   Order") as the baseline ESI order for this case.  The Patent Model Order is often used outside the

patent context in cases involving technical subject matter, such as this one.  For example, this Court has found that the Patent Model Order with minor modifications (to reflect the parties and facts in the case) was appropriate in another case involving copyright claims relating to LLM technology. *See, e.g.*, *Doe 1 et al. v. Github, Inc. et al.*, Case No. 4:22-cv-06823-JST, Dkt. 165 (N.D. Cal. Oct. 27, 2023) (Joint Letter regarding ESI Order proposals), Dkt. 168 (N.D. Cal. Nov. 1, 2023) (Order granting Defendants' proposed Order re: Discovery of Electronically Stored Information).  NVIDIA will work with the Plaintiffs to address any specific additions or changes Plaintiffs might propose to the Patent Model Order, and to this end has requested specific additions or changes to the Model Orders from Plaintiffs but to date has not received them.  Because the parties are still conferring regarding any specific additions Plaintiffs may have to the Patent Model Order, the dispute is not ripe, and briefing on the issue is not appropriate.

### e.   Protective Order

The parties have and are continuing to meet and confer regarding a joint stipulated Protective Order to be entered by the Court. The parties will continue to meet and confer on this topic in an effort to come to an agreement on a stipulated Protective Order to submit to the Court.

### f.   Privilege

The parties have and are continuing to meet and confer regarding a joint stipulated protocol for privilege issues, including privilege logging, which will be incorporated into the joint stipulated ESI protocol.

With respect to the Rule 502(d) Agreement, the parties have and are continuing to meet and confer, and have agreed to address a Rule 502(d) order as part of the proposed Protective Order, noted above.

### g.   Deposition Logistics

The parties will meet and confer in good faith regarding a protocol for conducting in-person and hybrid depositions. Plaintiffs expect that in-person depositions will be conducted in the Northern District of California or elsewhere in the United States. NVIDIA does not object to in-person depositions when feasible, depending on the location of the witness, but reserves the right to request a remote deposition when more appropriate or convenient for a particular witness, or for

third-party depositions.  The parties are unaware of depositions to be taken outside the United States at this time.

The parties agree to meet and confer should any disputes arise as to location of depositions and/or use of remote depositions.

Plaintiffs believe that a deposition protocol is appropriate to set mutually agreed upon guidelines for depositions in this case.  NVIDIA is willing to consider any protocol proposed by Plaintiffs.

### h.  Discovery Issues and Potential Disputes

Plaintiffs served their first set of Requests for Production on July 10, and NVIDIA served objections and responses to those Requests for Production on August 9.  NVIDIA served their first set of Requests for Production on July 23.  The parties have not identified any specific discovery disputes and are prepared to meet and confer on any discovery disputes that may arise.

### 9.  Class Action

Plaintiffs filed these two cases as putative class actions. Counsel for both sides have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement:** As an initial matter and, as explained above, NVIDIA's proposal to sequence summary judgment before class certification is inappropriate because it precludes Plaintiffs from moving for summary judgment *after* class certification, which would run counter to the framework provided by Rule 23. Indeed, in recognition of this, Judge Martínez-Olguín rejected a similar schedule seeking to sequence dispositive motions before class certification. *Tremblay v. OpenAI Inc.*, Case No. 23-cv-03223 (N.D. Cal.), ECF No. 77 at 12:8-13:9 (recognizing in generative AI class action that sequencing summary judgment before class certification "will deny [Plaintiffs] the opportunity to be able to seek summary judgment" and denying request to sequence summary judgment before class certification). Should the Court be inclined to entertain NVIDIA's proposed schedule, it should decline to do so unless NVIDIA expressly waives any objections based on one-way intervention. *See* Section 8.a, *supra*.

Plaintiffs believe that the class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the exclusive control

of Defendant. Upon information and belief, Plaintiffs believe and allege that the number of class members is in the millions. Plaintiffs allege that, like all class members, their copyright-protected works were used to train Defendant's LLMs. Plaintiffs allege all members of the class have been similarly injured by Defendant's conduct. Plaintiffs believe there are numerous questions of law or fact common to the class, and that those issues predominate over any question affecting only individual class members. These common legal and factual issues including the following:

- Whether Defendant violated the copyrights of Plaintiffs and the class when it downloaded copies of Plaintiffs' copyrighted works and used them to train Defendant's LLMs.

- Whether this Court should enjoin Defendant from engaging in the unlawful conduct alleged herein, and the appropriate scope of that injunction.

- Whether any affirmative defense (including fair use) excuses Defendant's conduct.

- The amount of damages.

**Defendant's Statement:**

NVIDIA disputes Plaintiffs' class certification arguments and maintains that the proposed putative classes cannot be certified under the requirements of Rule 23. After the completion of phased discovery regarding the question of fair use, NVIDIA intends to file a motion for summary judgment on fair use on the named Plaintiffs' claim prior to class certification.  At that time, should Plaintiffs also seek to file a motion for summary judgment, NVIDIA would consider whether to waive the one-way intervention prohibition against a pre-certification summary judgment motion by Plaintiffs.

To the extent the Court reaches the issue of class certification, NVIDIA contends that class certification is not appropriate. Among other factors, NVIDIA expects that individual questions of law and fact will predominate over common questions, including whether class members hold valid copyright registrations, the existence and timing of registration of the relevant works, whether the works were created as works for hire, whether putative rights-holders have assigned or transferred their rights, the nature of and market for each work, the marketing and licensing history of each work, whether each author or copyright owner has authorized or objects to use of the work in

connection with machine learning or models using artificial intelligence, and differing injury flowing from the use of each work.

**10. <u>Related Cases</u>**

Pursuant to the Court's May 29, 2024 Order (*Nazemian* Dkt. 47) (*Dubus* Dkt. 17), the later-filed case *Dubus et al. v. NVIDIA Corporation*, 4:24-cv-02655-JT (N.D. Cal.) has been related to *Nazemian et al. v. NVIDIA Corporation*, No. 3:24-cv-01454 (N.D. Cal.). Counsel are discussing consolidation of these two cases.  NVIDIA believes the cases should be consolidated expeditiously in the interest of efficiency and judicial economy.

The parties are unaware of any other cases brought on behalf of authors with registered copyrights involving Defendant's LLMs other than the two cases involved here.

**11. <u>Relief</u>**

**Plaintiffs' Statement:** The *Nazemian* and *Dubus* Plaintiffs seek statutory and other damages under 17 U.S.C. § 504 for Defendant's violations of the copyrights of Plaintiffs and the class, including an award of reasonable attorneys' fees under 17 U.S.C. § 505 or other applicable statutes. Plaintiffs further seek destruction or other reasonable disposition of all copies Defendant made or used in violation of the exclusive rights of Plaintiffs and the class, pursuant to 17 U.S.C. § 503(b). Plaintiffs seek pre- and post-judgment interest on damages awarded to Plaintiffs and the class, at the highest legal rate from and after March 8, 2024, the date the *Nazemian* class action Complaint was first served on Defendant.

**Defendant's Position:** NVIDIA denies that Plaintiffs are entitled to any damages, permanent injunction, or other relief whatsoever, or that the classes alleged in the Complaints can be certified. NVIDIA believes it is premature to opine on methods of calculating potential damages.

**12. <u>Settlement and ADR</u>**

ADR Certifications pursuant to ADR Local R. 3-5(b) were filed by the *Nazemian* Plaintiffs on May 9, 2024 (*Nazemian* Dkts. 32-34) and by the *Dubus* Plaintiffs on June 17, 2024 (*Dubus* Dkts. 44-45). NVIDIA filed ADR Certifications pursuant to ADR Local R. 3-5(b) in both cases on July 29, 2024.  The parties continue to meet and confer on an ADR plan.

### 13. <u>Other References</u>

The parties agree that this case is not suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

The parties do not oppose having discovery disputes heard by a magistrate judge if the Court is inclined to appoint a discovery magistrate.

### 14. <u>Narrowing of Issues</u>

No issues have yet been narrowed by agreement or by motion.

As described in Section 8 (Discovery), NVIDIA believes that a phased approach to discovery and early summary judgment will appropriately narrow the issues in the case.

### 15. <u>Scheduling</u>

#### a.   Expedited Trial Procedures

The parties agree that these Actions are inappropriate for the Expedited Trial Procedure of General Order 64.

#### b.   Case Schedule

Plaintiffs propose the following schedule:

| <u>Event</u> | <u>Plaintiffs' Proposed Date</u> |
| --- | --- |
| Parties must submit stipulated ESI Protocol or file 10-page joint letter brief.  The parties shall simultaneously exchange sections of the joint letter brief in two phases with agreed-upon deadlines prior to the submitting to the Court | September 17, 2024 |
| Parties must submit stipulated Protective Order or file 10-page joint letter brief.  The parties shall simultaneously exchange sections of the joint letter brief in two phases with agreed-upon deadlines prior to the submitting to the Court | September 17, 2024 |
| Producing parties propose document custodians, non-custodial document sources, search terms, any agreed-upon or required custodian cellphone information | October 1, 2024 |
| Requesting parties propose additional custodians and non-custodian document sources, and any additional search terms ("Requesting Party's Proposal") | October 10, 2024 |

| **Event** | **Plaintiffs' Proposed Date** |
|---|---|
| Defendant shall produce a sample production of data from its relevant Structured Data databases and model data | October 17, 2024 |
| Date by which parties must submit an agreed upon deposition protocol or a joint letter brief regarding any disputed areas | October 17, 2024 |
| Producing party to accept or reject the Requesting Party's Proposal | October 24, 2024 |
| Parties shall complete their meet and confer process regarding Defendant's Structured Data sample, including raising any questions about the sample productions | October 24, 2024 |
| Date by which parties are to submit joint letter brief to the Court regarding areas of dispute on custodial and non-custodial document sources (if any) and disputed search terms (if any) | October 31, 2024 |
| Deadline for Plaintiffs to identify five priority custodians | October 31, 2024 |
| Defendant shall answer questions about the form and contents of its Structured Data and any perceived deficiencies therein in order to facilitate the timely production of agreed upon Structured Data | November 7, 2024 |
| Date by which parties must submit an agreed upon protocol for the authentication and qualification of documents as business records or a joint letter brief regarding any disputed areas. | November 22, 2024 |
| Deadline for substantial completion for production of priority custodians' documents and production of Structured Data | December 12, 2024 |
| Deadline for requesting parties' second phase additional custodians and search term proposal | January 10, 2025 |
| Deadline for resolution of second phase additional custodians and search term proposals or filing of joint letter brief regarding any disputed issues | January 17, 2025 |
| Substantial completion of production of documents and unstructured data in response to discovery requests served prior to July 14, 2024 | February 14, 2025 |

| **Event** | **Plaintiffs' Proposed Date** |
|---|---|
| Deadline for Producing party to complete production of privilege logs for any documents redacted or withheld on the basis of any privilege to date.<br><br>Privilege logs for documents reviewed in connection with a given production of documents should be produced concurrently with or shortly after each such document production | February 21, 2025 |
| Producing parties to file certifications of substantial completion of document productions and production of privilege logs, specifying any categories of requested documents not yet produced to the requesting party, and the volume of documents left to review for privilege | February 21, 2025 |
| Deadline for Plaintiffs to file an amended pleading | July 18, 2025 |
| Service of Plaintiffs' Expert Report(s) | August 1, 2025 |
| Service of Defendant's Expert Report(s) | September 16, 2025 |
| Close of Fact Discovery | October 28, 2025 |
| Service of Plaintiffs' Expert Rebuttal Report(s) | November 1, 2025 |
| Filing of Plaintiffs' Motion for Class Certification | November 15, 2025 |
| Filing of Defendant's *Daubert* Motions regarding Plaintiffs' Expert(s) | November 22, 2025 |
| Filing of Defendant's Opposition to Motion for Class Certification | December 12, 2025 |
| Filing of Plaintiffs' Opposition to Defendants' *Daubert* Motions<br><br>Filing of Plaintiffs' *Daubert* Motions on Defendants' Expert(s) | December 17, 2025 |
| Filing of Plaintiffs' Reply in Support of Motion for Class Certification | January 10, 2026 |

| Event | Plaintiffs' Proposed Date |
|---|---|
| Filing of Defendant's Reply in Support of *Daubert* Motion(s)  <br><br> Filing of Defendant's Opposition to Plaintiffs' *Daubert* Motion(s) | January 17, 2026 |
| Filing of Plaintiffs' Reply in Support of Plaintiffs' *Daubert* Motion | January 30, 2026 |
| Hearing on Class Certification and *Daubert* Motions | *To be determined by the Court* |
| Deadline for filing Rule 56 Motions | April 22, 2026 |
| Deadline for filing Oppositions to Rule 56 Motions | June 23, 2026 |
| Deadline for filing Replies in Support of Rule 56 Motions | July 22, 2026 |
| Hearing on Rule 56 Motions | *At the Court's convenience* |
| Trial Ready Date | November 3, 2026 |

**Defendant's Position:** Plaintiffs' proposed schedule is not workable for multiple reasons. First, most of the dates impose ESI-related deadlines that are not based on the N.D. Cal. Model ESI Protocols and have not otherwise been agreed to by the parties or ordered by the Court (*e.g.*, deadlines for proposing "custodian cellphone information" and identifying "priority custodians," and various deadlines relating to "Structured Data databases"). Entry of a schedule containing such deadlines is premature when the parties have not yet submitted a proposed ESI protocol for the Court's consideration. Second, Plaintiffs would schedule the close of fact discovery ***after*** service of expert reports, while allowing Plaintiffs (but not NVIDIA) to later submit a rebuttal expert report. Plaintiffs have also not proposed a date for the close of expert discovery. Third, Plaintiffs' briefing schedule for class certification and *Daubert* motions (which would be briefed concurrently) is

inconsistent, requiring NVIDIA to file its *Daubert* motions one month before Plaintiffs.  Many of Plaintiffs' proposed deadlines also fall on a Saturday.

NVIDIA proposes a phased approach to discovery, allowing the Court and parties to address the key issue of fair use early and efficiently.  As discussed in Section 8(a) *supra*, Judge Breyer recently adopted a similar phased schedule in the *O'Nan* case.  To the extent the case is not resolved during this phase, the parties will confer on scheduling any further proceedings regarding class certification and a trial date.

| Event | NVIDIA's Proposed Schedule |
| --- | --- |
| Date by which the parties, after good faith efforts, anticipate they will have substantially completed their production of documents in response to discovery regarding fair use that is not subject to any pending dispute | Wednesday, January 15, 2025 |
| Close of fact discovery related to fair use[2] | Wednesday, March 5, 2025 |
| Opening Expert Reports related to fair use | Wednesday, April 2, 2025 |
| Rebuttal Expert Reports related to fair use | Wednesday, May 7, 2025 |
| Reply Expert Reports related to fair use | Thursday, May 29, 2025 |
| Close of Expert Discovery related to fair use | Wednesday, July 2, 2025 |
| Deadline to file Opening MSJ and *Daubert* briefs related to fair use regarding named Plaintiffs[3] | Not later than Wednesday, August 13, 2025 |
| Deadline for filing Oppositions to MSJ and *Daubert* Briefs related to fair use regarding named Plaintiffs | If Motion is filed on August 13, 2025, not later than Wednesday, September 10, 2025 |
| Deadline for filing Replies in Support of MSJ and *Daubert* Briefs related to fair use regarding named Plaintiffs | If Motion is filed on August 13, 2025, not later than Wednesday, October 8, 2025 |

---

[2]   NVIDIA respectfully proposes a schedule for fact and expert discovery focused primarily on the issue of fair use.  After the close of fact and expert discovery regarding fair use, NVIDIA intends to seek leave to file a dispositive motion focusing on the fair use affirmative defense. Should the Court grant NVIDIA leave to file such a motion, and after the Court's ruling on the issue of fair use, if any issues remain, NVIDIA proposes further scheduling of proceedings on class certification and determination of a trial date, if necessary, through further Case Management Conferences.
[3]   In accordance with the Court's Standing Order, which requires leave of the Court for a party to file more than one summary judgment motion, NVIDIA intends to request leave to move for summary judgment on the case-dispositive issue of fair use and will file such a motion no later than August 13, 2025, while later moving for summary judgment on other issues if the case has not been dismissed.

| Event | NVIDIA's Proposed Schedule |
|---|---|
| Hearing on MSJ and *Daubert* Briefs related to fair use | *To be set by the Court* |
| Trial | *To be set by the Court after MSJ ruling (if required)* |

### 16. <u>Trial</u>

The parties agree that should the case proceed to trial, it should be tried to a jury. The parties anticipate a 14-day trial.

### 17. <u>Disclosure of Non-Party Interested Entities or Persons</u>

The *Nazemian* Plaintiffs filed a Certification of Interested Entities or Persons along with the Complaint on March 8, 2024 (*Nazemian* Dkt. 4). The *Dubus* Plaintiffs filed their Certification of Interested Entities or Persons on June 17, 2024 (*Dubus* Dkt. 43).

NVIDIA filed a Certification of Interested Entities or Persons on March 28, 2024 in the *Nazemian* case (*Nazemian* Dkt. 26) and on May 31, 2024 in the *Dubus* case (*Dubus* Dkt. 23).

### 18. <u>Professional Conduct</u>

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 19. <u>Other Matters</u>

The parties are not presently aware of other matters that may facilitate the resolution of these cases.

Dated: August 13, 2024

Respectfully submitted,

By: */s/ Joseph R. Saveri*

Joseph R. Saveri (State Bar No. 130064)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Evan Creutz (State Bar No. 349728)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butericklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle Wagner (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile:    (612)339-0981
Email: bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
echang@locklaw.com

*Attorneys for Plaintiffs and the Proposed Class in the* Nazemian *Action*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:  312-782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Amy E. Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James A. Ulwick (*pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David A. Straite (*pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

*Attorneys for Plaintiffs and the Proposed Class in
the* Dubus *Action*

Dated: August 13, 2024                                Respectfully Submitted,

By: /s/ Sean S. Pak

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Ron Hagiz (*pro hac vice*)
ronhagiz@quinnemanuel.com
Jessica Rose (*pro hac vice*)
jessicarose@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant NVIDIA Corporation*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## L.R. 5-1 SIGNATURE ATTESTATION

This document is being filed through the Electronic Case Filing (ECF) system by attorney Joseph R. Saveri. By their signature, Joseph R. Saveri attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: August 13, 2024                    By */s/ Joseph R. Saveri*