[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| Abdi Nazemian, et al.,<br><br>            Plaintiffs,<br><br>    vs.<br><br>NVIDIA Corporation,<br><br>            Defendant. | Case No. 4:24-cv-01454-JST<br>Case No. 4:24-cv-02655-JST<br><br>**RESPONSIVE BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' PROPOSED ESI AND PROTECTIVE ORDERS** |
| Andre Dubus III, et al.,<br><br>            Plaintiffs,<br><br>    vs.<br><br>NVIDIA Corporation,<br><br>            Defendant. | |

## I. Introduction

NVIDIA Corporation's ("NVIDIA") reliance on the most restrictive provisions of the Model Patent Order ("MPO") in these complex copyright class actions is fundamentally misguided. Although NVIDIA asserts that it has adopted the MPO "with limited modifications," ECF No. 73 at 7, the only provisions NVIDIA has retained from the MPO are those specifically designed to constrain discovery.[1] The draconian limits on email discovery, custodians, and search terms in NVIDIA's proposed ESI Protocol, ECF No. 73-4 ("NVIDIA's ESI Protocol"), are untenable here. To prove their claims and overcome NVIDIA's defenses, Plaintiffs must secure discovery of internal communications, datasets, and corporate decision-making processes concerning the use of Plaintiffs' works in training AI models. Discovery must extend beyond the technical development of AI models and include broader organizational conduct at NVIDIA. *See* Declaration of Craig Ball, dated September 18, 2024, ECF No. 74-2 ("Ball Decl."), ¶ 10. For example:

- To effectively litigate the fair use defense, Plaintiffs are entitled to discovery that uncovers NVIDIA's internal discussions regarding the purpose and character of its infringing use of Plaintiffs' works, as well as communications about the potential market impact of licensing Plaintiffs' works instead of copying them for training NVIDIA's models.[2] NVIDIA insisted that the fair use defense be foregrounded in this litigation, *see* ECF No. 69, and cannot now limit Plaintiffs' ability to pursue the discovery essential to rebut that defense.

- These cases potentially involves millions of infringed works and decision-makers spanning NVIDIA's research, development, and executive teams. Limiting discovery as NVIDIA suggests would obstruct Plaintiffs' access to crucial documents, including

---

[1] A redline of NVIDIA's proposed ESI protocol against the MPO demonstrates that NVIDIA borrowed only about 20% of the MPO's text. *See* ECF No. 73-5.

[2] *See, e.g.*, *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 526 (2023); *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546 (1985); *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, No. 1:20-CV-613-SB, 2023 WL 6210901, at *10 (D. Del. Sept. 25, 2023).

communications that reveal how and why NVIDIA utilized Plaintiffs' copyrighted works to train its AI models. *See* Ball Decl. ¶¶ 10-12.

- Plaintiffs' recovery of full statutory damages depends on proving willfulness, which impacts potential penalties under the Copyright Act. *See* 17 U.S.C. 504(c)(2); *Unicolors Inc. v. Urban Outfitters Inc.*, 853 F.3d 980, 991 (9th Cir. 2017). NVIDIA's proposed discovery limits would severely impair this aspect of Plaintiffs' cases. *See* Rader Decl. ¶ 12; Ball Decl. ¶¶ 9-12.

Additionally, NVIDIA's attempt in its proposed protective order, ECF No. 73-2 ("NVIDIA's Protective Order") ¶ 2.9, to designate a broad range of documents, such as training datasets, as "source code," would unnecessarily burden Plaintiffs' review of routine data, further impeding discovery of essential evidence. *See* Declaration of Randall R. Rader, dated September 19, 2024, ECF No. 74-1 ("Rader Decl.") ¶¶ 12-13.

Plaintiffs' proposed ESI protocol, ECF No. 74-3 ("Plaintiffs' ESI Protocol"), and protective order, ECF No. 74-4 ("Plaintiffs' Protective Order"), are specifically crafted to address the complexities of this litigation, balancing the need for robust discovery with the proportionality principles of Rule 26(b)(1) of the Federal Rules of Civil Procedure. Given the systemic and large-scale infringement at issue, broader discovery parameters are not only warranted but essential to Plaintiffs' ability to prove their claims. *See* Ball Decl. ¶¶ 8-11. The Court should reject NVIDIA's overly restrictive discovery framework, which is designed for patent cases, and instead adopt Plaintiffs' ESI Protocol and Protective Order, which offer reasonable protections for confidential information without unduly hindering the discovery process.

## II. NVIDIA's Proposed Custodian and Search Term Limits are Unworkable

NVIDIA's proposed limit of eight custodians, *see* NVIDIA's ESI Protocol ¶ 10, is unreasonable and contrary to the needs of these cases. Plaintiffs' allegations encompass complex copyright infringement issues spanning multiple departments within NVIDIA. Imposing such restrictive limits would exclude critical internal communications and hinder the discovery of relevant evidence essential under Rule 26(b)(1). At least one court has rejected similarly restrictive approaches in cases involving large datasets and systemic issues, recognizing the necessity of

broader discovery to uncover relevant information. *See In re OpenAI ChatGPT Litigation*, Lead Case No. 3:23-cv-3223-AMO (N.D. Cal.), ECF No. 175 (order in generative AI copyright infringement case allowing plaintiffs to seek discovery from 24 custodians). Plaintiffs' proposal for 24 custodians and more flexible search terms, Plaintiffs' ESI Protocol ¶ 5(A)-(C), is appropriate given the scale and complexity of these cases.

NVIDIA's arbitrary limitations on search terms also risk excluding key documents. *See* Ball Decl. ¶ 9. Internal discussions about the use of copyrighted material in AI training likely involve varied terminology across departments. Different teams may use technical jargon, legal terms, or informal language, making broader search flexibility essential to capturing all relevant information. Modern litigation, especially cases involving complex technology like AI, requires flexible ESI discovery to account for varied terminologies and communication channels. *See id.* ¶¶ 8-9. Restricting search terms would prevent Plaintiffs from fully exploring NVIDIA's internal communications, which is critical to their claims. *See* Fed. R. Civ. P. 26(b)(1).

### III. NVIDIA Inexplicably Fails to Address Structured Data and Model Data

NVIDIA's omission of provisions for structured data and model data is a significant deficiency in their proposal. Structured data, training datasets, model parameters, and logs, are central to these cases. Absent clear guidelines for its production and review, Plaintiffs will be denied access to key evidence necessary to prove that NVIDIA improperly used their copyrighted materials. This data is crucial for establishing how Plaintiffs' works influenced the AI models and determining the extent of infringement. *See* Ball Decl. ¶ 14. NVIDIA's approach of delaying resolution on procedures for structured and model data creates unnecessary obstacles. Plaintiffs' proposal ensures that relevant data is produced promptly and comprehensively, allowing for a full and fair assessment of NVIDIA's use of copyrighted material. Delaying discovery of structured data would obstruct Plaintiffs' ability to gather essential evidence and undermine the principles of transparency and fairness central to the discovery process. *See id.* ¶¶ 12, 16.

### IV. NVIDIA's Email & Mobile Device Discovery Limitations Are Overly Restrictive

NVIDIA's proposed limitations on email discovery are also unworkable. *See* NVIDIA's ESI Protocol ¶¶ 7, 9, 10-11. By prohibiting general email discovery and allowing only narrowly

tailored, issue-specific requests, NVIDIA seeks to significantly limit Plaintiffs' ability to uncover critical communications. In cases involving broad copyright infringement, such restrictions are impractical, contrary to the discovery principles outlined in Rule 26(b)(1), and would prevent Plaintiffs from obtaining key internal discussions reflecting decision-making processes across NVIDIA's departments.

Plaintiffs' approach to email discovery is necessary and proportional to the cases. *See* Plaintiffs' ESI Protocol ¶ 5. To understand how NVIDIA used Plaintiffs' copyrighted works, access to internal communications is essential, including discussions that reveal broader patterns of conduct. Restricting email discovery as NVIDIA proposes would severely hinder Plaintiffs' ability to assess the full scope of infringement. *See, e.g.*, *Coach Servs., Inc. v. YNM, Inc.*, No. CV 10-2326-JST (PLAx), 2011 WL 759876, at *3 (C.D. Cal. Jan. 18, 2011) ("Without the discovery, plaintiff is prevented from learning the details of the full scope of the alleged infringement by defendants"); *SGII, Inc. v. Martin*, No. 8:19-cv-00541-JVS-KESx, 2021 WL 1593246, at *3 (C.D. Cal. Mar. 3, 2021) (similar).

Excluding certain forms of electronic correspondence, such as communications through Slack, Teams, or other collaboration platforms, is also unjustified. *See* Ball Decl. ¶ 9. Modern corporate communications frequently occur on these platforms and mobile apps, which are critical for interdepartmental collaboration, particularly in technical environments like AI development. *See id*. These platforms likely contain essential discussions about AI training and the use of copyrighted works, including informal or off-the-record conversations not captured in emails, making them vital to understanding NVIDIA's operations during the relevant period. *See id*. Excluding these communications from discovery would leave a significant gap in the evidence, obstructing Plaintiffs' ability to obtain the full scope of relevant information. *See id*.

V.   **NVIDIA's Definition of "Source Code" is Overbroad & Burdensome**

NVIDIA's Protective Order's treatment of training data and model parameters as "Source Code" is overly expansive and unjustified. *See* NVIDIA's Protective Order ¶ 2.9. By extending heightened confidentiality protections typically reserved for actual source code to non-source code documents, NVIDIA seeks to shield critical evidence from discovery. This overbroad

classification would severely limit Plaintiffs' access to essential information, including datasets used to train NVIDIA's AI models. Such a broad definition of "Source Code" creates unnecessary obstacles to understanding how Plaintiffs' copyrighted works were misused, undermining the discovery process and the principles of proportionality and relevance under Rule 26(b)(1).

Plaintiffs' definition of "source code" is more precise and appropriate. "Source Code" should refer strictly to human-readable programming code, not datasets or model parameters. *See* Plaintiffs' Protective Order ¶ 2.18. Plaintiffs' narrower definition ensures that documents critical to proving copyright infringement, such as training data and related logs, remain accessible. Limiting heightened confidentiality to actual source code—and any additional materials the Parties mutually agree warrant similar protection—strikes an appropriate balance. Courts have consistently held that confidentiality designations must be narrowly tailored to avoid overbroad protections. *See Tan v. Konnektive Rewards, LLC*, No. 20-cv-1082-LL-DDL, 2023 WL 2336893, at *6 (S.D. Cal. Mar. 2, 2023) ("The indiscriminate designation of documents is an abusive discovery practice that attempt[s] to shift the burden of identifying a party's confidential information to other parties.") (quotation omitted).

NVIDIA's proposal would impose further unnecessary barriers on the discovery process. Requirements for in-person review of non-source code material designated as "Source Code" and restrictions on expert access create significant hurdles for Plaintiffs. *See* NVIDIA's Protective Order ¶¶ 7.4(a)(2), 9. These excessive measures would limit Plaintiffs' ability to effectively review critical evidence, such as AI training data, by complicating the logistics of expert analysis. Plaintiffs' proposal, by contrast, offers adequate protection for genuinely sensitive documents while ensuring that discovery proceeds transparently and efficiently.

**VI.     Conclusion**

For these reasons, Plaintiffs respectfully request that the Court adopt Plaintiffs' ESI Protocol and Protective Orders **in full** and reject NVIDIA's overly restrictive proposals. Plaintiffs' proposals would ensure that discovery in these cases is both comprehensive and efficient, promoting a fair resolution of Plaintiffs' claims in accordance with the Federal Rules.

| | |
|---|---|
| Dated: September 26, 2024 | Respectfully submitted, |
| | By: */s/ Joseph R. Saveri* |
| | |
| | Joseph R. Saveri (State Bar No. 130064) |
| | Christopher K.L. Young (State Bar No. 318371) |
| | Elissa A. Buchanan (State Bar No. 249996) |
| | Evan Creutz (State Bar No. 349728) |
| | **JOSEPH SAVERI LAW FIRM, LLP** |
| | 601 California Street, Suite 1505 |
| | San Francisco, California 94108 |
| | Telephone: (415) 500-6800 |
| | Facsimile: (415) 395-9940 |
| | Email:   jsaveri@saverilawfirm.com |
| | cyoung@saverilawfirm.com |
| | eabuchanan@saverilawfirm.com |
| | ecreutz@saverilawfirm.com |
| | |
| | Matthew Butterick (State Bar No. 250953) |
| | 1920 Hillhurst Avenue, #406 |
| | Los Angeles, CA 90027 |
| | Telephone: (323) 968-2632 |
| | Facsimile: (415) 395-9940 |
| | Email:   mb@buttericklaw.com |
| | |
| | Brian D. Clark (*pro hac vice*) |
| | Laura M. Matson (*pro hac vice*) |
| | Arielle Wagner (*pro hac vice*) |
| | Eura Chang (*pro hac vice*) |
| | **LOCKRIDGE GRINDAL NAUEN PLLP** |
| | 100 Washington Avenue South, Suite 2200 |
| | Minneapolis, MN 55401 |
| | Telephone: (612)339-6900 |
| | Facsimile:  (612)339-0981 |
| | Email:   bdclark@locklaw.com |
| | lmmatson@locklaw.com |
| | aswagner@locklaw.com |
| | echang@locklaw.com |
| | |
| | *Attorneys for Plaintiffs and the Proposed Class in the* Nazemian *Action* |

6

Case Nos. 4:24-cv-01454-JST; 4:24-cv-02655-JST
RESPONSIVE BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' PROPOSED ESI AND PROTECTIVE ORDERS

Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Amy E. Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James A. Ulwick (*pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David A. Straite (*pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

*Attorneys for Plaintiffs and the Proposed Class in the* Dubus *Action*

7    Case Nos. 4:24-cv-01454-JST; 4:24-cv-02655-JST
RESPONSIVE BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' PROPOSED ESI AND PROTECTIVE ORDERS