[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| Abdi Nazemian, et al., | Case No. 4:24-cv-01454-JST |
| Plaintiffs, | Case No. 4:24-cv-02655-JST |
| vs. | **DECLARATION OF JOSEPH R. SAVERI** |
| NVIDIA Corporation, | **IN SUPPORT OF PLAINTIFFS' BRIEF** |
| Defendant. | **REGARDING ESI PROTOCOL AND** |
| | **PROTECTIVE ORDER** |
| Andre Dubus III, et al., | |
| Plaintiffs, | |
| vs. | |
| NVIDIA Corporation, | |
| Defendant. | |

I, Joseph R. Saveri, declare as follows:

1.     I am an attorney duly licensed to practice in the State of California. I am a partner and founder of the Joseph Saveri Law Firm, LLP and counsel of record for Plaintiffs Abdi Nazemian, Brian Keene, and Stewart O'Nan in this matter. I have personal knowledge of the matters stated herein and, if called upon, could competently testify thereto. I make this declaration pursuant to 28 U.S.C. § 1746 and in accordance with the Court's October 15, 2024 Order. ECF. No. 77.

2.     On September 19, 2024, Plaintiffs filed a brief in support of their proposed ESI Protocol and Proposed Protective Order. ECF No. 74. In addition, Plaintiffs filed two Declarations: one by Judge Randall R. Rader and another by ESI expert Craig D. Ball. ECF Nos. 74-1, 74-2. Plaintiffs submitted the Declarations of Judge Rader and Mr. Ball to fulfill subsection (c) of Section G of the Court's Standing Order for All Civil Cases's requirement that they explain why use of the model orders, as drafted, is not practicable for the above-captioned cases.

3.     Judge Rader, who was the organizer of the E-Discovery Committee that drafted the Model Patent Order released in September 2011, describes the reasons why the Model Stipulated Order Re: Discovery of Electronically Stored Info (Patent Cases) ("Model Patent Order") is impracticable and should not be used for the above-captioned cases. ECF No. 74-1 ¶¶ 10-13.

4.     Mr. Ball, who is an expert in computer forensics and electronic discovery, describes the reasons why the Model Stipulated Order Re: Discovery of Electronically Stored Info (Standard Cases) ("Standard Model Order"), as drafted, is impracticable and should not be used for the above-captioned cases, because it excludes many provisions necessary for the efficient conduct of discovery. ECF No. 74-2 ¶¶ 13-17.

5.     On October 15, 2024, the Court ordered Plaintiffs to provide redlined versions comparing their proposed orders with the model stipulated orders referenced in Section G of the Court's Standing Order for All Civil Cases. ECF No. 77. Plaintiffs hereby submit those redlined versions, along with a declaration explaining each modification to the model stipulated orders, in accordance with subsection (b) of Section G.

DECLARATION IN SUPPORT OF PLAINTIFFS' PROPOSED ESI AND PROTECTIVE ORDERS

1    **ESI PROTOCOL**

2        6.        A true and correct copy of a redline identifying changes made to the proposed ESI

3    Protocol is attached hereto as Exhibit A.

4        7.        Plaintiffs' proposal contains extensive edits to the Standard Model Order, which

5    reflect modern litigation practice, and are designed to minimize and narrow potential disputes

6    about ESI that require judicial intervention while promoting transparency and efficiency, as

7    follows:

8        8.        **Paragraph 4:** Plaintiffs modified the language to state that parties that are business

9    entities will issue litigation hold notices to relevant departments, divisions, committees, teams, and

10   individuals.

11       9.        **Paragraph 5:** Plaintiffs added the following subsections: (A) Disclosures, (B)

12   Search Methodology, (C) Search Terms, (D) Hit Reports, (E) Validation, (F) Custodial Mobile

13   Device and Communications Data, and (G) Other Obligations.

14           a.   Paragraph 5(A) requires the parties to meet and confer to disclose key information

15                about custodians, data sources, relevant date ranges, and categories of documents or

16                ESI. It requires the parties to identify 24 custodians most likely to have relevant

17                ESI, consistent with other ESI orders entered in similar litigation in this District.

18                This provision promotes transparency and efficiency and allows both parties a clear

19                roadmap to locate key ESI and streamline the discovery process.

20           b.   Paragraph 5(B) establishes a transparent process for ESI searches. Each party must

21                disclose key details describing their search methodology and requires the parties to

22                meet and confer on process for determining the adequacy of search term and/or

23                Technology Assisted Review procedures.

24           c.   Paragraph 5(C) establishes a process for the parties to discuss and agree upon

25                search terms. This process is consistent with modern ESI discovery practice and

26                will reduce delay and unnecessary expense. This section is designed to reduce or

27                narrow the scope of search term disputes that may require judicial intervention.

28

d.  Paragraph 5(D) provides a clear set of reporting parameters for hit reports. This section ensures both parties can access metrics that show the number of documents identified by each search term, including unique documents and document families. This transparency allows the parties to assess whether search terms are over- or under-inclusive and adjust in accordance with Rule 26. This procedure avoids wasted time and resources on irrelevant documents.

e.  Paragraph 5(E) requires the parties to meet and confer on methods for validating the producing party's review process. Validation ensures that the producing party's review is thorough, captures relevant information, and is not overbroad or unduly burdensome. This provision emphasizes the need for quality control in the ESI discovery process, and reduces the risk of incomplete or inaccurate document production, in compliance with the Federal Rules of Civil Procedure.

f.  Paragraph 5(F) provides procedures for discovering relevant ESI from mobile devices and other electronic communications. Contemporary business, including the most relevant and candid business communication, is frequently conducted on mobile devices and using enterprise messaging tools (including chats and electronic correspondence and collaboration platforms, such as Slack, Discord, MS Teams, Zoom, WhatsApp, and Skype). Paragraph 5(F) requires the producing party to take reasonable steps to locate and preserve unique, responsive ESI. This provision also requires the parties to confer on the scope and format of the production, while ensuring that responsive data is not overlooked. Because this provision focuses only on unique ESI that is not captured through other forms of collection, it is not duplicative or unduly burdensome. To the contrary, it promotes due process and the development of a complete discovery record.

g.  Paragraph 5(G) clarifies that search methodologies do not relieve a party from its obligation to produce relevant documents under the Federal Rules of Civil Procedure. This provision establishes that a document that is known to be

responsive to a discovery request must be produced, even if it does not hit on a

keyword search. This commonsense position is reasonable and fair.

10.     **Paragraph 6**: Plaintiffs' modified language provides that the parties will meet and confer about methods to search ESI. Information regarding technical specifications related to production formats is now found in Appendix A.

11.     **Paragraph 7:** Plaintiffs modified the language to state that the parties will meet and confer about phased production of ESI. Phased productions may produce efficiencies and reduce cost.

12.     **Paragraph 8:** Plaintiffs added a section regarding deduplication. Deduplication is commonplace in complex litigation and prevents the production of multiple copies of the same document, saving both parties time and resources during review, and ensuring that discovery focuses on genuinely unique and relevant information.

13.     **Paragraph 9:** Plaintiffs added a section regarding embedded files. Neither model order includes a provision on embedded files. Modern communication and electronic document filing systems allow parties to share files via embedding through hyperlinks, rather than through traditional email attachments. Large corporations, and technology companies in particular, regularly use embedded files in documents shared across employees, divisions and departments. The addition of this section is critical for maintaining the context of embedded documents and their relationship to family documents, including emails and chats. Preserving family relationships between embedded files and their parent documents ensures that all related information is produced together, providing a complete picture of each document.

14.     **Paragraph 10:** Plaintiffs added a section regarding hyperlinks. Neither model order includes a provision regarding hyperlinks. Sharing documents by hyperlink, in lieu of traditional email attachments, is common in modern workplaces and electronic filing systems, especially technology companies. This section ensures that links to important documents are not overlooked or omitted and provides a sensible, efficient mechanism for producing linked content.

15.     **Paragraph 11:** Plaintiffs added a section regarding structured data. Neither model order addresses structured data. Structured data, often found in databases, must be identified and

produced in a different manner than other ESI. Given its size and unique characteristics, it is important for the parties to discuss at the outset how such data should be handled. This section requires the parties to confer regarding the best format for producing technical data, minimizing the risk of misinterpretation or loss of relevant information.

16.     **Paragraph 12:** Plaintiffs added a section regarding model data. Neither model order addresses model data. Model data, which relates specifically to the AI generative models at issue in this case, is new and can be challenging due to varying formats and technical requirements. This section ensures the parties will confer and agree on methods for producing model data, minimizing the risk of misinterpretation or loss of relevant information.

17.     **Paragraph 13:** Plaintiffs added a section regarding redactions. Neither model order addresses redactions. This section sets out guidelines for how redactions are made, ensuring the parties receive relevant, non-privileged information, while balancing the need for confidentiality.

18.     **Paragraph 14:** Plaintiffs added a section regarding privilege logs. Neither model order addresses privilege logs. Privilege logs are crucial for tracking documents that are withheld or redacted based on privilege claims, allowing the parties to properly assess the claim consistent with Rule 26(b)(5). This section outlines privilege log preparation and necessary information to allow the opposing party to evaluate privilege claims and the Court to adjudicate them.

19.     **Paragraph 15:** Plaintiffs added a section regarding privilege challenges, which is not included in either model order. This section provides a clear process for challenging privilege.

20.     **Paragraph 16:** Plaintiffs removed language regarding the "quick peek" process outlined in Federal Rule of Civil Procedure 26(b)(5). Language regarding privilege logging has been moved to Paragraph 14, Section (M).

21.     **Appendix A:** Plaintiffs have added a section on Technical Specifications, which addresses ESI Production Format, Source Code, Images, Full Text Extraction and Optical Character Recognition ("OCR"), and Load File specifications. The model order does not address specific technical specifications for ESI productions. The specifications outlined in Appendix A and commonplace and necessary to ensure that ESI data is produced in a manner that is readable by the receiving party, preserves family relationships, and allows for the efficient processing and

1   review of ESI. This section also provides the parties with transparency and consistency. The

2   absence of such provisions would lead to inconsistency and ambiguity.

3       22.    **Appendix B:** Plaintiffs have added a section on Metadata Fields. The model order

4   does not address specific metadata fields. These fields are commonplace and ensure that ESI data

5   is produced with critical metadata information, without which the ESI cannot be organized and

6   reviewed in its proper context.

7   **<u>PROTECTIVE ORDER</u>**

8       23.    A true and correct copy of a redline identifying changes made to the proposed

9   Protective Order is attached hereto as Exhibit B.

10      24.    Plaintiffs' proposal contains extensive edits to the Model Protective Order, which

11  are based on modern litigation practice and minimize the risk of overdesignation and related

12  inefficiencies, while maintaining robust protections for sensitive materials, as follows:

13      25.    **Section 2.4**: Plaintiffs inserted a definition of "Designated House Counsel," which

14  creates a mechanism to grant select in-house attorneys access to highly confidential information

15  while maintaining robust protections for sensitive materials.

16      26.    **Section 2.5**: Plaintiffs modified the definition of "Designating Party" to include

17  "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL

18  -- SOURCE CODE" designations. This modification broadens the scope of protections and allows

19  for more nuanced classification of sensitive materials. The tiered designations provide flexibility

20  to protect varying levels of confidential information, from general business data to highly sensitive

21  source code. This modification safeguards NVIDIA's most valuable intellectual property while

22  still allowing necessary access for litigation purposes.

23      27.    **Section 2.7**: Plaintiffs modified definition of "Expert" imposes restrictions

24  regarding who qualifies as an expert in this litigation. Excluding past or current employees of

25  parties or competitors, and those anticipated to become such, prevents potential misuse of

26  confidential information by individuals with conflicting interests.

27      28.    **Section 2.8**: Plaintiffs added a designation for "HIGHLY CONFIDENTIAL --

28  ATTORNEYS' EYES ONLY" to provide protection for confidential research and development or

sensitive trade secret information that is not source code but requires additional protections. This definition prevents overbroad classification that could impede effective discovery and provides a clear standard for challenging improper designations, streamlining disputes, and reducing unnecessary motion practice.

29.   **Section 2.9**: Plaintiffs added a designation for "HIGHLY CONFIDENTIAL -- SOURCE CODE," establishing a specific category for the most sensitive technical information. This definition recognizes the unique importance of source code in AI-related litigation, providing maximum protection while still allowing necessary access. *See* ¶ 38. Plaintiffs also included a provision for extending this designation to non-Source Code materials through meet and confer discussions to create flexibility and protect closely related technical data. This approach anticipates complex discovery issues surrounding AI model architecture and training data.

30.   **Section 2.16**: Plaintiffs added language to the definition of "Protected Material" that includes "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL -- SOURCE CODE" designations. This modification ensures comprehensive protection across all levels of sensitive information in this litigation.

31.   **Section 2.18**: Plaintiffs added language provides a precise and accurate definition of "Source Code." Limiting the definition to human-readable programming instructions ensures that only true source code—critical to the operation of software—receives the highest level of confidentiality protection. This targeted definition prevents the overextension of stringent source code protections to materials that are not actually source code, avoiding the unnecessary restriction of access to other relevant technical information. *See* ¶ 38. For example, telemetry information and pull requests are not source code, but will likely contain highly relevant information. The specificity of this definition also facilitates focused challenges to improper designations, reducing the potential for parties to misuse confidentiality claims as a shield for non-source code materials. This precision creates a solid framework for negotiating access to essential technical information while maintaining strong safeguards for legitimate trade secrets.

32.   **Section 5.1**: Plaintiffs added language that strengthens the requirements for designating Protected Material. The added language "To the extent it is practical to do so" imposes

1    a reasonableness standard on the Designating Party, preventing blanket confidentiality claims.

2    Requiring the parties to specify the level of protection for each portion of a document increases

3    precision in confidentiality designations, facilitating targeted challenges to improper

4    classifications. These changes align with the confidentiality designations and streamlines the

5    process for resolving designation disputes.

6        33.    **Section 5.2**: The additional language aligns with the new confidentiality

7    designations. The requirement to specify the level of protection for each portion of a document

8    enhances precision and prevents overbroad confidentiality claims. Changes to deposition

9    testimony designation procedures, including the 21-day review period, provide a balanced

10   approach to protecting sensitive information while maintaining discovery efficiency. These

11   modifications create a more robust framework for handling confidential information.

12       34.    **Section 7.2**: The modifications to Section 7.2(g) expand the scope of permissible

13   disclosure for "CONFIDENTIAL" information and broaden the definition of "author or recipient"

14   to include all current employees of NVIDIA for deposition or trial testimony purposes. By

15   deeming all current employees as potential "authors or recipients," this modification circumvents

16   potential restrictions on information flow within NVIDIA's corporate structure.

17       35.    **Section 7.3**: Plaintiffs added Section 7.3, establishing protocols for handling

18   "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL

19   -- SOURCE CODE" materials. This section limits disclosure to a narrowly defined group,

20   ensuring maximum protection for the most sensitive information. Language in subsection (b)

21   related to Designated House Counsel balances the need for corporate insight with confidentiality

22   protections. Subsection (f), which provides for limited witness disclosure during depositions

23   allows critical witnesses to examine Protected Materials while ensuring stringent protections.

24   Subsection (g), which extends the "author or recipient" definition to all current NVIDIA

25   employees for deposition and trial purposes is consistent with the approach in Section 7.2.

26       36.    **Section 7.4**: Plaintiffs added Section 7.4 to establish a rigorous procedure for

27   approving disclosure of highly confidential information to Designated House Counsel and

28   Experts. This provision balances the need for access with robust safeguards. The detailed

1   requirements for expert disclosure create a mechanism to vet potential conflicts while avoiding

2   unnecessary delays. Critically, subsection (a)(2) allows disclosure to experts without prior

3   identification, provided they are not current or anticipated competitors. This streamlines the expert

4   engagement process while maintaining security. The objection and resolution procedures provide a

5   structured framework for disputes, shifting the burden to the opposing party to justify restrictions.

6       37.    **Section 8**: The addition of Section 8 imposes restrictions on individuals with access

7   to highly confidential information. This provision prevents those exposed to sensitive technical

8   data from engaging in patent prosecution related to large language models. The two-year post-

9   litigation restriction period ensures prolonged protection of NVIDIA's proprietary information and

10   demonstrates Plaintiffs' good faith in handling confidential information.

11       38.    **Section 9**: Plaintiffs added language establishes protocols for handling Source

12   Code, the most sensitive category of information in this litigation. This provision imposes

13   stringent review conditions, including secured computers and rooms, addressing legitimate

14   concerns about protecting NVIDIA's core intellectual property. The detailed procedures for

15   printouts and logs create a clear chain of custody for Source Code materials. This section provides

16   flexibility in review methods, allowing for both on-site and remote access options, and anticipates

17   the complex technical nature of the disputed AI models while maintaining strict controls.

18   Limitations on copying and distribution, coupled with specific review requirements, create a

19   robust framework that facilitates necessary discovery while minimizing risks of unauthorized

20   disclosure or misuse of NVIDIA's proprietary algorithms and training methodologies.

21       39.    **Section 10**: Plaintiffs' modifications to Section 10 strengthen protections for

22   subpoenaed Protected Material in ancillary proceedings and align with the new "HIGHLY

23   CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL --

24   SOURCE CODE" designations, ensuring comprehensive safeguards across all confidentiality

25   tiers. Enhanced notification and cooperation requirements impose additional obligations on parties

26   receiving third-party subpoenas, creating multiple opportunities to protect sensitive information.

27       40.    **Section 11**: Plaintiffs' added language aligns with the new "HIGHLY

28   CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL --

SOURCE CODE" designations from Non-Parties, ensuring comprehensive protection across all confidentiality tiers. This modification anticipates complex non-party data potentially implicated in AI model training. Detailed procedures for handling Non-Party confidential information create a framework for resolving conflicts between discovery obligations and confidentiality agreements.

41.      **Section 13**: Plaintiffs' modifications strengthen the existing provisions regarding inadvertent production. By explicitly stating that inadvertent inclusion of protected information as part of a document production in this case does not itself waive privilege or protection, it aligns the order with Federal Rule of Evidence 502(d). This change provides a clear, court-endorsed safeguard against waiver. The removal of references to Rule 502(e) eliminates potential ambiguities, focusing solely on the stronger protections offered by 502(d).

42.      **Section 14.3**: Plaintiffs added Section 14.3 to ensure compliance with export control laws governing the disclosure of technical data contained in Protected Material. This provision requires the Producing Party to identify any such controlled technical data, placing the responsibility on the Receiving Party to take appropriate measures to prevent unauthorized disclosure, especially to foreign persons or nationals. This clause addresses concerns regarding the exchange of sensitive technical information, aligning the parties' obligations with applicable export regulations and protecting the integrity of confidential data during the litigation.

43.      **Section 16**: Plaintiffs' Clawback and Rule 502(d) provision enhances protection against inadvertent disclosure of privileged materials, ensuring compliance with Federal Rule of Evidence 502(d). The revision provides that the inclusion of protected information as part of a document production in this case does not itself constitute a waiver of privilege or work product protection in this litigation or other federal or state proceedings. This language provides broader safeguards, providing that privilege remains intact even after production. Additionally, the updated clawback procedures offer a structured and efficient method for addressing claims of privilege or protection, reducing the risk of disputes during the litigation process. The provision also includes specific timelines for handling clawback requests, fostering prompt resolution while maintaining the integrity of privileged information.

DECLARATION IN SUPPORT OF PLAINTIFFS' PROPOSED ESI AND PROTECTIVE ORDERS

Dated: October 17, 2024

Respectfully submitted,

By: */s/ Joseph R. Saveri*

Joseph R. Saveri (State Bar No. 130064)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Evan Creutz (State Bar No. 349728)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            cyoung@saverilawfirm.com
            eabuchanan@saverilawfirm.com
            ecreutz@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile:  (415) 395-9940
Email:      mb@butericklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle Wagner (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile:  (612)339-0981
Email:      bdclark@locklaw.com
            lmmatson@locklaw.com
            aswagner@locklaw.com
            echang@locklaw.com

*Attorneys for Plaintiffs and the Proposed Class in the* Nazemian *Action*

Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed A. Rathur (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone: 312-782-4880
        bclobes@caffertyclobes.com
        asweatman@caffertyclobes.com
        mrathur@caffertyclobes.com

Amy E. Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James A. Ulwick (*pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
        akeller@dicellolevitt.com
        ndjordjevic@dicellolevitt.com
        julwick@dicellolevitt.com

David A. Straite (*pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
        dstraite@dicellolevitt.com

*Attorneys for Plaintiffs and the Proposed*
*Class in the* Dubus *Action*