[Counsel on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| ABDI NAZEMIAN, BRIAN KEENE, and STEWART O'NAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br>NVIDIA Corporation,<br><br>        Defendant. | Case No. 4:24-cv-01454-JST<br>Case No. 4:24-cv-02655-JST<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR PROPOSED ESI PROTOCOL AND PROTECTIVE ORDER** |
| ANDRES DUBUS III and SUSAN ORLEAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br>NVIDIA Corporation,<br><br>        Defendant. | |

## I. INTRODUCTION

Pursuant to the Court's November 15, 2024 Order, (Dkt. No. 87), Plaintiffs submit this brief in support of their positions regarding disputed provisions in the Joint ESI Protocol and Protective Order. Since the October 21, 2024 conference, (Dkt. No. 80), Counsel for the Parties have met and conferred, and reached impasse on a few remaining provisions. The Parties jointly submit the draft ESI Protocol and Protective Order, attached hereto as Exhibits A and B, and their respective proposals for disputed provisions. The Parties agree to any provision not specifically identified as disputed.

## II. PLAINTIFFS' ESI PROVISIONS ARE APPROPRIATE TO THIS CASE

Plaintiffs' ESI provisions adhere to the current and best eDiscovery practices in complex litigation, establish early cooperation and cost-effective discovery methods, support the Parties' Rule 26 obligations, reduce gamesmanship, and ensure "forthright sharing . . . with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness[.]" Sedona Cooperation Proclamation, 10 Sedona Conf. J. 331, 332 n.2 (2009) (citing *Bd. of Regents of Univ. of Nebraska v. BASF Corp.*, 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007)). NVIDIA's proposals will impose arbitrary impediments, overly burdensome procedures, and significant delays to discovery.

### a. Plaintiffs' Custodian Proposal is Proportional and Streamlined

The Parties agree that 24 custodians is an appropriate number for this action. *See* Ex. A, § 8. Plaintiffs propose a clear path for resolving disputes related to additional custodians and for critical discovery of electronic communications. Plaintiffs' straightforward custodian allocation addresses the fact that custodian needs are not immediately transparent given the information imbalance at this early stage of litigation. *See* Oct. 21, 2024 Hearing Transcript, 53:22-54:6. NVIDIA's proposal, however, requires regular Court intervention, and divides discovery served under Federal Rules 34 and 45 from the search term process of identified custodians' email communications. NVIDIA would permit only twelve initial custodians and then require Plaintiffs to show "a distinct need," additional meet and confers, and, potentially, briefing to obtain custodians above this arbitrary cap.

Further, NVIDIA's proposal would exempt custodian emails from requests for production

made under Federal Rules 34 and 45 and require Plaintiffs to propound specific electronic communications production requests to obtain email discovery from custodians. This approach undermines NVIDIA's Rule 26(g) "reasonable inquiry" obligation to ensure that no relevant documents are left out of production simply because they did not respond to search terms, and will duplicate burdens on both Parties and produce more discovery motion practice to no discernible benefit. Plaintiffs should not be limited in their pursuit of relevant discovery before they even have an opportunity to understand which custodians may be most relevant. *See Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 50-51 (S.D.N.Y. 2009) (noting the information disparity in custodian negotiations and ordering searches of all custodians' email files).

Finally, NVIDIA suggests shifting the costs associated with contested custodian requests and production to Plaintiffs, but offers no reason to disrupt the presumption that parties bear their own legal costs, win or lose. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). Regardless, the Court can obviate such inefficiencies by permitting Plaintiffs to identify up to 24 custodians, recognizing that Plaintiffs remain bound by their obligations to seek discovery only from relevant sources.

### b. Plaintiffs' Search Term Methodology is Efficient and Minimizes Burdens

Under Rule 26, NVIDIA must conduct a reasonable inquiry, and produce all relevant discovery that is proportional to the needs of the case. *Raine Grp. LLC v. Reign Capital, LLC*, 2023 WL 5302371, at *1 (S.D.N.Y. Feb. 22, 2022) (noting that the ESI protocol and search terms should complement, not usurp, a party's independent obligations under the Federal Rules). Plaintiffs' proposal, *see* Ex. A, § 9, comports with this obligation because NVIDIA itself knows where, and with which custodians, relevant documents and email communications are stored and can prepare search terms likely to produce all relevant discovery in satisfaction of their burden under Rule 26(b)(1). Once the Parties have met and conferred on the proposed search terms, Plaintiffs propose a process to determine their effectiveness. The Parties have already shown their ability to productively meet and confer (as evidenced by a significant reduction in the number of disputed provisions) and the Court can expect the same through the search term refinement process.

In response, NVIDIA proposes a parallel, duplicative discovery process that will increase the time and cost of discovery and impermissibly shift the burden of compliance with the Federal Rules

to the Plaintiffs. NVIDIA unjustifiably caps discovery requests to ten and would require Plaintiffs to first make written discovery requests that identify proper custodians, search terms, and a time frame for production. This proposal would forego open and candid discussion in favor of requiring Plaintiffs to shoot in the dark, ignoring the "careful thought, quality control, testing, and cooperation with opposing counsel" necessary "in designing search terms or 'keywords' to be used to produce [ESI]" and prizes obfuscation over "transparency in all aspects of . . . [ESI] production." *Wm. A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009).

NVIDIA would also limit search terms to 15 and only to specific custodians. These restrictions prevent meaningful testing and iteration on search terms. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 256-57 (D. Md. 2008) ("The only prudent way to test the reliability of the keyword search is to perform some appropriate sampling of the documents[.]"). It is unreasonable to impose such hard caps because Plaintiffs cannot pinpoint which search terms will unearth relevant discovery that is in NVIDIA's sole possession.

### c. NVIDIA's Search-and-Hit Report Timeline is Facially Unreasonable

NVIDIA's 30-day timeline between the hit report request and its production, *see* Ex. A, § 10, is unnecessary because running search terms against already-identified custodians is not burdensome, and hit reports on search terms are automatically created through the search process. Hit reports are critical to determining whether search terms are capturing relevant documents. *See Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727, 734 (N.D. Ill. 2023) (discussing the need for procedures to address search term limitations). NVIDIA's thirty-day delay will needlessly extend the time needed to obtain vital discovery, even before negotiating a process to modify search terms. The Court should adopt Plaintiffs' proposed seven-day timeline to ensure a speedy and efficient discovery schedule.

### d. Plaintiffs' Hyperlink Proposal Permits Flexibility and Proportionality

Modern companies commonly store documents on cloud-based environments that enable multiple parties to simultaneously access and edit documents and share them through easily-accessed hyperlinks. Plaintiffs propose, *see* Ex. A, § 16, that hyperlinked documents be produced in a manner that automatically identifies family relationships and enables the Receiving Party to view them in the

context of the communications where they were shared. Acknowledging that automatic collection might not always be possible, Plaintiffs' proposal requires the Parties to meet and confer regarding alternative methods of collection and production, such as manual retrieval of hyperlinked documents that have not already been produced, upon request. Plaintiffs set out the criteria for a reasonable request, including the corresponding Bates numbers of emails containing the hyperlink, and the basis for the relevance claim as to each hyperlinked document. Even in the absence of an ESI protocol, NVIDIA must produce relevant, responsive discovery, and review (and potentially produce) every document hyperlinked in a responsive document. Plaintiffs propose a reasonable middle ground that significantly narrows NVIDIA's burden and allows Plaintiffs to obtain reasonably requested hyperlinked documents.

NVIDIA, however, seeks to impose a restrictive, limited-request regime which, again, impermissibly shifts the burden of compliance to the Plaintiffs and artificially caps the number of hyperlinked document requests at 200. With no understanding of NVIDIA's employees' practices, Plaintiffs cannot agree to such an arbitrary restriction. NVIDIA should be required, at the least, to make best efforts toward automatic collection and production through available technological means, before being permitted to produce hyperlinked documents upon reasonable request.

### e. Plaintiffs' Proposed Structured Data Provision is Necessary in this Case

Plaintiffs propose an ESI provision to handle what is colloquially known as "structured data," or data that can be readily prepared and reported in a pre-structured format. *See* Ex. A, § 21. Often, structured reporting is more useful than data produced without context: for instance, data dictionaries (which help decipher the labeling and description of data as presented in a structured format) may be necessary for a full understanding of the structured data. Plaintiffs' proposal permits NVIDIA to produce this data in a structured report rather than in its original, native format, within certain guidelines, making this data easier to produce and for Plaintiffs to parse. It also acknowledges that certain data is only ever accessible, or visible, through proprietary systems—an important consideration, given the novel technology at issue. Most importantly, Plaintiffs incorporate a meet and confer timeline to ensure the swift resolution of any disputes. NVIDIA asserts that a structured data provision is unnecessary, but offers no information suggesting that it

would be harmful or unworkable. Accordingly, Plaintiffs' proposal is essentially unrebutted, and the Court should adopt this language.

### III. PLAINTIFF'S PROTECTIVE ORDER BALANCES PROPORTIONATE BURDEN AND SUFFICIENT PROTECTION

#### a. NVIDIA Should Bear the Cost of Protecting Itself

The Parties dispute the appropriate burden for disclosing documents protected by the "Attorneys' Eyes Only" or "Source Code" classifications. *See* Ex. B, § 7.4(a)(2), (b), (c). NVIDIA would require Plaintiffs to seek both permission and the Court's affirmative approval to disclose such documents to experts. NVIDIA' proposal would delay Plaintiffs' experts' review of critical information, and impose on Plaintiffs the burden and cost of affirmatively moving for permission to disclose documents to experts who will already be bound by the Protective Order. Plaintiffs' proposal, on the other hand, gives NVIDIA sufficient time and information to move for a protective order if it finds a risk of competitive harm from disclosing certain categories of documents to experts, and the Parties cannot agree to reasonable limitations to mitigate this risk. Disclosure of technical documents and information to experts will be frequent in this case, and Plaintiffs' proposed disclosure and objection provision balances the Protective Order's protections with efficient discovery.

#### b. Plaintiffs' Clawback Provision Will Save Time and Judicial Resources

Plaintiffs offer a clear and thorough procedure for addressing clawbacks of inadvertently produced, privileged documents, which ensures that the Parties have sufficient information to assess clawback requests and an expectation for deletion and destruction of clawed back materials. NVIDIA's proposal provides no transparent process for requesting, disputing, or processing clawbacks and all but ensures lengthy disputes that require Court intervention.

### IV. CONCLUSION

Because Plaintiffs' proposals are proportional to the needs of the case, consistent with the Parties' discovery obligations under the Federal Rules of Civil Procedure, and efficiency-oriented, Plaintiffs respectfully request that the Court enter an ESI Protocol and Protective Order that adopt Plaintiffs' proposed language to resolve all disputed provisions.

| | |
|---|---|
| Dated: November 18, 2024 | Respectfully Submitted, |
| | By:    */s/ Joseph R. Saveri*<br>       Joseph R. Saveri |

Joseph R. Saveri (State Bar No. 130064)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Evan Creutz (State Bar No. 349728)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle Wagner (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile: (612)339-0981
Email: bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
echang@locklaw.com

*Attorneys for Plaintiffs and the Proposed Class in the* Nazemian *Action*

Bryan L. Clobes (*pro hac vice*)
Alexander J. Sweatman (*pro hac vice*)
Mohammed R. Rathur (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:    312-782-4880
Email: bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com


Amy E. Keller (*pro hac vice*)
Nada Djordjevic (*pro hac vice*)
James A. Ulwick (*pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
Email: akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

David A. Straite (*pro hac vice*)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
     dstraite@dicellolevitt.com

*Attorneys for Plaintiffs and the Proposed Class in the* Dubus *Action*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

                                              */s/ Joseph R. Saveri*
                                                 Joseph R. Saveri