# Exhibit A

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ABDI NAZEMIAN, BRIAN KEENE, and STEWART O'NAN, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br>   v.<br><br>NVIDIA Corporation,<br><br>           Defendant. | Case No. 4:24-cv-01454-JST<br>Case No. 4:24-cv-02655-JST<br><br><br>STIPULATION & ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION |
| ANDRES DUBUS III and SUSAN ORLEAN, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br>   v.<br><br>NVIDIA Corporation,<br><br>           Defendant. | |

Upon the stipulation of Plaintiffs, individually and all others similarly situated, and NVIDIA Corporation (collectively, "the Parties"), the Court ORDERS as follows:

1.      <u>Purpose</u>.  This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2.      <u>Modification</u>.  This Order may be modified in the Court's discretion or by stipulation.

3.      <u>Planning for Discovery</u>.  Consistent with the Parties' obligations under the Rules, the Parties will meet and confer to plan for discovery.  This will include a disclosure of data sources, anticipated date ranges of relevant documents, and categories of documents or ESI that contain information relevant to this litigation.

4.      <u>Electronic communications</u>.  The Parties will disclose within 30 days of the entry of this Order any use of electronic communications services and applications (e.g., Slack, MS Teams, Zoom, WhatsApp, Sametime, Skype, Telegram, etc.) used by the Party (collectively, "electronic communications"), including a description of the subscription and retention settings in place. The Parties will meet and confer regarding issues relating to the parameters for an inclusive collection of such data, the format of the production, and other unique issues to this type of data.

5.      <u>Preservation</u>.  The Parties will disclose categories or sources of discoverable information that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief in writing.

a.      The Parties and their respective counsel have an obligation to take reasonable steps to preserve discoverable information in the Parties' possession, custody, or control, which includes Metadata, where applicable, consistent with the Federal Rules.  The Parties who are business entities have issued, or immediately after this Order has taken effect shall issue, litigation hold notices to those internal departments, divisions, committees, teams, and/or individuals likely to possess potentially responsive information, and to persons or entities

responsible for maintenance of non-custodial sources likely to contain potentially responsive information, and have established procedures to ensure that those notices have been received and understood. Counsel for the Parties who are not business entities have, or immediately after this Order has taken effect shall, (1) confer with their clients regarding their data sources likely to contain potentially responsive information and (2) provide their clients with a written explanation of their preservation obligations under the Federal Rules, and have ensured that the written description of those obligations has been received and understood.

6.    Scope of Production Requests.  Discovery requests under Federal Rules of Civil Procedure 33, 34, 36, and 45 shall be consistent with Rule 26(b)(1) directive that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

7.    ESI Liaison Counsel. The Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be outside counsel for a Party who are, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

8.     <u>Electronic Communications Discovery</u>.

| Plaintiffs' Proposal | NVIDIA's Proposal |
|---|---|
| A Requesting Party may request up to twenty-four (24) custodians per Producing Party.  A Party must obtain leave of Court to request custodians beyond twenty-four (24), which shall be granted only upon a showing of good cause.   The named Plaintiffs collectively will be considered a "Requesting Party" when serving email production requests on NVIDIA as the Producing Party.  The Parties may jointly agree to modify these limits without the Court's leave.  The Parties expressly reserve the right to request inclusion of additional custodians as discovery progresses. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. | General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include electronic communications as defined above in Paragraph 4. Electronic communications production requests shall only be propounded for specific issues, rather than general discovery of a product or business.  To obtain electronic communications the Parties must propound specific electronic communications production requests.  Electronic communications production requests shall identify the custodian(s), search terms, and timeframe.  The Parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as discussed further herein. **[Adapted from Model Patent Order ¶¶ 6-7, 9.]**<br><br>Each Requesting Party shall limit its email production requests to a total of twenty-four (24) custodians per Producing Party for all such requests. After a Requesting Party has identified twelve (12) of those custodians, the Producing Party may request to meet and confer regarding the additional email production request.  If the Parties are unable to reach agreement, the Producing Party may initiate the joint letter-brief process pursuant to the Court's dispute resolution procedures set forth in Standing Order § H to move for a protective order with the Court.<br><br>Plaintiffs collectively will be considered a "Requesting Party" when serving email production requests on NVIDIA as the Producing Party.<br><br>The Parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be |

|  | considered as part of any such request. **[From Model Patent Order ¶ 10]** |
|---|---|

9.     Search Term Methodology.

| Plaintiffs' Proposal | NVIDIA's Proposal |
|---|---|
| When a Party intends to use search terms to identify documents for review and production (and therefore cull other documents from review and production) the search terms that Party intends to use will be disclosed, along with any other parameters used for identification/culling (e.g. date ranges, file type exclusions, data source exclusions, etc). If the Requesting Party believes in good faith that the Producing Party's disclosed search terms and parameters would result in deficiencies, the Requesting Party may object and make requests for different or additional search terms and parameters.  In the case of such objection, the Parties will meet and confer within 14 days of such an objection, and the Producing Party will provided a hit report at such meet and conferrals relating to any proposed search terms. The Court encourages the Parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, hard copy documents, or certain foreign language documents where the Parties do not have suitable search terms in such language, must be reviewed without search methodologies that rely primarily on text. | Each Requesting Party shall limit its email production requests to a total of fifteen (15) search terms per custodian per Party.  The total of fifteen (15) search terms may be requested in either one or two rounds of requests.  The Parties may jointly agree to modify this limit without the Court's leave. **[Adapted from Model Patent Order ¶ 11.]**

The Requesting Party may propound up to ten (10) written discovery requests to identify the proper custodians, proper search terms, and proper time frame for email production requests, which shall not count against the interrogatory limit.  The Producing Party shall, within thirty (30) days of such request, respond to the list of written discovery requests subject to any objections permissible under the Federal Rules of Civil Procedure or Federal Rules of Evidence.  The Parties may revise the foregoing process by written agreement.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.

The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus |

|  | each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a Party serve email production requests with search terms beyond the limits agreed to by the Parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any Party shall bear all reasonable costs caused by such additional discovery. **[From Model Patent Order ¶ 11.]** |
|--|--|

10.    <u>Hit Reports.</u>

| **Plaintiffs' Proposal** | **NVIDIA's Proposal** |
|--|--|
| Seven (7) days after a Requesting Party has served search terms as set out in Paragraphs 8 and 9 above, the Producing Party will provide a search term hit report.  A hit report shall contain, for each custodian, the following with respect to each proposed search term: | Thirty (30) days after a Requesting Party has served search terms as set out in Paragraphs 8 and 9 above, the Producing Party will provide a search term hit report.  A hit report shall contain, for each custodian, the following with respect to each proposed search term: |

      a.    The number of documents with hits for that term;

      b.    The number of unique documents, i.e., documents which do not have hits for any other term, for that term; and

      c.    The number of family members requiring review in connection with all documents with hits.

The Parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application.  The parties will agree to revisit setting reasonable limits on the permissible number of hits per term and/or custodian to the extent proportional to the needs of the case in the course of exchanging search terms and hit-counts.

11.    <u>Custodial Mobile Device and Communications Data.</u>

For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any unique, responsive, and relevant ESI (including voicemails, text messages and/or iMessages, chats [such as WhatsApp,

Signal, and Facebook Messenger], notes, calendar items, emails, Word documents, photographs, audio recordings, and video recordings), if any, is located on any devices (including mobile phones, tablets, and computers) in the "possession, custody, or control" (as defined under the Federal Rules and case law) of the Producing Party. The Parties agree that such reasonable steps include asking whether the custodian has used non-enterprise communications platforms (e.g., text messages, WhatsApp, Signal, etc.) to discuss matters relevant to the litigation. If the custodian has not, the custodian may certify in writing that they have not used such platforms to discuss matters relevant to the litigation using a form to be agreed on by the Parties, and the Producing Party shall produce that certification to the Requesting Party. The Parties shall meet and confer about any issues relating to mobile devices including the scope and format of production.

If the custodian is unable to provide a certification as set forth in the preceding paragraph, the Producing Party shall conduct a reasonable investigation to determine what communications means and/or platforms (e.g., text messages and the chat applications identified above) have been used by the custodian to discuss matters relevant to the litigation and what communications should be collected. A Producing Party shall use reasonable due diligence to ensure that reasonably available sources of data/applications on a mobile device (and related backups and archives, if those data sources/applications contain work-related information) are evaluated and considered as a potential source of data subject to discovery.

12.    Technology Assisted Review.  Nothing in this Order prevents the Parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Should a Producing Party wish to use any technology-based process or automated method not specifically addressed by this Order to exclude documents from any review or production, notice to the Receiving Party must be made prior to the use of any such method and the Receiving Party must be given an opportunity to object before such method is used.  If a Party intends to use Technology Assisted Review (including Continuous Active Learning), the Parties will agree to a separate TAR protocol to govern that process.  If the Parties

are unable to reach agreement on a TAR protocol, they will submit any disputed issues to the Court or its designee for resolution. Without prior agreement of the Parties, Technology Assisted Review ("TAR") will not be applied before or after any application of search terms by any Party, unless TAR is used for review prioritization only.

13.    <u>Production Format for ESI</u>.

a.    Except as otherwise provided in this Order, all documents existing in electronic format (e.g., Word, PDF, webpage files) shall be produced as 300 DPI TIFF black and white images with a Bates number stamped on each page, document metadata (including extracted or OCR text), and a link to the associated extracted or OCR text file. All ESI containing track changes or comments (including word documents and PDFs) will be produced as native files, where available metadata (e.g., hidden content fields) indicates the presence of track changes or comments and both the detection of such information and the production of native versions can be accomplished by automatic means and without undue burden.

b.    Source code and certain other highly confidential technical materials will be produced in native format and shall be made available for inspection pursuant to the terms of the Parties' anticipated Protective Order governing "HIGHLY CONFIDENTIAL – SOURCE CODE" materials.

c.    Spreadsheet-type files (e.g., Microsoft Excel) and PowerPoint presentations should be produced in native format unless they require redaction.  Documents produced in native format should be named according to the Bates number assigned, with the Confidentiality designation appended to the Bates numbers with a hyphen. Single-page Bates-stamped TIFF image slipsheets will be included for each document produced in native format. The slip-sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating, "File Produced Natively."

d.    All attachments, addendums, enclosures, and/or exhibits to a parent document will be, to the extent reasonably possible, produced immediately following the parent

document and identified as they relate to the respective parent document with the parent/child relationship intact.

       e.    To the extent reasonably possible, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

       f.    The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated and, to the extent possible, a description of the basis for redaction (e.g. "Redacted – Privilege"). All metadata fields shall be provided, unless redaction of those fields is necessary to protect the asserted privilege or work-product claim. The Parties understand that for certain spreadsheet documents (e.g. Microsoft Excel) or other file types or files, TIFF redactions may be impracticable or substantially degrade the usefulness of the document. These documents shall be redacted in native format, and the original document must also preserved in an unredacted form.  A Party may make redactions on the basis of a claim of attorney-client privilege, work product doctrine, or any other recognized privilege from discovery or statutory basis for redacting information, or to protect privacy (i.e. PII redactions), subject to challenge procedures.  The Parties shall meet and confer regarding any redactions for relevance to be made within a produced document or ESI item. If the parties are unable to reach agreement, they may submit the matter to the Court through the joint letter-brief process pursuant to the Court's dispute resolution procedures set forth in Standing Order § H.

       g.    If any member of a family group is produced, all members of that group must also be produced or else logged as privileged/work-product without breaking the grouping of these documents, unless withheld as irrelevant per an agreement reached in the meet and confer described in subparagraph (f) above.

    14.    <u>Metadata</u>. Load or DAT files should include, where applicable and to the extent it exists and was captured at the time of the collection, the information listed in Appendices A and B, attached, and productions will follow the technical specifications set forth therein. To the extent that metadata does not exist or is not reasonably accessible or available for any documents

produced, nothing in this Order shall require any Party to extract, capture, collect or produce such metadata.

15. <u>Embedded Files</u>. Embedded files, except for images embedded in emails, are to be produced with family relationships preserved. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded and values in the "BegAttach" and "EndAttach" fields to indicate their family. Images embedded in emails shall not be separately produced in the first instance, but shall be produced upon reasonable request by the Receiving Party. A Producing Party is not required to review or produce extracted embedded OLE documents if the document they were extracted from will be produced in native format.

16. <u>Hyperlinks</u>.

| Plaintiffs' Proposal | NVIDIA's Proposal |
|---|---|
| The Producing Party will use available technology to match hyperlinked documents, including those utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or other document sharing platforms, with the email or familial document to which the documents were attached in Native format. Documents extracted from embedded files or hyperlinks shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship. If documents cannot be extracted from links at the time of collection, the Parties agree to promptly meet and confer to discuss alternative methods of collection and production, which may include the production of other metadata fields beyond those indicated in Appendix B, such as a metadata field containing the URL used to access a document from a shared document repository. Upon request by the Receiving Party, the Producing Party will produce hyperlinked documents that were not automatically produced and that are within the Producing Party's possession, custody, or control and are hyperlinked within the Producing Party's production. A reasonable | Except as provided in this section, the Producing Party shall not be required to produce documents solely because they are hyperlinked within the Producing Party's production. For purposes of this section, "hyperlinked documents" include but are not limited to documents shared via Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or similar cloud-based document storage and sharing platforms.<br><br>Production of Hyperlinked Documents. The Parties may request the production of the current version of a non-public, responsive, and non-privileged document or communication that is within the Producing Party's possession, custody, or control and is hyperlinked within the Producing Party's production by providing to the Producing Party a list of hyperlinks and corresponding Bates numbers in which the hyperlinked document is referenced. If the hyperlinked document has already been produced, the Producing Party may alternatively provide the Receiving Party with the document's Bates number. Each Party (with all Plaintiffs |

request for hyperlinks should include a list of hyperlinks, corresponding Bates numbers, and the basis for its claim that the each hyperlinked document is potentially relevant. The Parties acknowledge that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent. The Parties also acknowledge that the metadata for producing hyperlinked documents under this section may not reflect the metadata for requested documents at the time the documents were hyperlinked. The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents. Nothing in this section shall prevent the Producing Party from producing hyperlinked documents that are relevant or responsive to discovery requests in addition to the documents produced by specific request by the Receiving Party..

constituting a single Party) may make up to two hundred (200) such requests. This number may be increased by agreement of the Parties or upon a showing of good cause.

The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents and communications and any reasonable request to increase the limit on the total number of hyperlinked documents and communications to be produced. If a Requesting Party believes that more requests are warranted and the Receiving Party has not agreed to produce additional hyperlinks, the Requesting Party may initiate the joint letter-brief process pursuant to the Court's dispute resolution procedures set forth in Standing Order § H. Nothing in this section shall prevent the Producing Party from producing hyperlinked documents that are relevant or responsive to discovery requests in addition to the documents produced by specific request by the Receiving Party.

<u>Hyperlink Metadata.</u>  The Parties acknowledge that the current version of the hyperlinked document (i.e., the version produced pursuant to this Paragraph) may differ from the version of the document at the time the hyperlink was sent. The Parties also acknowledge that the metadata of such document(s) may not reflect the metadata for requested documents at the time the documents were hyperlinked. Hyperlinked documents or communications produced pursuant to this Paragraph shall not be produced with metadata that indicates a family relationship with the document containing the hyperlink because no such familial relationship may exist with the version of the hyperlinked document(s) produced.

17.   <u>Duplicates</u>.  A Party is only required to produce a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages or SHA-256 hash values. The Parties shall make reasonable efforts to not produce Duplicate ESI. To the extent identical copies of documents appear in the files of multiple Custodians, the Producing Party shall attempt to produce only one such identical copy across all Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails. Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When Duplicate ESI exists in the files of multiple custodians, the names of all custodians who were in possession of a document prior to de-duplication will be populated in the All Custodians field identified in Appendix B. Likewise, the File Path that would have been provided for each version of the document that was not produced due to de-duplication shall be populated in the All File Paths field.

18.   <u>Privilege Logs</u>. Any document falling within the scope of any request for production that is withheld or redacted on the basis of a claim of attorney-client privilege, work-product doctrine, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party in a privilege log.  Each entry on the privilege log shall include sufficient information for a party or the Court to determine whether the document is privileged.

a.   Privilege logs will be produced in an Excel format, or other agreed-upon format, which allows the Receiving Party to search and sort any and all columns and entries of the privilege log.

b.   The privilege log shall include:

i.   A privilege log control number for each entry on the log.

ii.   Date of document for all ESI and to the extent known or discernible for all hard copy documents. For emails this should be the sent date of the document and for loose ESI this should be the last-modified and date of the document.

iii.    Custodian of the document. For emails this should be populated with the metadata extracted from the Custodian(s) field. For loose ESI, this should be populated with the Custodian value assigned to the instance of the document in question.

iv.    Author of the document. For emails this should be populated with the metadata extracted from the "Email From" field associated with the file. For loose ESI, this should be populated with the metadata extracted from the "Author" field. For hard copy documents, this will be populated with the "Custodian."

v.    Recipient(s) of the document where reasonably ascertainable. For emails this will be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns will be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

vi.    Subject Line for emails.

vii.    Filenames for non-email ESI.

viii.    File extension for non-email ESI.

ix.    Bates number(s), if any. For Bates numbered documents (e.g. when a parent email is produced but an attachment is withheld on the basis of privilege) the BegAttach and EndAttach values will be provided.

c.    Parties may substitute an alternative description of the content within the identified field(s) where the content of the field reveals privileged information. The Producing Party shall identify each instance in which it has modified the content of the field and the basis for the modification.

d.    If the document is the parent or child of a family of documents, some of which have been produced and others withheld, the log should identify the Bates numbers of the first document (i.e., the parent, or if the parent is withheld the first attachment) produced from the family in which the logged document was withheld.

e. Privileged communications between a Party and its outside or in-house counsel on or after March 8, 2024, and work product performed by a Party at the direction of its outside or in-house counsel on or after March 8, 2024 need not be included on a privilege log.

f. The privilege logs will clearly identify (a) any attorneys on the privilege log using an asterisk or other agreed-upon method; and (b) any third party (along with the name of the third-party business, the job title and/or role of the third-party, and the basis for asserting the claim of privilege or work-product protection sufficient under Federal Rule of Civil Procedure 26(b)(5) identified in a log entry or entries)). To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, the description shall include sufficient information regarding which attorney(s) requested or were involved in the preparation of the document that is claimed to be privileged.

19. <u>Challenging Privilege</u>. A Receiving Party may challenge a Producing Party's claims of privilege, work product, or other protection at any time.

a. Where the challenge pertains to documents, the Receiving Party shall set forth in writing their challenges and the Producing Party shall have fourteen (14) calendar days to respond. Failure to respond timely will be presumed to terminate the meet and confer process. That timing may be extended by agreement of the Parties.

b. Within seven (7) calendar days of the Producing Party's response, the parties shall meet and confer to attempt to resolve the challenge. That timing may be extended by agreement of the Parties.

c. If, at the conclusion of the meet-and-confer process, the Parties are still not in agreement, they may bring the issue to the Court.

20. <u>Model Data</u>. The Parties will meet and confer to address the production of data related to the Models at issue. Given the size, structure and format of such data, the Parties agree to discuss how Model Data should be produced: for example, raw data files, summaries, reports, code repositories, and/or annotated code, and whether a sample production of Model Data would be appropriate or if there is some other mechanism available.

21.    <u>Structured Data</u>.

| Plaintiffs' Proposal | NVIDIA's Proposal |
|---|---|
| Structured data means data stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database. If discoverable information from any Structured Data System can be produced in an already existing and reasonably available report, the Producing Party may collect and produce the data in that report format. Prior to producing the report, the Producing Party must provide in writing the different report options available, including the data dictionary, if any exist. Within 14 (fourteen) days of receiving such report options, the Parties agree to meet and confer regarding any disputes about structured data production format. If an existing report form is not reasonably available, the Producing Party may make reasonable efforts to export from the Structured Data System discoverable information in a format compatible with Microsoft Excel if such an export would not degrade the usefulness of the data.  If none of the preceding options are available, the Parties will meet and confer to discuss other methods of production.  If no resolution is reached, the Producing Party shall make the information available for inspection on the system where it is currently maintained, or otherwise provide direct access to the data. | [NVIDIA does not believe that a separate Structured Data proposal is necessary.] |

22.    <u>Documents Protected From Discovery.</u> Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

1    **IT IS SO STIPULATED**, through Counsel of Record.

2

3    Dated: _____    _____
                                          Counsel for Plaintiff

4    Dated: _____    _____
                                          Counsel for Defendant

5

6    **IT IS ORDERED** that the forgoing Agreement is approved.

7    Dated: _____

8                                 _____
                                 UNITED STATES DISTRICT/MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:24-cv-01454-JST
Case No. 4:24-cv-02655-JST                    16
                                 [PROPOSED] E-DISCOVERY ORDER

## APPENDIX A

### TECHNICAL SPECIFICATIONS AND
### REQUIRED METADATA FIELDS

**IMAGES:**

- o Produce documents as single page, black and white, Group IV, TIFF files.

- o Image Resolution 300 DPI.

- o File Naming Convention: Match Bates Number of the page.

- o Insert placeholder image for files produced in Native Format.

- o Original document orientation shall be retained.

**SPECIAL FILE TYPE INSTRUCTIONS:**

- o Certain documents shall be produced in Native Format as required by this Protocol.

**FULL TEXT EXTRACTION/OCR:**

- o Produce full extracted text for all file types (Redacted text will not be produced) including text of embedded content.

- o Produce OCR text for any hard copy document.

- o Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).

- o Produce OCR text for any redacted document.

- o Production format: Single text file for each document, not one text file per page.

- o File Naming Convention: Match BegBates Number.

**LOAD FILES**

**Data Load File**

- o The data load file should use standard Concordance delimiters:

- o Comma - ¶ (ASCII 20)

- o Quote - þ (ASCII 254)

- o Newline-® (ASCII174)

- o The first record should contain the field names in the order of the data

- o   All date fields should be produced in mm/dd/yyyy format

- o   Use carriage-return line-feed to indicate the start of the next record

- o   Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered

- o   The name of the data load file should mirror the name of the delivery volume, and should have a DAT extension (i.e., ABC00l.DAT)

- o   The volume names should be consecutive (i.e., ABC00l, ABC002, et. seq.)

**Image Load File**

- o   The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT)

- o   The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

- o   There should be one row in the Load File per TIFF image.

- o   Every image in the delivery volume should be contained in the image load file.

- o   The image key should be named the same as Bates Number of the page.

- o   Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

- o   The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

**Appendix B**
**METADATA FIELDS**

| Field | Description | Email | Non- Emxail ESI | Hard Copy |
|---|---|---|---|---|
| BegBates | Starting Bates # | x | x | x |
| EndBates | Ending Bates # | x | x | x |
| BegAttach | Starting bates # of document family | x | x | x |
| EndAttach | Ending bates # of document family | x | x | x |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| Source | This is the source in which non-custodial data was collected from | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | x |
| File Name | File name of document (including extension) | x | x | |
| File Extension | File extension of original document | x | x | |
| Email Outlook Type | Type of Outlook item, e.g., email, calendar item, note, task | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x | x |
| Author | Document author of a non-Email document. | | x | x |
| Email Subject | Subject of email | x | x | |
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copyees | x | x | |
| BCC | Email blind copyees | x | x | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Last modification date | | x | |

| Field | Description | Email | Non- Emxail ESI | Hard Copy |
|---|---|---|---|---|
| | (mm/dd/yyyy hh:mm:ss format) | | | |
| File Path | File/path of the location where the item was located during the normal course of business. | x | x | |
| All File Paths | File Path that would have been provided for each version of the document that was not produced due to de-duplication. | x | x | |
| Filesize | Size or volume of individual file | x | x | |
| HasHiddenContent[1] | Y if hidden content, otherwise N or empty | | x | |
| Physical Location | The actual location where the Document is stored or preserved | | | x |
| Box Number or unique identifier | The box number associated with archived documents. | | | x |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Production Volume | Production volume name, including a volume number and a prefix which indicates the producing party | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order, if any | x | x | x |
| Redacted | Descriptor for documents that have been redacted, yes or y if document contains redactions, otherwise n or blank | x | x | x |
| Native Link | Path to produced native file used for linking. | x | x | x |
| Text Link | Path to produced text file used for database linking. | x | x | x |
| Other Regulatory/Related Productions BegBates | Beginning bates used when produced in the other legal matter | | | |
| Other Regulatory/Related Productions EndBates | Ending bates used when produced in the other legal matter | | | |
| Other Legal Matter  BegAttach | Beginning attachment range bates used when produced in the other legal matter | | | |
| Other Regulatory/Related Productions EndAttach | Ending attachment bates range used when produced in the other legal matter | | | |

---

[1] "Hidden Content" for purposes of this field shall include track changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.