1
2
3
4
5
6
7

8      **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA**

10     **OAKLAND DIVISION**

| | |
|---|---|
| 11  Abdi Nazemian, et al., | Master File Case No. 4:24-cv-01454-JST (SK) |
| 12             Plaintiffs, | Consolidated with Case No.  4:24-cv-02655-JST (SK) |
| 13         vs. | **ATTESTATION IN SUPPORT OF JOINT** |
| 14  NVIDIA Corporation, | **LETTER BRIEF** |
| 15             Defendant. | |
| 16 | |
| 17 | |

18
19
20
21
22
23
24
25
26
27
28

1

## ATTESTATION IN SUPPORT OF JOINT LETTER BRIEF

2          Pursuant to the Standing Order for Magistrate Judge Sallie Kim, undersigned counsel hereby

3   attest that NVIDIA's lead counsel Sean Pak, and Elisha Barron, William Castillo Guardado, and

4   Mohammed Rathur for Plaintiffs met and conferred by videoconference in a good faith attempt to

5   resolve their disputes and complied with Section 9 of the Northern District's Guidelines for Professional

6   Conduct regarding Discovery prior to filing the accompanying joint letter.  The parties were unable to

7   resolve the dispute and respectfully submit it to the Court.

8

9    Dated: August 6, 2025                    Respectfully submitted,

10                                             SUSMAN GODFREY, LLP

11
                                              By:  _/s/ Elisha Barron_____
12                                                    Elisha Barron

13                                             JOSEPH SAVERI LAW FIRM, LLP

14
                                              By:  _/s/ William W. Castillo Guardado____
15                                                    William W. Castillo Guardado

16                                             CAFFERTY CLOBES MERIWETHER &
17                                                  SPRENGEL, LLP

18                                             By:  _/s/ Mohammed Rathur_____
19                                                    Mohammed Rathur

20                                             *Counsel for Individual and Representative*
21                                             *Plaintiffs and the Proposed Class*

22                                             QUINN EMANUEL URQUHART &
23                                             SULLIVAN, LLP

24                                             By:  _/s/ Sean Pak_____
25                                                    Sean Pak

26                                             *Attorneys for Defendant NVIDIA Corporation*

27

28

August 6, 2025

The Honorable Sallie Kim

      Re: *Nazemian, et al. v. NVIDIA Corp.*, No. 4:24-cv-01454-JST (N.D. Cal.)

Dear Judge Kim,

      Pursuant to Your Honor's Standing Order, the parties submit this letter brief regarding 1) a dispute over the scope of NVIDIA's Large Language Models (LLMs) and datasets subject to discovery; and 2) a related but distinct dispute over Plaintiffs' ESI search terms that concern online dataset repositories. Counsel for the parties met and conferred by video on July 15 and 28, 2025, but are at an impasse.[1]

## Plaintiffs' Position

      ***Scope of the Models.*** Defendant objects on relevance grounds to producing documents that relate to any LLMs other than the four models specifically identified in the Complaint: NeMo Megatron-GPT 1.3B, NeMo Megatron-GPT 5B, NeMo Megatron-GPT 20B, and NeMo Megatron-T5 3B. ECF 1 ¶¶ 21, 22;[2] Ex. A (RFP Nos. 1-4, 8-11). The Complaint, however, refers to infringement by the "NeMo Megatron series of large language models" and alleges that "NVIDIA has continued to make copies of the Infringed Works for training other models." *See* ECF 1, ¶¶ 2, 17, 22, 36. Consistent with those allegations, Plaintiffs seek discovery into NVIDIA LLMs in the "NeMo" or "Megatron" model families ***and*** which were trained on or derived from models trained on certain datasets (or "shadow libraries") known to contain copyrighted works: The Pile, Books3, Bibliotik, Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, Anna's Archive, or any web scrapes including Common Crawl (the "Pirated Datasets").

      Rule 26 relevance "is broadly defined to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 3225904, at *1 (N.D. Cal. June 28, 2024)

---

[1] Discovery and case management deadlines are as follows: (1) Close of Pre-Class Certification Fact Discovery: February 6, 2026; (2) Close of Expert Discovery: June 26, 2026; (3) Summary Judgment Motions: August 21, 2026; (4) Oppositions to Summary Judgment Motions: October 2, 2026; (5) Replies to Summary Judgment Motions: November 6, 2026.

[2] Citations to ECF 1 refer to equivalent paragraphs of the *Nazemian* and *Dubus* Complaints.

(citation omitted). And "[r]elevancy should be construed liberally and with common sense . . . ." *Pivetti v. Mercedes Benz USA LLC*, 2024 WL 943943, at *2 (C.D. Cal. Feb. 6, 2024) (cleaned up). NeMo and Megatron class LLMs trained on Pirated Datasets are clearly relevant to this case.

Plaintiffs' proposal is limited to the narrow and specific line of NVIDIA LLMs that power the NeMo Megatron models identified in the complaint. Plaintiffs seek discovery only on models trained on Pirated Datasets, and so potentially infringed on Plaintiffs and/or potential class members' works. NVIDIA claims that "NeMo" and "Megatron" do not refer to a "model architecture" that would allow identification of the models included in Plaintiffs' proposal, but NVIDIA refuses to identify relevant models itself, leaving Plaintiffs in the dark.[3] The limited information publicly available confirms that Megatron models beyond those named in the Complaint are or may have been trained on Pirated Datasets containing Plaintiffs' works.[4] There are certainly others. Only NVIDIA knows the full scope of NeMo and Megatron LLMs trained on or derived from models trained on Pirated Datasets.

That is why the Complaint names four models in the "the Nemo Megatron series" and alleges additional models were unlawfully trained on copyrighted works. The "scope of permissible discovery is not based solely on whether a transaction is expressly mentioned in the complaint." *Scherer v. FCA US, LLC*, 538 F. Supp. 3d 1002, 1005 (S.D. Cal. 2021) (citations omitted); *see also In re Mosaic LLM Lit.*, No. 24-cv-01451 (N.D. Cal.), ECF No. 123 (allowing discovery into an LLM, not named in the complaint, developed by the same team as the LLM named in the complaint);

---

[3] Contrary to NVIDIA's claim, NVIDIA itself describes multiple models as being based on the "Megatron" "architecture presented in the NVIDIA paper titled 'Megatron-LM: Training Multi-Billion Parameter Language Models Using Model Parallelism'" ("NVIDIA Megatron Paper"); notes that "NeMo Megatron is a new capability in the NeMo framework," and describes "NeMo" and "Megatron" as forming part of a model "framework.". *See* https://catalog.ngc.nvidia.com/orgs/nvidia/teams/nemo/models/qa_squadv1_1_megatron_uncase d; https://catalog.ngc.nvidia.com/orgs/nvidia/teams/nemo/models/megatron_bert_345m_cased; and https://catalog.ngc.nvidia.com/models.

[4] *See, e.g.*: https://developer.nvidia.com/blog/using-deepspeed-and-megatron-to-train-megatron-turing-nlg-530b-the-worlds-largest-and-most-powerful-generative-language-model/ (noting that the Megatron-Turing Natural Language Generation model (MT-NLG) was trained on Books3); Jupinder Parmar, et. al. "Nemotron-4 15B Technical Report," https://arxiv.org/pdf/2402.16819 (describing the Nemotron-4 15B model as developed using the architecture from the NVIDIA Megatron Paper and trained on "books," without elaboration).

*Tremblay v. OpenAI, Inc.,* 2025 WL 84635, at *2 (N.D. Cal. Jan. 13, 2025) (ordering discovery into "GPT-class model in development" not named in the complaint); *Kadrey v. Meta*, 3:23-cv-03417 (N.D. Cal.), ECF No. 279 at 4 (allowing discovery into a "particular version of Llama" not named in the complaint); *see also Capture Eleven, LLC v. Otter Products*, *LLC*, 2021 WL 12298517, at *3–4 (D. Colo. May 11, 2021) (collecting cases allowing discovery into infringement of products not named in complaint).

NVIDIA said it "would not take the position that discovery is limited to the four models in the Complaint." But its counter-proposal is exactly that— to limit discovery to the four models named in the Complaint and treat them as "representative" of an unknown and undisclosed subset of other "public-facing" models trained on Books3. Representative discovery is categorically inappropriate here where the development of each potentially infringing model and the copying, use, and storage of the infringed works may have occurred on different timelines, with different development teams, with different types of infringing models, and giving rise to additional liability under copyright law.[5] NVIDIA should not be allowed to hide plainly relevant discovery about the nature *and scope* of its infringement. That NVIDIA refuses to identify the other models trained on Books3 it contends would be "represented" renders the proposal even less workable.

Defendant incorrectly attempts to blame *Plaintiffs* for not naming the specific models in Plaintiffs' proposal. But, as noted above, NVIDIA is in sole possession of non-public information of which models were trained on pirated datasets. Plaintiffs requested on May 27, 2025 that NVIDIA produce "data cards" or documents sufficient to show the contents of the datasets used to train any LLM on the Pirated Datasets. *See* RFP Nos. 1, 2, 5, 6, and 9. NVIDIA declined. Using information asymmetry to deprive Plaintiffs of discovery is fundamentally unfair and violates Rule 26.

**Search Term 1 (Pirated Datasets Search Term).** NVIDIA also objects on relevance grounds to running Plaintiffs' search terms and producing documents relating to Pirated Datasets other than The Pile or Books3. *See* Ex. A (RFP Nos. 1, 2, 5, 6, and 9); Ex. B (Plaintiffs' Proposed Search Term 1). In response to requests from Plaintiffs, NVIDIA refused to identify any models

---

[5] NVIDIA's reliance on *Am. Geophysical Union v. Texaco Inc.,* 802 F. Supp. 1, 29 (S.D.N.Y. 1992) is misplaced. There, the parties *mutually* agreed to representative discovery.

trained on or derived from models trained on other Pirated Datasets. But documents and communications related to the Pirated Datasets are relevant under Rule 26 and relevant to determining NVIDIA's willfulness under 17 U.S.C. § 504, regardless of whether NVIDIA trained its models on a *specific* Pirated Dataset, or whether the datasets contained Plaintiffs' works.[6]

Plaintiffs proposed a search term for custodial ESI that includes the Pirated Datasets, most of which are mentioned by name in the Complaint. *See* Ex. B; ECF 1, ¶ 27. NVIDIA claims this term is overbroad because the only Pirated Datasets Plaintiffs specifically allege were used in NVIDIA's infringing LLMs are The Pile and Books3.[7] But NVIDIA has refused to identify which Pirated Datasets it used to train its NeMo and Megatron class of LLMs, while rejecting the very search terms that would enable Plaintiffs to do so. This is backwards. Defendant also objects to any such search term unless Plaintiffs can show that the library contained the *named* Plaintiffs' works. Public information identifies named Plaintiffs' Infringed Works in at least LibGen, Anna's Archive, and Z-Library.[8] But that is also not a basis to limit discovery into *other* Pirated Datasets.

**Final Compromise**: Plaintiffs respectfully ask the Court to order Defendants to produce documents responsive to RFP Nos. 1-4 and 8-11 for all NeMo and Megatron-class models trained on or derived from models trained on Pirated Datasets. Plaintiffs also request that, in response to RFP Nos. 1, 2, 5, 6, and 9, the Court order Defendants to produce data cards or documents sufficient to show the contents of datasets used for any NeMo or Megatron model trained on the Pirated Datasets. Plaintiffs further request that the Court order NVIDIA to review and produce relevant documents responsive to Search Term 1 as defined in Exhibit B.

<u>**Defendant's Position**</u>

The Complaint accuses the "NeMo Megatron series of large language models." ECF 1, ¶¶

---

[6] The *Kadrey v.Meta* Order is distinguishable. No. 3:23-cv-03417 (N.D. Cal. Dec. 20, 2024), ECF No. 401 at 2. Plaintiffs there asked Meta to "produce or identify all copies it made of copyrighted works." *Id*. Here, Plaintiffs request that NVIDIA review and produce documents hitting on a clearly relevant search term. *See Kadrey v. Meta Platforms, Inc.,* 2025 WL 1752484, at *7 (N.D. Cal. June 25, 2025) (discussing Meta's use of additional pirated datasets outside Books3); *Bartz v. Anthropic PBC*, 2025 WL 1741691, at *2, *11-14 (N.D. Cal. June 23, 2025) (same).
[7] There is no undue burden associated with this highly relevant search string. Across all custodians it results in 10,214 hits (22,009 with families).
[8] *See, e.g.*, https://annas-archive.org/md5/06b7717eae0a38b185be00667325eeab.

2-4, 17-23, 31, 34-36, 39 (emphasis omitted).  Plaintiffs' latest articulation of their discovery proposal (provided on August 5th) confirms their "proposal is limited to the narrow and specific line of NVIDIA LLMs that power the NeMo Megatron models identified in the complaint."  Apart from the four identified NeMo Megatron models themselves, NVIDIA is not aware of any other models that "power" the identified NeMo Megatron models.  Accordingly, Plaintiffs' own description of its discovery proposal simply points back to the four models identified in the Complaint and should end this dispute over the proper scope of discovery.

Nevertheless, Plaintiffs appear to try to expand the case scope to cover any model derived from tools that include "NeMo" or "Megatron" in their names.  As NVIDIA has told Plaintiffs repeatedly, there are no "NeMo" and "Megatron" "families" or "class[es]" of models.  At NVIDIA, "NeMo" and "Megatron" refer to collections of tools, libraries, software, interfaces, and other features.  Thus, Plaintiffs' proposal seems to capture any model created using that software, sweeping in irrelevant models including third-party models NVIDIA did not train. Plaintiffs also improperly ask to sweep in any models supposedly "derived from" models trained on these datasets.  But the Complaint does not assert any theory accusing a model that was not trained on Books3 but was somehow "derived from" a model trained on it.  *Impinj, Inc. v. NXP USA, Inc.*, 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) ("discovery cannot be used as a fishing expedition for evidence of claims that have not been properly pled") (citation omitted).

Plaintiffs also improperly seek to include datasets beyond those alleged to contain putative class members' works (and to capture any models trained on those datasets, contrary to the Complaint).  The Complaint describes only one dataset as allegedly containing the Plaintiffs' works—Books3.  *Id.* ¶ 29.  The Complaint notes that The Pile contains Books3 and Books3 contains Bibliotik, but does not allege that anything other than Books3 contains Plaintiffs' works.  *Id.* ¶¶ 25-26.  While the Complaint mentions other datasets in passing, it does not tie them to the putative class, Plaintiffs' works, or any alleged infringement by NVIDIA.  *Id.* ¶ 27.  Nor does the Complaint even mention Common Crawl, the final of Plaintiffs' proposed datasets.  Plaintiffs do not dispute any of this and those facts render their proposal disproportionate to the needs of the case.

NVIDIA's proposed scope of discovery is proportional to the allegations in the Complaint,

deeming the four "NeMo Megatron" LLMs accused in the Complaint as representative of any other public-facing NVIDIA LLMs trained on the accused Books3 dataset.[9]  Courts have approved using representative products to streamline copyright actions, and that approach is appropriate here.  *Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 29, n.15 (S.D.N.Y. 1992).  Such stipulations are also common in patent litigation to avoid "unwieldly product identifications" that "bloat" cases.  Advisory Council for the Fed. Cir., *A Model Order Limiting Excess Patent Claims and Prior Art* at 3 (2013), *available at* https://patentlyo.com/media/docs/2013/07/model-order-excess-claims.pdf.

**Scope of Discovery on Models:**    The Complaint accuses four NeMo Megatron LLMs released in September 2022, each alleged to have been trained on Books3.  ECF 1 ¶ 22.  The Complaint defines "NeMo Megatron" as "a series of large language models created by NVIDIA and released in September 2022" and uses the defined term "Nemo Megatron series" to refer to those four LLMs; not something broader as they now claim.  *E.g.*, *id.* ¶¶ 2, 4, 5, 17, 22, 23, 31, 34-36.  Passing references to "shadow libraries" and NVIDIA "training other models," untethered to claims or the putative class, do not justify Plaintiffs' expansive demand.  *Id.* ¶¶ 27, 36.

NVIDIA proposed treating those four LLMs as representative of other public-facing NVIDIA LLMs trained on Books3.  Plaintiffs assert that representative discovery is "categorically inappropriate" because models' development and treatment of training data may differ, without specifics or any identified relevance to copyright claims.  Those minor differences with no identified substantive impact are why representative discovery *is* appropriate.  Indeed, the fair use decisions in other AI copyright class-actions did not differentiate between LLMs and focused on the single model family accused in the complaint, as NVIDIA proposes.  *Bartz v. Anthropic*, 2025 WL 1741691, at *7 (N.D. Cal. June 23, 2025); *Kadrey v. Meta*, 2025 WL 1752484, at *9 (N.D. Cal. June 25, 2025).   Plaintiffs also assert that NVIDIA's other models may "giv[e] rise to additional liability under copyright law," but Plaintiffs have not identified any facts that could support new claims, and Plaintiffs are only entitled to "*an* award" of statutory damages for "all infringements"

---

[9]  Plaintiffs assert several times that NVIDIA has refused to identify the public-facing models trained on Books3 that are covered by NVIDIA's proposal.  Not so.  NVIDIA offered to do so on the parties' meet-and-confer.  Plaintiffs rejected that offer and insisted on bringing the matter before the Court. "Data cards" are prepared by the dataset creator; not NVIDIA and are public.

for "any one work" regardless of the number of models trained on a work.  17 U.S.C. § 504(c).

The court in *Authors Guild v. OpenAI*, another AI copyright class-action, rejected the very argument Plaintiffs make here.  The plaintiffs requested discovery on "every version of every LLM, Generative AI system, AI Model, and API product" and the court limited discovery to only those LLMs underlying the commercial ChatGPT products in the complaint.  No. 1:23-cv-08292-SHS-OTW (S.D.N.Y.), ECF Nos. 270, 281, 293.  Other litigations have also limited discovery to the model family in the complaint.  *Anderson v. Stability AI*, No. 23-00201-WHO (N.D. Cal.) (limited to *Stable Diffusion* family); *Tremblay v. OpenAI*, No. 23-3223 (N.D. Cal.) (*ChatGPT* family); *Kadrey,*, No. 23-3417 (N.D. Cal.) (*Llama* family); *Bartz*, No. 24-5417-WHA (*Claude* family).[10]  No case—including Plaintiffs'—allowed the expansive discovery sought here.  Instead, discovery was granted for specific model families or the defendant was ordered to do what it agreed to do.  *Tremblay,* 2025 WL 84635, at *2 ("OpenAI has agreed and will be ORDERED as follows").[11]

The only apparent commonality across Plaintiffs' example models is the word "NeMo" or "Megatron"—which is not a basis to expand discovery.  *Lin v. Solta Med., Inc*., 2023 WL 8374740, at *2 (N.D. Cal. Dec. 4, 2023) (limiting discovery to "the model or generation of device at issue in the complaint—not any device with the [accused product's] name on it").  "NeMo" and "Megatron" are used in different ways at NVIDIA and do not identify families, classes, or architectures.[12]

---

[10]  Plaintiffs' only cited case that did not limit discovery to the models named in the complaint is *In re Mosaic LLM Litigation*.  There, the plaintiffs sought discovery on **one** other LLM in the same family released under a different name.  Plaintiffs' request here is not so limited.

[11]  *Capture Eleven* is inapposite, as it considered allowing discovery into photographs, not LLMs.

[12]  NVIDIA NeMo is a trademarked brand used by NVIDIA for different types of software offerings.  The NeMo and Megatron "frameworks" refer to software tools used for developing models—not architectures.  *E.g.*, https://docs.nvidia.com/nemo-framework/index.html ("NeMo™ Framework is a development platform for building custom generative AI models."); https://github.com/NVIDIA/Megatron-LM (Megatron-LM is a "framework" for LLM training, and Megatron-Core is "a library of . . . training techniques" usable "alongside Megatron-LM or Nvidia NeMo Framework").  The "NVIDIA Megatron Paper" used "GPT-2" and "BERT" architectures described in "prior work" by Google and OpenAI.  The Nemotron-4 report states the LLM uses "a standard decoder-only Transformer architecture" invented by Google in 2017.  The Megatron-Turing NLG paper (which predates the accused models) cites to an OpenAI paper to describe its "transformer decoder" architecture.  None of these, including Megatron-BERT and QA squadv1.1 Megatron, describes "NeMo" or "Megatron" architectures.  To the extent any of these models were public and trained on Books3, they would be represented by NVIDIA's discovery proposal.

Plaintiffs provide no way to determine what falls within their proposal, rendering it unworkable.

**Scope of Discovery on Datasets:**  In the Complaint, Plaintiffs' allegations are based on only Books3 and for the training of the Nemo Megatron LLMs.  ECF 1 ¶¶ 29, 39.  Despite Plaintiffs' attempt to treat all of the so-called "Pirated Datasets" as a monolith, none of the other datasets appears in the Complaint besides a cursory statement that they exist and are "shadow libraries."  *Id.* ¶ 27.  The Complaint does not allege that any dataset besides Books3 includes the copyrighted works of any class member.[13]  *Anderson*, 23-cv-00201-WHO, ECF No. 307 at 3-5 (denying discovery into datasets not in the complaint as a "fishing expedition" and finding that the plaintiffs' "expansive view of their case [wa]s at odds with the scope of the operative complaint").

Plaintiffs contend that NVIDIA's mere awareness of these datasets is somehow relevant to willfulness.  But the only relevant intent is NVIDIA's state of mind as to  Plaintiffs' asserted works—works in the Books3 dataset.  The *Kadrey* court declined to compel Meta to "produce or identify all copies it made of copyrighted works," not limited to Plaintiffs' works, because the case "is about the use of copyrighted materials to train the Llama models, not all copyright infringement committed by Meta" and "datasets not used to train the Llama models are not relevant or proportional to the case."  No. 3:23-cv-03417 (N.D. Cal. Dec. 20, 2024), ECF No. 401 at 2.  For the same reasons, Plaintiffs should not be permitted to demand discovery on myriad datasets not at issue via search terms.  NVIDIA has already agreed to run Plaintiffs' other terms related to pirated material, so Plaintiffs have proportional discovery on their willfulness theory.  *E.g.*, Ex. B at 6-11 (Term 3a: guilt, steal, concern; Term 3b: violat*, fair use; Term 8: "pirat* OR pirac*").

**NVIDIA's final proposed compromise:**  NVIDIA respectfully requests the Court adopt its representativeness proposal: that discovery is limited to the four models identified in the Complaint, and those models are representative of NVIDIA's public-facing LLMs trained on Books3.

---

[13]  NVIDIA has asked Plaintiffs for months to provide evidence that their works are in datasets beyond Books3.  Last night, Plaintiffs purportedly provided such evidence in footnote 17 for the first time.  But Plaintiffs do not dispute that they have not pled any allegations related to these other datasets or models trained on them, and have provided no discovery in support.

DATED:  August 6, 2025

By:        /s/ Joseph R. Saveri
           Joseph R. Saveri

Joseph R. Saveri (CSB No. 130064)
Christopher K.L. Young (CSB No. 318371)
Evan Creutz (CSB No. 349728)
Elissa A. Buchanan (CSB No. 249996)
William Waldir Castillo Guardado (CSB No. 294159)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:      (415) 500-6800
Facsimile:      (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com

Bryan L. Clobes (admitted *pro hac vice*)
Alexander J. Sweatman (admitted *pro hac vice*)
Mohammed Rathur (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312-782-4880
bclobes@caffertyclobes.com
asweatman@caffertyclobes.com
mrathur@caffertyclobes.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906

By: /s/ Sean Pak
          Sean Pak

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Alex Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Rachael L. McCracken (SBN 252660)
rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant NVIDIA Corporation*

Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**

485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:      (323) 968-2632
Facsimile:      (415) 395-9940
mb@butericklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

## ATTESTATION OF CONCURRENCE IN FILING PURSUANT TO CIVIL L.R. 5-1(i)(3)

This document is being filed through the Electronic Case Filing (ECF) system by attorney Joseph R. Saveri.  By their signature, Joseph R. Saveri attests that he has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: August 6, 2025

By: */s/ Joseph R. Saveri*
Joseph R. Saveri