# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| Abdi Nazemian, et al.,<br><br>        Plaintiffs,<br><br>   vs.<br><br>NVIDIA Corporation,<br><br>        Defendant. | Master File Case No. 4:24-cv-01454-JST (SK)<br>Consolidated with Case No. 4:24-cv-02655-JST (SK)<br><br>**ATTESTATION IN SUPPORT OF JOINT LETTER BRIEF** |

|   |   |
|---|---|
| 1 | **ATTESTATION IN SUPPORT OF JOINT LETTER BRIEF** |

## ATTESTATION IN SUPPORT OF JOINT LETTER BRIEF

Pursuant to the Standing Order for Magistrate Judge Sallie Kim, undersigned counsel hereby attest that NVIDIA's co-lead counsel Andrew Schapiro, and Anne Shaver for Plaintiffs met and conferred by videoconference in a good faith attempt to resolve their disputes and complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding Discovery prior to filing the accompanying joint letter. The parties were unable to resolve the dispute and respectfully submit it to the Court.

Dated: October 16, 2025

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Andrew H. Schapiro*
Andrew H. Schapiro

*Attorneys for Defendant NVIDIA Corporation*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Anne B Shaver*
Anne B Shaver

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

October 16, 2025

The Honorable Sallie Kim

Re: *Nazemian, et al. v. NVIDIA Corp.*, No. 4:24-cv-01454-JST (N.D. Cal.)

Dear Judge Kim,

Pursuant to Your Honor's Standing Order, the parties submit this letter brief regarding a dispute over NVIDIA's proposed search terms to Plaintiffs.[1] Counsel for the parties met and conferred by video on October 9, 2025, but are at an impasse.[2] NVIDIA's proposed search terms are attached as Exhibit A, and Plaintiffs' proposed edits are attached as Exhibit B.

## Defendant's Position

Three disputes underlie Plaintiffs' refusal to run NVIDIA's proposed search terms, which seek core documents. *First*, Plaintiffs object on relevance grounds to producing documents about their publisher and agent relationships and commercial exploitation of their Asserted Works (Terms 3 and 9). The Complaint, however, alleges that NVIDIA harmed the market for their works and deprived them of licensing revenues by allegedly including Plaintiffs' works in a training dataset. *See, e.g.*, ECF 1 at ¶¶ 4–5; ECF 62 at 1. Consistent with those allegations, NVIDIA seeks discovery into records of ownership and rights in the Asserted Works, licensing arrangements, and financial documents—all of which are central to Plaintiffs' damages claims and NVIDIA's fair use defense. These terms are necessary to capture all relevant communications without the further artificial narrowing proposed by Plaintiffs, especially where Plaintiffs concede no burden exists. NVIDIA requests that the Court compel all Plaintiffs to run Terms 3 and 9 and produce responsive documents.

*Second*, Plaintiff Keene ("Keene") objects on relevance grounds to the term "Ghost" as a limiting term in Terms 1, 2, 3, 8, and 9,[3] even though the title of his Asserted Work is "Ghost Walk." A party objecting on relevance must "carry a heavy burden of showing why discovery should be denied." *Ronduen v. GEO Grp. Inc.*, 2025 WL 1112657, at *8 (C.D. Cal. Feb. 20, 2025); *In re Cathode Ray Tube Antitrust Litig.*, 2023 WL 5667880, at *2 n.9 (N.D. Cal. July 6, 2023). This is

---

[1] NVIDIA's proposed terms are consistent across Plaintiffs, though vary by relevant titles, publishers, and agents.
[2] Discovery and case management deadlines are as follows: (1) Close of Pre-Class Certification Fact Discovery: Mar. 6, 2026; (2) Close of Expert Discovery: July 24, 2026; (3) Summary Judgment Motions Due: Sept. 18, 2026.  ECF No. 188.
[3] The other Plaintiffs concede that these terms are relevant, narrowly tailored, and not burdensome.

Master File Case No. 4:24-cv-01454-JST        1

especially true where the objecting party does not claim burden. *Cf. Ronduen*, 2025 WL 1112657, at *10 ("801 unique hits" is "not [] unduly burdensome . . . when weighed against the relevance of the requested information, and the sufficiently tailored search terms"). Here, Keene failed to meet this heavy burden because he has not certified that the Asserted Work was referred to only by its full title and conceded there is no burden associated with running these five terms, which collectively result in 1,694 unique hits (of just 2,303 hits across *all* search terms for Keene). NVIDIA therefore requests that the Court compel Keene to run Terms 1-3, and 8-9 and produce all responsive documents.

*Third,* Plaintiffs Dubus and Orlean ("Dubus" and "Orlean") object to Terms 5 and 7 as unduly burdensome, despite those terms yielding only 956 and 1,541 unique hits respectively. Hit counts magnitudes larger "are not overly burdensome." *Cook v. Meta Platforms, Inc.*, 2025 WL 251942, at *4 (N.D. Cal. Jan. 21, 2025) (hit counts exceeding 17,000). Those terms seek (as NVIDIA has maintained in all discussions of the term, both pre- and post-narrowing) Plaintiffs' discussions of whether any market for licensing their works to AI companies existed or was likely to develop, and any efforts by Plaintiffs to license works to AI companies. NVIDIA therefore requests that the Court compel Dubus and Orlean to run Terms 5 and 7 and produce all responsive documents.

***Terms 3 and 9 – Relevance:*** Plaintiffs object to Terms 3 and 9 on relevance grounds, arguing NVIDIA should include a limiting term related to the Asserted Works, but concede there is <u>no burden</u> to NVIDIA's proposals. Plaintiffs' damages theories and the fourth fair use factor necessarily depend on understanding the licensing market, communications about licensing the Asserted Works, and Plaintiffs' revenue expectations. The relationship between Plaintiffs, their works, and their publishers/agents is likewise fundamental to establish ownership, licensing rights, and commercial exploitation of the works, and all relevant documents will not necessarily include the full titles.

Plaintiffs' argument that these terms "hit on communications that have nothing to do with the asserted works," including documents that "*only* hit on the publisher" is false. Term 3 already includes an AND limiter that requires the publisher or agent name along with "copyright OR royalt* OR contract* OR novel* OR publish* OR rights OR "right to" OR adapt* OR derivative OR license* OR grant* or income*". Term 9 requires communications to hit on "Licens*" AND the Asserted Works, publishers, agents, literary terms, or Books3 and The Pile. Plaintiffs' proposed edits

artificially narrow these searches by requiring the work title (or its abbreviation) for all hits, excluding highly relevant Plaintiff communications with their publishers and agents. Not all documents would necessarily contain the Asserted Work's title, such as discussions about royalty rights applying to all works by a Plaintiff or about licensing genres that include the Asserted Work. Such communications may pre-date an Asserted Work (or its final title) or have been entered into globally for all works, or otherwise not identify each work by title, and would be excluded even though the communications related to the Asserted Work. Dubus, for example, entered into agreements that do not specify the titles of his work. Discussions of copyrights, royalties, or other pertinent provisions could identify only the agreement and not the works by title. *See also* NAZEMIAN-NVIDIA-0010760 (Nazemian Agreement described as "a blanket agreement covering all of your projects"). Plaintiffs' argument that the terms are irrelevant because they have "substantially completed" production of agreements is also incorrect—that is not the relevance standard under Rule 26(b)(1) and, regardless, Plaintiffs have not produced *communications* concerning the agreements and their operation (the terms' target). The terms as written appropriately capture communications where Plaintiffs discuss both their works and their publishers/agents in relation to licensing, copyright, or commercial exploitation. Thus, it cannot be said that they have "no conceivable bearing on the case." *Lau*, 2024 WL 5700970, at *1. Given the low hit count for these terms (Orlean has the highest unique hits, at 11,636), there is no reason to artificially restrict the scope of responsive communications. Plaintiffs' proposed edits also render Term 3 entirely duplicative of Term 2. Both terms search for the Asserted Work AND the publisher/agent, but proposed Term 3 adds a third "AND" clause. This clause narrows Term 3's results, ensuring it will not capture any documents not already captured by Term 2.

*Keene – Relevance:* Keene objects on relevance grounds to the use of the term "Ghost" in Terms 1, 2, 3, 8, and 9, despite having conceded any burden objection. This objection is without merit. *Ghost Walk* is the title of Keene's Asserted Work. These search terms seek central discovery case about *Ghost Walk*, including documents concerning ownership and licensing (Terms 1–3, 9) and financial information relevant to fair use factor four and damages (Term 8). Plaintiffs' proposed edits render these terms nearly useless, reducing the unique hits from all five terms combined to fewer than 100 documents. Plaintiffs have not provided a declaration attesting that Keene's Work was never

referred to, marketed, distributed, or catalogued using the shortened title "Ghost" nor have they attested that the books with "ghost" in the title were not addressed collectively as the "ghost novels" or another term covering multiple works. (The titles of two of the three would not hit on NVIDIA's proposed term because they reference Ghosts, which would not be captured by "Ghost.") Plaintiffs only speculate that there could be irrelevant materials captured. But if a communication discusses some other "ghost" unrelated to Keene's work, and is otherwise non-responsive, Plaintiffs can simply withhold it, which Keene does not contend is burdensome. Narrowing the term itself risks excluding highly relevant documents when there is no burden. The total unique hits across Terms 1, 2, 3, 8, and 9 using "Ghost" is only 1,694—hardly a burden that would justify excluding the shortened title.

*Terms 5 and 7 – Burden as to Dubus and Orlean:* All Plaintiffs initially objected to Terms 5 and 7—which seek Plaintiffs' communications about the market for licensing data for training LLMs—as irrelevant. Throughout this briefing process, NVIDIA proposed further edits to address Plaintiffs' objections. All Plaintiffs now concede relevance and only Dubus and Orlean belatedly assert a burden objection and propose replacing the AND connector with a "w/50" numerical limiter. All Plaintiffs explicitly confirmed they were not asserting a burden objection on the parties' meet and confer. Plaintiffs' proposed limiter results in *zero unique hits* (meaning the term does not capture any documents not captured by other terms), vitiating the terms entirely. Plaintiffs' proposal must be rejected because they "have not offered any evidence, as opposed to argument, regarding the asserted burden." *Walker v. Life Ins. Co. of the SW*, 2018 WL 5905121, at *2 (C.D. Cal. Oct. 23, 2018). Nor do Plaintiffs' hit counts support any legitimate claim of burden. Plaintiffs instead point to misleading, inflated total hits. The data shows many overlapping hits across all search terms for both Dubus and Orlean. Plaintiffs did not provide a de-duplicated total hits + family metric, and cannot now claim the focus should be on a metric they did not provide. When a document hits on multiple search terms, it needs to be reviewed only once—not separately for each term. Counting the same document multiple times artificially inflates the numbers and misrepresents the actual volume of review. Moreover, "unique hits" is a defined term that the parties have used throughout this process. Plaintiffs now misstate what it means (suggesting, without support, it compares only the prior version of the term to the new version) to serve their. The unique hits for these terms are approximately 1,500 for Orlean

and 956 for Dubus. NVIDIA agreed has reviewed 140,000+ documents for Plaintiffs' significantly broader terms. Given the modest volumes and multiple reviewing firms, there is no legitimate burden. **NVIDIA's Final Proposed compromise:** NVIDIA requests the Court compel Plaintiffs to review documents hitting Search Terms 1-3, 5, and 7-9 in Exhibit A and produce all responsive documents.

### Plaintiffs' Position

After failing to propose any search terms for Plaintiffs' ESI communications until September 5, 2025 (Plaintiffs first requested them in May), Nvidia moves to compel Plaintiffs to (1) produce irrelevant communications and (2) run search terms proposed for the first time *during the JLB briefing process* without regard to burden or proportionality. Nvidia's motion is misleading and meritless, particularly in light of the fact that Plaintiffs have substantially completed production of the publication agreements, royalty statements, and copyrights that Nvidia claims to be seeking.

Plaintiffs object to three groups of terms. The first (Terms 3 & 9) purports to seek information about Plaintiffs' asserted works, but will hit on irrelevant communications that only mention the name of those works' publishers, rather than the publisher *and* the asserted work. The second (originally Terms 5, 6 & 7) sought irrelevant discovery into Plaintiffs' use of generative AI. Two days ago, after the parties declared impasse, Nvidia pivoted, dropped Term 6, and revised Terms 5 & 7 to focus on the market for licensing LLM training data. Contrary to Nvidia's assertions, Plaintiffs agree that information is relevant (and never said otherwise). Plaintiffs promptly ran a hit report and proposed a numerical limiter for just two of the Plaintiffs for whom the revised terms hit on a burdensome number of documents. After moving the goal posts, Nvidia refused to consider any modification, claiming Plaintiffs had untimely asserted burden in response to these newly revised terms. The third group (Terms 1, 2, 3, 8, and 9) for Plaintiff Keene refers to "Ghost" rather than to the title of Plaintiff Keene's asserted work, "Ghost Walk," which is problematic because Plaintiff Keene has three other books with "Ghost" in their titles.

Courts are clear that "[w]hile the scope of relevance is broad, discovery is not unlimited." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2025 WL 2405489, at *2 (N.D. Cal. Aug. 19, 2025). "[T]he Court may limit the scope of any

discovery method if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Id.* at *1 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

The hit counts that Nvidia reports above are misleading because they are merely the "unique hits." Unique hits is not the same thing as unique documents. The proper metric for assessing burden is the number of documents that hit on the relevant term with families, because that is the universe that will have to be reviewed. By contrast, unique hits only count documents that hit only on one term and exclude documents that hit on multiple terms. Plaintiffs report the actual numbers of documents that would need to be reviewed below.

**Terms 3 & 9.** These terms purport to seek information about Plaintiffs' asserted works, but they hit on all communications with Plaintiffs' publishers. Plaintiffs proposed modest, commonsense modifications to hit on relevant communications about Plaintiffs' asserted works. Take Term 3 for Plaintiff Orlean as an example: Plaintiffs proposed using "AND" instead of "OR" and adding parentheses to ensure the terms hit on communications about the asserted work, rather than documents that *only* hit on the publisher:

> ("Orchid Thief" OR "Library Book") AND ~~OR~~ (Random OR randomhouse OR "Random House" OR (Simon W/3 Schuster) OR Creative Artists Agency OR caa OR InkWell) AND (copyright OR royalt* OR contract* OR novel* OR publish* OR rights OR "right to" OR adapt* OR derivative OR license* OR grant* or income*)

Plaintiffs' modifications change the hit count for Plaintiff Orlean from 18,279 to 2,154. There is no basis to suggest relevant documents will be omitted from what remains a robust set of documents. Plaintiffs proposed the same edits to Term 9 to ensure that it returned communications about the asserted works and not merely publishers. *See* Ex. B.

Nvidia's arguments undercut its position. According to Nvidia, the terms would capture communications about agreements that are relevant to but do not include the title of a plaintiff's asserted work. But Plaintiffs have already produced those documents to Nvidia, as the examples it cites above regarding Dubus's and Nazemian's contracts demonstrate. Nvidia does not identify anything new these search terms could reveal. *See* Fed. R. Civ. P. 26(b)(2) ("the court must limit" "unreasonably cumulative or duplicative" discovery). Nor do Plaintiffs' edits render Term 3 "entirely

duplicative" of Term 2, since some communications hit on by Term 2 would not be hit on by the narrower Term 3.

Plaintiffs' proposed modifications ensure that Nvidia's search terms hit on the communications Nvidia seeks about the licensing of Plaintiffs' asserted works, instead of returning substantially all communications between the author and publisher, who regularly communicate with each other about a host of issues irrelevant to the asserted works or this case. Courts routinely approve edits to search terms to address relevance concerns. *See, e.g.*, *Rusoff v. Happy Grp., Inc.*, No. 21-CV-08084-YGR (LJC), 2023 WL 114224, at *5–7 (N.D. Cal. Jan. 5, 2023) (editing search strings where they would otherwise return documents "entirely unrelated to [p]laintiffs' claims"). <u>Plaintiffs' final proposed compromise</u>: Plaintiffs run Terms 3 & 9 with the conjunctive revisions suggested above.

**Terms 5 & 7.** Terms 5, 6, and 7 originally sought information about Plaintiffs' use of nonparty generative AI generally, not the market for licensing data to train LLMs. Plaintiffs objected on the basis of relevance. *See In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 1652110 at *3–5 (May 30, 2025, S.D.N.Y.) (affirming denial of discovery into plaintiffs' use of generative AI). On the day Nvidia shared its portion of this motion, Nvidia apparently decided Plaintiffs were correct. It withdrew Term 6 and altered the focus of Terms 5 and 7 by adding terms about licensing, marketing, and sale. *See* Ex. A. Plaintiffs dropped their relevance objection, and sought to put the dispute to bed by running a hit report that same day for the revised Terms 5 & 7, and suggesting a slight modification just as to Plaintiffs Dubus and Orlean to address burden. (The other Plaintiffs agree to run Nvidia's proposed Terms 5 & 7 as is.) For Plaintiffs Dubus and Orlean, Plaintiffs proposed replacing the AND connector with a "w/50" numerical limiter, which brings the hits for Plaintiff Dubus down from 6,663 to 3,084 and for Plaintiff Orlean down from 8,142 to 4,666. Nvidia is incorrect that the "w/50" results in zero unique hits—a hit report for Nvidia's revised Terms 5 & 7 and for Plaintiffs' proposed edits shows that there are no unique hits for Plaintiffs' edits *that are not also included* in Nvidia's broader revised Terms 5 & 7. Plaintiffs' proposed modification is reasonable to limit the burden and help ensure the Terms actually tie licensing, marketing, and sales to the generative AI terms.

Nvidia's other arguments are unpersuasive. Plaintiffs timely objected to burden as soon as Nvidia proposed revised Terms 5 & 7. Plaintiffs had previously objected to Terms 5 and 7 in their

entirety on the basis of relevance. There is no basis to preclude Plaintiffs from proposing a slight amendment to try to reach agreement after Nvidia moved the goalposts. Moreover, Nvidia draws a false equivalency between the number of documents it is reviewing in the litigation and the number of documents that it demands Plaintiffs review. It is common that "[o]ne party — often an individual plaintiff — may have very little discoverable information" whereas the "other party may have vast amounts of information" such that "the burden of responding to discovery lies heavier on the party who has more information, and properly so." Commentary to 2014 amendment to Fed. R. Civ. P. 26(b). <u>Plaintiff's final proposed compromise:</u> Plaintiffs Dubus and Orlean run Terms 5 & 7 but replace the AND connector with a "w/50" numerical limiter. *See* Ex. B.

**Terms 1, 2, 3, 8, and 9 as to Plaintiff Keene.** Nvidia's proposed terms for Plaintiff Keene refer to "Ghost," instead of to "Ghost Walk,"—the title of his asserted work. Plaintiffs proposed editing those terms to refer to "Ghost Walk," because Plaintiff Keene is a horror, crime, and fantasy writer for whom ghost is a common word, and with three other books besides "Ghost Walk" that contain the word "ghost" in the title: The Last Ghost of Mary, The Ghosts of Monsters, and Ghosts Giant 1. Running Nvidia's proposed terms would return communications irrelevant to Ghost Walk. Plaintiffs' proposed edits to Terms 1, 2, 3, 8, and 9 (which include the modifications described above for Terms 3 & 9) brought the total hits with families for these terms down from 10,150 to 1,897.

Nvidia argues that "narrowing" the terms "risks excluding highly relevant documents" but fails to identify what those documents or communications might be. Nor does Nvidia identify any legal authority requiring Plaintiff Keene to certify that his asserted work was never referred to as "Ghost." It could have served an Interrogatory or Request for Admission on Plaintiff Keene to ascertain this information, but it has not. <u>Plaintiffs' final proposed compromise</u> as to Terms 1, 2, 3, 8, and 9 for Plaintiff Keene is to edit those terms to refer to "Ghost Walk" instead of "Ghost."

**Timing**. Nvidia's demand that Plaintiffs begin making rolling productions three days after the Court's order is unwarranted because Plaintiffs have already committed to beginning rolling productions this week. Plaintiffs will continue to do so to meet the November 24, 2025 substantial completion deadline. Dkt. 188.


DATED: October 16, 2025

| | |
|---|---|
| By: /s/ Anne B. Shaver<br>Anne B. Shaver<br>Joseph R. Saveri (CSB No. 130064)<br>Christopher K.L. Young (CSB No. 318371)<br>Evan Creutz (CSB No. 349728)<br>Elissa A. Buchanan (CSB No. 249996)<br>William Waldir Castillo Guardado (CSB No. 294159)<br>**JOSEPH SAVERI LAW FIRM, LLP**<br>601 California Street, Suite 1505<br>San Francisco, CA 94108<br>Telephone:   (415) 500-6800<br>Facsimile:    (415) 395-9940<br>jsaveri@saverilawfirm.com<br>cyoung@saverilawfirm.com<br>ecreutz@saverilawfirm.com<br>eabuchanan@saverilawfirm.com<br>wcastillo@saverilawfirm.com<br><br>Bryan L. Clobes (admitted *pro hac vice*)<br>Alexander J. Sweatman (admitted *pro hac vice*)<br>Mohammed Rathur (admitted *pro hac vice*)<br>**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**<br>135 South LaSalle Street, Suite 3210<br>Chicago, IL 60603<br>Tel: 312-782-4880<br>bclobes@caffertyclobes.com<br>asweatman@caffertyclobes.com<br>mrathur@caffertyclobes.com<br><br>Justin A. Nelson (admitted *pro hac vice*)<br>Alejandra C. Salinas (admitted *pro hac vice*)<br>**SUSMAN GODFREY L.L.P.**<br>1000 Louisiana Street, Suite 5100<br>Houston, TX 77002-5096<br>Telephone: (713) 651-9366<br>jnelson@susmangodfrey.com<br>asalinas@susmangodfrey.com<br><br>Rohit D. Nath (SBN 316062)<br>**SUSMAN GODFREY L.L.P**<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-2906<br>Telephone: (310) 789-3100 | By: /s/ Andrew H. Schapiro<br>Andrew H. Schapiro<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br>Sean S. Pak (SBN 219032)<br>seanpak@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br><br>Andrew H. Schapiro (admitted *pro hac vice*)<br>andrewschapiro@quinnemanuel.com<br>191 N. Wacker Drive, Suite 2700<br>Chicago, Illinois 60606<br>Telephone: (312) 705-7400<br>Facsimile: (312) 705-4001<br><br>Alex Spiro (admitted *pro hac vice*)<br>alexspiro@quinnemanuel.com<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br><br>Rachael L. McCracken (SBN 252660)<br>rachaelmccracken@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>Margaret H. Shyr (SBN 300253)<br>margaretshyr@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>Telephone: (650) 801-5000<br>Facsimile: (650) 801-5100<br><br>*Attorneys for Defendant NVIDIA Corporation* |

1  RNath@susmangodfrey.com

2  Elisha Barron (admitted *pro hac vice*)
3  Craig Smyser (admitted *pro hac vice*)
   **SUSMAN GODFREY L.L.P.**
4  One Manhattan West, 51st Floor
   New York, NY 10019
5  Telephone: (212) 336-8330
   ebarron@susmangodfrey.com
6  csmyser@susmangodfrey.com

7
   Jordan W. Connors (admitted *pro hac vice*)
8  Trevor D. Nystrom (admitted *pro hac vice*)
   **SUSMAN GODFREY L.L.P**
9  401 Union Street, Suite 3000
   Seattle, WA 98101
10 Telephone: (206) 516-3880
   jconnors@susmangodfrey.com
11 tnystrom@susmangodfrey.com

12
   Rachel J. Geman (*pro hac vice*)
13 Danna Z. Elmasry (*pro hac vice*)
   **LIEFF CABRASER HEIMANN &**
14 **BERNSTEIN, LLP**
   250 Hudson Street, 8th Floor
15 New York, NY 10013
   Tel.: 212.355.9500
16 rgeman@lchb.com
   delmasry@lchb.com
17

18 Anne B. Shaver
   **LIEFF CABRASER HEIMANN &**
19 **BERNSTEIN, LLP**
20 275 Battery Street, 29th Floor
   San Francisco, CA 94111
21 Tel.: 415.956.1000
   ashaver@lchb.com
22

23 Betsy A. Sugar (*pro hac vice*)
   **LIEFF CABRASER HEIMANN &**
24 **BERNSTEIN, LLP**
   222 2nd Avenue S. Suite 1640
25 Nashville, TN 37201
   Tel.: 615.313.9000
26 bsugar@lchb.com

27
   David A. Straite (admitted *pro hac vice*)
28 **DiCELLO LEVITT LLP**

Master File Case No. 4:24-cv-01454-JST            10

485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION OF CONCURRENCE IN FILING PURSUANT TO CIVIL L.R. 5-1(i)(3)**

  This document is being filed through the Electronic Case Filing (ECF) system by attorney Andrew H. Schapiro. By their signature, Andrew H. Schapiro attests that he has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: October 16, 2025

                By: */s/ Andrew H. Schapiro*
                   Andrew H. Schapiro