[Counsel on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| Abdi Nazemian, et al.,<br><br>     Plaintiffs,<br><br>     vs.<br><br>NVIDIA Corporation,<br><br>     Defendant. | Master File Case No. 4:24-cv-01454-JST (SK)<br>Consolidated with Case No. 4:24-cv-02655-JST (SK)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>CMC Date:   December 5, 2025<br>Time:           1:30 p.m.<br>Location:     via Zoom<br>Judge:         Hon. Jon S. Tigar |

Pursuant to Civil Local Rule 16-9(d), the Standing Order for All Judges of the Northern District Of California (updated Nov. 30, 2023), and the Court's Minute Order, Dkt. 169, counsel for Plaintiffs Abdi Nazemian, Brian Keene, Stewart O'Nan, Andre Dubus III, Susan Orlean, and the proposed Class (together "Plaintiffs") and Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") (collectively the "Parties"), have met and conferred and respectfully submit this Joint Case Management Statement in advance of the Case Management Conference on December 5, 2025. The parties are prepared to appear remotely before the Court on December 5, 2025, but agree that this case is proceeding apace and that a Case Management Conference is not necessary at this time. This Joint Case Management Statement reports the progress or changes since the parties' Joint Case Management Statement on August 15, 2025. The parties provide updates for the Court at Sections 2, 3, 4, 5, 8, 9, 11, 12, 15, 16, and 17.

**2. Facts**

    a. **Plaintiffs' Statement**

In early 2024, NVIDIA publicly stated that it used a dataset containing pirated books to train Large Language Models ("LLMs"). NVIDIA copied those pirated books for free, without even paying the customary purchase price, and commercially exploited them including to train large language models. This is far afield from any fair use: LLMs are capable of generating an infinite volume of outputs that flood the market for books, and NVIDIA has negatively impacted the rapidly developing market for licensing training data by obtaining books without compensating copyright holders. It has done all of this while using the pirated books for its own commercial purposes, both by training LLMs and by providing tools to customers that enable use of the pirated works, encouraging further infringement. Plaintiffs, writers who own copyrights in books that Defendants illegally downloaded and used, filed two separate actions—the *Nazemian* Action and the *Dubus* Action—each alleging one count of copyright infringement against NVIDIA under the Copyright Act, 17 U.S.C. § 501.

On September 26, 2025, NVIDIA produced documents indicating the use of datasets from online criminal enterprises. Plaintiffs informed NVIDIA of their intention to seek leave to amend shortly after NVIDIA produced these documents—and filed their motion just hours after NVIDIA

1  informed Plaintiffs it would oppose leave to amend. *See* Dkt. 193 at 2. This easily satisfies the good
2  cause standard under Rule 16. *See* Dkt. 193; 211.

### b. Defendant's Statement

Plaintiffs' lawsuits seek to create a nonexistent right to control the use of uncopyrightable facts, language patterns, and grammatical usage in the public domain. Because they cannot allege that the outputs of NVIDIA's LLMs infringe their copyright, Plaintiffs can only raise a single direct copyright infringement claim based *only* on allegations that the training process for NVIDIA's Nemo Megatron LLMs, a single model family that was never commercialized, somehow infringes their copyright. But LLM training is a protected fair use because, among other things, it measures statistical correlations in the aggregate, across a vast body of data, and encodes them into the parameters of a model. Plaintiffs do not and cannot contend that they have a copyright over those statistical correlations. Plaintiffs attempt to divorce the data from the training process, but the data referenced was used for training and their allegations are limited to the training process. Accepting Plaintiffs' theory would therefore require extending copyright law far beyond its intended protection of specific expressions to cover facts, grammar rules, language patterns, and other statistical correlations that exist in the public domain. That has never been the law, and for good reason.

Finally, Plaintiffs failed to show the requisite good cause to amend their complaint because their amendment is based on information available to them well before their proposed amendment and their original filing, and fails to state viable claims. *See* ECF 206 at 4-10.

### 3. Legal Issues

### a. Plaintiffs' Statement

There is no question that NVIDIA downloaded Plaintiffs' books from pirated sources for commercial gain without authorization or compensation. That, alone, is copyright infringement and a manifestly unfair use. *See, e.g.*, *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (affirming no fair use for downloading works); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1026 (N.D. Cal. 2025) ("Pirating copies to build a research library without paying for it, and

to retain copies should they prove useful for one thing or another, was its own use—and not a transformative one.").

Defendant's principal argument is that it is fair use to reproduce Plaintiffs' books to *train LLMs*. Not so. For starters, NVIDIA's use is non-transformative because it exploits precisely what the Copyright Act protects: NVIDIA mines the protected expression in these books to calibrate its LLMs to mimic their expression. *See, e.g., Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 398–400 (D. Del. 2025) (not fair use to copy text when AI company meant to generate "market substitute"); *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 525, 528 (2023) (question of "transformativeness" under first fair use factor is whether challenged use serves purpose similar to that of the original work, regardless of whether secondary work adds new expression or meaning). It is telling that *both* of the cases on which NVIDIA principally relies—*Bartz* and *Kadrey*—would spell doom for its fair use defense. In *Bartz*, Judge Alsup concluded that downloading works from pirated sites was "inherently, irredeemably infringing even if the pirated copies are immediately used for the transformative use and immediately discarded." 787 F. Supp. 3d 1007, 1025 (N.D. Cal. 2025). And in *Kadrey*, Judge Chhabria held that in "most cases" the use of copyrighted materials to train large language models will not be fair use because "[g]enerative AI has the potential to flood the market with endless amounts of images, songs, articles, books, and more," and therefore poses the risk of "undermin[ing] the market for those works." 788 F. Supp. 3d 1026, 1034 (N.D. Cal. 2025). Under whatever test NVIDIA seeks to advance here, it is liable for copyright infringement.

There are numerous other questions of law or fact common to the class, and those issues predominate over any question affecting individual class members. *See* Section 9, *infra*.

b. **Defendant's Statement**

Among other issues, including whether this case can properly be certified as a class action, this case presents two interrelated questions: *First*, whether Plaintiffs' claims represent an impermissible attempt to copyright facts, language patterns, and grammar. *Second*, whether any copying by NVIDIA is a fair use. Although training AI is a recent phenomenon, the legal principles governing this case were established long ago: Copyright law does not grant property rights over

facts, ideas, data, patterns, or information. As the Supreme Court has explained: "[N]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991). Copyright law is limited in scope so that "[it]encourages others to build freely upon the ideas and information conveyed by a work" to ensure it "advances the progress of science and art." *Id.* at 349-50 (internal quotations and citations omitted); *Baker v. Selden*, 101 U.S. 99, 102-04 (1879); U.S. Const., Art. I, § 8, cl. 8; 17 U.S.C. § 102(b).

In addition, fair use protects the ability to copy for a transformative purpose. As an example, the Ninth Circuit ruled that making intermediate copies of entire source code files was fair use where the copying provided access to the unprotected ideas and functions embedded in that code and the defendant created a transformative new product. *Sony Computer Ent. Inc. v. Connectix Corp.*, 203 F.3d 596, 602-08 (9th Cir. 2000); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 224-25 (2d Cir. 2015) (copying entire books to create a searchable database is fair use). NVIDIA disputes Plaintiffs characterizations of the facts and law and specifically denies that NVIDIA has ever used Plaintiffs' books for commercial gain or that NVIDIA ever acted in bad faith. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18, (1994) ("If the use is otherwise fair, then no permission need be sought or granted."); *Google, LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021) ("*Campbell* expressed some skepticism about whether bad faith has any role in a fair use analysis. We find this skepticism justifiable").

Two recent decisions in this district have found that the training of AI models by other defendants with datasets alleged to contain copyrighted works was a protected fair use. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1033-34 (N.D. Cal. 2025) ("[t]he copies used to train specific LLMs were justified as a fair use. Every factor but the nature of the copyrighted work favors this result. The technology at issue was among the most transformative many of us will see in our lifetimes.")); *Kadrey v. Meta Platforms, Inc.*, 2025 WL 1752484, at *2 (N.D. Cal. June 25, 2025) ("no serious question" that Meta's use of the plaintiffs' books to train LLMs was "highly transformative" finding fair use because Meta's use of authors' works to train its LLMs was "highly transformative" even though Meta's LLMs were projected to generate billions in revenue—unlike

NVIDIA's NeMo Megatron LLMs that are provided for free). And Plaintiffs reliance on *Thomson Reuters* is inapposite because that case involved an AI startup attempting to be a direct competitor to Reuters, which tipped the balance of Factor 4 against a finding of fair use. 765 F. Supp. at 400.

**4. Motions**

    a. **Pending Non-Administrative Motions**

On October 17, 2025, Plaintiffs filed a Motion to Modify Scheduling Order and for Leave to File First Amended Consolidated Complaint (Dkt. No. 193). The motion is fully briefed and a hearing is scheduled for January 8, 2026.

    b. **Pending Administrative Motions**

The parties have filed a number of administrative motions addressing the sealing of sensitive materials that are fully briefed. Dkt. Nos. 192, 195, 198, 203, 207, 209, 210, 215.

    c. **Anticipated Motions**

Plaintiffs informed the Court and Defendant of Abdi Nazemian's intent to withdraw from the case. The parties have been discussing the terms for Mr. Nazemian's withdrawal.

The parties are also in the process of meeting and conferring regarding several discovery disputes, as explained in more detail in Section 8, and hope to resolve future discovery disputes without judicial intervention but anticipate that discovery motions may be necessary. The Court has referred this case to Magistrate Judge Sallie Kim for discovery (Dkt. Nos. 104, 105).

The parties also anticipate filing and briefing *Daubert* motions, summary judgment motions, and class certification motions.

**5. Amendment of Pleadings**

The deadline to amend the pleadings passed on April 15, 2025. *Nazemian* Dkt. 71; *Dubus* Dkt. 59. On October 17, 2025, Plaintiffs filed a Motion to Modify Scheduling Order and for Leave to File First Amended Consolidated Complaint (Dkt. No. 193). On November 3, 2025, Defendants filed an opposition (Dkt. No. 205). On November 10, 2025, Plaintiffs filed a reply to Defendants' opposition (Dkt. No. 211). This motion is pending before the Court.

Named Plaintiff Abdi Nazemian seeks to be dismissed without prejudice and the parties dispute the terms of his dismissal, as set forth below.

a. **Defendant's Statement**

On October 21, 2025, NVIDIA informed Plaintiffs that it will stipulate to dismiss Mr. Nazemian's claims with prejudice if Plaintiffs agree to certain standard conditions. Courts routinely impose obligations on a withdrawing plaintiff who remains a member of the asserted class because their experiences are "highly likely to be relevant to class certification issues, including commonality and the typicality of the class representative's claims, even if [the withdrawing plaintiff] no longer wishes to be burdened with this litigation." *Dysthe v. Basic Rsch., L.L.C.*, 273 F.R.D. 625, 628–30 (C.D. Cal. 2011). And because Mr. Nazemian has been a named plaintiff for twenty months, his testimony remains "far more probative than that of just any person on the street." *Rodriguez v. Google LLC*, 2025 WL 2326790, at *2 (N.D. Cal. Aug. 12, 2025). He cannot simply vanish from the record; NVIDIA is entitled to outstanding discovery to ensure the record is complete.

Accordingly, NVIDIA has requested the following conditions designed to protect the record and avoid prejudice to NVIDIA: (1) final responses to outstanding discovery requests; (2) production of all documents regarding the Asserted Works, including loan-out agreements, assignments, ownership communications, and registrations; (3) production of agreed-upon ESI with a certification of search parameters; (4) a four-hour preservation deposition on authorship, ownership, chain of title, and document authentication; (5) dismissal with prejudice; and (6) ongoing preservation obligations. On November 4, 2025, Plaintiffs rejected NVIDIA's proposal without explanation. On November 6, NVIDIA explained the prejudice it would incur and asked for a meet and confer. NVIDIA followed up on November 13 and 20, but Plaintiffs have not responded and Mr. Nazemian did not provide supplemental discovery responses by the agreed deadline to supplement.

After twenty months of litigation—during which NVIDIA has expended substantial resources on discovery—Mr. Nazemian seeks to withdraw before completing discovery or providing a deposition. This allows him to avoid testifying under oath about critical issues of authorship, ownership, and chain of title that go to the heart of both his individual claims and class certification. Document production alone, especially when not certified as complete, is insufficient

to protect NVIDIA's interests. Mr. Nazemian also withdrew 2,871 documents from his production, calling into question the actual volume and relevance of his production. NVIDIA needs Mr. Nazemian's testimony to address belatedly-produced documents, understand gaps in the production, probe apparent problems with the loan-out and assignment of Mr. Nazemian's works, and test the circumstances of his withdrawal. The issues on which NVIDIA seeks his testimony are paradigmatic class certification issues, particularly as to typicality and adequacy of representation.

Mr. Nazemian placed these issues squarely at issue by serving as a named plaintiff, not to mention that he remains a named plaintiff in other cases. The case Plaintiffs cite, *Roberts v. Electrolux Home Products, Inc.*, does not support their position. In that case, the named plaintiffs sought to withdraw due to serious health problems and the court noted defendants had not explained how they would be prejudiced. Unlike *Electrolux*, NVIDIA has explained its prejudice. On the other hand, Plaintiffs have offered *no* explanation for Mr. Nazemian's withdrawal, leaving only their bare assertion to support that it is made in good faith.

Dismissal with prejudice is necessary to ensure that Mr. Nazemian does not later attempt to refile the same claims on a delayed schedule, forcing NVIDIA to litigate his claims twice. *See In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (affirming denial of leave to dismiss without prejudice because "the defendants had spent two and a half years and substantial amounts of money to obtain discovery").

### b. Plaintiffs' Statement

Plaintiff Abdi Nazemian seeks to withdraw from the case as a named Plaintiff, without prejudice to his ability to participate as an absent class member if a class is certified here.

NVIDIA will not be prejudiced by Nazemian's withdrawal. It argues that Nazemian's experiences are likely to be relevant to class certification—but Plaintiffs produced nearly 3,600 documents from Mr. Nazemian, including more than 900 on the deadline for substantial completion of discovery. He has now substantially completed his document production and agrees to fully complete production of any remaining documents by the close of discovery. This substantial production will help resolve class certification issues regardless of whether Nazemian remains a named plaintiff, and—far from "vanish[ing] from the record"—Nazemian does not seek to claw

back documents.

NVIDIA has no reason to condition Nazemian's withdrawal on additional discovery obligations. There has been no delay in prosecuting this action, Nazemian's request is made in good faith, and this case is still months from the close of fact discovery and more than a year away from any conceivable trial, leaving NVIDIA plenty of time to seek any discovery it may need without burdening Nazemian. *See Roberts v. Electrolux Home Prods., Inc.*, No. SACV 12-1644 CAS, 2013 WL 4239050, at *2 (C.D. Cal. Aug. 14, 2013) (outlining these factors when considering withdrawal; declining to condition withdrawal on additional discovery). NVIDIA has not "explained how any of its other preparations in this case would be undermined" if Nazemian were to withdraw without sitting for a deposition or fulfilling NVIDIA's laundry list of requests. *Id.* Therefore, its requests should be rejected.

Neither of NVIDIA's cited cases stand for the premise that Nazemian must continue to respond to discovery requests or sit for a deposition after withdrawing from the case. *Rodriguez*, for instance, involved a plaintiff's motion to *exclude* existing deposition testimony of a named class representative (who sought to withdraw). 2025 WL 2326790, at *1. Nazemian is not seeking to claw back documents, nor is he a named class representative withdrawing weeks before trial. Similarly, *Dysthe* involved a defendant's motion to depose a named class member who sought to withdraw *after* plaintiffs filed their motion for class certification. 273 F.R.D. at 627–29. The Court granted the motion only after noting that the plaintiff's claims "formed one of the bases of Plaintiffs' action from the outset of this litigation." *Id.* at 629. Not so here, where Nazemian's claims are materially identical to those of the putative class.

NVIDIA's fear that it might have to defend itself against a similar claim at some unknown point in the future has no bearing on whether Nazemian should be dismissed with prejudice. *See Hamilton*, 679 F.2d at 145 ("Plain legal prejudice, however, does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage.").

**8. Discovery**

The deadline for the close of pre-certification fact discovery is March 6, 2026 (Dkt. No. 188) and the parties are conducting discovery.

### a. Recent Orders and Stipulations

Since the parties' August 15, 2025 Joint Case Management Statement, the Court has entered the following orders: Order setting the scope of discovery (entered by Magistrate Judge Kim on August 21, 2025 at ECF 168); Order denying Plaintiffs' motion for relief from the order setting the scope of discovery (entered by the Court on September 25, 2025 at ECF 183); Order regarding Plaintiffs' custodian request (entered by Magistrate Judge Kim on September 11, 2025 at ECF 177); Order denying as unnecessary Defendant's request to compel productions by Plaintiffs (entered by Magistrate Judge Kim on September 30, 2025 at ECF 184); Order clarifying the scope of large language model discovery, denying Plaintiffs' request for an order that Defendant identify and produce discovery on all large language models trained on The Pile (entered by the Magistrate Judge Kim on October 2, 2025 at Dkt. 185); Order granting Plaintiffs' motion to amend the scheduling order (entered by the Court on October 15, 2025 at Dkt. 188); Stipulation and Order regarding the deadline to identify custodians (filed on October 17, 2025 at Dkt. 191; entered by the Court on October 21, 2025 at Dkt. 194); Order regarding Defendant's proposed search terms (entered by the Court on October 28, 2025 at Dkt. 197); Amended Protective Order (filed on November 3, 2025 at Dkt. 204; entered by the Court on November 5, 2025 at Dkt. 208); and Order granting the Parties' joint stipulation to modify the scheduling order (entered by the Court on December 1, 2025 at Dkt. 219).

### b. Document Production and ESI Collection

#### i. Custodians and Search Terms

Plaintiffs identified 21 custodians by the deadline to designate custodians without a showing of good cause and proposed 11 search terms. The parties are negotiating the scope of one search term, but productions in response to the other search terms are complete.

On September 5, 2025, NVIDIA proposed 12 search terms to run over each named Plaintiff's ESI. On October 28, 2025, Magistrate Judge Kim ordered plaintiffs to run modified versions of those terms. Dkt. No. 197 (citing Dkt. No. 190-2).

#### ii. Plaintiffs' Position on Document Productions

Plaintiffs made their first document production on February 7, 2025 and have since made

rolling productions and substantially completed production on November 24, 2025. Plaintiffs produced 29,135 documents, totaling 270,610 pages.

NVIDIA complains that Plaintiffs have produced irrelevant documents. When "broad discovery requests lead to relevant documents being mixed in with seemingly irrelevant documents, the fault lies just as much with the party who made the request as with the party who produced documents in response." *Wilcox v. Changala*, 2012 WL 12844083, at *3 (E.D. Wash. Jan. 18, 2012). NVIDIA chose to make broad document requests, Plaintiffs ran the search terms as NVIDIA requested and the Court ordered (despite noting that the request was overbroad), and NVIDIA now blames Plaintiffs for producing the documents that hit on the terms that *NVIDIA asked for*. NVIDIA must take the bitter with the sweet.

### iii. NVIDIA's Position on Document Productions

**A.   NVIDIA's Production**: NVIDIA made its first document production on January 24, 2025, following entry of the Protective Order on January 8, 2025 (Dkt. 99). NVIDIA has since produced 26,328 documents, totaling 179,289 pages and more than 86 gigabytes of data. NVIDIA's production is substantially complete as to all custodians as of the date of this statement.

**B.   Plaintiffs' Production**: Plaintiffs' current production counts are as follows:

| Plaintiff | Initial Production (withdrawn) | Current Productions | Date of Last Production |
|---|---|---|---|
| Nazemian | 2,871 | 1,211 | 11/24/25 |
| Keene | 32 | 657 | 11/24/25 |
| O'Nan | 89 | 576 | 11/24/25 |
| Dubus | - | 10,104 | 11/25/25 |
| Orlean | - | 13,946 | 11/25/25 |

These production counts are significantly inflated because Plaintiffs have refused to conduct a relevance review. The problem began on August 28, 2025, when the Nazemian Plaintiffs had to withdraw their initial document production of more than 2,800 documents as irrelevant. Unfortunately, even after that incident Plaintiffs continued to produce hundreds of personal communications and other irrelevant documents, including communications about purchasing alcohol and social media posts with no relation to this litigation. Now, after the substantial completion deadline, Plaintiffs imply they simply produced every document that hit on a search term, without conducting a relevance review, because having to review thousands of wholly

irrelevant documents is somehow "the bitter" price NVIDIA must pay for seeking discovery. However, Plaintiffs represented to the court they would be reviewing documents that hit on search terms in arguing burden to narrow those NVIDIA's proposed search terms. Dkt. 190 at 7-8 (Plaintiffs' argument about the burden due to the "universe [of documents] that will have to be reviewed."). Plaintiffs cannot have it both ways.

### c. Written Discovery Requests

The parties are continuing to meet and confer regarding outstanding discovery requests.

#### i. *Plaintiffs' Requests to NVIDIA*:

Plaintiffs served their First and Second Sets of Interrogatories on May 1 and May 13, 2025, their First Requests for Admission on June 17, 2025, and their First, Second, and Third Sets of Requests for Production on July 10, 2024, June 17, 2025, and September 22, 2025, respectively. NVIDIA timely served responses and objections. To date, Plaintiffs have served 64 requests for production and 54 requests for admission. The number of interrogatories Plaintiffs served is disputed, but is not less than eighteen.

#### ii. *NVIDIA's Requests to Plaintiffs:*

NVIDIA served on Plaintiffs its First and Second Sets of Interrogatories on June 4 and September 11, 2025, its First, Second, and Third Sets of Requests for Production on July 23, 2024, June 4, 2025, and September 8, 2025, and its First, Second, and Third Sets of Requests for Admission on July 21, September 10, and October 1, 2025, respectively. Plaintiffs timely served responses and objections. To date, NVIDIA has served 25 requests for production, 96 requests for admission, and seven interrogatories. The parties are meeting and conferring regarding Plaintiffs' responses and objections.

#### iii. *Plaintiffs' Position on Written Discovery:*

The parties are continuing to meet and confer regarding outstanding discovery requests and the parties' productions. This includes meeting and conferring regarding Defendants' supplemental responses to RFPs, RFAs, Interrogatories, and ESI Interrogatories served on it, and which require supplementation as a result of the Court's orders regarding the scope of discovery. The parties are also meeting and conferring regarding Plaintiffs' supplemental responses to interrogatories.

NVIDIA has failed to supplement its ESI Interrogatory and Interrogatory responses in light of Judge Kim's Order at Dkt. Nos. 168 and 185, even after promising to do so since October 2025. Plaintiffs intend to seek relief from the Court. To date, Plaintiffs have served 18 interrogatories.

       **iv.** **NVIDIA's Position on Written Discovery:**

NVIDIA supplemented its ESI responses on September 19, 2025 and Plaintiffs have not raised any concerns with that supplementation. NVIDIA supplemented its responses to Plaintiffs' RFAs on October 31, 2025 and Plaintiffs have not raised any concerns with those responses. NVIDIA supplemented its responses to Plaintiffs' RFPs on November 24, 2025 and Plaintiffs have not raised any concerns with those responses. NVIDIA also intends to supplement interrogatory responses, including by referring to specific documents pursuant to Rule 33(d), now that substantial completion has passed, as it informed Plaintiffs on November 20, 2025.

Plaintiffs have not requested other supplementation. On November 20, 2025, NVIDIA requested Plaintiffs identify the supplementation that Plaintiffs believe is outstanding and the date of any correspondence with Plaintiffs' position. Plaintiffs have not replied. Plaintiffs also promised supplemental responses in August that remain outstanding, including the interrogatory responses in the First Set of Interrogatories, and NVIDIA's ESI Request No. 8. The parties are continuing to meet and confer regarding Plaintiffs' supplemental responses to interrogatories.

       **d.** **Search Terms:** The parties continue to meet and confer regarding one of Plaintiffs' proposed search terms to run on Defendants' ESI.

       **e.** **Depositions:** The parties negotiated a deposition protocol, which the Court entered on June 3, 2025. Dkt. 151.

**9. Class Action**

Plaintiffs purport to bring this class action on behalf of themselves, and all other similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3). NVIDIA believes that class certification is not appropriate.

The current schedule contemplates the filing of a class certification motion on August 28, 2026, with an opposition due October 9 and a reply due December 4, 2026. Dkt. 219. The Court

has also indicated that class-related discovery will begin on the date of the class certification order but only if the Court certifies the class.

Counsel for both sides have reviewed the Procedural Guidance for Class Action Settlements.

**11. Relief**

    **a. Plaintiffs' Statement**

Plaintiffs seek statutory and other damages under 17 U.S.C. § 504 for Defendant's violations of the copyrights of Plaintiffs and the class, including an award of reasonable attorneys' fees under 17 U.S.C. § 505 or other applicable statutes and laws. Plaintiffs further seek equitable, injunctive and declaratory relief, including the destruction or other reasonable disposition of all copies of the Infringed Works Defendant made or used in violation of the exclusive rights of Plaintiffs and the class, pursuant to 17 U.S.C. § 503(b). Plaintiffs seek pre- and post-judgment interest on damages awarded to Plaintiffs and the class, at the highest legal rate from and after March 8, 2024, the date the *Nazemian* class action Complaint was first served on Defendant.

    **b. Defendant's Statement**

NVIDIA denies that Plaintiffs are entitled to any damages, permanent injunction, or other relief whatsoever, or that the classes alleged in the Complaints can be certified.

**12. Settlement and ADR**

The parties have complied with ADR Local Rule 3-5. *See* Dkts. 32-34 (*Nazemian* Plaintiffs); Dkts. 44-45 (*Dubus* Plaintiffs); Dkt. 61 (NVIDIA). The parties continue to meet and confer on an ADR plan.

**15. Scheduling**

The parties stipulated to a case schedule, which was entered by the Court on June 27, 2025 (Dkt. 159). On Plaintiffs' motion, the Court modified the schedule on October 15, 2025 (Dkt. 188). On December 1, 2025 the Court granted the Parties' Joint Stipulation to Modify the Scheduling Order to restore certain dates that were inadvertently removed from the most recent version of the

schedule and correct the timing of deadlines that were inadvertently shortened and moved over holidays (Dkt. 219).

### 16. Trial

Should the case proceed to trial, the parties agree it should be tried to jury and anticipate a 14-day trial.

### 17. Disclosure of Non-Party Interested Entities or Persons

    **a. Defendant's Statement**

Paragraph 17 of the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statements requires that "[i]n addition" to the Rule 3-15 disclosures, "[i]n any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim." *See* Civil Local Rule 16-9 (requiring the parties to address all topics set forth in the Standing Order). NVIDIA identified this deficiency in the August 15, 2025 Joint Case Management Statement. Dkt. 165. Plaintiffs' representation that they "have no further information to disclose" is non-responsive and fails to affirmatively disclose whether any person or entity is funding the prosecution of their claims as required by Paragraph 17. Plaintiffs cannot rely on disclosures made over 18 months ago, when the case was first filed, on a separate issue. Merely referencing their Civil L.R. 3-15 disclosures of interested entities—which do not require disclosure of litigation funders—does not satisfy the Standing Order's separate and explicit funding disclosure requirement.

    **b. Plaintiffs' Statement**

The *Nazemian* Plaintiffs filed a Certification of Interested Entities or Persons along with the Complaint on March 8, 2024 (*Nazemian* Dkt. 4). The *Dubus* Plaintiffs filed their Certification of Interested Entities or Persons on June 17, 2024 (*Dubus* Dkt. 43). NVIDIA filed a Certification of Interested Entities or Persons on March 28, 2024. *Nazemian* Dkt. 26.

Plaintiffs have complied with Civil Local Rule 16-9 and Paragraph 17 of the Standing Order and have no further information to disclose.

DATED: December 2, 2025

| | |
|---|---|
| By:    /s/ *Joseph R. Saveri*<br>        Joseph R. Saveri | By:    /s/ Rachael L. McCracken<br>        Rachael L. McCracken |
| Joseph R. Saveri (CSB No. 130064)<br>Christopher K.L. Young (CSB No. 318371)<br>Evan Creutz (CSB No. 349728)<br>Elissa A. Buchanan (CSB No. 249996)<br>William Waldir Castillo Guardado (CSB No. 294159)<br>**JOSEPH SAVERI LAW FIRM, LLP**<br>601 California Street, Suite 1505<br>San Francisco, CA 94108<br>Telephone:   (415) 500-6800<br>Facsimile:    (415) 395-9940<br>jsaveri@saverilawfirm.com<br>cyoung@saverilawfirm.com<br>ecreutz@saverilawfirm.com<br>eabuchanan@saverilawfirm.com<br>wcastillo@saverilawfirm.com<br><br>Bryan L. Clobes (admitted *pro hac vice*)<br>Mohammed Rathur (admitted *pro hac vice*)<br>**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**<br>135 South LaSalle Street, Suite 3210<br>Chicago, IL 60603<br>Tel: 312-782-4880<br>bclobes@caffertyclobes.com<br>asweatman@caffertyclobes.com<br>mrathur@caffertyclobes.com<br><br>Justin A. Nelson (admitted *pro hac vice*)<br>Alejandra C. Salinas (admitted *pro hac vice*)<br>**SUSMAN GODFREY L.L.P.**<br>1000 Louisiana Street, Suite 5100<br>Houston, TX 77002-5096<br>Telephone: (713) 651-9366<br>jnelson@susmangodfrey.com<br>asalinas@susmangodfrey.com<br><br>Rohit D. Nath (SBN 316062)<br>**SUSMAN GODFREY L.L.P**<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-2906<br>Telephone: (310) 789-3100 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br>Sean S. Pak (SBN 219032)<br>seanpak@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br><br>Andrew H. Schapiro (admitted *pro hac vice*)<br>andrewschapiro@quinnemanuel.com<br>191 N. Wacker Drive, Suite 2700<br>Chicago, Illinois 60606<br>Telephone: (312) 705-7400<br>Facsimile: (312) 705-4001<br><br>Alex Spiro (admitted *pro hac vice*)<br>alexspiro@quinnemanuel.com<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br><br>Rachael L. McCracken (SBN 252660)<br>rachaelmccracken@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br><br>*Attorneys for Defendant NVIDIA Corporation* |

RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com

Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001

New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:       (415) 395-9940
mb@butaricklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Joseph Saveri.  By their signature, Joseph Saveri attests that he has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: December 2, 2025                              By:   */s/ Joseph R. Saveri*
                                                                              Joseph R. Saveri