QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Alex Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Rachael L. McCracken (SBN 252660)
rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant,*
*NVIDIA Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ABDI NAZEMIAN, BRIAN KEENE, STEWART O'NAN, ANDRE DUBUS III and SUSAN ORLEAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Master File Case No. 4:24-cv-01454-JST (SK)<br><br>**DEFENDANT NVIDIA CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY DISCOVERY ON CLAIMS AND ALLEGATIONS SUBJECT TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:       April 2, 2026<br>Time:       2:00 p.m.<br>Location:  Courtroom 6<br>Judge:      Hon. Jon S. Tigar |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on April 2, 2026, at 2:00 p.m. or as soon as the matter may be heard, before the Honorable Jon S. Tigar of the United States District Court, Northern District of California at Courtroom 6, United States Courthouse, 1301 Clay Street, Oakland, California 94612, Defendant NVIDIA Corporation ("NVIDIA") will and hereby does move—pursuant to Federal Rule of Civil Procedure 26(c) and the Court's inherent case management authority—to stay discovery on allegations that have not survived the pleading stage, pending the resolution of NVIDIA's Motion to Dismiss Plaintiffs' First Amended Complaint ) under Rule 12(b)(6) and request to strike certain allegations under Rule 12(f) (ECF No. 240). This motion is based upon this notice of motion and memorandum of points and authorities, the supporting declaration, and such evidence as may be requested or permitted by the Court.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

    A.    Plaintiffs File Their Original Complaint ..................................................2

    B.    The Scope of the Case Is Litigated and Defined ......................................3

    C.    The Parties Engage in Substantial Discovery According to the Limited Scope ..........................................................................................................3

    D.    Plaintiffs Seek Leave to File the First Amended Complaint, Representing That Discovery Will Be "Largely Co-extensive"......................................4

    E.    Plaintiffs File Their First Amended Complaint.........................................4

    F.    Plaintiffs Seek Discovery on the First Amended Complaint, and Beyond ...............5

    G.    NVIDIA Notifies Plaintiffs of Its Intent to Move to Stay and Dismiss ...................6

    H.    Plaintiffs Serve More Discovery Requests, Exceeding Even the FAC .....................7

    I.    NVIDIA Moves to Dismiss the First Amended Complaint .......................8

III.  LEGAL STANDARD ..........................................................................................9

IV.   ARGUMENT .....................................................................................................10

    A.    NVIDIA's Motion to Dismiss Is Dispositive.........................................10

    B.    The Court Can Decide NVIDIA's Motion to Dismiss Without Discovery ..............11

    C.    A Stay Will Conserve Resources and Promote Efficiency .....................12

V.    CONCLUSION ..................................................................................................15

NVIDIA'S MOTION TO STAY DISCOVERY ON CLAIMS AND ALLEGATIONS SUBJECT TO NVIDIA'S
MOTION TO DISMISS

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### **Cases**

4

*Affinity Credit Union v. Apple Inc.*,
    2023 WL 12065782 (N.D. Cal. Apr. 14, 2023) ..................................................... 11

5

6

*Arcell v. Google LLC*,
    2022 WL 16557600 (N.D. Cal. Oct. 31, 2022) ........................................... 11, 12, 13

7

*In re German Auto. Manufacturers Antitrust Litig.*,
    335 F.R.D. 407 (N.D. Cal. 2020) ........................................................................ 10

8

9

*In re Google Digital Advert. Antitrust Litig.*,
    2020 WL 7227159 (N.D. Cal. Dec. 8, 2020) ....................................................... 11

10

*Hamilton v. Rhoads*,
    2011 WL 5085504 (N.D. Cal. Oct. 25, 2011) ..................................................... 10

11

12

*Head v. Cnty of Sacramento*,
    2021 WL 1238283 (E.D. Cal. Apr. 2, 2021) ....................................................... 13

13

14

*Heck v. Amazon.com, Inc.*,
    2022 WL 16579372 (N.D. Cal. Nov. 1, 2022) ..................................................... 11

15

*Kincheloe v. Am. Airlines, Inc.*,
    2021 WL 5847884 (N.D. Cal. Dec. 9, 2021) ................................................. 11, 13

16

17

*Leonard v. CVS Pharm., Inc.*,
    2025 WL 1266929 (N.D. Cal. May 1, 2025) ................................................. 10, 11

18

19

*In re Mosaic LLM Litig.*,
    2025 WL 2402677 (N.D. Cal. Aug. 19, 2025) ....................................................... 1

20

*In re Mosaic LLM Litig.*,
    No. 3:24-cv-01451-CRB, ECF No. 163 (N.D. Cal. Aug. 20, 2025) ................................. 1, 10

21

22

*Pereda v. General Motors LLC*,
    2022 WL 19692037 (N.D. Cal. Mar. 15, 2022) (Tigar, J.) ..................................... 9, 11, 12, 13

23

24

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) ........................................... 10, 11, 14

25

26

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987)................................................................................ 9

27

*Top Rank, Inc. v. Haymon*,
    2015 WL 9952887 (C.D. Cal. Sept. 17, 2015) ..................................................... 14

28

NVIDIA'S MOTION TO STAY DISCOVERY ON CLAIMS AND ALLEGATIONS SUBJECT TO NVIDIA'S
MOTION TO DISMISS

*Yiren Huang v. Futurewei Techs., Inc.*,
   2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) ............................................................ 9, 11, 14

### **Rules**

Fed. R. Civ. P. 26(c)(1) ............................................................................................................ 9

## I.    INTRODUCTION

Discovery is only permitted on a claim that survives a motion to dismiss.  *In re Mosaic LLM Litig.*, 2025 WL 2402677, at *3 (N.D. Cal. Aug. 19, 2025) ("[T]he Federal Rules limit discovery to material that is relevant and proportional to claims that survive past the pleading stage."); *see also In re Mosaic LLM Litig.*, No. 3:24-cv-01451-CRB, ECF No. 163 (N.D. Cal. Aug. 20, 2025) (denying discovery into claims that did not survive defendants' motion to dismiss).  Plaintiffs' First Amended Consolidated Complaint (ECF No. 235) adds at least five new AI large language models, at least six new data sources and datasets alleged to be used for model training, and two new legal claims—none of which have survived the pleading stage.  Indeed, the Court deferred assessing whether these claims were futile until a motion to dismiss was filed.  ECF No. 232 at 10 ("The Court will defer its consideration of NVIDIA's futility arguments unless and until they are presented in connection with a motion to dismiss.").  NVIDIA has now filed that motion and respectfully asks that the Court stay discovery on the newly-added models, data sources, datasets, and legal claims until after the motion to dismiss is decided.

Discovery on the original complaint (a single direct infringement claim based on a single model family and one dataset) has been ongoing for nearly two years.  Over the course of those two years, NVIDIA has reviewed hundreds of thousands of documents, gigabytes of data, and objected and responded to over 140 written discovery requests.  McCracken Decl. ¶ 3.  The Court has issued three orders limiting the scope of discovery in the case.  ECF Nos. 168, 183, 185.  Operating under this discovery scope, Plaintiffs argued, in their motion to amend, that there would be "no prejudice" because the discovery for the new claims would be "co-extensive"[1] with the previous discovery.  ECF No. 193 at 17.  Now that the motion to amend has been granted, Plaintiffs have changed their tune and made a flurry of discovery requests entirely unrelated to the prior scope of the case.

---

[1]  *See Coextensive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/coextensive (last accessed January 28, 2026) (defining "coextensive" as "having the same spatial or temporal scope or boundaries"); *Coextensive*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/coextensive (last accessed January 28, 2026) ("If two things are coextensive, they reach the same limits or cover the same area.").

To the extent they survive NVIDIA's dispositive motion, Plaintiffs have shown they will use these new claims as a wedge to dramatically and improperly expand the scope of discovery in the case (confirmed by their post-amendment discovery blizzard)—an about-face from Plaintiffs' arguments in support of amendment that discovery for the new claims would be "coextensive" with previous discovery.  ECF No. 193 at 17.  Despite the Court's operative orders *still* limiting the scope of discovery in this case and their representations to the Court in the motion to amend, Plaintiffs now demand that NVIDIA expand discovery to include at least five distinct models outside that model family, at least six new datasets and sources, and two new legal claims that will involve discovery into the alleged direct infringement by non-parties to this case.  Plaintiffs' new discovery seeks information  on "all datasets or files containing books" and "Your LLMs," defined as "any and all LLMs [NVIDIA] developed, trained, or created, or which are currently in development."  Ex. 9 at 8; Ex. 10 at 3.  This is not "co-extensive" with earlier discovery.  This is a drastic expansion of discovery through Plaintiffs' new allegations, which will compound the cost and burdens of discovery on NVIDIA and the Court.

Plaintiffs served discovery on their new data sources, datasets, models, and claims nearly a month *before* leave to amend was even granted, and served a flurry of discovery after NVIDIA notified them of its intent to stay the case, clearly seeking to obtain discovery in an attempt to cure pleading defects.  That is an abuse of the discovery process.  Plaintiffs cannot plead unsupported claims based on attorney rhetoric and information and belief, and then use those claims to engage in a massive and costly fishing expedition.

NVIDIA respectfully asks that discovery on Plaintiffs' new claims and allegations be stayed until the Court decides the motion to dismiss.

## II.     FACTUAL BACKGROUND

### A.  <u>Plaintiffs File Their Original Complaint</u>

On March 8, 2024, Plaintiffs filed a class action complaint alleging NVIDIA directly infringed their copyrights by using The Pile, which allegedly contains Plaintiffs' works in a sub-dataset called "Books3," to train the NeMo Megatron family of AI large language models ("LLMs").

1  ECF No. 1 ("Complaint") ¶¶ 19-25.  The original Complaint was limited to a single dataset (The

2  Pile/Books3) that was used to train a single model family (Nemo Megatron).

### B.  The Scope of the Case Is Litigated and Defined

4      Despite the clear parameters of the original Complaint, Plaintiffs sought discovery well

5  beyond the scope of their claims from day one.  NVIDIA objected to Plaintiffs' untethered discovery

6  requests and limited its responses to NVIDIA's use of The Pile to train the NeMo Megatron models,

7  to reflect the scope of the Complaint.  NVIDIA explained its position during meet-and-confers in

8  January 2025, and repeatedly requested Plaintiffs' position on the scope of discovery.  *See* ECF No.

9  187-1 ¶ 16; ECF No. 187-9.  Plaintiffs did not provide their position until April 25, 2025 (ECF No.

10  187-1 ¶ 17), and then waited until August 6, 2025 to initiate briefing (ECF No. 162).  From August

11  6 through September 24, Plaintiffs filed a series of discovery motions attempting to expand

12  discovery to include other models and datasets.  *See id.*; ECF Nos. 174, 181.  Magistrate Judge Kim

13  twice denied Plaintiffs' request to broaden the case and limited discovery to (1) The Pile dataset and

14  (2) LLMs "in the Nemo Megatron family that exist and that trained on the Pile dataset."  ECF No.

15  168 at 2-3; ECF No. 185.  This Court affirmed Magistrate Judge Kim's first Order after Plaintiffs

16  appealed it, emphasizing that discovery must be limited to the "scope of the operative complaint."

17  ECF No. 183 at 3-4.

### C.  The Parties Engage in Substantial Discovery According to the Limited Scope

19      NVIDIA provided all its discovery in the case consistent with the scope ordered by the

20  Court—the models in the NeMo Megatron family trained on The Pile.  NVIDIA reviewed more

21  than 330,000 documents and dozens of gigabytes of data according to those parameters.  McCracken

22  Decl. ¶ 3.  NVIDIA responded to 140 discovery requests based on the ordered scope.  *Id.*  For months

23  the parties negotiated Plaintiffs' ESI search terms to be applied to seventeen NVIDIA custodians,

24  in part because Plaintiffs' proposed terms also exceeded the scope of discovery, which led to

25  briefing before Magistrate Judge Kim.  ECF No. 162.  NVIDIA's document production is

26  substantially complete.  Privilege logs are due this week.  ECF No. 236.  The parties are five weeks

27  away from the close of fact discovery.  ECF No. 219.

28

**D.** **Plaintiffs Seek Leave to File the First Amended Complaint, Representing That Discovery Will Be "Largely Co-extensive"**

On October 17, 2025, Plaintiffs moved for leave to amend the Complaint after the existing deadline in the case schedule.  In that motion, Plaintiffs represented to the Court that the FAC would pose no prejudice to NVIDIA because "[d]iscovery into NVIDIA's downloading of Plaintiffs works from Anna's Archive will be *largely co-extensive* with discovery into NVIDIA's downloading of Plaintiffs' works from Books3."  ECF No. 193 at 17 (emphasis added).  Plaintiffs also asserted that they had "already served discovery requests on this issue and [that] the parties have negotiated about search terms to locate responsive documents."  *Id.*  Plaintiffs then argued that any prejudice to NVIDIA is not undue where the "discovery taken to date is relevant to the added claims."  *Id.* at 17-18 (quoting *Herrera v. Cnty. of San Benito*).  Plaintiffs made these representations to the Court notwithstanding three separate Orders limiting the scope of discovery to the NeMo Megatron family and the Books3 dataset and the agreed search terms being limited to that scope.  ECF Nos. 162, 168, 183, 185.

On January 15, 2025, the Court granted Plaintiffs' motion for leave to amend (ECF No. 232), and on January 16, 2025, Plaintiffs filed the now-operative First Amended Complaint (ECF No. 235) ("FAC").

**E.** **Plaintiffs File Their First Amended Complaint**

The FAC expands and fundamentally transforms this case in three critical ways:

*First*, the FAC expands the accused models from a single family of models (Nemo Megatron) to include at least "five other LLMs as well," including a Megatron model, two Nemotron models, and two Retro models.  *Compare* ECF No. 168 at 3:11-13, *with* ECF No. 232 at 6; FAC ¶¶ 41, 59-60.[2]  These models are distinct from the NeMo Megatron models, including because they were trained differently and have different architectures.  *See, e.g.*, ECF No. 181 at 7 (explaining

---

[2]   Despite the FAC's sweeping language, Plaintiffs represent that they intend to limit their amendment to "five discrete models" (ECF No. 212 at 11), and the Court granted amendment only as to those "five other LLMs" identified in the FAC.  ECF No. 232 at 6.

1   that NVIDIA's models without the "NeMo Megatron" title are technologically distinct from the

2   originally accused NeMo Megatron models).

3       **Second**, the FAC expands this case far beyond the **single** dataset in the original Complaint

4   to include at least **six** new datasets or data sources.  Under the original Complaint, the scope of

5   discovery was limited to "only the Books3 dataset that Plaintiffs specifically alleged as a source of

6   the pirated training material."  ECF No. 183 at 3:16-28.  The FAC, however, accuses NVIDIA of

7   infringing Plaintiffs' works by downloading data from Anna's Archive, LibGen, Sci-Hub, Z-

8   Library, Bibliotik, and unidentified "other shadow libraries," and using data from those sources and

9   the "SlimPajama" dataset to train NVIDIA's LLMs other than the NeMo Megatron models, which

10  were trained only on The Pile.  FAC ¶¶ 5, 23, 51, 57-58, 76–78.

11      **Third**, the FAC adds two entirely new causes of action.  While the original Complaint

12  asserted only one claim for direct copyright infringement (ECF No. 1 ¶¶ 32-37), the FAC asserts

13  additional claims for contributory and vicarious copyright infringement, which involve allegations

14  as to direct infringement by multiple non-parties to this case.  FAC ¶¶ 83-90.

15      **F.   Plaintiffs Seek Discovery on the First Amended Complaint, and Beyond**

16      On December 18 and 19, 2025, while their motion for leave to amend was still pending,

17  Plaintiffs served a notice of Rule 30(b)(6) deposition (Ex. 1), a Fourth Set of Requests for Production

18  (Ex. 2) ("RFPs"), and a Fourth Set of Interrogatories (Ex. 3) ("Interrogatories"), all directed to the

19  FAC's new claims and subject matter and even extending to other models and data sources or

20  datasets not accused in the FAC.  This discovery was and remains limited by the scope of the Court's

21  Orders.  ECF Nos. 168, 183, 185.  Plaintiffs have pursued this discovery and have not honored their

22  representation that discovery would be "co-extensive."  ECF No. 193 at 17.

23      For example, Plaintiffs seek discovery into NVIDIA's use of "Pirated Books Datasets,"

24  which includes not only "The Pile [and] Books3" but also "RedPajama [and] RedPajama-Books"—

25  which the FAC does **not** allege NVIDIA downloaded—"and SlimPajama, and datasets containing

26  copyrighted books sourced from The Eye, Huggingface, Library Genesis ('Libgen'), Pirate Library

27  Mirror ('PiLiMi'), Z-Library, Bibliotik, Sci-hub, Internet Archive, and Anna's Archive."  *See, e.g.*,

28  Exs. 1-3.  Plaintiffs use this term in twelve 30(b)(6) deposition topics (Ex. 1 at Topic Nos. 1-5, 7-9,

15, 23-25), three requests for production (Ex. 2 at RFP Nos. 65, 66, 68), and an interrogatory (Ex. 3 at Interrogatory No. 19).  Plaintiffs also used this term before in other discovery requests, but NVIDIA objected and limited its responses to the Court-ordered scope.

Plaintiffs' discovery requests also seek information directed to Plaintiffs' contributory and/or vicarious infringement claims—none of which is coextensive with previous discovery.  For example:

> REQUEST FOR PRODUCTION NO. 66:
> All Documents and Communications, including contracts, concerning Your provision or facilitation of access to Pirated Books Datasets, including The Pile, Books3, RedPajama, RedPajama-Books, and SlimPajama, and datasets containing copyrighted books sourced from The Eye, Huggingface, Library Genesis ("Libgen"), Pirate Library Mirror ("PiLiMi"), Z-library ("Z-lib"), Bibliotik, Sci-hub, Internet Archive, and Anna's Archive, to any third parties including Your customers.

> REQUEST FOR PRODUCTION NO. 67:
> All Documents and Communications, including contracts, concerning Your customers' use of Your services to develop LLMs.

Ex. 2 at 7.

> RULE 30(b)(6) TOPIC 23:
> Any efforts You made to distribute or provide access to Pirated Books Datasets or Your Training Data to third parties, including Your customers and the public, any policies regarding the same, and how such efforts contributed to revenue for You.

> RULE 30(b)(6) TOPIC 24:
> All support You provide to third parties, including Your customers and the public, to download, process, and use Pirated Books Datasets.

> RULE 30(b)(6) TOPIC 25:
> Whether and how any third party or customer downloaded or accessed Pirated Books Datasets with tools or assistance provided by You, including Your records showing third party access to Pirated Books Datasets.

Ex. 1 at 11.

### G. **NVIDIA Notifies Plaintiffs of Its Intent to Move to Stay and Dismiss**

On January 20, 2026, NVIDIA notified Plaintiffs that it intended to file this motion, along with a motion to dismiss, and met and conferred with them.  McCracken Decl. ¶ 10.  Following that discussion, Plaintiffs served a Fifth Set of Interrogatories seeking information about their new allegations (Ex. 9), and noticed two depositions (without first obtaining mutually-agreeable dates)

(McCracken Decl. ¶ 13; Exs. 7 & 8).  Plaintiffs have also demanded that NVIDIA go back and supplement its productions to include documents related to the new datasets (including unidentified "other shadow libraries"), data sources, and models, demanding NVIDIA do so in one week (making their demand near the close of business on the Friday of a holiday weekend), and indicated NVIDIA must amend its prior discovery responses as well.  Ex. 5.

### H. **Plaintiffs Serve More Discovery Requests, Exceeding Even the FAC**

On January 21 and 23, 2026, after the parties had already met and conferred on NVIDIA's forthcoming motions to dismiss and stay, Plaintiffs served their Fifth Set of Interrogatories (Nos. 20-23) and Fifth Set of Requests for Production (Nos. 69-79) respectively, which also seek discovery directed to new matter.  For example, the new Interrogatories define "Nvidia Large Language Models" as "the large language models identified in the First Consolidated Amended Complaint (Dkt. 235), including but not limited to [the NeMo Megatron family], Megatron 345M (publicly released as Megatron GPT2 345M), NeMo GPT-3 10B, InstructRetro-48B, Retro-48B, Nemotron-4 340B and Nemotron-4 15B, and any models related to NextLargeLLM, NextLLMLarge, and Next Generation LLM[,]" and including "any of Nvidia's internal models trained on datasets containing books, including The Pile, The Eye, RedPajama"—which is not accused in the FAC—"or SlimPajama, or datasets accessed from one or more of Library Genesis (a/k/a LibGen), Z-Library (a/k/a z-Lib and B-ok), Anna's Archive, Pirate Library Mirror (a/k/a PiLiMi), Sci-Hub, and Internet Archive."  *See, e.g.*, Ex. 9 at 5; *see also* Ex. 10 (defining "LLM" as "***any and all*** LLMs You [NVIDIA] developed, trained, or created, or which are currently in development" including "***but not limited to***" the NeMo Megatron family of LLMs).  Plaintiffs use the unbound LLM term in one interrogatory (Ex. 9 at Interrogatory No. 21) and six requests for production (Ex. 10 at RFP Nos. 71-76).

Plaintiffs' Fifth Set of Requests for Production also uses the similar definition "Pirated" or "Piracy," which defines "Pirated" data as including "data contained in or accessed through" most of the same datasets and shadow libraries as in their Fourth Set of Requests for Production.  Ex. 10 at 3.  These Requests seek, *inter alia*, "All Documents and Communications regarding Pirated Data and/or shadow libraries" (*id.* at RFP No. 69) and all documents concerning public availability and

1    valuation of all of NVIDIA's LLMs (*id.* at RFP Nos. 71-72).  And despite that neither the original

2    Complaint ***nor the FAC*** have alleged that NVIDIA's LLMs are capable of producing output that

3    infringes Plaintiffs' copyrights, RFP No. 73 seeks documents "Concerning the ability of

4    [NVIDIA's] LLMs to output verbatim or near-verbatim portions of Training Data."  *Id.* at RFP No.

5    73.

### I.    NVIDIA Moves to Dismiss the First Amended Complaint

7         Concurrently with the filing of this motion, NVIDIA filed its Motion to Dismiss the First

8    Amended Complaint.  ECF No. 240 ("MTD").  NVIDIA moves to dismiss Plaintiffs' direct

9    infringement claim as it relates to three of the newly-added models and all newly-added datasets

10   and data sources, and to dismiss Plaintiffs' contributory and vicarious infringement claims.

11        ***First***, NVIDIA moves to dismiss speculative allegations as to unidentified models, internal

12   research, websites that host unidentified datasets, and purported datasets that lack the specificity

13   required to survive the pleading stage and are outside the scope of amendment permitted by the

14   Court.

15        ***Second***, NVIDIA moves to dismiss Plaintiffs' direct infringement claim (Count I) as it

16   relates to (1) three of the five newly-asserted models—Megatron 345M, Nemotron-4 15B, and

17   Nemotron-4 340B, and (2) allegations concerning Bibliotik, LibGen, Sci-Hub, Z-Library,

18   BitTorrent Protocols, Anna's Archive, and the "SlimPajama" dataset, because Plaintiffs fail to

19   plausibly allege that ***their works*** were contained in datasets downloaded and used by NVIDIA or

20   used to train specific models.[3]  Plaintiffs' allegations in the FAC are too speculative and conclusory

21   to state a claim for copyright infringement.  MTD at 7–11.

22        ***Third***, NVIDIA moves to dismiss Plaintiffs' secondary infringement claims based on

23   Plaintiffs' failure to sufficiently allege any specific act of third-party direct infringement.  As to

24   contributory infringement (Count II), Plaintiffs also failed to sufficiently allege NVIDIA's

25   knowledge of specific infringing acts and that NVIDIA materially contributed to or induced that

---

[3]   For purposes of its Motion to Dismiss only, NVIDIA is not challenging the sufficiency of
Plaintiffs' allegations regarding the InstructRetro-48B and Retro-48B models.  *See* MTD at 3.  Both
models are alleged to have been trained on The Pile.

1  infringement.  MTD at 13–15.  As to vicarious infringement (Count III), Plaintiffs failed to

2  sufficiently allege that NVIDIA had the right and ability to control the purported—but wholly

3  unidentified—third-party infringement or any direct financial interest in such activity.  MTD at 15–

4  16.  Plaintiffs include only a rote repetition of both claims' required legal elements without any

5  factual support.

6      NVIDIA's Motion to Dismiss is scheduled to be heard on April 2, 2026, the Court's first

7  available hearing date.

8  **III.    LEGAL STANDARD**

9      A stay of discovery is consistent with the purpose of a Rule 12(b)(6) motion to dismiss,

10  which is "to enable defendants to challenge the legal sufficiency of complaints without subjecting

11  themselves to discovery."  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.

12  1987).  Courts therefore have "wide discretion in controlling discovery," including "staying

13  discovery upon a showing of 'good cause'" under Federal Rule of Civil Procedure 26(c)(1).  *Yiren*

14  *Huang v. Futurewei Techs., Inc.*, 2018 WL 1993503, at *2 (N.D. Cal. Apr. 27, 2018) (granting

15  request to stay discovery pending resolution of concurrently-filed motion to dismiss) (citations and

16  quotations omitted).  Courts in this District "have applied a two-pronged test to determine whether

17  discovery should be stayed pending resolution of a dispositive motion."  *Id.*; *see Pereda v. General*

18  *Motors LLC*, 2022 WL 19692037, at *1 (N.D. Cal. Mar. 15, 2022) (Tigar, J.) (applying two-part

19  test and staying discovery pending resolution of motion to dismiss).  "First, a pending motion must

20  be potentially dispositive of the entire case, or at least dispositive of the issue at which discovery is

21  directed."  *Yiren Huang*, 2018 WL 1993503, at *2.  "Second, the court must determine whether the

22  pending motion can be decided absent discovery."  *Id.*  "In applying this two-factor test, the court

23  must take 'a preliminary peek' at the merits of the pending dispositive motion to assess whether a

24  stay is warranted."  *Id.* (citation omitted).  A stay is proper where both factors are met.  *See id.*

25      As part of the analysis, courts may also consider "whether a stay of discovery will promote

26  efficiency or conserve the parties' resources, recognizing that engaging in discovery prior to

27  adjudication of a strong motion to dismiss would represent a potential 'waste of resources.'"

28  *Pereda*, 2022 WL 19692037, at *1 (citation omitted).

## IV.    ARGUMENT

Both factors strongly support staying discovery outside the scope of Plaintiffs' original Complaint on allegations that have not survived the pleading stage.  First, NVIDIA's motion to dismiss is dispositive of the issues on which Plaintiffs seek extensive discovery.  Second, the Court can decide NVIDIA's motion to dismiss without additional discovery because NVIDIA challenges only the sufficiency of the pleadings.  Accordingly, a limited discovery stay is warranted pending resolution of NVIDIA's motion to dismiss.

### A.    **NVIDIA's Motion to Dismiss Is Dispositive**

The first prong is satisfied where, as here, a "preliminary peek" at the merits reveals the motion to dismiss is "***potentially*** dispositive" of the issues for which discovery is sought.  *Pereda*, 2022 WL 19692037, at *1 (emphasis added).  The standard is not based on the motion's "likelihood of success."  *Leonard v. CVS Pharm., Inc.*, 2025 WL 1266929, at *2 (N.D. Cal. May 1, 2025).  And courts need not "grapple with the merits" to decide this factor.  *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020).  Rather, the relevant inquiry is simply whether a motion "if meritorious, is potentially dispositive."  *Hamilton v. Rhoads*, 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011).

NVIDIA's motion to dismiss will likely dispose of the allegations and claims for which it seeks a discovery stay.  NVIDIA moves to partially dismiss Plaintiffs' direct infringement claim as it relates to three of five specific newly-added models and all newly-added datasets and data sources for failure to plead facts that plausibly state a claim for relief.  MTD at 7–11.  NVIDIA also moves to dismiss Plaintiffs' newly asserted contributory and vicarious infringement claims on plausibility grounds and for failure to plead legally cognizable claims.  MTD at 11–16.  If granted, NVIDIA's motion will largely return Plaintiffs' direct infringement claim to the scope under the original Complaint (a single dataset and defined models)[4] and will dispose entirely of Plaintiffs' contributory and vicarious infringement claims.  Stripped of these allegations and claims, the information

---

[4] NVIDIA's motion does not challenge, for purposes of the motion to dismiss only, the allegations as to the InstructRetro-48B and Retro-48B models.  Plaintiffs alleged those models were trained on The Pile, including the Books3 dataset, which is already at issue in the case.

1   Plaintiffs seek through their pending Rule 30(b)(6) topics, Requests for Production, Requests for

2   Admission, Interrogatories, ESI Requests, and search terms will be barred.[5]  *See In re Mosaic LLM*

3   *Litig.*, No. 3:24-cv-01451-CRB, ECF No. 163 (denying discovery into claims that did not survive

4   defendants' motion to dismiss); *In re German Auto. Manufacturers Antitrust Litig.*, 335 F.R.D. 407,

5   408 (N.D. Cal. 2020) ("Supreme Court and Ninth Circuit precedent bar discovery based on

6   previously dismissed claims.").

7        Courts in this District routinely grant stays in similar circumstances.  In *Pereda*, for example,

8   the defendant filed a Rule 12(b)(6) motion to dismiss a class action concerning a purported vehicle

9   defect.  *See Pereda*, 2022 WL 19692037, at *1.  This Court found the first factor was met because

10  the pending motion "contain[ed] several dispositive arguments," several of which attacked the

11  plausibility of plaintiffs' allegations.  *See id.*, at *1-2.  Here, too, NVIDIA's motion challenges the

12  plausibility of Plaintiffs' allegations regarding all but two of the newly added models, and all newly

13  added datasets, data sources, and claims.  *See also, e.g.*, *Reveal Chat Holdco*, 2020 WL 2843369, at

14  *3 (granting stay and rejecting plaintiffs' "attempt to grapple with the merits"); *Affinity Credit Union*

15  *v. Apple Inc.*, 2023 WL 12065782, at *2 (N.D. Cal. Apr. 14, 2023) (granting discovery stay pending

16  resolution of motion to dismiss amended complaint); *Leonard*, 2025 WL 1266929, at *2 (same);

17  *Heck v. Amazon.com, Inc.*, 2022 WL 16579372, at *2 (N.D. Cal. Nov. 1, 2022) (same); *Arcell v.*

18  *Google LLC*, 2022 WL 16557600, at *2 (N.D. Cal. Oct. 31, 2022) (same).  Because NVIDIA's

19  motion is at least "***potentially*** dispositive" of the issues at which Plaintiffs seek discovery, the first

20  prong is met.

21        **B.   The Court Can Decide NVIDIA's Motion to Dismiss Without Discovery**

22        The second prong is met, too, because NVIDIA's motion challenges Plaintiffs' allegations

23  on the sufficiency of the pleading alone and can be decided without additional discovery.  *See Yiren*

24  *Huang*, 2018 WL 1993503, at *2; *Pereda*, 2022 WL 19692037, at *2 (finding discovery was

25  unnecessary to resolve motion to dismiss that turned on whether plaintiffs "plausibly allege[d] a

26

27  ───────────────

    [5]   Because NVIDIA does not move to dismiss the two newly-accused "Retro" models, NVIDIA
28  does not seek a stay based on the addition of those models, which—like the NeMo Megatron
    models—were trained on The Pile.

defect in their vehicles"); *Kincheloe v. Am. Airlines, Inc.*, 2021 WL 5847884, at *2 (N.D. Cal. Dec. 9, 2021) (second prong satisfied because "no additional discovery is necessary to decide the motion to dismiss on plausibility grounds").  Not only is discovery unnecessary to decide NVIDIA's pending dispositive motion, but, as set forth below, Plaintiffs' new allegations that are subject to dismissal would drastically expand the scope of discovery and increase the burden of discovery unless this Court enters a temporary stay.  Because both factors are met, NVIDIA has "satisfied its burden to obtain a limited stay of discovery."  *In re Google Digital Advert. Antitrust Litig.*, 2020 WL 7227159, at *3 (N.D. Cal. Dec. 8, 2020) (granting discovery stay for several months pending Google's dispositive motion and rejecting plaintiffs' request for a "narrowly tailored" production of documents).

### C.  A Stay Will Conserve Resources and Promote Efficiency

The Court should stay discovery if it will "promote efficiency or conserve the parties' resources" because "engaging in discovery prior to adjudication of a strong motion to dismiss would represent a potential 'waste of resources.'"  *Pereda*, 2022 WL 19692037, at *1 (citation omitted). Here, "there is good cause to stay discovery at this time because it will promote efficiency and avoid undue burden to" NVIDIA, particularly given the expansive and complex nature of Plaintiffs' new allegations.  *See Arcell*, 2022 WL 16557600, at *1.

*First*, staying discovery on allegations that have not survived the pleading stage pending resolution of NVIDIA's motion to dismiss will ensure that the parties and Court avoid wasting any resources on additional discovery if Plaintiffs' new allegations and legal claims cannot survive the pleadings stage.  The concern for wasting resources is particularly significant here given Plaintiffs' attempt to sweep in discovery as to alleged direct infringement by non-parties on entirely new claims of contributory infringement; distinct LLMs outside the existing model family; and NVIDIA's purported use of Anna's Archive, SlimPajama, LibGen, Sci-Hub, Z-Library, and Bibliotik, and unidentified "other shadow libraries"—directly contradicting Plaintiffs' representation that discovery on the FAC claims would be "co-extensive" with previously served discovery, which was limited by the Court's orders.  Discovery to date has been limited to NVIDIA's use of The Pile to train the NeMo Megatron models, as ordered by the Court.  ECF Nos. 168, 183, 185.  There is no

overlap between the NeMo Megatron family of LLMs and the three newly-asserted models NVIDIA seeks to dismiss, which come from entirely different model families.  Plaintiffs indicated in support of their motion to amend that discovery would remain "co-extensive" with this scope.  ECF No. 193 at 17.

Plaintiffs' recent discovery positions make clear that they are backtracking on their positions in their motion to amend.  Absent a stay, Plaintiffs will seek to re-litigate the discovery scope limitations that the parties have been operating under in order to obtain non-"co-extensive" discovery on the newly-asserted models, datasets, and claims.  Discovery would also begin on the alleged direct infringement of non-parties.  The inverse is also true: if NVIDIA's motion to dismiss is granted, any interim discovery taken on the newly-asserted models and datasets and of non-parties will be irrelevant to the operative claims and would be wasted.

Courts in this District have granted stays based on similar—*lesser*—concerns for wasting party resources.  *See, e.g.*, *Pereda*, 2022 WL 19692037, at *2 (finding stay would "promote efficiency and conserve resources" pending a motion to dismiss class action claims regarding an alleged vehicle defect); *Arcell*, 2022 WL 16557600, at *1 (finding "good cause to stay discovery" because it would "promote efficiency and avoid undue burden to" the defendants given that "discovery in antitrust cases tends to be broad, time-consuming and expensive") (citation omitted). Like in *Arcell*, Plaintiffs here do not seek limited discovery; they seek to depose fifteen NVIDIA witnesses (and counting), including several of its top executives.  McCracken Decl. ¶¶ 7, 10-12, Exs. 4, 6-8; *see Arcell*, 2022 WL 16557600, at *1 (staying depositions of Tim Cook, Sundar Pichai, and other Apple and Google executives); *see also Kincheloe*, 2021 WL 5847884, at *2-3 (staying discovery pending motion to dismiss amended complaint where additional discovery would require a "substantial undertaking").

The parties' discovery efforts to date just on *one* model family and dataset illustrate the magnitude of discovery that must be taken on the newly-asserted models, datasets and websites, and claims, and the reciprocal waste to be had.  Even under the original Complaint's relatively confined scope, NVIDIA has already responded to over 140 written discovery requests, reviewed at least 330,000 documents and dozens of gigabytes of data based on the original Complaint.  *See*

McCracken Decl. ¶ 3.  In comparison, the FAC *triples* the number of claims and introduces *multiple* new datasets, new models, and non-parties.  Even just redoing the existing discovery will be voluminous and burdensome (let alone adding additional discovery) and, if disposed of through NVIDIA's motion, wasteful.  A modest discovery stay pending resolution of NVIDIA's motion is justified to foreclose this risk.  *See Head v. Cnty of Sacramento*, 2021 WL 1238283, at *2 (E.D. Cal. Apr. 2, 2021) (granting motion to stay partial discovery pending resolution of motion to dismiss amended complaint because, "based on the volume of discovery propounded to date, defendant would incur an unnecessary burden and expense if required to respond to discovery for claims that may be dismissed").

**Second**, staying discovery until NVIDIA's motion is resolved will promote efficiency by focusing the issues before discovery proceeds, if at all.  The parties have already litigated three motions on the appropriate scope of discovery under the original Complaint.  *See* ECF Nos. 168, 183, 185.  Plaintiffs' scattershot FAC is likely to result is similar disputes given its broad allegations purporting to sweep in unidentified LLMs and datasets.  *See, e.g.*, FAC ¶¶ 21, 76, 77 (referring to "NVIDIA's LLMs" generally); ¶¶ 58, 78 (referring to unidentified "other shadow libraries").  Allowing the Court to first decide NVIDIA's motion will provide guidance on the appropriate scope of discovery—and limit unnecessary motion practice regarding it—should any new claims survive.  *Yiren Huang*, 2018 WL 1993503, at *4 ("first resolving the motion to dismiss is the better course" where the motion "may narrow the issues and benefit both parties"); *Reveal Chat Holdco*, 2020 WL 2843369, at *4 (discovery stay "allows all parties to commence discovery with a better understanding of which claims, if any, they must answer").

**Third**, staying discovery on allegations that have not survived the pleading stage until the Court rules on NVIDIA's motion to dismiss will not unduly prejudice Plaintiffs.  After all, Plaintiffs argued that discovery for the FAC would be "co-extensive" with previously served discovery and have represented that it requires no change to the case schedule on a meet-and-confer with NVIDIA.  ECF No. 193 at 17; McCracken Decl. ¶ 10.  At worst, a stay will modestly delay the resolution of this case.  *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *3 (C.D. Cal. Sept. 17, 2015) (prejudice from a short stay is "extremely limited" because "the Court will promptly rule" on the motions to

dismiss).  Any marginal prejudice from such delay, however, is substantially outweighed by the benefits to **both** parties and non-parties—namely, avoiding waste on issues that may ultimately be disposed of and avoiding unnecessary motion practice through early clarity on the appropriate scope of discovery.  Given Plaintiffs' representations about "no prejudice" because of "co-extensive discovery" (ECF No. 193 at 17) that were made while the Scope Orders (ECF Nos. 168, 183, 185) were in force in their motion to amend, there should be "no prejudice" to Plaintiffs by a short interlude to address the scope of the claims before the parties begin depositions.  After all, the parties took nearly two years (and were scheduled to take two years) to complete discovery.  Plaintiffs have maintained that no adjustments to the case schedule are necessary—which includes the substantial completion of document productions and privilege logs.  McCracken Decl. ¶ 10.  By Plaintiffs' own admission, they have no need to retread that ground.

## V.    CONCLUSION

NVIDIA respectfully asks the Court to grant NVIDIA's Motion to Stay Discovery on Claims and Allegations Subject to NVIDIA's Motion to Dismiss pending resolution of NVIDIA's Motion to Dismiss the First Amended Complaint.


 Dated:  January 29, 2026                    Respectfully Submitted,


                                   By:    /s/ Sean S. Pak
                                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                        Sean S. Pak (SBN 219032)
                                        seanpak@quinnemanuel.com
                                        50 California Street, 22nd Floor
                                        San Francisco, CA 94111
                                        Telephone: (415) 875-6600
                                        Facsimile: (415) 875-6700

                                        Andrew H. Schapiro (admitted *pro hac vice*)
                                        andrewschapiro@quinnemanuel.com
                                        191 N. Wacker Drive, Suite 2700
                                        Chicago, Illinois 60606
                                        Telephone: (312) 705-7400
                                        Facsimile: (312) 705-4001

                                        Alex Spiro (admitted *pro hac vice*)
                                        alexspiro@quinnemanuel.com

295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Rachael L. McCracken (SBN 252660)
rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant,*
*NVIDIA Corporation*

NVIDIA'S MOTION TO STAY DISCOVERY ON CLAIMS AND ALLEGATIONS SUBJECT TO NVIDIA'S
MOTION TO DISMISS

1

**FILER'S ATTESTATION**

2          Pursuant to Civil Local Rule 5-1(h)(3), I attest under penalty of perjury that concurrence in

3 the filing of the foregoing document has been obtained from the signatory to this document.

4

5 Dated: January 29, 2026

6                                               By: */s/ Rachael L. McCracken*
                                                    Rachael L. McCracken

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28