QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Alex Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant,*
*NVIDIA Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ABDI NAZEMIAN, BRIAN KEENE, STEWART O'NAN, ANDRE DUBUS III and SUSAN ORLEAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Master File Case No. 4:24-cv-01454-JST (SK)<br><br>**DEFENDANT NVIDIA CORPORATION'S REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY ON CLAIMS AND ALLEGATIONS SUBJECT TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: February 19, 2026<br>Time: 2:00 p.m.<br>Location: Videoconference<br>Judge: Hon. Jon S. Tigar |

# TABLE OF CONTENTS

Page


I. Introduction ..... 1

II. Argument ..... 3

A. NVIDIA's Motion Satisfies The Controlling "Preliminary Peek" Standard ..... 3

1. NVIDIA's Motion Need Not Be Dispositive of the Entire Case to Warrant a Partial Stay ..... 3

2. The Court Need Not Consider the Merits of NVIDIA's Pending Motion to Dismiss ..... 6

B. Plaintiffs' Mischaracterize Their Own Representation and Seek to Contravene the Court's Order ..... 9

C. Allowing Discovery to Proceed Would Permit an Improper Fishing Expedition ..... 13

D. Plaintiffs Agreed to the Prejudice They Now Assert ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anjelino v. N.Y. Times Co.*,
200 F.3d 73 (3d Cir. 1999) ........ 12

*Arcell v. Google LLC*,
2022 WL 16557600 (N.D. Cal. Oct. 31, 2022) ........ 12, 15

*Barrett v. Apple Inc.* ........ 5

*In re Cal. Bail Bond Antitrust Litig.*,
No. 19-cv-00717-JST, ECF No. 64 (N.D. Cal. July 30, 2019) ........ 5

*In re California Bail Bond Antitrust Litigation*,
2020 WL 8921515 (N.D. Cal. Dec. 10, 2020) ........ 5

*Concord Music Grp., Inc. v. Anthropic PBC*,
2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ........ 8

*Duffy v. ASNY NY, LLC*,
2022 WL 1785395 (D. Nev. May 31, 2022) ........ 14

*In re Google Generative AI Copyright Litig.*,
2025 WL 2624885 (N.D. Cal. Sept. 11, 2025) ........ 8

*Gospel Missions of Am. v. City of L.A.*,
328 F.3d 548 (9th Cir. 2003) ........ 12

*Helfand v. Gerson*,
105 F.3d 530 (9th Cir. 1997) ........ 12

*Kincheloe v. Am. Airlines, Inc.*,
2021 WL 5847884 (N.D. Cal. Dec. 9, 2021) ........ 9

*Leonard v. CVS Pharm., Inc.*,
2025 WL 1266929 (N.D. Cal. May 1, 2025) ........ 6

*Micron Tech., Inc. v. United Microelectronics Corp.*,
2018 WL 7288018 (N.D. Cal. Mar. 16, 2018) ........ 4

*In re Mosaic LLM Litig.*,
2025 WL 2402677 (N.D. Cal. Aug. 19, 2025) ........ 8

*Ningbo Yituo Enter. Mgmt. Co. v. Goplus Corp.*,
2025 WL 2995116 (C.D. Cal. Sept. 18, 2025) ........ 15

*Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, 2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) .......... 5

*Peck Ormsby Constr. Co. v. City of Rigby*, 2011 WL 13141451 (D. Idaho Aug. 22, 2011) .......... 4

*Pereda v. Gen. Motors, LLC*, 2022 WL 19692037 (N.D. Cal. Mar. 15, 2022) .......... 3, 12, 15

*Railware, Inc. v. Peninsula Corridor Joint Powers B* 2026 WL 104229 (N.D. Cal. Jan. 14, 2026) .......... 7

*Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) .......... 2, 3, 7, 8

*Rexford Props. LLC v. AGCS Marine Ins. Co*., 2024 WL 755874 (E.D. Cal. Feb. 23, 2024) .......... 14

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) .......... 12

*Sleep Science Partners v. Lieberman*, 2010 WL 2219196 (N.D. Cal. May 28, 2010) .......... 4

*SVB Financial Group v. FDIC*, 2024 WL 1898439 (N.D. Cal. Apr. 29, 2024) .......... 7

*WalkMe Ltd. v. Whatfix, Inc.*, 2024 WL 2788451 (N.D. Cal. May 29, 2024) .......... 4

*Yiren Huang v. Futurewei Techs, Inc.*, 2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) .......... 3

## I. Introduction

Mere weeks before the close of fact discovery in a case limited to one dataset (Books3) and one model family (Nemo Megatron), Plaintiffs amended their complaint in an effort to radically expand the scope to encompass "any dataset containing books" and "any and all LLMs [NVIDIA] developed, trained, or created, or which are currently in development." ECF Nos. 241-10 at 8, 241-11 at 3. Because these new allegations fail to state a claim, NVIDIA has moved to dismiss them, along with many of the other new allegations in the amended complaint. But, while the Court considers the motion to dismiss, Plaintiffs have taken the position that the broad expansion they seek requires NVIDIA to "re-review [hundreds of thousands of] documents" for responsiveness to these new allegations, supplement over 140 discovery requests, and produce documents on "any other models trained on … books downloaded from shadow libraries …"[1] And Plaintiffs have confirmed:

- "Plaintiffs reserve the right to serve additional written discovery requests. … Plaintiffs may need to serve additional discovery requests or increase the discovery caps…"
- "Plaintiffs reserve the right to serve additional third-party discovery."
- "Plaintiffs note that under the ESI Order, Dkt. 98, they may request additional custodians. Plaintiffs reserve the right to re-negotiate custodian limits."; and
- "Plaintiffs reserve the right to request additional search terms." *Id.*

Far from the "largely co-extensive" discovery Plaintiffs represented they would seek to secure amendment; this is a drastic transformation of the scope of discovery and likely derailment of the case schedule. While the Court considers the motion to dismiss, NVIDIA requests a partial and commonsense stay to prevent discovery into only the claims and allegations that have been challenged and may not survive NVIDIA's pending motion to dismiss. This stay will ensure that Plaintiffs' claims are viable before Plaintiffs are allowed unfettered discovery. NVIDIA has already completed document discovery and written discovery after two years of litigation. The amended complaint returns NVIDIA to square one and requires it to redo an expensive and burdensome discovery process again, at a significantly expanded scope, all before those claims have survived the pleading stage.

[1] Declaration of Andrew Schapiro ¶ 9, Ex. 1.

Courts routinely grant such stays in comparable cases, and on less extreme facts, to protect parties from wasteful and burdensome discovery—a protection at the heart of Rule 12(b)(6).

The law is clear: discovery should be stayed when a pending motion is potentially dispositive of the issues to which that discovery is directed, and when the motion can be decided without additional discovery. NVIDIA readily meets both factors. NVIDIA's motion to dismiss is dispositive of all but two[2] of the newly added models, all newly added datasets and data sources, and both newly added legal claims. If granted, the motion will render irrelevant Plaintiffs' new discovery. (NVIDIA is not seeking to stay discovery on the issues not subject to the motion to dismiss.) And, there is no dispute that the motion will not require discovery.

Plaintiffs' opposition to the stay turns almost entirely on a selective quotation of the applicable legal standard that omits the portion applicable here. Contrary to Plaintiffs' claim that a stay may be granted only if the pending motion is "potentially dispositive of the ***entire case***," (Opp. at 8), it is settled that a stay is proper if the pending motion is "at least dispositive ***on the issue at which discovery is directed***." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020) (emphasis added).

Plaintiffs are therefore left to contend that NVIDIA's modest proposed stay would be prejudicial, but that contention is meritless. While Plaintiffs blame NVIDIA for extending the discovery period, the true impetus for any extension is Plaintiffs' barrage of broad new discovery requests targeting all of NVIDIA's LLM-related activities and datasets with no connection to Plaintiffs' works. Indeed, even with a potential 60-day extension, discovery will not be completed because Plaintiffs have confirmed they still have yet to serve all the document, written, and third-party discovery they intend to seek. Schapiro Decl. Ex. 1. Here, the balance weighs heavily in favor of a stay; a stay will prevent enormous waste if the Court dismisses the new claims, and would result in only a modest delay in discovery if the Court does not dismiss the new claims. Moreover, Plaintiffs' assertion of prejudice related to that modest delay is especially unpersuasive given

[2] NVIDIA is not seeking a stay as to InstructRetro-48B and Retro-48B, nor does its request that the stay extend to any of the previously pled allegations in the original complaint. NVIDIA is proceeding expeditiously with that discovery.

Plaintiffs' express representation in moving to amend that discovery under the amended complaint would be "largely coextensive" with the original discovery.

The Court should grant NVIDIA's request for a brief, partial stay pending resolution of the motion to dismiss. The stay would promote judicial efficiency and prevent burdensome discovery on claims that have not survived the pleading stage.[3]

## II. Argument

### A. NVIDIA's Motion Satisfies The Controlling "Preliminary Peek" Standard

Under the deferential "preliminary peek" standard, a stay of discovery is warranted where (1) the pending motion is "potentially dispositive" of the claims at issue, and (2) where the motion can be decided without the disputed discovery. *Yiren Huang v. Futurewei Techs, Inc.*, 2018 WL 1993503, at *2 (N.D. Cal. Apr. 27, 2018). Plaintiffs concede that additional discovery is not required to decide NVIDIA's motion to dismiss; therefore the issue before the Court is only whether NVIDIA's motion to dismiss is potentially dispositive ***of the issues to which that discovery is directed***. As NVIDIA explained in its opening brief, there is no question that NVIDIA's stay motion meets that standard. ECF No. 241 at 15-17.

#### 1. NVIDIA's Motion Need Not Be Dispositive of the Entire Case to Warrant a Partial Stay

First, Plaintiffs argue that NVIDIA's motion cannot support a stay because it does not seek to dismiss Plaintiffs' "***entire case***" and only challenges new "allegations and claims" in the First Amended Complaint. Opp. at 8 (emphasis added). This argument fails at the threshold. The correct legal standard is whether the motion is "potentially dispositive of the entire case, ***or at least dispositive on the issue at which discovery is directed***." *Reveal Chat*, 2020 WL 2843369, at *3 (emphasis added); *Yiren Huang*, 2018 WL 1993503, at *2 (same); *Pereda v. Gen. Motors, LLC*, 2022 WL 19692037, at *2 (N.D. Cal. Mar. 15, 2022) (same). The disjunctive "or" is critical. A motion need

---

[3] On Friday, February 6, 2026, this Court denied NVIDIA's request for a protective order and directed NVIDIA to engage in written discovery while the motion to stay is being adjudicated. ECF No. 247. NVIDIA immediately complied with that order; it began reviewing documents for production, made a production on Monday, February 9, and will make another production tonight. Schapiro Decl. ¶¶ 6-7.

not dispose of every claim or every allegation; it needs to dispose only of the particular issues to which discovery is directed. Plaintiffs do not dispute that is the case here.

Plaintiffs seek discovery on three categories of new allegations: (1) newly-added models (all but two of which NVIDIA's motion challenges) (ECF No. 240 at 9), (2) multiple new datasets and data sources (all of which NVIDIA's motion challenges), and (3) new contributory and vicarious infringement claims (both of which NVIDIA's motion challenges). *See* ECF No. 240 at 19-23. If the Court grants NVIDIA's motion to dismiss these allegations and claims, discovery on them will be eliminated entirely. That is the quintessential example of a motion that is "dispositive on the issue at which discovery is directed."

Contrary to Plaintiffs' assertion, courts routinely grant discovery stays in this posture. Opp. at 10-11. In *WalkMe Ltd. v. Whatfix, Inc.*, 2024 WL 2788451, at *2 (N.D. Cal. May 29, 2024), for example, the court granted a motion to stay discovery on certain claims, but not others, pending resolution of motion to dismiss where "a ruling on the motion would be dispositive of the issues at which discovery is directed." Similar cases abound. *Micron Tech., Inc. v. United Microelectronics Corp.*, 2018 WL 7288018, at *2 (N.D. Cal. Mar. 16, 2018) (staying discovery as to all defendants where pending motion would dismiss claims as to one defendant but leave others in the case); *Peck Ormsby Constr. Co. v. City of Rigby*, 2011 WL 13141451, at *2 (D. Idaho Aug. 22, 2011) (granting stay where "the motions are potentially dispositive of the claims they address").

Plaintiffs' reliance on *Sleep Science Partners v. Lieberman* is unavailing. Opp. at 8-9. There, the plaintiff brought multiple claims that all arose from "the same transactions, materials or events." 2010 WL 2219196, at *1 (N.D. Cal. May 28, 2010). The defendant moved to dismiss only some of the claims and participated in extensive discovery on all claims—including responding to interrogatories and document requests and sitting for a deposition—*before* seeking a stay, which it did only after the court dismissed some claims with leave to amend. *Id.* The court denied the stay because the motion to dismiss would not resolve the entire case and the requested stay would delay discovery even into claims that would necessarily survive. *Id.* Here, in contrast, the new allegations involve entirely distinct models, datasets, and legal theories that do not overlap with the existing scope of discovery, and NVIDIA seeks to stay discovery only as to those new allegations subject to the

motion to dismiss. Discovery will, and is, proceeding on claims that are not challenged. In addition, NVIDIA moved for a stay immediately after Plaintiffs filed the FAC and before responding to Plaintiffs' post-amendment discovery requests targeted only at Plaintiffs' new allegations that NVIDIA seeks to dismiss. Unlike in *Sleep Science*, staying discovery on these new allegations will not significantly delay discovery on the surviving claims (which is largely complete) but will simply avoid wasteful and premature discovery on allegations that may not survive the pleading stage.

Plaintiffs' reliance on *In re California Bail Bond Antitrust Litigation*, 2020 WL 8921515 (N.D. Cal. Dec. 10, 2020), is also misplaced. Opp. at 9. In *Bail Bond*, this Court initially *granted* the defendants' request to stay discovery pending resolution of their motion to dismiss. *In re Cal. Bail Bond Antitrust Litig.*, No. 19-cv-00717-JST, ECF No. 64 at 2-3 (N.D. Cal. July 30, 2019). The Court found that the defendants' motion was "potentially dispositive" and could be "decided without discovery," and emphasized that "discovery in this case, once undertaken, will be significant and complex," which underscored the need for a discovery stay. *Id.* The defendants then moved to dismiss the amended complaint, and some of the plaintiffs' claims survived that motion. *Id.*, ECF No. 91. After ruling on that motion to dismiss, the Court lifted the stay because the plaintiffs had "adequately pleaded the existence of an antitrust conspiracy" and "some of Plaintiffs' claims ha[d] already survived a motion to dismiss," such that the parties should commence discovery on the same. *Id.*, ECF No. 126 at 2. Shortly thereafter, while discovery was in its earliest stages, the defendants filed a *second* motion to dismiss and sought a *second* stay, which this Court denied. 2020 WL 8921515, at *1. Unlike in *Bail Bond*, NVIDIA seeks its first stay and the new allegations seek to force NVIDIA to ***redo*** discovery on a vastly different scope after expending substantial resources on discovery under the original complaint over two years, before Plaintiffs' eleventh-hour amendment.

In *Barrett v. Apple Inc.*, the court denied a stay in part because the defendant did "not explain why discovery in this case would be any more burdensome than it is on parties to other civil lawsuits." 2020 WL 13815568, at *2 (N.D. Cal. Oct. 22, 2020). The same is true of *Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, 2018 WL 1569811, at *2 (N.D. Cal. Feb. 16, 2018) (denying stay where defendants "have not offered a particularized showing" that discovery is more burdensome). Here, by contrast, NVIDIA has explained in detail why discovery on the FAC's new allegations would

be exponentially more burdensome than discovery under the original Complaint. Mot. at 12-14; McCracken Decl. ¶ 3. Put simply, Plaintiffs are now demanding that, after litigating a Court-ordered scope of the case through almost the close of fact discovery, NVIDIA now return to the start and litigate a drastically expanded case and entirely redo the discovery it has provided over the past two years. This means, at the very least, that NVIDIA will have to redo document discovery (which involved reviewing hundreds of thousands of documents), provide new responses to more than 140 discovery requests on a drastically expanded set of models and data sources, and review more documents on additional search terms and possibly additional custodians—all to address new allegations subject to NVIDIA's pending motion to dismiss. And this burden is based just on what Plaintiffs have demanded in the three weeks since amendment; they have now confirmed they intend to seek more. Schapiro Decl., Ex. 1.

The distinction Plaintiffs attempt to draw between their "core" allegations and the "new" allegations is equally unavailing. Opp. at 8-9. Plaintiffs argue that because some allegations in the FAC relate to The Pile and NeMo Megatron models (which are not challenged by NVIDIA's motion), the entire motion somehow fails to satisfy the dispositive standard. That is a non sequitur. The question is not whether *some* discovery will continue; it is whether the motion is dispositive of the issues at which *the disputed discovery* is directed. Here, the disputed discovery concerns the newly added models, datasets, data sources, and claims. NVIDIA challenges all these new allegations and it seeks to stay discovery *only* on these new allegations. The fact that discovery on The Pile and NeMo Megatron models may continue does not undermine the need for a stay pertaining to the challenged new allegations, which relate to entirely different models, datasets, and data sources.

### 2. The Court Need Not Consider the Merits of NVIDIA's Pending Motion to Dismiss

Second, Plaintiffs misstate the standard of review by suggesting that courts must "consider the merits of the motion to dismiss," including the "***likelihood of success on the merits***." Opp. at 13-16. Not so. "[L]ikelihood of success is not the standard for a stay of discovery." *Leonard v. CVS Pharm., Inc.*, 2025 WL 1266929, at *2 (N.D. Cal. May 1, 2025). And courts need not "grapple with the merits" to decide this factor. *Reveal Chat*, 2020 WL 2843369, at *3 (rejecting Plaintiffs effort to

grapple with the merits of the motion to dismiss). "The question is only whether [the defendant's] motion to dismiss is '***potentially*** dispositive'"—not whether the court would be inclined to grant it. *Id.* (emphasis in original).

Plaintiffs cite *SVB Financial Group v. FDIC* for the proposition that courts must conduct a detailed analysis of the motion's likelihood of success. Opp. at 13. But *SVB Financial* does not displace the preliminary peek standard. To the contrary, the decision reaffirms the traditional two-part inquiry: (1) whether the motion is potentially dispositive, and (2) whether it can be decided without discovery. 2024 WL 1898439, at *1 (N.D. Cal. Apr. 29, 2024). The court went beyond a "preliminary peek" at the merits only because the defendant failed to explain why its motion was potentially dispositive. *Id.* at *3. The *SVB Financial* court found a stay would be improper given the significant number of "contested issues" that "will require careful consideration and are subjects of reasonable dispute." *Id.*[4] Here, by contrast, NVIDIA has clearly identified the issues to which the disputed discovery is directed and has shown that its motion challenges each of those issues. Mot. at 4-8, 12-14. There are no "contested issues" requiring careful consideration; the dispositive nature of NVIDIA's motion is readily apparent. And, unlike *SVB Financial*, where the motion was to dismiss an initial complaint, NVIDIA already provided discovery and litigated the original complaint for nearly two years and would have to redo all that effort to address the drastically expanded scope of the case.

The instant case is also different from *SVB Financial*, where the plaintiff alleged specific facts supporting its claims under established legal doctrines, because Plaintiffs' new allegations are conclusory and speculative. For example, the FAC is replete with vague references to unidentified "NVIDIA[] LLMs" (FAC ¶ 77), "internal models, including checkpoints" that were never named or published (*id.* ¶ 43), "internal research which did not result in a fully trained LLM" (*id.* ¶ 44), unspecified "NextLargeLLM" models (*id.* ¶ 53), and allegations of unspecified "other shadow libraries" or datasets (*id.* ¶¶ 58, 78). But Plaintiffs provide no factual allegations connecting these

[4] Similarly, in *Railware, Inc. v. Peninsula Corridor Joint Powers Board*, (Opp. at 14 n.4) the court found "contested issues that prevent it from" determining whether the pending motion to dismiss was "potentially dispositive of the entire case." 2026 WL 104229, at *2 (N.D. Cal. Jan. 14, 2026).

unidentified models, research, or "shadow libraries" to their works. *See* ECF No. 240 at 11-13. And even those allegations concerning named models, datasets, and websites, such as the Megatron 345M, lack any nexus to Plaintiffs' works. FAC ¶ 32. Other courts in this district have easily concluded that similar allegations fail to state a claim. *In re Google Generative AI Copyright Litig*., 2025 WL 2624885, at *7 (N.D. Cal. Sept. 11, 2025) (dismissing claims with prejudice where "Plaintiffs do not allege that any of ***their works*** were included in training datasets used to develop these models" (emphasis added)); *In re Mosaic LLM Litig.*, 2025 WL 2402677, at *2 (N.D. Cal. Aug. 19, 2025) (dismissing claims with prejudice where plaintiffs "do not allege facts that could establish that the … models are actually trained on any shadow library websites, let alone those that contain ***Plaintiffs' works***" (emphasis added)).

Similarly, Plaintiffs' contributory and vicarious infringement claims lack any concrete allegations of specific infringing acts by third parties. Plaintiffs allege only that NVIDIA provided a framework containing a script that *could* be used to download The Pile—but they do not identify any customer who used the script, much less any customer who used The Pile to infringe Plaintiffs' works. MTD at 11-13. These allegations are "conclusory" and "provide no facts regarding direct third-party infringement," which is fatal to secondary infringement claims. *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1487988, at *4 (N.D. Cal. Mar. 26, 2025).

Finally, Plaintiffs argue that NVIDIA's motion is unlikely to succeed because the FAC adequately alleges that NVIDIA downloaded works from Anna's Archive and trained models on stolen books. Opp. at 13-15. But this argument is not supported by the cited facts, which do not show anything (let alone specific works) were downloaded, and conflates the standard for a discovery stay with the standard for a motion to dismiss. The question at this stage is not whether NVIDIA will prevail on its motion—it is whether the motion is "*potentially* dispositive" of the issues at which discovery is directed. *Reveal Chat*, 2020 WL 2843369, at *3 (emphasis in original). NVIDIA's motion meets that standard.

### B. Plaintiffs' Mischaracterize Their Own Representation and Seek to Contravene the Court's Order

In addition to the two factors of the "preliminary peek" standard, "courts in this circuit sometimes also consider whether a stay of discovery will promote efficiency or conserve the parties' resources, recognizing that engaging in discovery prior to adjudication of a strong motion to dismiss would represent a potential 'waste of resources.'" *Kincheloe v. Am. Airlines, Inc.*, 2021 WL 5847884, at *1 (N.D. Cal. Dec. 9, 2021). Here, as in *Kincheloe* and many other cases, a partial stay of discovery will promote efficiency.

In their motion for leave to amend, Plaintiffs represented that "[d]iscovery into NVIDIA's downloading of Plaintiffs works from Anna's Archive will be ***largely co-extensive*** with discovery into NVIDIA's downloading of Plaintiffs' works from Books3." ECF No. 193 at 17 (emphasis added). When Plaintiffs made this representation, the Court had *already* issued three orders limiting discovery to The Pile dataset and the NeMo Megatron family of models. ECF Nos. 168, 183, 185. Plaintiffs' representation about the scope of discovery for the added allegations was the centerpiece of their argument against prejudice. And this Court referenced that representation in granting Plaintiffs leave to amend, noting "Plaintiffs' argument that any additional discovery will be largely coextensive with discovery that is already ongoing." ECF No. 232 at 9.

Now that amendment has been granted, however, Plaintiffs attempt to run away from the limits that they previously represented would constrain them. Opp. at 4. Plaintiffs' discovery requests have been anything but "co-extensive," and instead seek discovery into "any and all LLMs [NVIDIA] developed, trained, or created, or which are currently in development." Mot. Ex. 10 at 3 (emphasis added). This definition is boundless. It extends far beyond even the order granting leave to amend, which was only as to "five other LLMs." ECF No. 232 at 6. The chart below summarizes the changes in allegations from the original complaint to the amended complaint, and highlights in red the new allegations that are being challenged in the pending motion to dismiss.

| **Category** | **Original Complaint** | **First Amended Complaint** |
|---|---|---|
| Accused Models | NeMo Megatron family | NeMo Megatron family<br>InstructRetro-48B<br>Retro-48B<br>**Megatron 345M**<br>**Nemotron-4 15B**<br>**Nemotron-4 340B**<br>**NeMo GPT-3 10B**<br>**NextLargeLLM**<br>**Unspecified "NVIDIA's LLMs"** |
| Accused Datasets/Sources | The Pile (Books3) | The Pile (Books3)<br>**Anna's Archive**<br>**LibGen**<br>**Sci-Hub**<br>**Z-Library**<br>**Bibliotik**<br>**SlimPajama**<br>**Unidentified "other shadow libraries"** |
| Legal Claims | Direct infringement | Direct infringement<br>**Contributory infringement**<br>**Vicarious infringement** |
| Third-Party Infringement | None | **Alleged claims that require direct infringement by non-parties** |

Similarly, Plaintiffs have massively expanded their discovery requests to address their new allegations. ECF Nos. 241-10 at 8, 241-11 at 3. These overbroad definitions and requests confirm that Plaintiffs seek discovery far exceeding the "co-extensive" scope they represented to this Court. For example, within days of filing the FAC—and even while their motion for leave to amend was still pending—Plaintiffs unleashed a barrage of discovery directed to the new allegations:

- On December 18, 2025, Plaintiffs served their 30(b)(6) deposition notice with 25 topics, of which at least 24 are directed at new allegations (*e.g.*, Topic 1 ("**Any Pirated Books Datasets** You used or are currently using to develop **Your LLMs**"[5])) (ECF No. 241-2 at 9);
- On December 19, 2025, Plaintiffs served their Fourth Set of RFPs with four new requests targeting new allegations (*e.g.*, RFP 67 ("All Documents and Communications, including contracts, concerning **Your customers' use of Your services to develop LLMs**")) (ECF

[5] Plaintiffs defined "LLM" as "a generative AI software program designed to emit text outputs in response to user prompts . . . ." ECF No. 241-2 at 7.

No. 241-3 at 8) and their Fourth Set of Interrogatories with one new request targeting new allegations ("Identify all platforms and file locations where You store or stored Pirated Books Datasets, including but not limited The Pile, Books3, **RedPajama, RedPajama-Books, and SlimPajama, and datasets containing copyrighted books sourced from The Eye, Huggingface, Library Genesis ("Libgen"), Pirate Library Mirror ("PiLiMi"), Z-library ("Z-lib"), Bibliotik, Sci-hub, Internet Archive, and Anna's Archive**") (ECF No. 241-4 at 6);

- On January 21, 2026, Plaintiffs served their Fifth Set of Interrogatories with four new interrogatories (*e.g.*, Rog 22 ("Identify all Persons you provided resources, tools, or guidance to in connection with obtaining any dataset containing books, including but not limited to The Pile, Books3, **RedPajama, or SlimPajama, and any dataset acquired from a shadow library such as (but not limited to) Anna's Archive, LibGen, Z-Library, PiLiMi, Sci-Hub, or Internet Archive**")) (ECF No. 241-10 at 9);[6]
- On January 23, 2026, Plaintiffs served their Fifth Set of RFPs with eleven new requests (*e.g.*, RFP 69 ("All Documents and Communications regarding **Pirated Data and/or shadow libraries**, Including all Documents and Communications concerning (or with) **Library Genesis (aka LibGen), Z-Library (aka Z-Lib), B-ok, Sci-Hub, Bibliotik, Internet Archive, Anna's Archive, Pirate Library Mirror, and The Eye, or the creators of datasets containing Pirated Data, including TogetherAI and Cerebras** …"); RFP 72 ("All Documents and Communications concerning any valuation of any of **Your LLMs**"[7]); RFP 73 ("All Documents and Communications Concerning the ability

[6] Plaintiffs improperly served these requests *before* leave to amend was granted in violation of operative orders setting the scope of discovery. ECF Nos. 168, 183, 185.

[7] Plaintiffs define "Your LLMs" as "**any and all LLMs You developed, trained, or created, or which are currently in development, including, but not limited to**, the NeMo Megatron Models (NeMo Megatron-GPT 1.3B; NeMo Megatron GPT 126M; NeMo Megatron GPT 5B; NeMo Megatron GPT 20B; NeMo Megatron GPT 40B; NeMo Megatron GPT 175B; NeMo Megatron T5 220M; NeMo Megatron T5 3B; NeMo Megatron T5 11B; NeMo Megatron T5 23B; **Megatron 345M (also known as Megatron GPT2 345M), Nemo GPT-3 10B, InstructRetro-48B, Retro-48B, NextLargeLLM (also known as NextLLMLarge and Next Generation LLM), Nemotron-4 15B, and Nemotron-4 340B**)." ECF No. 241-11 at 3.

of **Your LLMs to output** verbatim or near-verbatim portions of Training Data.") (ECF No. 241-11 at 8); and

- On January 16, Plaintiffs requested "supplementation" of existing discovery, including more than 140 existing responses, (Opp. at 5-6), but this "supplementation" is actually new discovery given that what Plaintiffs are calling "supplementation" was previously excluded from the scope of the case and involves entirely new models and datasets.

Plaintiffs' efforts to justify this extraordinary expansion of the discovery scope are entirely unpersuasive. While they claim that they caveated their prior representation, the record speaks for itself and makes clear that Plaintiffs said discovery on the FAC would be "largely co-extensive" with existing discovery, period. ECF No. 193 at 12.[8] The meaning of coextensive is not in dispute: "If two things are coextensive, they reach the same limits or cover the same area."[9] Plaintiffs knew—because they litigated three discovery disputes about it—that discovery in this case was confined to The Pile dataset and the NeMo Megatron family of models. ECF Nos. 168, 183, 185. Against that backdrop, representing that new discovery would be "largely co-extensive" could mean only one thing: the scope would remain substantially the same.

A brief stay pending resolution of the motion to dismiss is warranted. *Pereda*, 2022 WL 19692037, at *2 (granting stay pending motion to dismiss); *Arcell v. Google LLC*, 2022 WL

---

[8] After representing that discovery for the new allegations would be "co-extensive," Plaintiffs should be held to that representation. "[J]udicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion." *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997); *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003). Here, Plaintiffs' representation that discovery would be "largely co-extensive" was a deliberate statement made to secure leave to amend over NVIDIA's prejudice objections. This is precisely the "manipulative assertion of inconsistent positions" that judicial estoppel prevents. *Helfand*, 105 F.3d at 535 ("The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, legal or factual."); *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 100 (3d Cir. 1999) (affirming denial of motion for further discovery and "holding counsel to the representation that no further discovery was needed" where counsel previously represented in opposition to a motion to dismiss that plaintiffs "do not require further discovery").

[9] *Coextensive*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/coextensive (last accessed January 28, 2026).

16557600, at *2 (N.D. Cal. Oct. 31, 2022) (granting stay of depositions of senior executives pending motion to dismiss).

**C. Allowing Discovery to Proceed Would Permit an Improper Fishing Expedition**

"The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). While plaintiffs may amend their complaints if they later obtain facts supporting their claims, they cannot force defendants to produce discovery on insufficiently pled claims in hope of finding such facts.

Consider Plaintiffs' allegations about the Nemotron models. Plaintiffs allege that these models were trained on datasets "composed of 4.6% books" and speculate that "NVIDIA could not obtain the level of books needed for the Nemotron models without pirating copyrighted books, including Plaintiffs' Infringed Works." FAC ¶¶ 59-61. But speculation based on dataset size is not a factual allegation. Plaintiffs are the authors of eight asserted books. *See* ECF No. 235-1. A model could be trained on books and not be trained on their specific books. Plaintiffs do not allege which datasets were used to train these models, whether those datasets contained their works, or any other facts that would make infringement plausible, rather than merely possible. Allowing discovery to proceed before Plaintiffs have adequately pled these basic facts would convert discovery into an improper fishing expedition.

Plaintiffs' secondary infringement claims suffer from the same defect. Both contributory and vicarious infringement require, as a threshold matter, an underlying act of direct infringement by a third party. But Plaintiffs have not alleged that *any* third party infringed *any* of Plaintiffs' works using NVIDIA's framework. Instead, Plaintiffs allege only that NVIDIA provided a framework containing a script that *could* be used to download The Pile, and that some unidentified customers *might* have used it. FAC ¶¶ 70-71. These allegations describe a hypothetical possibility, not an act of direct infringement. Discovery into NVIDIA's customer relationships before Plaintiffs have alleged the predicate act of direct infringement would be a quintessential fishing expedition. Indeed, if Plaintiffs lack sufficient facts to plead their claims, the proper course is to resolve NVIDIA's motion first—not to allow Plaintiffs to search for facts through discovery.

Despite these concerns over the massive expansion of discovery based on insufficiently pled allegations, NVIDIA continued to respond to Plaintiffs' discovery and requests to confer, and met all discovery deadlines. For example, NVIDIA served its responses to Plaintiffs' fourth sets of discovery requests on January 20, produced more than 1,000 documents, served its privilege log on January 30, supplemented certain interrogatory responses on February 2, and produced 107 gigabytes on new models on February 4 and 9.[10] Schapiro Decl. ¶¶ 3-7. Upon issuance of this Court's order on Friday, February 6, NVIDIA produced documents and data the next business day on Monday, February 9, and expects to make another production this evening. *Id.* ¶¶ 6-7.

### D. Plaintiffs Agreed to the Prejudice They Now Assert

Finally, Plaintiffs argue that a stay would "prejudice" them by delaying the case. Opp. at 21. But neither the potential for a stay nor NVIDIA's discovery responses prior to this Court's February 6 order were the cause of any prejudice or delay. Any purported prejudice can be attributed only to Plaintiffs' decision to serve expansive discovery requests seeking information about the entirety of NVIDIA's LLM development and business on the eve of the close of fact discovery. Regardless, Plaintiffs agreed to extend fact discovery and requested 60 days. ECF No. 249. During the time that a stay is pending, discovery on the original allegations (The Pile and NeMo Megatron models) and the two models (alleged to be trained on The Pile) that were not challenged in the motion to dismiss would continue. Indeed, NVIDIA has continued to provide discovery on this scope while these motions are pending. Plaintiffs have not identified any reason why they need discovery on the newly-accused models, datasets, and claims *immediately*—particularly when those allegations may not survive the motion to dismiss. *Rexford Props. LLC v. AGCS Marine Ins. Co.*, 2024 WL 755874, at *5 (E.D. Cal. Feb. 23, 2024) (granting stay pending resolution of dispositive motion after "written discovery has been generally completed" and the parties engaged in "significant document discovery"

[10] Plaintiffs mischaracterize NVIDIA's position on depositions and omit that they themselves did not want to depose witnesses twice. Opp. at 6-7. NVIDIA raised a concern about avoiding inefficiency and duplicative depositions and proposed that (1) the parties delay depositions until the Court ruled on the motion to dismiss or (2) Plaintiffs agree to the current scope and not seek to re-depose any witnesses. *Id.*, Ex. A at 2. If the Court grants the motion to dismiss, Plaintiffs will have no basis to depose witnesses on dismissed allegations.

because it would "undoubtedly be an inefficient use of time and resources for both parties—and the Court if any further discovery disputes arose in the interim—to continue with non-expert discovery, expert disclosures, and expert discovery only to have the pending motion for judgment on the pleadings be granted"); *Duffy v. ASNY NY, LLC*, 2022 WL 1785395, at *3 (D. Nev. May 31, 2022) ("[I]f discovery is stayed and the Court later denies Defendants' motion to dismiss, Plaintiffs may only suffer a delay in receiving answers to their discovery requests. Balancing these prejudices, the Court finds that a discovery stay is appropriate here.").

If the Court denies NVIDIA's motion to dismiss, the parties can complete discovery on the surviving claims. The parties have already submitted a stipulation that contemplates resetting the schedule to accommodate a new fact discovery deadline. ECF No. 249 at 3 ("[T]he Parties agree to promptly negotiate in good faith regarding the full case schedule after the Court rules."). Courts routinely extend discovery deadlines when motions to dismiss are pending. *Pereda*, 2022 WL 19692037, at *2; *Arcell*, 2022 WL 16557600, at *2.

While the prejudice to Plaintiffs of a short stay is minimal and mitigatable, the prejudice to NVIDIA without a stay is not. If the Court grants NVIDIA's motion to dismiss, the stay will have saved the parties and the Court from burdensome discovery on non-viable claims. Without a stay, NVIDIA will need to re-review hundreds of thousands of documents, review potentially more than one hundred thousand additional documents (Schapiro Decl. ¶ 8), conduct scores of additional depositions, and produce sensitive business information—all on claims that ultimately will not survive the pleading stage. *Ningbo Yituo Enter. Mgmt. Co. v. Goplus Corp*., 2025 WL 2995116, at *5 (C.D. Cal. Sept. 18, 2025) (granting stay in part to avoid "requiring Defendant to engage in discovery that may not be permitted" depending on the motion's outcome and to "allow the Court to avoid any potentially unnecessary judicial expenditures such as discovery disputes that may or may not be relevant") (citation omitted). The waste of resources would be substantial. And Plaintiffs would have obtained discovery on dismissed claims—discovery to which they were not entitled.

## III. CONCLUSION

NVIDIA respectfully requests that the Court stay discovery into the claims and allegations that have not survived the pleading stage and are subject to its motion to dismiss.

Dated: February 10, 2026

Respectfully Submitted,

By: */s/ Andrew Schapiro*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Alex Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant,*
*NVIDIA Corporation*