1  [Counsel on signature page]

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                **NORTHERN DISTRICT OF CALIFORNIA**

                        **OAKLAND DIVISION**
9

10  Abdi Nazemian, et al.,                    Master File Case No. 4:24-cv-01454-JST (SK)
                                              Consolidated with Case No.  4:24-cv-02655-JST
              Plaintiffs,                     (SK)
11
                                              **PLAINTIFFS' OPPOSITION TO NVIDIA'S**
12       vs.                                  **MOTION TO DISMISS THE FIRST**
                                              **AMENDED CONSOLIDATED COMPLAINT**
    NVIDIA Corporation,
13
              Defendant.                          DATE:    April 2, 2026
14                                                TIME:    2:00 p.m.
                                                  PLACE:   Courtroom 6
15                                                         United States Courthouse
                                                           1301 Clay Street
16                                                         Oakland, CA 94612

17

18

19

20

21

22

23

24

PLAINTIFFS' OPPOSITION TO NVIDIA'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED
COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ...........................................................2

III.   PROCEDURAL BACKGROUND...............................................................................2

IV.    LEGAL STANDARD...................................................................................................3

V.     ARGUMENT................................................................................................................4

   A.   Plaintiffs Have Stated A Claim of Direct Infringement...........................................4

      1.   The FACC Identifies Relevant Models.............................................................5

      2.   The FACC Identifies Relevant Datasets and Sources of Datasets....................10

   B.   The FACC Plausibly Alleges Contributory Infringement .....................................14

      1.   The FACC Alleges Third-Party Infringement .................................................15

      2.   The FACC Alleges NVIDIA's Knowledge of Third-Party Infringement .......16

      3.   NVIDIA Materially Contributed to Third-Party Infringement........................18

      4.   NVIDIA's Remaining Arguments Are Meritless .............................................20

   C.   Plaintiffs' Plausibly Allege Vicarious Infringement..............................................22

      1.   NVIDIA had the Right and Ability to Control Infringement ...........................22

      2.   NVIDIA had a Financial Interest in Third Party Infringement........................23

   D.   Any Dismissal Should be Without Prejudice..........................................................24

VI.    CONCLUSION...........................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ..............................................................17, 20, 23, 24

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ...........................................................................7

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ..........................................................5, 21, 22

*Aristocrat Techs., Inc. v. Light & Wonder, Inc.*,
2024 WL 3104806 (D. Nev. June 24, 2024)................................................................8

*Balletto v. Am. Honda Motor Co.*,
2023 WL 7026931 (N.D. Cal. Oct. 24, 2023)..............................................................25

*Bartz v. Anthropic PBC*,
No. 3:24-cv-05417-WHA, Dkt. 50 (N.D. Cal. Oct. 15, 2024) ...............................12

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025) ........................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................13, 16

*Brown v. Stroud*,
2011 WL 13312050 (N.D. Cal. Jan. 28, 2011) ...........................................................9

*Cobbler Nevada, LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018) ....................................................................................14

*Davis v. Pinterest, Inc.*,
2021 WL 879798 (N.D. Cal. Mar. 9, 2021)................................................................17

*Dep't of Toxic Substances Control v. Rossi*,
2022 WL 19355 (N.D. Cal. Jan. 3, 2022) ...................................................................4

*DISH Network L.L.C. v. Jadoo TV, Inc.*,
2020 WL 5816579 (N.D. Cal. Sept. 30, 2020) .........................................................17

*DocMagic, Inc. v. Ellie Mae, Inc.*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) ....................................................................15

*Doe 1 v. GitHub, Inc.*,
   672 F. Supp. 3d 837 (N.D. Cal. 2023) ...................................................................10

*Eve Nevada, LLC v. Does 1-16*,
   2021 WL 2934597 (D. Haw. June 21, 2021) ...........................................................22

*Hedayati v. Perry L. Firm*,
   2016 WL 10999327 (C.D. Cal. Sept. 1, 2016) .........................................................18

*Hernandez v. City of Beaumont*,
   2014 WL 688183 (C.D. Cal. Feb. 21, 2014)............................................................24

*In re Animation Workers Antitrust Litig.*,
   123 F. Supp. 3d 1175 (N.D. Cal. 2015) ...................................................................21

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ...........................................................................10, 11

*In re Google Generative AI Copyright Litig.*,
   2025 WL 2624885 (N.D. Cal. Sept. 11, 2025) .......................................................5, 9

*In re Mosaic LLM Litig.*,
   2025 WL 2402677 (N.D. Cal. Aug. 19, 2025) ...............................................5, 6, 7, 9

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018) ..................................................................................13

*Kasramehr v. Wells Fargo Bank N.A.*,
   2011 WL 12473383 (C.D. Cal. May 18, 2011) .......................................................14

*Keck v. Alibaba.com Hong Kong Ltd.*,
   369 F. Supp. 3d 932 (N.D. Cal. 2019) ....................................................................24

*Koala v. Khosla*,
   931 F.3d 887 (9th Cir. 2019) ....................................................................................4

*Leonard v. Stemtech Int'l Inc*,
   834 F.3d 376 (3d Cir. 2016).....................................................................................24

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
   658 F.3d 936 (9th Cir. 2011) ...................................................................................19

*Luvdarts, LLC v. AT & T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) .................................................................................17

*Ma v. San Francisco Estuary Inst.*,
   2024 WL 2113862 (N.D. Cal. May 8, 2024)..............................................................4

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010) ...........................................................................22

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
   380 F.3d 1154 (9th Cir. 2004) .........................................................................22

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005).........................................................................18, 20, 21, 22

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
   2014 WL 280391 (N.D. Cal. Jan. 24, 2014) ....................................................17

*New York Times Co. v. Microsoft Corp.*,
   777 F. Supp. 3d 283 (S.D.N.Y. 2025)..........................................................22, 23

*Paramount Pictures Corp. v. Axanar Prods., Inc.*,
   2016 WL 2967959 (C.D. Cal. May 9, 2016) .....................................................8

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) .....................................................................14, 23

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ...............................................................14, 20, 23

*Scheibe v. ProSupps USA, LLC*,
   141 F.4th 1094 (9th Cir. 2025) ..........................................................................8

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984).....................................................................................21, 22

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ...........................................................................13

*Tangle, Inc. v. Aritzia, Inc.*,
   125 F.4th 991 (9th Cir. 2025) ............................................................................4

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...........................................................17

*Tohono O'odham Nation v. United States Dep't of the Interior*,
   138 F.4th 1189 (9th Cir. 2025) ......................................................................4, 5

*Unicolors, Inc. v. Joy 153, Inc.*,
   2016 WL 3462128 (C.D. Cal. June 24, 2016) .................................................23

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) .............................................................................7

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) .....................................................................20

*Xin Liu v. Amway Corp.*,
    347 F.3d 1125 (9th Cir. 2003) .....................................................................7

*YZ Prods., Inc. v. Redbubble, Inc.*,
    545 F. Supp. 3d 756 (N.D. Cal. 2021) .....................................................17

**Rules**

Fed. R. Civ. P. 8.........................................................................................8, 10

Fed. R. Civ. P. 12(b)(6)............................................................................. *passim*

Fed. R. Civ. P. 12(f)....................................................................................4, 8

Fed. R. Civ. P. 26.........................................................................................3

**Other Authorities**

https://annas-archive.li/blog/blog-introducing.html (last accessed February 2, 2022)....................1

## I.    INTRODUCTION

On October 18, 2025, Plaintiffs moved to amend their Complaint based on newly discovered information that NVIDIA fought to prevent Plaintiffs from ever obtaining. The proposed amendments added specific allegations about (1) NVIDIA executives giving their engineers the "green light" to download data from Anna's Archive, an infamous shadow library that "deliberately violate[s] the copyright law in most countries;"[1] (2) NVIDIA's use of stolen books—including Plaintiffs' books—to train additional models; and (3) NVIDIA's knowing facilitation of copyright infringement by other artificial intelligence ("AI") companies. The Court granted Plaintiffs' motion for leave to amend, and Plaintiffs filed their First Consolidated Amended Complaint ("FACC") a day later. Dkt. 232 ("Order"), Dkt. 235 (FACC).

NVIDIA refused to engage in discovery on the FACC and now seeks to dismiss most of the allegations in the FACC. *See* Dkt. 240 ("MTD"). Its motion selectively disregards large sections of the FACC, makes arguments based on documents beyond the pleadings, and turns the Rule 12(b)(6) standard for motions to dismiss on its head: NVIDIA argues that the Court should dismiss Plaintiffs' allegations regarding Anna's Archive because, while it is plausible "that NVIDIA obtained Plaintiffs' works from Anna's Archive," it is "*equally plausible NVIDIA did not.*" MTD at 9 (emphasis added).

As an initial matter, NVIDIA is wrong that an email giving NVIDIA employees the "green light" to download data from Anna's Archive equally supports an inference that they did not download that data. When a company's management authorizes piracy and the company then contacts a pirate library, the only reasonable inference is that the company proceeded with the piracy. More importantly, NVIDIA's "maybe we did, maybe we didn't" defense is not a basis to dismiss the FACC. Plaintiffs specifically allege that NVIDIA downloaded millions of books from Anna's Archive,

---

[1] https://annas-archive.li/blog/blog-introducing.html (last accessed February 2, 2022).

including Plaintiffs' books, FACC ¶¶ 57–61; trained additional models on The Pile (which NVIDIA concedes contains stolen books, including Plaintiffs'), FACC ¶ 38, 41; and provided its customers with "scripts to automatically download and preprocess The Pile dataset." FACC ¶¶ 70–72. NVIDIA's arguments disregard the allegations and the motion-to-dismiss standard. Plaintiffs are entitled to test their well-pleaded allegations in discovery. The Court should deny NVIDIA's motion to dismiss.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs' FACC plausibly alleges that NVIDIA (1) downloaded millions of books from Anna's Archive for LLM training; (2) trained additional models on The Pile; and (3) provided customers with scripts to automatically download The Pile, knowing that they were specifically enabling acts of copyright infringement. In short: whether the FACC plausibly alleges NVIDIA committed direct, contributory, and vicarious copyright infringement based on the facts alleged.

## III.    PROCEDURAL BACKGROUND

On March 8, 2024, Plaintiffs filed a class action complaint asserting a single count of direct copyright infringement against NVIDIA. Dkt. 1. Plaintiffs alleged that NVIDIA models developed on NVIDIA's Nemo Megatron training platform—software and hardware infrastructure designed to streamline large language model ("LLM") training—were trained on Books3, a subset of a dataset called "The Pile" containing Plaintiffs' stolen books. Dkt. 1 at ¶¶ 21–26; 29; 31. Plaintiffs alleged that other shadow libraries, including Anna's Archive, were "of interest to the AI-training community because they host and distribute vast quantities of unlicensed material." *Id.* at ¶ 27.

The parties litigated the scope of discovery under the initial complaint. NVIDIA argued that pirated datasets beyond Books3 were irrelevant and that discovery should be limited to several datasets and models. *See, e.g.*, Dkt. 162 at 8 (opposing discovery on shadow libraries). The Court ruled that, based on the then-operative Complaint, Plaintiffs' discovery should be limited to The Pile, Books3, and the NeMo Megatron models trained on those datasets. Dkt. 168, 183, 185.

In discovery, however, NVIDIA's documents revealed that its data piracy and copyright infringement was *far* more pervasive than publicly available documents (and NVIDIA's relevance arguments) made it seem. Those documents revealed that NVIDIA made a management-level decision to download books from known pirate library called Anna's Archive which contains Plaintiffs' works, *see* FACC at ¶ 57; Dkt. 227-3 (document showing this "green light"); downloaded an additional dataset called SlimPajama containing Plaintiffs' stolen books, FACC at ¶ 42; trained additional LLMs on The Pile, FACC at ¶ 39; and provided its customers with software and hardware facilitating commission of the same copyright infringement. FACC at ¶¶ 70–72. Plaintiffs promptly sought leave to amend their complaint to include these allegations.

The Court granted Plaintiffs' motion for leave amend. Dkt. 232. On January 16, 2026, Plaintiffs filed the FACC, a carbon copy of the proposed amended complaint attached to their motion for leave. *Compare* Dkt. 227-1 (proposed amended complaint) *and* Dkt. 231-2 (re-incorporating Plaintiff Nazemian) with Dkt. 235 (FACC). NVIDIA now asks the Court to dismiss most of the FACC.[2] The Court should deny its request.

## IV.    LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in

---

[2] In its motion to dismiss, NVIDIA complains that Plaintiffs have served discovery requests related to the FACC. *See* MTD at 1; 8. Plaintiffs disagree that their requests for NVIDIA to (1) supplement existing discovery requests to encompass the new allegations; (2) supplement existing search terms to capture the new datasets and models at issue; and (3) answer limited additional interrogatories and requests for production targeting the new factual allegations are unduly burdensome or beyond what Plaintiffs represented they would need. And in any event, the scope of discovery is irrelevant to this motion. As this Court has explained, discovery is open, and under Rule 26 Plaintiffs may serve discovery requests that are relevant and proportional to the operative claims. Dkt. 247 at 2 (explaining that NVIDIA has "no legal basis to forestall its obligations to engage in written discovery in good faith."). The only question before the Court here is whether the FACC plausibly alleges NVIDIA committed direct, contributory, and vicarious copyright infringement.

the plaintiff's favor[.]" *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (reversing dismissal) (quoting *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) (same)). "To survive a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Tohono O'odham Nation v. United States Dep't of the Interior*, 138 F.4th 1189, 1199 (9th Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

NVIDIA, without legal authority, cursorily asks the Court to strike several of Plaintiffs' allegations under Rule 12(f). MTD at 2, 7, 18. Such a threadbare argument should be considered waived. *Dep't of Toxic Substances Control v. Rossi*, 2022 WL 19355, at *2 (N.D. Cal. Jan. 3, 2022) (explaining that "simply raising an issue in a brief – but failing to develop it with supporting argument – is insufficient" and finding such argument abandoned; collecting cases). If the Court entertains NVIDIA's request, the relevant legal standard is that "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Ma v. San Francisco Estuary Inst.*, 2024 WL 2113862, at *2 (N.D. Cal. May 8, 2024) (quoting *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)). Whether to strike an allegation is within the Court's sound discretion. *Id.*

## V.    ARGUMENT

### A.    Plaintiffs Have Stated A Claim of Direct Infringement

"To state a claim for copyright infringement, [a plaintiff] must plausibly allege (1) that it owns a valid copyright in its … works, and (2) that [the defendant] copied protected aspects of [the plaintiff's] expression." *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 995 (9th Cir. 2025) (reversing dismissal of direct infringement claim). NVIDIA does not meaningfully contest either prong—nor could it. This direct infringement claim has been in the case for nearly two years, uncontested by NVIDIA, and the FACC simply expands the allegedly infringing models and sources of stolen copyrighted books, based on NVIDIA-produced documents.

The FACC's allegations are proper. It states, unambiguously and with specificity, that NVIDIA trained specific models on stolen books, including Plaintiffs' works. The FACC also alleges NVIDIA downloaded and used specific datasets. Plaintiffs will address each argument in turn.[3]

### 1. The FACC Identifies Relevant Models

**Megatron 345M.** NVIDIA concedes that the FACC alleges that it trained Megatron 345M on The Pile, a subset of which contains Plaintiffs' books. *See* MTD at 8 (explaining FACC alleges NVIDIA used The Pile to train Megatron 345M). That should be the end of NVIDIA's motion to dismiss claims related to Megatron 345M. Under even the cases relied on by NVIDIA, allegations connecting models to datasets containing stolen books survive motions to dismiss. *See In re Google Generative AI Copyright Litig.*, 2025 WL 2624885, at *7 (N.D. Cal. Sept. 11, 2025) (*declining to dismiss* allegations against Google models that Plaintiffs connected to datasets containing plaintiffs' works); *In re Mosaic LLM Litig.*, 2025 WL 2402677, at *2 (N.D. Cal. Aug. 19, 2025) (contrasting model not connected to pirated data with models connected to shadow library that contained plaintiffs' books); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 864 (N.D. Cal. 2023) (same).

Recognizing that Plaintiffs have properly connected Megatron 345M to The Pile, NVIDIA pivots and argues instead that Megatron 345M was trained on only *some* of The Pile—and not the part containing Plaintiffs' stolen books. MTD at 8. First, the model card NVIDIA discusses is not part of the FACC, so the Court should not consider it. *See Tohono O'odham Nation*, 138 F.4th at 1202 (reversing dismissal when district court relied on external documents for its decision). Second, even if the Court were to consider the model card that NVIDIA relies on for its argument, MTD at 8,

---

[3] NVIDIA concedes that Plaintiffs have stated a claim based on NVIDIA's use of Plaintiffs' works to train models in the "NeMo Megatron family" (including NeMo Megatron GPT 126M, NeMo Megatron GPT 40B, NeMo Megatron GPT 175B, NeMo Megatron T5 220M, NeMo Megatron T5 11B, and NeMo Megatron T5 23B, *see* FACC at ¶ 39) and the InstructRetro-48B and Retro-48B LLMs. *See* FACC at ¶ 41; MTD at 3 ("NVIDIA does not move to dismiss Plaintiffs' allegations as to the two Retro models").

1    NVIDIA's argument presents a classic fallacy. That NVIDIA publicly stated that its model was trained

2    on *some* data sources does not mean that it was not *also* trained on other data sources. As alleged in

3    the FACC, Megatron 345M was trained on The Pile, which includes Plaintiffs' works. FACC at ¶ 41

4    (Megatron 345M was trained on The Pile); ¶ 32 (The Pile contains Books3, which contains Plaintiffs'

5    works). While NVIDIA may try to disprove this allegation at some later stage, it is not free to rebut

6    well-pleaded allegations based on an unalleged "model card." The FACC creates more than a

7    "plausible inference" that NVIDIA trained Megatron 345M on Plaintiffs' works.

8        **Nemotron-4 15B and Nemotron-4 340B ("the Nemotron models").** NVIDIA argues that

9    Plaintiffs have not adequately alleged that the Nemotron models were trained on Plaintiffs' books.

10   Incorrect. The FACC alleges that NVIDIA, through Anna's Archive, stole millions of books

11   (including Plaintiffs') and then used them to develop and train its Nemotron models.

12       Plaintiffs squarely allege that four months after downloading a massive number of books from

13   Anna's Archive, NVIDIA released the Nemotron-4 15B model. FACC at ¶ 59. That model, according

14   to public documents, was trained on an immense English language dataset composed of 4.6%

15   books—which corresponds to *millions* of books. *Id.* The Nemotron-4 340B model was trained on the

16   same data. FACC at ¶ 60. Plaintiffs unequivocally allege that "NVIDIA could not obtain the level of

17   books needed for the Nemotron models without pirating copyrighted books, including Plaintiffs'

18   Infringed Works." *Id.* at ¶ 61, 54 (NVIDIA did not enter into any licensing deals for books). NVIDIA

19   downloaded Plaintiffs' works from Anna's Archive and used them to train at least the Nemotron

20   models, if not more.

21       NVIDIA cites *In re Mosaic* to support its argument that the size of a dataset does not support

22   an allegation that the dataset was pirated. MTD at 9. That case presented a dramatically different

23   circumstance. First, in *Mosaic*, the plaintiffs did not allege that the model was trained on *books*—just

24   that it was trained on a large dataset. 2025 WL 2402677, at *2. Here, plaintiffs clearly allege that

1   "NVIDIA stated that [the training data for the Nemotron models] included 'books'"—a fact NVIDIA

2   does not dispute or try to explain away. FACC at ¶ 59.  Second, the *Mosaic* plaintiffs had no additional

3   allegations tying their books to the at-issue model. Here, Plaintiffs clearly allege a timeline of events

4   supporting the inference that NVIDIA trained Nemotron on books stolen through Anna's Archive.

5   That is an adequate allegation to survive a motion to dismiss. *See, e.g.*, *Adams v. Johnson,* 355 F.3d

6   1179, 1183 (9th Cir. 2004) (reasonable inferences may be de drawn in addressing a motion to

7   dismiss); *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (in copyright case,

8   "[i]f there is no direct evidence of copying, a plaintiff may prove this element through circumstantial

9   evidence"); *Cf. Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003) (in employment law

10  context, the "close temporal proximity between two events may give rise to an inference of causal

11  connection.") (quoting *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 168 (1st Cir. 1998)).

12          NVIDIA pirated millions of books from Anna's Archive; four months later, it released two

13  models trained on millions of books. To avoid allowing Plaintiffs discovery into what happened in

14  the interim, NVIDIA now argues that Plaintiffs have not plausibly alleged that it trained models on

15  the pirated books. That argument strains credulity and should be rejected.

16          **Unidentified Models.** NVIDIA argues that the FACC is "replete" with mentions of

17  unidentified "NVIDIA LLMs" and on that basis, asks the Court to dismiss any allegations unrelated

18  to the specific models identified by the Complaint. MTD at 5–7. NVIDIA makes an issue out of

19  nothing. Plaintiffs do not seek to engage in an unbounded fishing expedition into NVIDIA LLMs

20  generally. The paragraphs of the FACC that NVIDIA cites simply reference "NVIDIA LLMs" to

21  avoid reproducing the long list of specifically-identified infringing NVIDIA LLMs. *See, e.g.*, FACC

22  at ¶¶ 77, 78, 80 (catch-all phrases); FACC at ¶¶ 39, 41, 60 (implicating specific model families). The

23  FACC is clear that during LLM development, multiple models—called "checkpoints"—may be

24  generated as part of the iterative training process: this "process may occur multiple times before a

PLAINTIFFS' OPPOSITION TO NVIDIA'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED
COMPLAINT

1    developer arrives at the final checkpoint for that model. All of the models created as part of the

2    checkpoint process may never receive official names nor be publicly released." FACC at ¶ 25. Each

3    of these checkpoints represents a separate instance of copyright infringement. *See, e.g.,* FACC at ¶¶

4    24–25. As the Court has previously explained, these non-released checkpoints are properly at-issue

5    when the Complaint identifies the relevant model families. *See* Dkt. 168 at 3 (ordering discovery into

6    "other large language models in the Nemo Megatron family that exist").

7        NVIDIA, seeking to limit Plaintiffs to the tip of the iceberg, now argues that Plaintiffs'

8    allegations should be dismissed because Plaintiffs cannot exhaustively explain which *internal* (non-

9    released) checkpoints were trained on their books. MTD at 5–7.[4] The law does not require Plaintiffs

10   to play this guessing game. Plaintiffs allege that NVIDIA trained the relevant models on pirated

11   works, encompassing claims based on developmental checkpoints. "[T]he fact that defendants may

12   have exclusive control and possession of critical facts—like their own product inventory—cannot

13   categorically prevent plaintiffs from stating a plausible claim." *Scheibe v. ProSupps USA, LLC*, 141

14   F.4th 1094, 1100 (9th Cir. 2025) (reversing dismissal).

15       The FACC "alleges representative acts of infringement," making Plaintiffs' claims sufficient

16   to survive Rule 8. *Paramount Pictures Corp. v. Axanar Prods., Inc.*, 2016 WL 2967959, at *3 (C.D.

17   Cal. May 9, 2016) (denying motion to dismiss when defendant argued that plaintiffs had not identified

18   "each episode, film, and elements that were allegedly infringed"); *Aristocrat Techs., Inc. v. Light &*

19   *Wonder, Inc.*, 2024 WL 3104806, at *7 (D. Nev. June 24, 2024) (denying motion to dismiss when

20   "representative infringement examples feature audiovisual elements common to all" of defendants'

21

22   _____

23   [4] NVIDIA makes this argument in terms of Rule 12(b)(6). At the end of this section of its Motion,
     NVIDIA passingly asks the Court to strike Plaintiffs' allegations under Rule 12(f), but its request is
     (1) focused on Plaintiffs' briefing to the Court on the question of leave to amend and (2) does not
24   offer any substantive reason why striking Plaintiffs' allegations would be appropriate. Accordingly,
     Plaintiffs will respond in terms of Rule 12(b)(6).

products). NVIDIA cites *Google*, 2025 WL 2624885, at *6, and *Mosaic*, 2025 WL 2402677, at *2, for its argument that unidentified models cannot serve as the basis for a claim. MTD at 6. As explained above, in both cases, the courts *declined to dismiss* allegations about models that Plaintiffs connected to datasets containing the plaintiffs' works. *Google*, 2025 WL 2624885, at *7; *Mosaic*, 2025 WL 2402677, at *2 (noting well-pleaded claims connecting models to datasets). Here, the FACC unambiguously identifies models that were trained on stolen books (making Plaintiffs' claims unlike those dismissed in *Google* and *Mosaic*). *See, e.g.*, FACC at ¶¶ 39, 41. 60. NVIDIA consistently used Plaintiffs' books to train these model families. *E.g.,* FACC at ¶¶ 25, 39, 41. The FACC does not purport to implicate every NVIDIA LLM; just the relevant model families.

NVIDIA's next argument is that because the Court *specifically* granted Plaintiffs leave to amend their complaint to include allegations about five additional models, Plaintiffs are not allowed to claim copyright infringement based on any other model (or checkpoint) implicated by the FACC. MTD at 7. Plaintiffs believe that misreads the Court's Order. In their briefing on leave to file the FACC, Plaintiffs explained that NVIDIA committed copyright infringement by using their works: "NVIDIA used The Pile for internal research and development, *including*" to develop specific models. Dkt. 227-5 at 11 (emphasis added). The Court then granted Plaintiffs leave to amend, explaining that Plaintiffs' amendment sought to include "LLM model *families* other than the 'NeMo' and 'Megatron' models." Order at 5. Plaintiffs then filed a carbon copy of the proposed amended complaint that was previously attached to their motion. Plaintiffs' briefing to this Court—and the Court's order—shows that the FACC properly alleges infringement related to these model families.

NVIDIA provides no basis for the Court to "strike" Plaintiffs' allegations. Unlike in *Brown v. Stroud*, 2011 WL 13312050, at *3 (N.D. Cal. Jan. 28, 2011), this Court granted Plaintiffs leave to amend *in full*—including the allegations NVIDIA now asks the Court to strike. If the Court had denied leave to amend on certain issues, this might be a different question. But that is not the case. Plaintiffs

PLAINTIFFS' OPPOSITION TO NVIDIA'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT

filed the FACC as permitted by the Court's order, identifying representative acts of infringement.

### 2. The FACC Identifies Relevant Datasets and Sources of Datasets

<u>Plaintiffs adequately allege NVIDIA's use of Anna's Archive</u>. NVIDIA *admits* that Plaintiffs have plausibly alleged the following facts:

1. NVIDIA contacted Anna's Archive about accessing data;

2. Anna's Archive asked NVIDIA to confirm that it was willing to proceed;

3. NVIDIA confirmed that its executives had given it the "green light" to proceed.

MTD at 9. NVIDIA now argues that these allegations are insufficient to survive a motion to dismiss because it is "equally plausible NVIDIA did not" download data from Anna's Archive. Even if that were true (it is not), this argument gets the pleading standard under Rule 8 backwards. It is well established that when assessing a motion to dismiss, a Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 848 (N.D. Cal. 2023) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). NVIDIA instead asks the Court to dismiss the FACC by accepting its proposed inference that it might not have committed the rampant acts of piracy its executives approved. "We might not have done it" is not a colorable argument under Rule 12(b)(6). The FACC not just plausibly but unambiguously states that after NVIDIA got the green light to download from Anna's Archive, it did so. FACC at ¶ 57. There is absolutely no basis to dismiss this allegation.

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) does not support NVIDIA's position. There, the Ninth Circuit affirmed dismissal when the plaintiffs alleged a theory—unsupported by factual allegations—that was inconsistent with an "obvious alternative explanation." *Id.* (quoting *Twombly*, 550 U.S. at 567). NVIDIA does not so much as suggest an "obvious alternative explanation" for its engagement with Anna's Archive. Even in a vacuum, there is no explanation other than to download stolen books. But the FACC offers *additional* specific allegations of both NVIDIA's

motive (to facilitate training of large-scale models) and conduct (downloading stolen books). FACC at ¶ 57. NVIDIA also omits the *Century Aluminum* paragraph that appears directly after the one it cites, where the Ninth Circuit explains the well-understood principle that "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Plaintiffs' allegations about Anna's Archive are more than adequate and beyond merely plausible.

Plaintiffs adequately allege that SlimPajama contains Plaintiffs' books. NVIDIA argues that Plaintiffs fail to "allege that SlimPajama contained their works." MTD at 9. This mischaracterizes the FACC. Plaintiffs allege—point blank—that "[t]he SlimPajama dataset included the Books3 dataset," FACC at ¶ 42, and that Plaintiffs' books were in Books3 (a fact NVIDIA does not dispute). FACC at ¶¶ 63–67. NVIDIA focuses on Plaintiffs' allegation that the SlimPajama dataset was a slimmed down version of the RedPajama dataset, MTD at 10 (quoting FACC at ¶ 42) and overlooks Plaintiffs' more specific allegation that the smaller SlimPajama dataset retained Books3. To say that Plaintiffs' allegation that SlimPajama contains Plaintiffs' books is plausible is an understatement.

Plaintiffs adequately allege that NVIDIA Downloaded Plaintiffs' Books from Other Shadow Libraries. NVIDIA argues that Plaintiffs have not alleged that NVIDIA downloaded Plaintiffs' works from other shadow libraries such as Bibliotik, LibGen, Sci-Hub, Z-Library, or PirateLibraryMirror (collectively, "other shadow libraries").

NVIDIA's misdirection requires several factual clarifications. First, Plaintiffs clearly allege in both the original Complaint and the FACC that Books3—which NVIDIA concedes is relevant to this litigation, and contains Plaintiffs' works—is composed *from* Bibliotik. *See* Dkt. 1 at ¶¶ 26–28; FACC at ¶¶ 33–35. NVIDIA has not sought to dismiss these allegations. Second, the FACC states unambiguously that " Anna's Archive began existence as 'Pirate Library Mirror.'" FACC at ¶ 47.

1   Plaintiffs' allegation that NVIDIA downloaded their works from both Books3 and Anna's Archive

2   explicitly implicates Bibliotik and Pirate Library Mirror. *See* FACC at ¶ 38 (NVIDIA downloaded

3   Books3); ¶ 57 ("By downloading Anna's Archive…").

4           The three remaining shadow libraries—LibGen, Sci-Hub, and Z-Library—are all hosted on

5   Anna's Archive. *See* FACC at ¶ 47 (Anna's Archive "quickly expanded to host all of LibGen, Z-

6   Library, Sci-Hub, and additional books sourced from pirated libraries."). Anna's Archive serves as a

7   centralized repository for books from all of these other illegal libraries. Anna's Archive explained

8   this to NVIDIA as a selling point after NVIDIA reached out. *See* Dkt. 227-3 at [TK] (Anna's Archive

9   representative saying: "Here is what we have to offer currently: • All Sci-Hub torrents All Libgen

10  torrents (up until a few months ago, need to do a refresh :)) … • A few million books from the Internet

11  Archive (IA) … • We have all of Z-Library, which is a lot of books"). These allegations, far from

12  being implausible, highlight why NVIDIA's conduct is so egregious.

13          NVIDIA's argument appears to be that Plaintiffs cannot allege that NVIDIA downloaded *their*

14  *books* in particular from these shadow libraries. MTD at 10. This argument boils down to "our piracy

15  as alleged was so widespread, you can't know whether we stole your books or simply millions of

16  others." But even the strongest version of NVIDIA's position offers no reason to dismiss the FACC.

17  Plaintiffs directly allege that their works were hosted on Anna's Archive and at least one of the other

18  shadow libraries, *see* FACC at ¶¶ 63–67; that Anna's Archive provided access to those other libraries,

19  FACC at ¶ 47; and that NVIDIA downloaded Anna's Archive. *See* FACC at ¶ 57. Therefore, Plaintiffs

20  have alleged that NVIDIA downloaded their works—and only NVIDIA's to-date withheld records

21  can confirm the exact parameters of its theft.

22          Courts have rejected NVIDIA's "it's impossible to know which books we stole" defense in

23  other AI copyright cases. Consider the following exchange from a case management conference in

24  *Bartz v. Anthropic*, after Anthropic's counsel asserted that there were issues with whether the plaintiffs

had "adequately alleged that, in fact, their clients' books were, in fact, in this dataset:"

THE COURT: Well, they do allege it.

[ANTHROPIC'S COUNSEL]: What's that?

THE COURT: They do. They certainly allege that they are.

[ANTHROPIC'S COUNSEL]: They don't -- we would submit, Your Honor, they don't allege it in any kind of way that's factual. And they do --

THE COURT: Why don't you just tell us. Were they or not?

[ANTHROPIC'S COUNSEL]: The -- I don't know the answer to that.

…

THE COURT: **And this is ridiculous for you to hide behind that. Either these books were read and part -- in part of your program or they weren't. And for you to say they got to allege it when it's all within the -- your -- your company's records, I don't stand for that.**

No. 3:24-cv-05417-WHA, Dkt. 50 at 6–7 (N.D. Cal. Oct. 15, 2024) (emphasis added). This approach is representative of the law in this Circuit and others. *See, e.g., Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (reversing dismissal: "The *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.") (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (reversing dismissal because "when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint").

NVIDIA next argues that the Court should dismiss Plaintiffs' allegations about the other shadow libraries because Plaintiffs have alleged facts about "other companies," not NVIDIA. MTD at 11. NVIDIA focuses on the wrong part of the FACC. Plaintiffs allege that NVIDIA downloaded

Plaintiffs' stolen works from these other libraries *through* Anna's Archive, which "host[s] all of LibGen, Z-Library, SciHub, and additional books sourced from pirated libraries." FACC at ¶ 47. Even the paragraph that NVIDIA focuses on says "in addition to Anna's Archive and The Pile, NVIDIA also downloaded books *hosted or sourced from other shadow libraries*, including LibGen, Sci-Hub, and Z-Library." FACC at ¶ 58 (emphasis added).[5] Plaintiffs have unambiguously alleged that NVIDIA accessed books from these other shadow libraries through Anna's Archive; discovery may show that it also downloaded them directly from those libraries. Either way, Plaintiffs' allegations regarding shadow libraries beyond Anna's Archive are properly pleaded.

### B.    The FACC Plausibly Alleges Contributory Infringement

Plaintiffs have plausibly alleged that NVIDIA committed contributory copyright infringement. The Ninth Circuit has identified two "strands" of contributory liability: "actively encouraging (or inducing) infringement through specific acts" and "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.* ("*Amazon.com*"), 508 F.3d 1146, 1170 (9th Cir. 2007) (quoting in turn *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (2005) (Ginsburg, J., concurring))). Under both, a plaintiff has stated a claim for contributory copyright infringement when the defendant (1) has knowledge of another's infringement, and (2) materially contributes to or induces that infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n* ("*Visa*"), 494 F.3d 788, 795 (9th Cir. 2007). Plaintiffs have plausibly alleged that NVIDIA contributed to copyright infringement.

---

[5] NVIDIA's motion ignores this explanation of how it downloaded Plaintiffs' works from these other shadow libraries. It should not be allowed to address this issue in its reply brief. *See Kasramehr v. Wells Fargo Bank N.A.*, 2011 WL 12473383, at *6 (C.D. Cal. May 18, 2011) (denying motion to dismiss: "the court cannot grant a motion to dismiss on a new argument presented for the first time in a reply brief.") (citations and quotations omitted).

### 1. The FACC Alleges Third-Party Infringement

NVIDIA says that Plaintiffs have not "identif[ied] any [NVIDIA] customer alleged to have downloaded or used The Pile." MTD at 12. The FACC speaks for itself:

1. "NVIDIA provided customers with 'scripts to automatically download and preprocess The Pile dataset….'" FACC at ¶ 70.

2. "NVIDIA provided the tools and scripts for Writer to download The Pile." FACC at ¶ 71.

3. "NVIDIA provided similar assistance in downloading and processing The Pile to clients Persimmon AI Labs and Amazon." FACC at ¶ 71.

As the Court explained in its Order granting leave to amend, "discovery produced in October demonstrated that NVIDIA possessed scripts that facilitated copyright infringement by customers and that it provided these scripts to specific customers who then used them in infringing activities." Order at 7. The Court then proceeded to cite docket entries 192-14 at 2–3 and 192-15 at 4–5 as examples of NVIDIA "assisting Amazon and other company-specific LLMs in downloading and processing 'The Pile' data." Order at 7. Based on that discovery, Plaintiffs allege that the software NVIDIA provided to its customers allowed them to "automatically download and preprocess The Pile dataset," FACC at ¶ 70, and that NVIDIA gave those auto-book-stealing scripts to specific customers: Writer, Persimmon AI Labs, and Amazon. FACC at ¶ 71. Finally, the FACC alleges that those customers used those scripts to develop AI models—meaning that, while doing so, they "automatically download[ed] and preprocess[ed] The Pile dataset." FACC at ¶ 70. That is more than enough to plausibly allege actual infringement by third parties. *See DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1149 (N.D. Cal. 2010) (denying motion to dismiss over defendant's argument that it "instructed third parties to engage in unauthorized use of [plaintiff's] software, and not that any third parties did so" where complaint alleged that defendant "contributed to the unauthorized copying").

NVIDIA argues that Plaintiffs' allegations should be stricken because they are alleged "on

information and belief." MTD at 12. But as set forth above, and as the Order granting leave recognized, Plaintiffs' allegations are based on discovery produced by NVIDIA.

Again grasping at straws, NVIDIA submits that Plaintiffs do not identify "what 'tools and scripts' NVIDIA allegedly provided these customers." MTD at 12. That is a straw man premised on a misreading of the FACC. Plaintiffs directly allege—based on documents produced by NVIDIA— that NVIDIA employees were worried it would take their customers too long to download The Pile, so they developed software tools designed to "download and extract[] 30 pile files [in] ~70 minutes." FACC at ¶ 70. Those scripts were configured to "*automatically download* and preprocess The Pile." *Id.* (emphasis added). That disposes of NVIDIA's argument that Plaintiffs have not identified "what tools" NVIDIA distributed to its customers, and its argument that a link cited in Plaintiffs' motion for leave to amend "provides optional functionality" (a fact entirely outside the FACC).

NVIDIA's suggestion that Plaintiffs must allege additional detail about the specific nature of the tools (information within *NVIDIA's* possession) is contrary to law: Plaintiffs need only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiffs have done that here.

### 2. The FACC Alleges NVIDIA's Knowledge of Third-Party Infringement

NVIDIA next argues that the FACC does not allege that NVIDIA knew of third party infringement resulting from its actions. That, too, is incorrect. Plaintiffs allege that NVIDIA provided customers with tools that allowed them to download and process datasets containing stolen books. FACC at ¶ 71. Plaintiffs specifically point to NVIDIA's motive for doing so: "to help their customers access these pirated datasets more quickly and easily." FACC at ¶ 71.

That allegation alone is sufficient to defeat NVIDIA's motion to dismiss. NVIDIA cites several cases for the premise that "indifferen[ce] to the risk of copyright infringement generally" is insufficient for contributory copyright infringement, but that case law is inapplicable to the facts here.

MTD at 13 (quoting *Davis v. Pinterest, Inc.*, 2021 WL 879798, at *3–4 (N.D. Cal. Mar. 9, 2021)). In each of NVIDIA's cases, the defendant was some sort of carrier or website that allowed customers unfettered (and unsupervised) use of its platform—and in each case, the plaintiffs failed to allege that the defendants knew of more than the mere possibility of infringement on their platforms. *See, e.g. Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (affirming dismissal when AT&T allegedly did not stop users from texting copyrighted greeting cards); *Davis,* 2021 WL 879798, at *3 (dismissing claim against social media platform when users allegedly posted copyrighted images); *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021) (dismissing claim against e-commerce site when complaint alleged that user sold copyrighted items); *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, 2014 WL 280391, at *6 (N.D. Cal. Jan. 24, 2014) (dismissing complaint against website where users allegedly posted copyrighted photos).

The critical difference between these cases and NVIDIA's conduct—as alleged in the FACC—is that in NVIDIA's cited cases, the defendants provided platforms of general application which could be used for anything. Here, by contrast, the whole purpose of NVIDIA's service was to make it quick and easy to train AI models through downloading stolen books. NVIDIA actively and deliberately provided tools to help its customers download these pirated datasets more quickly and easily. This is contributory copyright infringement. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (contributory copyright infringement when platform provided technical support for widespread copyright infringement); *DISH Network L.L.C. v. Jadoo TV, Inc.*, 2020 WL 5816579, at *6 (N.D. Cal. Sept. 30, 2020) (denying motion to dismiss when platform was built to directly stream copyrighted channels); *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1165 (C.D. Cal. 2018) (denying motion to dismiss when defendant directed developers to "download and store on their computer systems" copyrighted materials).

In response, NVIDIA argues that a defendant's knowledge that its product is used for

infringement is inadequate without "knowledge of particular infringements of a plaintiff's work." MTD at 13 (citing *Grokster,* 545 U.S. at 933). First, NVIDIA knew that its customers were downloading The Pile (and enabled those downloads), which is knowledge of "particular infringement." FACC at ¶ 71. Second, NVIDIA badly mischaracterizes *Grokster.* In the quoted passage, the Supreme Court explained that a defendant's knowledge of secondary infringement *alone* is not enough to confer liability when the product can be used for lawful purposes, 545 U.S. at 933, not that a plaintiff must *always* show "knowledge of particular infringements of a plaintiff's work." MTD at 13. Plaintiffs allege that NVIDIA designed a product that *relied on*—and necessarily entailed—third party copyright infringement, and provided it to third parties to facilitate that very infringement. FACC at ¶ 70 (NVIDIA's "scripts were developed to help their customers access these pirated datasets more quickly and easily"); *id.* (it provided customers with "scripts to automatically download and preprocess The Pile," and therefore "provided tools and resources for its customers to use the NVIDIA platform to download The Pile"); *id.* at ¶ 71 (listing customers that committed copyright infringement with NVIDIA's help); *id.* at ¶ 72 (NVIDIA also provided the hardware).

NVIDIA tries to add a qualifier into the FACC, asserting that its scripts presented customers with "*optional* capabilities that require independent choices by nonparties." MTD at 13. That is not what the FACC says, and NVIDIA may not recharacterize or rewrite the Complaint for purposes of its motion to dismiss. *Hedayati v. Perry L. Firm*, 2016 WL 10999327, at *5 (C.D. Cal. Sept. 1, 2016) (denying motion to dismiss: "a defendant cannot succeed on a motion to dismiss based on facts it alleges in its motion to dismiss."). As explained above, the FACC alleges that the scripts—which NVIDIA provided to specific customers, including Writer, Persimmon AI Labs and Amazon—were constructed to "automatically" download Plaintiffs' works. FACC ¶¶ 70–72.

### 3.   NVIDIA Materially Contributed to Third-Party Infringement

NVIDIA correctly notes that the question for material infringement is whether "the activity in

question 'substantially assists' direct infringement." MTD at 14 (quoting *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.* ("*Louis Vuitton*"), 658 F.3d 936, 943 (9th Cir. 2011) (citation omitted)). Despite NVIDIA's attempt to strategically disregard or downplay Plaintiffs' allegations, there should be no question that—as alleged by the FACC—NVIDIA's contribution was material.

First, NVIDIA's primary authority for its argument here—*Louis Vuitton*—supports Plaintiffs both in its outcome and in its reasoning. In *Louis Vuitton*, the Ninth Circuit upheld a jury's finding of liability for contributory infringement. It explained that "[t]here is no question that providing direct infringers with server space satisfies that standard [for material contribution]. … [Defendant's] servers are 'an essential step in the infringement process.'" *Louis Vuitton*, 658 F.3d at 943–44 (quotations and citations omitted). After expressly concluding that providing direct infringers with server space satisfied the materiality standard, the Ninth Circuit concluded that "[t]he district court did not err by narrowing the instruction on material contribution to the only genuine question as to that element—whether Appellants provided their services to direct infringers." *Id.* at 944. *Louis Vuitton* stands for two principles: first, that there is—in the words of the Ninth Circuit—"no question" that providing server space to direct infringers is enough to constitute material contribution to infringement; and second, that once a plaintiff has shown that defendants maintained such servers, the "only genuine question" is whether they provided their services to direct infringers.

The FACC directly alleges that—in addition to providing software allowing its customers to "automatically download" The Pile—"NVIDIA provided the hardware [for infringers] too. Using the NeMo Framework, a customer could expect to quickly develop a language model trained on The Pile in only 9.8 days using NVIDIA's servers." FACC at ¶¶ 70, 72. That makes this case exactly like *Louis Vuitton*: there is "no question" that NVIDIA's contribution was an essential step in the infringement process. The only question is "whether [NVIDIA] provided [its] services to direct infringers," *Louis Vuitton*, 658 F.3d at 944, which the FACC also clearly alleges it did. *Id.* at ¶ 71 (naming customers

PLAINTIFFS' OPPOSITION TO NVIDIA'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT

who trained models using The Pile on NVIDIA's servers).

The other cases NVIIDA cites for its argument that its contribution was non-material also support Plaintiffs' position. In *Napster*, the Ninth Circuit affirmed a district court's preliminary injunction against contributorily infringing activities when the defendant provided "the site and facilities" for direct infringement. 239 F.3d at 1022. NVIDIA did the same thing, as explained above. And in *Visa*, the Ninth Circuit affirmed dismissal of a complaint alleging that a credit card company was contributorily liable when third parties purchased copyrighted materials using their credit cards. 494 F.3d at 796. The court explained that dismissal was proper because no infringing material "passes over [d]efendants' payment networks or through their payment processing systems." *Id.* That is a far cry from this case, where the FACC alleges that NVIDIA provided customers with scripts allowing those customers to download pirated works and to train LLMs on those works using NVIDIA's hardware. FACC at ¶¶ 70–72.

### 4.    NVIDIA's Remaining Arguments Are Meritless

NVIDIA throws in some passing arguments that are easily disposed of. First, it argues that it did not induce infringement because it did not have the "object" of promoting copyright infringement. MTD at 15. In the case NVIDIA cites for this argument, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019), the Ninth Circuit affirmed a finding of no inducement when the defendant's website provided "generally applicable tools and messages for users to save more photos" and the defendant "sometimes makes mistakes about the display rights in a feed." *Id.* NVIDIA did not provide "generally applicable tools," it provided tools specifically designed to infringe Plaintiffs' copyrights. That shows intent to induce copyright infringement. *Grokster*, 545 U.S. at 936, explains that intent can be found through circumstantial evidence: "Evidence of 'active steps taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe…" *Id.* (alterations and citations

omitted). NVIDIA cannot escape liability by arguing that it did not hang a banner saying "come here to infringe copyrights." Its conduct—as alleged in the FACC—demonstrates intent to induce infringement.

Next, NVIDIA argues that "the NeMo framework is capable of substantial non-infringing uses." MTD at 15. It lists several other features of its training platform, like "pre-processing other datasets" and "training optimizing, or fine-tuning LLMs." *Id.* First, Plaintiffs allege that these are themselves infringing uses. Given NVIDIA's conduct, "pre-processing *other datasets*" might mean pre-processing datasets downloaded from criminal shadow libraries like Anna's Archive. And training, optimizing, and fine-tuning LLMs requires making secondary copies of copyrighted works, which is—plausibly—a separate act of copyright infringement. *See Andersen*, 744 F. Supp. 3d at 969 (denying motion to dismiss; facilitating third party use of AI models trained on copyrighted material could be contributory infringement: "plaintiffs allege that Stable Diffusion is built to a significant extent on copyrighted works and that the way the product operates necessarily invokes copies or protected elements of those works.").

Even if the Court concludes that these are non-infringing uses, which it should not, given that "the Court must draw all reasonable inferences in favor of Plaintiffs," *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1209 (N.D. Cal. 2015) (denying motion to dismiss), those secondary actions would not justify NVIDIA's primary conduct. NVIDIA has facilitated third-party downloading of Plaintiffs' works, which is copyright infringement, "full stop." *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1025 (N.D. Cal. 2025). NVIDIA cites *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), for its argument that a substantial non-infringing use precludes liability, MTD at 15, but *again* omits *Grokster*. In *Grokster*, the Supreme Court explicitly rejected NVIDIA's reading of *Sony*, reversing the Ninth Circuit for interpreting *Sony* to say "that whenever a product is capable of substantial lawful use, the producer can never be held contributorily

liable for third parties' infringing use of it." *Grokster*, 545 U.S. at 934 (reversing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 380 F.3d 1154, 1160–61 (9th Cir. 2004)). Even when a product has a substantial non-infringing use, the evidence may show a defendant's knowledge "that it may be put to infringing uses," allowing for liability. *Id.* at 935.

Not only did NVIDIA know that its products would be put to infringing uses, it designed them to facilitate infringement. *See* FACC at ¶ 70 ("[The] scripts were developed to help their customers access these pirated datasets more quickly and easily."). That is more than enough to survive a motion to dismiss, as this Court has concluded in similar AI copyright cases. *See, e.g., Andersen,* 744 F. Supp. 3d at 969 ("The plausible inferences at this juncture are that Stable Diffusion *by operation* by end users creates copyright infringement and was created to facilitate that infringement by design."); *see also Eve Nevada, LLC v. Does 1-16*, 2021 WL 2934597, at *3 (D. Haw. June 21, 2021) (concluding that sharing of copyrighted work over peer-to-peer file sharing network warranted injunctive relief because such sharing "facilitates the widespread and uncontrolled infringement of copyrighted materials."); *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 309 (S.D.N.Y. 2025) (rejecting substantial non-infringing use defense and distinguishing *Sony*).

### C.    Plaintiffs' Plausibly Allege Vicarious Infringement

A plaintiff states a claim for vicarious copyright infringement when the defendant (1) has the right and ability to control users' putatively infringing activity and (2) derives a direct financial benefit from their activity. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 938 (9th Cir. 2010). Plaintiffs have plausibly alleged that NVIDIA is vicariously liable for its customers' infringement.

### 1.    NVIDIA had the Right and Ability to Control Infringement

NVIDIA's first argument is that it did not have the right or ability to control third party infringement. MTD at 15–16. Incorrect. NVIDIA controlled what it provided on its training platform, especially the scripts it published to *automatically download*—essentially, automatically steal—

Plaintiffs' works. NVIDIA argues that the mere ability to control a "webpage" is not enough to satisfy this element, but its only authorities for this argument are *Visa*, 494 F.3d at 803, and *Amazon.com*, 508 F.3d at 1173. In both cases, the defendant provided high-level services—credit cards and search engines, respectively—and allegedly failed to take proactive measures to stop copyright infringement using their services. That is not the case here, where NVIDIA knew what its platform was being used for (copyright infringement) and designed it to "help [its] customers access these pirated datasets more quickly and easily." FACC at ¶ 70. That makes this case much more like *Napster*, where the defendant maintained a system architecture allowing third-parties to search for, and download, copyrighted materials. 239 F.3d at 1023–24. The Ninth Circuit affirmed the district court's conclusion that this gave Napster the "right and ability" to control third-party infringement, explaining that Napster had the "ability to police" downloads—just like NVIDIA here. *Id.*; *see also New York Times*, 777 F. Supp. 3d at 308 (denying motion to dismiss when "copyright infringement was central to [defendants'] business model." (quotation omitted)); *Unicolors, Inc. v. Joy 153, Inc.,* 2016 WL 3462128, at *5 (C.D. Cal. June 24, 2016) (meritorious allegation for contributory liability when defendant had right and ability to control sale of copyrighted materials).[6]

### 2.    NVIDIA had a Financial Interest in Third Party Infringement

NVIDIA argues that it had no direct financial interest in third party infringement. This is, again, directly contradicted by the FACC, which explains that Jensen Huang—NVIDIA's CEO—advertised NVIDIA's training platform to the public. FACC at ¶ 69. The FACC also alleges that NVIDIA developed the tools facilitating third party infringement based on its concern that *ordinary* piracy would take too long, so NVIDIA needed to speed it up. FACC at ¶ 70. Finally, the FACC notes

---

[6] NVIDIA emphasizes the phrase "legal right" as if to argue that it did not have the legal right to control the third-party infringement here. MTD at 16. That argument is, point-blank, meritless. NVIDIA had the legal right to not publish tools and provide hardware facilitating the download of stolen books. FACC at ¶¶ 70–72. It chose to do so.

that NVIDIA "attracted customers to use the NeMo Megatron Framework by providing quick access to The Pile," directly alleging a financial interest in the infringement. FACC at ¶ 73.

Trying to dodge these unambiguous allegations, NVIDIA attacks the FACC as "conclusory speculation" that fails to establish a "causal relationship between the infringing activity and any financial benefit a defendant reaps." MTD at 16 (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)). In support of this argument, NVIDIA again inserts allegations that are not in the FACC, arguing that it "received no direct financial benefit." MTD at 16. Defendants are "not free to add their own facts in order to attempt to discredit Plaintiffs' pleadings." *Hernandez v. City of Beaumont*, 2014 WL 688183, at *8 (C.D. Cal. Feb. 21, 2014). As explained above, the FACC alleges that NVIDIA attracted paying customers to its platform with features that facilitated copyright infringement. NVIDIA cannot simply assert that is not true.

NVIDIA's argument is contrary to settled law. "Financial benefit exists where the availability of infringing material 'acts as a draw for customers.'" *Napster*, 239 F.3d at 1023 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996) (internal quotation marks omitted)). It is well established that when revenue is based on future "userbase," and the conduct increases the userbase, financial benefit has been established. *Id.*; *see also Leonard v. Stemtech Int'l Inc,* 834 F.3d 376, 389 (3d Cir. 2016) (affirming denial of a new trial; sufficient evidence of financial benefit when evidence showed that conduct "lend[s] legitimacy to products" which could have "drawn customers to the product"). Allegations of vicarious liability survive the pleadings stage when they "draw[] customers to Defendants' websites/marketplaces resulting in benefits to Defendants they would not otherwise receive." *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 938 (N.D. Cal. 2019) (denying motion to dismiss). Plaintiffs have cleared that bar.

### D.    Any Dismissal Should be Without Prejudice

The Court should deny NVIDIA's motion to dismiss in full. However, if the Court disagrees,

PLAINTIFFS' OPPOSITION TO NVIDIA'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT

any dismissal should be without prejudice. *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *1 (N.D. Cal. Oct. 24, 2023) (granting leave to amend: "The Court should grant leave to amend, unless amendment would be futile"). With regard to Plaintiffs' direct infringement claims, NVIDIA argues that Plaintiffs' allegations are "unsupported by any factual allegations whatsoever." MTD at 16–17. That is clearly incorrect, given that the FACC points to specific models trained on specific datasets containing pirated books. If the Court finds that Plaintiffs' allegations are insufficiently specific—or that Plaintiffs have not adequately contended that their works were in these datasets— Plaintiffs could easily remedy that defect. And with regard to secondary liability, NVIDIA's argument that Plaintiffs cannot plausibly allege conduct by NVIDIA that "materially contributes" to third party infringement strains credulity. As the FACC explains, NVIDIA *specifically designed tools to expedite third-party copyright infringement*. Again, any minor defect in that claim could be resolved.

Finally, any amendment would not prejudice NVIDIA. Any minor pleading deficiency could be quickly addressed without dramatically extending the case schedule.[7] As this Court has already explained, the burden associated with defending against *this particular amendment* does not add to the burden associated with defending against this lawsuit generally. Dkt. 232 at 9–10. Plaintiffs should be allowed to correct any minor pleading defect without restarting the litigation.

## VI.    CONCLUSION

The Court should deny NVIDIA's motion to dismiss. If it concludes that any of Plaintiffs' claims are insufficiently pleaded, Plaintiffs should be granted leave to amend.

---

[7] NVIDIA's concern for the lifespan of this case, MTD at 17, is overblown, given that it has refused to participate in discovery to move this case forward. *See* Dkt. 247 (noting "NVIDIA's counsel has evaded Plaintiffs' discovery demands" and ordering NVIDIA to participate in written discovery). Moreover, the parties have stipulated to extend the fact discovery deadline and revisit the case schedule once the Court rules on this motion. Dkt. 249.

Dated: February 12, 2026

By:    _____ */s/ Elisha Barron* _____
                Elisha Barron

Joseph R. Saveri (SBN 130064)
Diane S. Rice (CSB No. 118303)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
William Castillo Guardado (SBN 294159)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
drice@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com

Bryan L. Clobes (admitted *pro hac vice*)
Mohammed Rathur (admitted *pro hac vice*)
Nabihah Maqbool (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPREN**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312-782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com
nmaqbool@caffertyclobes.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100

RNath@susmangodfrey.com


Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com


Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan B. Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com


Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LL**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com


Anne B. Shaver
**LIEFF CABRASER HEIMANN & BERNSTEIN, LL**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com


Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LL**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
mb@butticklaw.com