QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Alex Spiro (admitted *pro hac vice*)
alexspiro@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant,*
*NVIDIA Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ABDI NAZEMIAN, BRIAN KEENE, STEWART O'NAN, ANDRE DUBUS III and SUSAN ORLEAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Master File Case No. 4:24-cv-01454-JST (SK)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:        April 2, 2026<br>Time:        2:00 p.m.<br>Location:    Courtroom 6<br>Judge:       Hon. Jon S. Tigar |

## TABLE OF CONTENTS

**Page**

I.      ARGUMENT ...................................................................................................................2

        A.     Unidentified Models and Datasets Should Be Dismissed and/or Stricken From the FAC.........................................................................................................2

        B.     Plaintiffs Fail to Connect Their Works to the Challenged Models and Datasets ...................................................................................................................4

        C.     Plaintiffs' Secondary Liability Claims Fail..............................................................9

II.     CONCLUSION ...........................................................................................................15

    Master File Case No. 4:24-cv-01454-JST (SK)

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)........................................................................ 12, 14, 15

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004)................................................................................... 6

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ...................................................................... 8

*Aristocrat Techs., Inc. v. Light & Wonder, Inc.*,
2024 WL 3104806 (D. Nev. June 24, 2024) .............................................................. 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 6

*Bartz v. Anthropic PBC*,
No. 3:24-cv-05417-WHA, ECF No. 50 (N.D. Cal. Oct. 15,  2024)........................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 12

*In re Century Aluminum Co. Securities Litigation*,
729 F.3d 1104 (9th Cir. 2013).................................................................................. 7

*Concord Music Grp., Inc. v. Anthropic PBC*,
2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ........................................................ 10

*Davis v. Pinterest, Inc.*,
2021 WL 879798 (N.D. Cal. Mar. 9, 2021) ............................................................ 11

*DISH Network L.L.C. v. Jadoo TV, Inc.*,
2020 WL 5816579 (N.D. Cal. Sept. 30, 2020)........................................................ 12

*DocMagic v. Ellie Mae*,
745 F. Supp. 2d 1119 (N.D. Cal. 2010) .................................................................. 10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014).............................................................................. 4, 12

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996)..................................................................................... 15

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

*In re Google Generative AI Copyright Litig,*
    2025 WL 2624885 (N.D. Cal. Sept. 11, 2025).............................................................. 3, 6, 8

*Hernandez v. City of Beaumont,*
    2014 WL 688183 (C.D. Cal. Feb. 21, 2014) .......................................................... 14

*Ibrahim v. Def. Language Inst. Foreign Language Ctr.,*
    2015 WL 7272750 (N.D. Cal. Nov. 18, 2015) ....................................................... 13

*Kama v. Mayorkas,*
    107 F.4th 1054 (9th Cir. 2024) ............................................................................. 6

*Keck v. Alibaba.com Hong Kong Ltd.,*
    369 F. Supp. 3d 932 (N.D. Cal. 2019) .................................................................. 15

*Leonard v. Stemtech Int'l Inc.,*
    834 F.3d 376 (3d Cir. 2016) .................................................................................. 15

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,*
    658 F.3d 936 (9th Cir. 2011) ................................................................................ 12

*Luvdarts, LLC v. AT & T Mobility, LLC,*
    710 F.3d 1068 (9th Cir. 2013) ........................................................................ 11, 12

*In re Mosaic LLM Litig.,*
    2025 WL 2402677 (N.D. Cal. Aug. 19, 2025)...................................................*Passim*

*New York Times Co. v. Microsoft Corp.,*
    777 F. Supp. 3d 283 (S.D.N.Y. 2025) .................................................................. 14

*Paramount Pictures Corp. v. Axanar Prods., Inc.,*
    2016 WL 2967959 (C.D. Cal. May 9, 2016)......................................................... 3

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007).............................................................................. 14

*Perfect 10, Inc. v. Giganews, Inc.,*
    847 F.3d 657 (9th Cir. 2017)........................................................................... 14, 15

*Perfect 10 v. Google,*
    No. CV 04-9484 AHM SHX, 2010 WL 9479060 (C.D. Cal. July 30, 2010),
    *aff'd*, 653 F.3d 976 (9th Cir. 2011) ...................................................................... 14

*Schneider v. California Dep't of Corr.,*
    151 F.3d 1194 (9th Cir. 1998)........................................................................... 6, 13

*Sims v. Opportunity Fin., LLC,*
    2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) ....................................................... 9

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ..................................................................................................... 11

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ......................................................................................... 9

*Synopsys, Inc. v. ATopTech, Inc.*,
2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ............................................................... 8

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................................................................... 12

*Tohono O'odham Nation v. Department of Interior*,
138 F.4th 1189 (9th Cir. 2025) .................................................................................. 4, 5

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) .................................................................................... 6, 14

*Valdez v. Naderi*,
2025 WL 2391444 (N.D. Cal. Aug. 18, 2025) ............................................................... 8

*Xin Liu v. Amway Corp.*,
347 F.3d 1125 (9th Cir. 2003) ....................................................................................... 6

## Other Authorities

Fed. R. Civ. P. 8 ........................................................................................................... 1, 9

Fed. R. Civ. P. 12 ............................................................................................................. 13

Master File Case No. 4:24-cv-01454-JST (SK)
NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

Rather than addressing the fundamental defects in the First Amended Complaint ("FAC"), Plaintiffs' opposition (ECF No. 254) invokes generic AI "industry" training practices, generalized allegations about "shadow libraries," and speculation about model scale and hypothetical customer activity for a host of new models and datasets, including some not identified by name. That is not what Rule 8 requires, and it is not what this Court permitted when granting leave to amend.

First, the Court should dismiss the FAC's catch-all allegations about unnamed models or datasets. Plaintiffs' opposition does not identify any pleaded facts that support claims based on models or datasets beyond those specifically identified in the FAC. In fact, Plaintiffs' opposition retreats from the language of the FAC, asserting that the words "NVIDIA LLMs" in the FAC refer only to "checkpoints" associated with the five models specifically listed in the FAC.[1]

Second, as to three of the five models for which leave to amend was granted (the only specifically-named models NVIDIA seeks to dismiss), Plaintiffs fail to allege any facts establishing that their works were used in training them. Instead, Plaintiffs offer only conjecture based on the timing of training, volume of training data, and/or bald assertions contradicted by judicially-noticeable documents (the same type of documents from the same source Plaintiffs cite elsewhere in the FAC).

Third, as to the new datasets specifically identified in the FAC, Plaintiffs do not plausibly allege facts that show NVIDIA copied their works, that those works were present in any NVIDIA training dataset, or that any challenged NVIDIA model was trained on their works. Accordingly, the FAC's allegations as to three of the new models and all of the new datasets should also be dismissed.

Fourth, Plaintiffs' opposition fails to support their new secondary liability theories. Plaintiffs do not identify any direct infringement NVIDIA allegedly induced, nor do they plausibly allege the kind of purposeful, culpable conduct required under Supreme Court precedent or the

---

[1] In general, a "checkpoint" refers to a snapshot of certain aspects of a particular model (such as a model's weights) at a particular time during a training run.

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

requisite direct financial benefit.  Generalized assertions about providing software cannot supplant allegations of specific infringing acts involving Plaintiffs' works.

In short, Plaintiffs respond to NVIDIA's motion not by pointing to specific factual allegations, but by reframing their theories at an even higher level of abstraction.  That approach cannot overcome the FAC's failure to plead facts sufficient to establish a plausible connection between NVIDIA and infringement of Plaintiffs' eight works at issue.  All challenged claims should be dismissed.

## I.    ARGUMENT

### A.    <u>Unidentified Models and Datasets Should Be Dismissed and/or Stricken From the FAC</u>

To obtain leave to amend, Plaintiffs represented that "the FACC is a targeted amendment about five discrete models—it adds new allegations about a Megatron model, two Nemotron models, and two 'Retro' models based on recent discovery.  It does not add every AI model or LLM developed by NVIDIA[.]"  ECF No. 212 at 12.[2]  Based on these statements, the Court granted leave to amend as to "five" LLMs.  ECF No. 232 at 6.  The FAC, however, contains catch-all language far in excess of the granted leave, and Plaintiffs have refused to limit their discovery requests (or the case) to the specifically-named models, asserting "[t]he FACC also implicates … any other models trained on … books downloaded from shadow libraries[.]"  McCracken Decl. Ex. 1 at 1.  Plaintiffs' other discovery requests are similarly inconsistent with their representations to the Court to secure amendment, their opposition, and the Court's order on amendment.  ECF No. 250 at 13-15.  The Court should reject Plaintiffs' efforts to use catch-all allegations to expand the case past the specifically-named models and datasets.

First, Plaintiffs' opposition itself retreats from the language of the FAC and their own recent discovery requests, arguing that the FAC's catch-all allegations about "NVIDIA LLMs" refer only to "checkpoints" of "specifically-identified NVIDIA LLMs."  Opp. at 13; *id.* at 14 ("[T]hese non-

---

[2]  Contrary to Plaintiffs' claim, NVIDIA has engaged in discovery and began producing materials related to allegations in the FAC on February 4, 2026, and has continued to do so, while preserving its objections.  ECF No. 250 at 18.

released checkpoints are properly at-issue **when the Complaint identifies the relevant model families**." (emphasis added)).  In other words, Plaintiffs concede that the proper scope of the FAC is no more than the five listed LLMs and any checkpoints for those five models.  The Court should hold Plaintiffs to that admission, which alone is sufficient to dismiss any allegations about unidentified LLMs and checkpoints.

Second, permitting Plaintiffs to expand their allegations to model *families* would also improperly allow further amendment without leave and without affording NVIDIA a fair opportunity to oppose the inclusion of these belatedly disclosed models.[3]  Plaintiffs' original complaint included allegations as to the Nemo Megatron *model family*, not one specific model in it. ECF No. 168 at 3; ECF No. 1 ¶¶ 2-5 (alleging "copying to train [the] NeMo Megatron language models" (plural), where Plaintiffs defined "NeMo Megatron" as "a series of large language models created by NVIDIA").  Plaintiffs did not plead the same allegations as to model families here and Plaintiffs should not be allowed to now surreptitiously sweep in models they failed to specifically accuse after representing their requested amendment added only "five discrete models," not to whatever they would pursue as model families.  ECF No. 212 at 8.[4]

Third, the FAC is replete with allegations about unnamed "shadow libraries" lacking any connection to Plaintiffs' works.  At least two courts in this District have dismissed allegations that failed to plead the at-issue models are trained on specific datasets, much less those containing

---

[3]  This would allow Plaintiffs to improperly sweep into this case any number of models that could have materially changed the amendment analysis.

[4] Plaintiffs' cited cases are all distinguishable on that basis; in each, the complaint asserted or accused broader families, not specific works or models.  *See Paramount Pictures Corp. v. Axanar Prods., Inc.*, 2016 WL 2967959, at \*3 (C.D. Cal. May 9, 2016) ("Plaintiffs here … alleged copyright infringement as to the Star Trek franchise *as a whole*." (emphasis added)); *Aristocrat Techs., Inc. v. Light & Wonder, Inc.*, 2024 WL 3104806, at \*7 (D. Nev. June 24, 2024) (finding sufficient plaintiffs' "*eight pages of infringement examples*" and allegation these "representative infringement examples feature audiovisual elements *common to all games*" (emphases added)); *In re Google Generative AI Copyright Litig.*, 2025 WL 2624885, at \*6-7 (N.D. Cal. Sept. 11, 2025) (denying motion to dismiss models specifically mentioned in complaint); *In re Mosaic LLM Litig.*, 2025 WL 2402677, at \*2 (N.D. Cal. Aug. 19, 2025) (same).  None involved allegations expressly limited to a discrete list of specific models or works in seeking leave to amend.

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs' works. *In re Mosaic*, 2025 WL 2402677, at *2 (allegation that "some open data sets 'include notorious shadow library websites, which include Plaintiffs' works'" failed to state a direct copyright infringement claim); *In re Google*, 2025 WL 2624885, at *7 ("These models are referenced … in a long list of what appears to be every generative AI model that Google has ever developed. Because Plaintiffs do not allege that any of their works were included in training datasets used to develop these models, Plaintiffs do not plausibly allege copyright infringement."). Here, too, dismissal is warranted. The Court should dismiss the catch-all allegations about unnamed models and datasets from the FAC.

**B.      Plaintiffs Fail to Connect Their Works to the Challenged Models and Datasets**

The Court should also dismiss the FAC's allegations regarding the specifically identified models and datasets discussed below.

*Megatron 345M.* Plaintiffs' opposition repeats the same misleading allegations as the FAC. Plaintiffs claim they allege Megatron 345M was trained on The Pile and that The Pile included Plaintiffs' works. Opp. at 12. But the Pile is a collection of 22 datasets, and the FAC does not allege Megatron 345M was trained on the specific dataset allegedly containing Plaintiffs' works (Books3). Mot. at 14. This artfully drafted allegation should be disregarded. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997-98 (9th Cir. 2014) (affirming dismissal where "Plaintiffs have not made the kind of factual allegations that nudge their claims across the line from conceivable to plausible" and did not "exclude the alternative explanation" (cleaned up)).

Moreover, the judicially noticeable public model card confirms Plaintiffs **cannot** connect Megatron 345M to their works. The public model card that identifies the portions of The Pile on which Megatron 345M was trained does not include Books3, the sole dataset containing Plaintiffs' works. Mot. at 8. Plaintiffs' complaint that the specific model card "is not part of the FACC" (Opp. at 11) is irrelevant to judicial notice, especially where Plaintiffs cite other model cards from the same source. FAC ¶ 30.

*Tohono O'odham Nation v. Department of Interior*, cited by Plaintiffs, is inapposite. There, the district court erroneously "considered documents that may not be considered at the motion-to-dismiss stage." 138 F.4th 1189, 1202 (9th Cir. 2025). The Ninth Circuit clarified the district court

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

may consider "matters of which the court may take judicial notice," which is all NVIDIA requests here. *Id.* Plaintiffs offer only unsubstantiated attorney argument to challenge information disclosed in the model card (*see* Opp. at 12), which shows a last-modified date of November 7, 2021 (ECF No. 206-8 at 2)—long before Plaintiffs filed suit and any supposed incentive to obfuscate training data would have arisen. Moreover, Plaintiffs have relied on model cards from the same source to support other allegations, defeating any claim the model cards are unreliable. FAC ¶ 30. Because Plaintiffs fail to plead plausible facts showing Megatron 345M was trained on Plaintiffs' works— and the judicially-noticeable public model card confirms they cannot—this model should be dismissed.

***Nemotron-4 15B and Nemotron-4 340B.*** Plaintiffs tacitly confirm that their allegations regarding Nemotron-4 15B and Nemotron-4 340B are pure speculation. Opp. at 12-13. Plaintiffs cite no evidence showing the contents of these models' training data, beyond that they were allegedly trained on "millions of books" and thus somehow must have been trained on Plaintiffs' works. *Id.* Plaintiffs also attempt to distinguish *Mosaic*, but the fact that the plaintiffs in *Mosaic* did not allege the model was trained on books is a distinction without a difference. The issue in *Mosaic* and here is the same: whether speculation about "the mere size of the data sets" is sufficient to plausibly plead infringement. *In re Mosaic*, 2025 WL 2402677, at *2. *Mosaic* confirms it is not. In any event, the *Mosaic* plaintiffs alleged the "'open data sets' known to the community include notorious shadow library websites, which include Plaintiffs' Works," and thus ***did*** allege the dismissed model was trained on books. *Id.*, No. 3:24-cv-01451-CRB (N.D. Cal. June 27, 2025), ECF No. 131 ¶ 41.

Plaintiffs' opposition also raises a new timing argument, claiming that Nemotron-4 15B and Nemotron-4 340B were trained close in time to when NVIDIA allegedly downloaded works from a shadow library. Opp. at 13. This new argument fails because these "timing" allegations described in Plaintiffs' opposition are absent from the FAC: Plaintiffs allege only that NVIDIA ***contacted*** an alleged shadow library in fall 2023. FAC ¶¶ 54-56; *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (on a Rule 12(b)(6) motion, "a court *may not* look beyond the complaint to a plaintiff's [briefs], such as a memorandum in opposition to a defendant's motion to

dismiss"). Moreover, the FAC has not properly alleged that any specific works were downloaded and has not identified a date on which NVIDIA allegedly received or downloaded Plaintiffs' works prior to the release of Nemotron-4 15B or Nemotron-4 340B. *See id.* ¶¶ 57-62.

In addition, neither *Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) nor *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017), cited by Plaintiffs, suggest that temporal proximity of events can provide a "reasonable" inference of infringement, particularly where a specific nexus is required. The Ninth Circuit **affirmed dismissal** in *Adams*, 355 F.3d at 1181, and *Unicolors* was an appeal of a default judgment involving "striking similarity" between the at-issue works, not mere temporal proximity. 853 F.3d at 985, 987-88. Finding no support in those cases, Plaintiffs look to employment law. Opp. at 13 (citing *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003)). Even in that context, "temporal proximity alone … is not sufficient to show pretext" in most cases. *Kama v. Mayorkas*, 107 F.4th 1054, 1061 (9th Cir. 2024). The same is true here. Without a nexus tying the alleged copying (whenever that occurred) to the release of Nemotron-4 15B and Nemotron-4 340B, Plaintiffs merely speculate these models were trained on their works. Because speculation is no substitute for pleading facts, these models should be dismissed as well.

***Anna's Archive***. Although Plaintiffs claim the FAC "unambiguously" alleges NVIDIA downloaded Plaintiffs' works from Anna's Archive (Opp. at 16), they point only to conclusory assertions, without a plausible factual basis.[5] In asking the Court to "accept all factual allegations in the Complaint as true and construe them in the light most favorable to the non-moving party" (*id.*), Plaintiffs ignore black-letter pleading rules: mere conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Indeed, courts in this District— faced with these same issues in cases brought by some of these same Plaintiffs—have dismissed

---

[5] Plaintiffs strain to make relevant an email chain between NVIDIA and Anna's Archive, claiming the email shows (1) NVIDIA contacted Anna's Archive about "accessing data"; (2) Anna's Archive asked NVIDIA to confirm it was willing to proceed; and (3) an NVIDIA employee represented they had a "green light" (without referencing the "executives" Plaintiffs claim gave this authorization). Opp. at 7, 9, 16. But this email does not show NVIDIA downloaded or used Plaintiffs' works. ECF No. 227-3.

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

claims where Plaintiffs failed to "plead some non-speculative facts about what Defendant infringed and how." *In re Mosaic*, 2025 WL 2402677, at *2 (granting motion to dismiss DBRX models' underlying data sets); *In re Google*, 2025 WL 2624885, at *7 (granting motion to dismiss Google's models where plaintiffs "did not allege that any of their works were included in training datasets used to develop these models.").

The conclusory nature of Plaintiffs' allegations as to Anna's Archive allegations is reinforced by comparing them to Plaintiffs' allegations as to Books3 (which were not the subject of a motion to dismiss). For Books3, Plaintiffs alleged: (1) the dataset contains "approximately 196,640 books"; (2) their specific works are "among the works in the Books3 dataset"; (3) Books3 was part of The Pile; (4) The Pile was used to train specific models (NeMo Megatron); and (5) NVIDIA "necessarily" copied Books3 when downloading The Pile. FAC ¶¶ 31-38. Although disputed, these allegations at least connect a specific dataset to Plaintiffs' specific copyrighted works and specific models. By contrast, Plaintiffs' Anna's Archive allegations do not. And although Plaintiffs vaguely attempt to connect Anna's Archive to the Nemotron-4 models based on dataset size and timing (*id.* ¶¶ 59-61), an attempt that fails for the reasons stated above, they do not allege—even on information and belief—those models were trained on data from Anna's Archive.

Plaintiffs fail to distinguish *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1108 (9th Cir. 2013) because they wrongly assume their allegations cross the line from possible to plausible, when they have not. Opp. at 16-17. As set out in *Century Aluminum*, "[t]o render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation." 729 F.3d at 1108. Because Plaintiffs provide no factual support for their allegation that NVIDIA actually obtained or used Plaintiffs' books from Anna's Archive for training, the Anna's Archive dataset should be dismissed.

***SlimPajama***. Plaintiffs assert the SlimPajama dataset included Books3 (containing their works), based on their allegation that the separate RedPajama dataset includes Books3. Opp. at 17. But Plaintiffs offer only an unattributed quote for the implication that SlimPajama includes all

RedPajama content. FAC ¶ 42. Lacking a well-pleaded factual nexus, SlimPajama should be dismissed. Mot. at 9-10.

**Bibliotik, LibGen, Sci-Hub, Z-Library, and Pirate Library Mirror**.[6] Plaintiffs try to salvage their unsupported "information and belief" allegations regarding several other supposed "shadow libraries" by conflating them with separate allegations regarding Books3 and Anna's Archive. Opp. at 17-18. This pivot is a tacit admission they have failed to allege their specific works were downloaded by NVIDIA from this laundry list of "shadow libraries." Plaintiffs contend they sufficiently alleged NVIDIA downloaded their works from that list of "shadow libraries" because those sources existed before Books3 or Anna's Archive were created. But the mere existence of a dataset does not support a plausible inference that it must have been included in any later "shadow library." Plaintiffs also offer no plausible connection to NVIDIA downloading their works from those sources. Plaintiffs cannot state a viable claim for copyright infringement without alleging NVIDIA downloaded and used their works for training. *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013); *In re Mosaic*, 2025 WL 2402677, at *2 (dismissing claim without leave to amend because "Plaintiffs do not allege facts that could establish that [defendants'] models are actually trained on any shadow library websites, let alone those that contain Plaintiffs' works."); *In re Google*, 2025 WL 2624885, at *7; *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 869 (N.D. Cal. 2023). Plaintiffs have not done so here.

Plaintiffs' reliance on Judge Alsup's statements during the first conference in *Bartz v. Anthropic* is misplaced: Judge Alsup did not "reject[]" NVIDIA's argument as to sufficiency of the pleadings (Opp. at 18-19); he was never asked to examine it because no motion to dismiss was filed. The quoted exchange related to the plaintiffs' failure to provide facts from their pre-filing investigation. Anthropic's counsel explained the plaintiffs were simply naming data sources and "don't clearly state, like, they've done their work and they have concluded that these books are in Books3." *Bartz*, No. 3:24-cv-05417-WHA, ECF No. 50 (Oct. 10, 2024) at 8:14-17. And even at

---

[6] Plaintiffs do not respond to NVIDIA's argument regarding their unsupported allegations about the BitTorrent Protocol. Mot. at 10. This claim is abandoned, and dismissal is appropriate. *Valdez v. Naderi*, 2025 WL 2391444, at *10 (N.D. Cal. Aug. 18, 2025) (dismissing without leave to amend).

this early hearing, Judge Alsup ordered Plaintiffs to provide Anthropic with information purportedly showing that Plaintiffs' books were in Books3. *Id.* at 10:12-13.

Plaintiffs rely on *Soo Park v. Thompson* (and out-of-circuit cases) (Opp. at 13), where unverified allegations were taken as true "because many of the relevant facts here are known only to the defendant, and in light of the additional facts alleged by [plaintiff]." 851 F.3d 910, 928-29 (9th Cir. 2017). But courts in this District have refused to apply *Soo Park* to accept conclusory information and belief allegations, as Plaintiffs ask the Court here as to their allegations NVIDIA downloaded their works from shadow libraries. *See Sims v. Opportunity Fin., LLC*, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021) (granting motion to dismiss with prejudice).

Finally, Plaintiffs do not dispute that they substituted allegations about other companies for facts as to NVIDIA. Opp. at 19. That is improper. Plaintiffs must allege facts about "the defendant"—not other companies. Mot. at 11. Instead, Plaintiffs claim their "information and belief" allegations that NVIDIA "downloaded books hosted by other shadow libraries" are sufficient (Opp. at 20 (citing FAC ¶ 51)), but this argument fails because Rule 8 requires that Plaintiffs plead "non-speculative facts about what Defendant infringed and how." *In re Mosaic*, 2025 WL 2402677, at *2 (internal quotation omitted).

### C.    Plaintiffs' Secondary Liability Claims Fail

#### 1.    Plaintiffs Fail to Allege An Act of Direct Third-Party Infringement

To plead *either* contributory or vicarious liability, a plaintiff must allege an actual third-party infringement; speculation infringement has occurred does not suffice. Mot. at 18-19. Here, Plaintiffs fall short, alleging only what might have been possible without facts as to what any third party actually did. Specifically, the FAC fails to allege any NVIDIA customer *actually downloaded* The Pile with a script provided by NVIDIA. Plaintiffs allege only "[o]n information and belief, NVIDIA provided the tools and scripts for Writer to download The Pile" and that "NVIDIA provided similar assistance in downloading and processing The Pile to clients Persimmon AI Labs

and Amazon." FAC ¶ 71.[7] Plaintiffs do not allege that Writer, Persimmon, or Amazon **actually downloaded** The Pile or Plaintiffs' works; just that they had tools to do so, with no allegation as to what those customers actually did. Plaintiffs allege at most that tools were available on NVIDIA's website that **could potentially have been used** to download The Pile. But alleging what third parties **could have done** is not a substitute for "clearly alleg[ing] a predicate act of direct third-party infringement." *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1487988, at *4 (N.D. Cal. Mar. 26, 2025).

In *Concord Music*, the court dismissed secondary liability claims where plaintiffs alleged "individual users, through Anthropic's website, can request and obtain" copyrighted content and "could and would direct" the AI system to deliver copies of plaintiffs' works. *Id.* at *3-4. The court held these allegations insufficient because they "assert what unidentified users 'can' do," but "have not clearly alleged a predicate act of direct third-party infringement." *Id*. The court rejected plaintiffs' attempt to plead infringement based on theoretical capability rather than actual conduct. That Plaintiffs here embellished their allegations with names of three customers who had the theoretical capability to infringe makes no difference. Plaintiffs do not allege they **actually** infringed, let alone used any tool provided by NVIDIA to infringe, and their secondary liability claims thus fare no better than those in *Concord Music*.

Plaintiffs mischaracterize *DocMagic v. Ellie Mae*, 745 F. Supp. 2d 1119 (N.D. Cal. 2010) (Opp. at 21), as lowering the pleading standard for underlying direct infringement. In fact, the *DocMagic* counterclaim plaintiff alleged specific underlying infringement by specific third parties. DocMagic directly provided Ellie Mae's SDK to third parties and instructed them to use it with DocMagic's software without Ellie Mae's consent; with software, any "unauthorized use of a copyrighted computer program constitutes copyright infringement." *DocMagic*, 745 F. Supp. 2d at 1148. In contrast, NVIDIA did not provide Plaintiffs' works to third parties. Instead, NVIDIA

---

[7]  In granting leave to amend, the Court (ECF No. 232 at 7) accepted Plaintiffs' characterization of their allegations in their motion as showing NVIDIA helped customers download the Pile. ECF No. 212 at 12. That characterization, however, is not supported by the FAC. There are no allegations that Writer, Persimmon, or Amazon **actually downloaded** The Pile, nor do Plaintiffs identify any.

made its own open source software available, but that software only infringes if third parties **both** choose to use it and select certain options. Crucially, there are no allegations that any third party used it **to download The Pile**.[8]

### 2. Plaintiffs Fail to Adequately Plead Contributory Liability

Plaintiffs fail to adequately plead the remaining elements of contributory liability. Plaintiffs mischaracterize the NeMo Megatron Framework, arguing that the pleading standard is satisfied because it was purpose-built for infringement. But the FAC does not allege that the framework's sole purpose was infringement. Plaintiffs ignore the FAC's actual allegations and incorrectly argue this case is distinguishable from cases like *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) and *Davis v. Pinterest, Inc.*, 2021 WL 879798, at *3-4 (N.D. Cal. Mar. 9, 2021) because the defendants in those cases provided "platforms of general application," whereas "the whole purpose of NVIDIA's service was to make it quick and easy to train AI models through downloading stolen books." Opp. at 23. But this grossly overstates Plaintiffs' allegations. Plaintiffs allege the "purpose" of the framework was to help customers "create and build their own AI models"; not to infringe Plaintiffs' works. FAC ¶ 69. Moreover, the FAC alleges no facts that NVIDIA intended its customers to use the framework for infringement. *See id.* ¶ 71.

The Supreme Court has clarified that providers of tools "capable of substantial noninfringing uses" are not liable for contributory infringement absent specific intent to induce infringement. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984). Plaintiffs cannot seriously contend the framework is not capable of substantial non-infringing uses. *See* Opp. at 21. Much like Microsoft Word and Adobe Acrobat are tools that allow users to view and edit documents—whether those documents contain copyrighted material or not—the framework is a tool that enables users to train LLMs on any dataset of their choosing, whether or not that dataset contains copyrighted works

---

[8] Plaintiffs contend NVIDIA offers "auto-book-stealing scripts." Opp. at 21. This inflammatory claim is neither alleged in the FAC nor supported by fact. Plaintiffs alleged the "NeMo Megatron Framework" could be used to "develop a language model." FAC ¶¶ 71-72. Individual customers choose which parts of the framework to use, select which scripts to use, and can customize and activate options within those scripts. The "download" functionality is optional, and there are no allegations any NVIDIA customer actually used it to download The Pile.

at all, much less Plaintiffs' copyrighted works. Unsurprisingly, Plaintiffs did not plead there are no non-infringing uses for the framework. And Plaintiffs do not—and cannot—dispute non-infringing uses exist and are substantial. They merely speculate the claim may involve "potentially other datasets including copyrighted books as well." FAC ¶¶ 85-86. Pure speculation with no supporting factual allegations is not enough. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). And absent supporting facts, Plaintiffs' allegations do not warrant inferences in their favor. *Eclectic Props.*, 751 F.3d at 995-97, 1000.

Contributory infringement "requires more than a generalized knowledge" of "the possibility of infringement"; it demands "actual knowledge of specific acts of infringement." *Luvdarts*, 710 F.3d at 1072 (quotations and citations omitted). Plaintiffs cite three readily distinguishable cases in an effort to excuse their inadequate pleading. Opp. at 23. First, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) involved a peer-to-peer file-sharing service where virtually all current use was infringing. This would be more akin to Plaintiffs suing Anna's Archive directly; it does not resemble using a software framework to develop models with functionality entirely separate from training and that, even for training, could use any dataset a user selected, including their own data. Second, in *DISH Network L.L.C. v. Jadoo TV, Inc.*, 2020 WL 5816579, at *6 (N.D. Cal. Sept. 30, 2020), the accused platform was allegedly "designed … to directly stream [copyrighted] channels," without any other legitimate use. Third, in *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1165 (C.D. Cal. 2018), the "Defendants directed the Bot Developers to download and store on their computer systems large portions of Ticketmaster's copyrighted Site and App." Conversely, here, Plaintiffs do not allege NVIDIA directed customers to download The Pile, that the accused tools required downloading The Pile, or that any customers used the framework to infringe.

In any event, Plaintiffs all but concede NVIDIA did not "materially contribute" to third-party infringement, which is fatal to their claims. Telling, faced with the legal standard for material contribution, Plaintiffs abandon their script-based theory and instead argue NVIDIA provided "server space." Opp. at 25-26. Plaintiffs' script-based theory cannot satisfy the material contribution standard, which requires a defendant's own infrastructure or systems be "an essential

step in the infringement[.]" *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quotation omitted).

Plaintiffs' fallback theory also fails for multiple reasons. First, the FAC lacks any specific allegations about NVIDIA providing any "server space," let alone what server space was provided, to allow customers to download The Pile or Books3. Plaintiffs attempt to leverage Paragraph 72 of the FAC in their opposition to craft new allegations. Opp. at 25. However, this paragraph appears to rely on an NVIDIA document, cited and attached to Plaintiffs' motion for leave to amend, which merely states that a customer should "expect 9.8 days training on 8 DGX A100 servers." ECF No. 192-19. It does not state the customer in question downloaded or used The Pile or Books3 for training, and DGX A100 servers are commercially available hardware that anyone may purchase and use. Nor does it even suggest that NVIDIA was providing space **on its own servers** for downloading or training on The Pile or Books3. And there are no allegations The Pile, Books3, or Plaintiffs' works were downloaded from an NVIDIA server or using space on NVIDIA-operated servers, or otherwise used for training on NVIDIA server space. Second, new theories on opposition cannot cure a deficient pleading. *Schneider*, 151 F.3d 1194 at n.1 (on a Rule 12(b)(6) motion, "a court *may not* look beyond the complaint to a plaintiff's [briefs], such as a memorandum in opposition to a defendant's motion to dismiss"); *Ibrahim v. Def. Language Inst. Foreign Language Ctr.*, 2015 WL 7272750, at *5 n.74 (N.D. Cal. Nov. 18, 2015) (same).

### 3. Plaintiffs Fail to Adequately Plead Vicarious Liability

***No Right and Ability to Control.*** Plaintiffs fail to plead adequately that NVIDIA had the right and ability to control the allegedly infringing conduct. Plaintiffs allege third parties used optional functionality in one script included in the NeMo Megatron Framework to download The Pile ***from Eleuther AI***—a separate entity that offers The Pile in its public repository. ECF No. 193 at 5 ("customers were downloading The Pile directly from Eleuther AI."). NVIDIA has no right to control that activity, either by its customers or Eleuther AI, and Plaintiffs allege no such right. The FAC confirms as much, alleging only that NVIDIA "customers ***can use*** the NeMo Framework" and "NVIDIA provided tools and resources ***for its customers to use***[.]" FAC ¶¶ 69-70 (emphasis added). All alleged infringing conduct could have occurred absent NVIDIA's involvement, with its

customers choosing whether and what to download from Eleuther AI.  Plaintiffs allege no facts and cite no cases suggesting NVIDIA has "a *legal right* to stop or limit the directly infringing conduct." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) (emphases added).

Plaintiffs' cited cases are distinguishable because in each there was a direct ability to control the alleged infringing conduct.  In *Unicolors*, the defendant itself was directly infringing by selling the infringing products, and it had "the right and ability to not engage in these transactions with third-party retailers," giving it direct control over the infringing conduct.  2016 WL 3462128, at *4-*5 (default judgment).  Similarly, in *Napster*, the defendant operated the centralized index and had the ability to "locate infringing material listed on its search indices" and "the right to terminate users' access to the system."  239 F.3d at 1024.  NVIDIA, in contrast, did not operate a site solely for the purpose of transferring files like Napster, but offers a framework to develop AI models.  It similarly has no index of materials accessed or downloaded by customers.  And *New York Times* focused on model outputs and included allegations that defendant's model caused the "unauthorized display of [copyrighted] works in response to third-party queries."  777 F. Supp. 3d 283, 308 (S.D.N.Y. 2025).  There are no allegations of infringing output here.

***No Direct Financial Interest.***  For vicarious liability, a plaintiff must allege facts showing a "causal relationship between the infringing activity and any financial benefit a defendant reaps." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (internal quotation omitted). Plaintiffs have not identified any direct financial benefit NVIDIA received from alleged third-party infringement.  Plaintiffs do not dispute they are required to show NVIDIA derives a direct financial benefit from their activity.  Opp. at 29-30.  Plaintiffs also do not dispute the identified scripts and NeMo Megatron Framework were available to the public for free.  Indeed, Plaintiffs ignore *Perfect 10 v. Google*, which found plaintiff "failed to provide evidence" likely to establish the defendant derives a direct financial benefit as required for vicarious liability where plaintiff "does not dispute that [defendant] provides [the at-issue product] as a free service to users without charging a fee." No. CV 04-9484 AHM SHX, 2010 WL 9479060, at *9 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011) (cited by Mot. at 16).  Plaintiffs cite *Hernandez v. City of Beaumont* for the proposition that a defendant cannot "add their own facts" in attacking a plaintiff's pleading.  But the

-14-                    Master File Case No. 4:24-cv-01454-JST (SK)

amended complaint there predated any discovery.  Opp. at 30.  Here—where Plaintiffs' amended claims are purportedly based on information from discovery—Plaintiffs deliberately omitted information that the identified scripts and the NeMo Megatron Framework are available for free. Plaintiffs would have alleged otherwise if they could.

Plaintiffs argue the FAC establishes NVIDIA's financial benefit (Opp. at 29-30), but each cited paragraph only illustrates why Plaintiffs' vicarious liability claim fails: advertising NVIDIA's training platform to the public (Opp. at 29 (citing FAC ¶ 69)) does not establish direct financial benefit from infringement; allegedly "providing tools and resources" (FAC ¶ 70) does not plausibly confer a direct financial benefit without any connection to increased revenue, premium pricing, or any financial gain; and "attract[ing] customers to use the NeMo Megatron Framework by providing quick access to The Pile" (*id.* ¶ 73) (an unsupported legal conclusion) is exactly the allegation the Ninth Circuit foreclosed in *Giganews*.  *See* 847 F.3d at 673 ("the direct financial benefit prong of the vicarious infringement test 'demands more than evidence that customers were 'drawn' to [a defendant] to obtain access to infringing material in general.'").

Plaintiffs' cited cases—involving very different facts than this case, where NVIDIA's script is but one optional script among many in a free, general purpose framework designed to help customers build their own AI models on any platform using any dataset of training material—are inapposite.  *Compare* FAC ¶¶ 69-70, *with Napster*, 239 F.3d at 1023 (virtually all use was infringing and future revenue was "directly dependent upon increases in user base"); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996) (revenue flowed from customers who wanted to buy counterfeit recordings); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 389 (3d Cir. 2016) (images lent legitimacy to and drew customers to buy products); *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 938 (N.D. Cal. 2019) (alleged support for "the inference that the allegedly infringing material draws customers to Defendants' websites/marketplaces").

## II.    CONCLUSION

NVIDIA respectfully asks the Court to grant its motion in its entirety.

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated:  February 18, 2026          Respectfully Submitted,

By:    /s/ Andrew H. Schapiro
       QUINN EMANUEL URQUHART & SULLIVAN, LLP

       Sean S. Pak (SBN 219032)
       seanpak@quinnemanuel.com
       50 California Street, 22nd Floor
       San Francisco, CA 94111
       Telephone: (415) 875-6600
       Facsimile: (415) 875-6700

       Andrew H. Schapiro (admitted pro hac vice)
       andrewschapiro@quinnemanuel.com
       191 N. Wacker Drive, Suite 2700
       Chicago, Illinois 60606
       Telephone: (312) 705-7400
       Facsimile: (312) 705-4001

       Alex Spiro (admitted pro hac vice)
       alexspiro@quinnemanuel.com
       295 Fifth Avenue
       New York, NY 10016
       Telephone: (212) 849-7000
       Facsimile: (212) 849-7100

       Attorneys for Defendant,
       NVIDIA Corporation

NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT