1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                     **NORTHERN DISTRICT OF CALIFORNIA**

10                              **OAKLAND DIVISION**

11  Abdi Nazemian, et al.,                    Master File Case No. 4:24-cv-01454-JST (SK)
                                              Consolidated with Case No. 4:24-cv-02655-JST
12              Plaintiffs,                    (SK)

13         vs.                                **ATTESTATION IN SUPPORT OF JOINT
                                              LETTER BRIEF**
14  NVIDIA Corporation,

15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ATTESTATION IN SUPPORT OF JOINT LETTER BRIEF

2       Pursuant to the Standing Order for Magistrate Judge Sallie Kim, undersigned counsel hereby

3    attest that NVIDIA's co-lead counsel Andrew Schapiro and Bryan Clobes and Rohit Nath for

4    Plaintiffs met and conferred by videoconference in a good faith attempt to resolve their disputes and

5    complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding

6    Discovery prior to filing the accompanying joint letter. The parties were unable to resolve the dispute

7    and respectfully submit it to the Court.

8

9    Dated: March 4, 2026                     Respectfully submitted,

10                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
11

12                                             By:  /s/ Rachael L. McCracken
                                                  Rachael L. McCracken
13
                                                  *Attorneys for Defendant NVIDIA*
14                                                *Corporation*

15                                            SUSMAN GODFREY LLP

16                                             By:  /s/ Rohit Nath
                                                  Rohit Nath
17
                                                  *Counsel for Individual and*
18                                                *Representative Plaintiffs and the*
                                                  *Proposed Class*
19

20

21

22

23

24

25

26

27

28

Dear Judge Kim,

Pursuant to Your Honor's Standing Order, the parties submit this letter brief regarding a dispute over NVIDIA's production of data implicated by Plaintiffs' amended complaint, Dkt. 235, and NVIDIA's identification of datasets and data sources containing books. Counsel for the parties met and conferred by video on February 25, 2026, but are at an impasse.

The discovery and case management deadlines are as follows (Dkt. 251):

(1) Joint Case Management Statement: March 13, 2026;
(2) Further Case Management Conference - Videoconference Only: Mar. 20, 2026;
(3) Deadline to Serve Written Discovery: April 10, 2026;
(4) Deadline to File Motions Regarding Fact Discovery: April 17, 2026; and
(5) Close of Pre-Class Certification Fact Discovery: May 5, 2026.

The parties also agreed "that the remainder of the case schedule will need to be modified" and to "negotiate in good faith regarding the full case schedule after the Court rules." *Id.* The parties have not yet submitted a new proposed schedule. In the event they cannot reach an agreement, then "the remaining case deadlines will be spaced out in the same way as in the existing case schedule[.]" *Id.*

**Plaintiffs' Position**

Seven weeks ago, the Court granted Plaintiffs' motion for leave to file the First Amended Consolidated Complaint ("FACC," Dkt. 235), which alleges that NVIDIA sourced books from a criminal enterprise called Anna's Archive and other shadow libraries. Ever since, NVIDIA has refused to cooperate in ongoing discovery. On February 6, 2026 the Court rejected NVIDIA's attempt to unilaterally stay discovery on new issues in the FACC, and two weeks ago it denied NVIDIA's motion to stay discovery pending resolution of its motion to dismiss. Dkt. 247 ("NVIDIA's conduct in not complying with its discovery obligations relating to the operative complaint is self-help. NVIDIA therefore has no legal basis to forestall its obligations to engage in written discovery in good faith."); Dkt. 257. Despite having lost twice on efforts to halt discovery, NVIDIA continues to argue that discovery into shadow library downloads should await resolution of its motion to dismiss. Just one day after it assured the Court that it was proceeding with discovery on the FACC and complying with the Court's orders, NVIDIA served *only objections*—without any substantive responses—to Plaintiffs' interrogatories asking NVIDIA to identify its downloads of pirated books. NVIDIA asserted that Plaintiffs' requests are "**not relevant to any claim or defense asserted in the action**" because "**the Court has not yet decided the Motion to Dismiss Plaintiffs' First Amended Complaint.**" Ex. A at 3, 5, 9, 11–13, 15, 19 (emphasis added) (served 2/20/2026).

That violates the Court's rulings. Dkt. 247, Dkt. 257. And it prevents Plaintiffs from meaningfully moving this case along, because NVIDIA will not provide—or is dramatically delaying providing—information central to Plaintiffs' claims. With more than 20 depositions and expert reports around the corner, Plaintiffs cannot continue to wait for NVIDIA to decide when it will be ready to comply with Court orders and produce information relevant to the FACC.

To streamline the issues, Plaintiffs requested NVIDIA prioritize (1) producing data sourced from shadow libraries and (2) identifying, in interrogatory responses (or informally), the shadow libraries NVIDIA used. These requests have been Plaintiffs' priority for *weeks*. But despite the fact that Plaintiffs have been requesting those documents since January, NVIDIA has continued to delay—producing documents related to *other* issues but failing to provide anything related to NVIDIA's use of shadow libraries, despite Court orders condemning this conduct as "self help" and

denying NVIDIA's request for a stay. Dkt. 247, 257. What's worse, NVIDIA has admitted that it *knows* which shadow libraries it used, but refuses to disclose that information because it is "not ready" to take a position and because Plaintiffs may use discovery produced against NVIDIA at trial.

NVIDIA's primary defense is that it *has* participated in discovery. That is misleading:

| Date | What NVIDIA Says It Produced | What NVIDIA Actually Produced |
|---|---|---|
| 2/4/2026 | **RetroInstruct 48B** | Publicly available model weights, which do not contain training data and can be accessed via Google search |
| 2/9/2026 | **Megatron-LM GPT2 345M** | Publicly available model weights, which do not contain training data and can be accessed via Google search |
| 2/10/2026 | Documents and data related to **Nemotron-4 340B** and **Retro 48B** | Data: publicly available model weights, no training data. Documents: only 74, many of which show internal discussions of a publicly released research paper. |
| 2/20/2026 & 2/23/2026 | "[R]esponses and objections to Plaintiffs' Fifth Sets of Interrogatories and Requests for Production" | These interrogatories, among other things, asked NVIDIA to identify the shadow libraries it downloaded from and information about the downloads. NVIDIA provided only objections and refused to respond because Plaintiffs' requests are "not relevant to any claim or defense asserted in the action" because "the Court has not yet decided the Motion to Dismiss Plaintiffs' First Amended Complaint." *E.g.*, Ex. A at 3. NVIDIA hasn't provided a date for supplementation but acknowledges it knows which shadow libraries it downloaded from. |
| 3/2/2026 | Production of non-public materials related to Books3 and the NeMo Megatron models, and a representation that (unidentified) additional data is forthcoming | NVIDIA made available at its counsel's office several model checkpoints (with no human-readable material) and datasets labeled "The Pile" and "RedPajama" in a compressed format too large to open. NVIDIA also produced JSONL files with no application enabling review. These materials should have been produced in a manner compliant with the ESI protocol. NVIDIA also represented that it would send additional hard drives to Plaintiffs. But it refused to identify the contents of those hard drives or when it would send them. |

NVIDIA argues that Plaintiffs' request is moot because the parties have not reached impasse. That is wrong. NVIDIA has *not produced any data obtained from the specifically-identified shadow libraries*, has not responded to Plaintiffs' written discovery requests, has refused to say when it will do either, and has—to date—made productions that leave Plaintiffs with no confidence that NVIDIA will voluntarily produce information and documents about shadow libraries, much less in a timely manner. NVIDIA emphasizes the *amount* of data it must produce (and has produced), ignoring that (1) even NVIDIA's chart showing what it has "produced" highlights that it has *not produced any data*

*sourced from the shadow libraries identified in the FACC* (e.g., Anna's Archive, Library Genesis, Z-Library, Sci-Hub); (2) NVIDIA's need to "investigate" this issue is a problem of its own making (since NVIDIA unilaterally granted itself a stay of discovery for *seven weeks* after the FACC was filed, despite an intervening Court order); and (3) that NVIDIA has still not provided a date by which it will produce the data. NVIDIA must produce data and discovery responses.

Several other elements of NVIDIA's portion of this brief raise serious red flags. First, NVIDIA says it will produce "files labeled with iterations of identified datasets." Plaintiffs' requests are not tied to file "labeling." Plaintiffs request data acquired from shadow libraries. If NVIDIA downloaded data from Anna's Archive or any shadow library identified in the FACC, it must produce that data regardless of how an engineer labeled it. This is an example of the type of obstruction that Plaintiffs have been dealing with—forcing Plaintiffs to make broad requests for "all datasets sourced from shadow libraries," to avoid limitations based on things like "labeling." Second, NVIDIA states that "terminology" does not constitute "an admission regarding" anything about that data. It is not clear what NVIDIA hopes to get from this argument. NVIDIA may maintain its objections; it may not refuse discovery under Rule 26 simply because the discovery may be damaging to its case.

## 1. The Court Should Compel NVIDIA to Produce All Datasets Sourced From Shadow Libraries Within Two Weeks.

This Court has twice ruled that NVIDIA must participate in discovery related to claims in the FACC. Dkt. 247, 257. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case..." Fed. R. Civ. P. 26(b)(1). The FACC explains that NVIDIA downloaded books from criminal pirate library Anna's Archive and that Anna's Archive "hosts" other identified shadow libraries. *Id.* ¶ 47, 55-58. By downloading from Anna's Archive, NVIDIA placed these other shadow libraries at issue. NVIDIA has never argued (and cannot argue) that this data is not relevant to the FACC and is apparently hoping the Court will eventually grant its motion to dismiss some of Plaintiffs' claims. *E.g.*, Ex. A at 3 (NVIDIA objecting to interrogatories "because the Court has not yet decided the Motion to Dismiss Plaintiffs' First Amended Complaint."). To reiterate, Dkt. 247, 257, the law does not allow NVIDIA

to do so. *See Actian Corp. v. Radisys Corp.,* 2022 WL 20353991, at *1 (N.D. Cal. Oct. 11, 2022) (rejecting "self-imposed" stay: "the Federal Rules of Civil Procedure do not provide for an automatic stay … Here, defendant … may not avoid its discovery obligations merely because it filed a motion to dismiss.") (internal quotations and citations omitted). Enough is enough. NVIDIA must produce data acquired from shadow libraries so Plaintiffs can take depositions and prepare expert reports.

### 2. NVIDIA Must Identify Sources of Datasets

On February 6, Plaintiffs asked NVIDIA to identify "which shadow libraries NVIDIA downloaded from." Plaintiffs made the same ask on February 11 and 16. NVIDIA refused, objecting to Plaintiffs' "informal" requests. First, these informal asks are a best-practice for discovery. *See* The Sedona Conference, *Commentary on Defense of Process: Principles and Guidelines for Developing and Implementing a Sound E-Discovery Process* (Sept. 2016). Second, NVIDIA has stonewalled Plaintiffs' *formal* requests, too. Contrary to Court orders, NVIDIA objected because the "Court has not yet decided the Motion to Dismiss." Ex. A at 3. NVIDIA cannot delay (or refuse) discovery while its motion to dismiss is pending. And on the parties' March 2 meet and confer, NVIDIA stated that it would supplement its response to ROG 20 *only* as to the data already produced—withholding information on shadow library datasets not yet disclosed. That is improper. NVIDIA may "preserve its objections," but it must respond. *McGuire v. City of Los Angeles*, 2025 WL 1090170, at *2 (C.D. Cal. Mar. 12, 2025) ("It is rarely appropriate to respond to discovery requests by objections only without providing any substantive response. If a responding party objects that a request is overly broad …[but] can reasonably narrow the request by stating a subject matter limitation or timing limitation and then respond, the responding party should do so.").

**Final proposed compromise:** By Friday, March 6, 2026, NVIDIA (a) identifies shadow libraries from which it acquired books, even if informally (with a formal response to follow) or commits to providing a Rule 30(b)(6) witness on the issue, without prejudice to a later Rule 30(b)(6) deposition on merits topics (as Plaintiffs have requested via email); and (b) produces datasets containing pirated books with sources identified. Plaintiffs also respectfully request monthly status reports and a joint status conference before Your Honor.

**NVIDIA's Position**

Plaintiffs' motion should be denied because there is no dispute. NVIDIA has agreed to provide, and is in the process of providing, the discovery Plaintiffs seek. In the four weeks since the Court's February 6, 2026 Order (ECF 247) and two weeks since the Court's February 19, 2026 Order (ECF 257), NVIDIA has produced 5.5 terabytes of data, served written discovery responses, requested conferrals regarding scope, confirmed it is investigating the new allegations in the FACC, and confirmed it will produce ***600 terabytes*** of additional materials on a rolling basis and as quickly as possible. When the parties recently conferred, Plaintiffs conceded they have not even reviewed the materials produced to date and need more time to evaluate the production. Moreover, Plaintiffs' demands are technically unfeasible: transferring more than 600 terabytes at maximum transfer speeds will take at least over a month. Plaintiffs nonetheless move to compel production in ***two days***.

Each time NVIDIA meets one of Plaintiffs' demands, they move the goalposts—first requesting a production timeline, then demanding immediate production, then seeking informal admissions, then complaining about what data NVIDIA produced first in response to those demands, and now requesting a Rule 30(b)(6) deposition (without having met and conferred). Plaintiffs' barrage of ever-changing demands are not based in the Federal Rules and do not reflect the complex technical realities of producing the volume of data at issue. The Court should deny the motion.

**I.  Plaintiffs' Shifting Demands Do Not Reflect An Impasse Warranting Court Intervention**

Plaintiffs have continued to change their complaints and relief sought throughout this briefing process, creating a whack-a-mole of shifting, unreasonable demands. Plaintiffs first asked NVIDIA to provide a date certain for production of new datasets and information on the models identified in the FAC; NVIDIA provided it. Plaintiffs then demanded immediate production; NVIDIA expedited, making materials available on a rolling basis, and delivering 5.5 terabytes of data in a couple of days. Plaintiffs next pivoted to demanding that NVIDIA make informal admissions—outside the framework of the Federal Rules—identifying every dataset involving books that NVIDIA had ever downloaded; NVIDIA agreed to supplement its formal discovery responses. Plaintiffs then complained that they wanted ***different*** datasets than those NVIDIA had produced despite Plaintiffs having never identified a production priority beyond the 8-trillion-token dataset—for which NVIDIA

has produced, and will continue to produce, materials. Now, for the first time in their revised letter brief, Plaintiffs seek an expedited Rule 30(b)(6) deposition on shadow library sources—a demand Plaintiffs never raised in any meet-and-confer.

Plaintiffs have likewise walked back agreements regarding the very issues of which they complain. During the February 25 meet-and-confer, NVIDIA advised Plaintiffs that it had identified **_dozens of terabytes_** of materials potentially responsive to Plaintiffs' discovery requests and that productions were forthcoming and described the technical logistics required to make data of that scale available (including transfer via physical media and secure inspection environments). On that same call, NVIDIA committed to continue producing documents on a rolling basis and to provide a comprehensive update on its search and production efforts by March 2. After NVIDIA provided that update on March 2, Plaintiffs were no longer interested and instead spent the call pressing NVIDIA for informal summaries of materials it produced and will continue to produce.

## II. NVIDIA Has Diligently Complied With The Court's Orders

NVIDIA began producing FAC-related materials before the Court's February 6 Order and has continued to produce on a rolling basis:

- **Feb. 4:** Production of **RetroInstruct 48B**, an LLM referenced in the FAC.
- **Feb. 9:** Production of **Megatron-LM GPT2 345M**; confirmation of additional productions.
- **Feb. 10:** Production of documents and data related to **Nemotron-4 340B** and **Retro 48B**.
- **Feb. 11-18:** Confirmations of supplemental responses concerning expanded FAC allegations.
- **Feb. 20 & 23:** Service of responses and objections to Plaintiffs' Fifth Sets of Interrogatories and Requests for Production, with requests to confer regarding scope.
- **Mar. 2:** Production of non-public materials bearing internal labels associated with **RedPajama**, **The Pile/Books3**, and six **NeMo Megatron** models, along with a comprehensive status update and confirmation of forthcoming productions relating to **Nemotron-4** models and additional NVIDIA materials.
- **Mar. 4**: Production of non-public **InstructRetro 48B** and **Retro 48B** models; non-public training scripts and blend file for **Nemotron-4 15B** and **Nemotron-4 340B**; additional copies of material bearing internal labels associated with **RedPajama**.

NVIDIA has expeditiously produced several terabytes of files and model artifacts maintained in various formats and locations. Although Plaintiffs demand faster production of more materials—which NVIDIA has already agreed to produce—Plaintiffs' reviewer conceded he needed additional

days to review just the first production, which is less than 1% of what is forthcoming. Indeed, Plaintiffs' mischaracterization of NVIDIA's production reveals that they have not reviewed everything already made available.  It is not NVIDIA's responsibility to review, catalogue, and narrate its own productions for Plaintiffs, particularly where the parties dispute the meaning and characterization of documents and data.

Plaintiffs' table characterizing these productions as inadequate is misplaced. Plaintiffs dismiss NVIDIA's productions of model data as merely "publicly available model weights" obtainable through a "Google search." Not so. NVIDIA produced over 4 terabytes of non-public models, checkpoints, and materials. As to public materials, Plaintiffs requested them. Plaintiffs cannot complain when they receive what they requested. Plaintiffs also complain that only 74 documents accompanied the Nemotron-4 340B and Retro 48B data while ignoring the data itself and that document production is ongoing (and they failed to respond to the ESI hit report and then asked for new collection parameters yesterday). And Plaintiffs' complaints about the format of NVIDIA's production—that compressed files were "too large" and JSONL files could not be opened—reflect the technical inability to produce this volume of data on Plaintiffs' expedited timeline.

## III.  NVIDIA Is Diligently Responding To Plaintiffs' New Document Requests

NVIDIA is continuing to produce materials associated with the models and data sources in Plaintiffs' new requests, including the five newly-added models (InstructRetro48B, Retro 48B, Megatron-LM GPT2 345M, Nemotron-4 15B, and Nemotron-4 340B), checkpoints, and any files labeled with iterations of identified datasets, including the 8-trillion-token dataset Plaintiffs have prioritized, The Pile, RedPajama, SlimPajama, Anna's Archive, Libgen, Z-Library, SciHub, and Pirate Library Mirror, during the relevant time period. As NVIDIA explained to Plaintiffs, the terminology for certain produced materials reflects internal naming conventions and is not intended to, and does not, constitute an admission regarding provenance, contents, identity, authorship, completeness, scope, public availability, or use in any specific training process.

NVIDIA has already identified **_600 terabytes_** of additional materials it is working to produce. NVIDIA is producing materials on a rolling basis. Smaller files are being made available via a review computer, and the larger files are being loaded onto specialty high-capacity hard drives for delivery.

NVIDIA is working as quickly and as efficiently as possible to produce all this data. Plaintiffs' proposed timetable is simply not technically feasible for this massive undertaking.

Plaintiffs also seek to compel a catch-all category of "all datasets sourced from shadow libraries." But discovery must be relevant and proportional. Fed. R. Civ. P. 26(b)(1). Plaintiffs have refused to meet-and-confer regarding scope, instead insisting any request, no matter how broad, requires unqualified response. Plaintiffs' own cited case confirms the opposite. *See McGuire*, 2025 WL 1090170, at *2 (responding party may "reasonably narrow the request" if overbroad).

## IV.  NVIDIA Will Supplement Interrogatory No. 20 As It Conducts Its Ongoing Investigation.

Plaintiffs accuse NVIDIA of serving "only objections" to their discovery requests, including Interrogatory No. 20. Not so. NVIDIA offered to confer about the scope of Plaintiffs' requests, but Plaintiffs refused. Plaintiffs also argue that it is improper for NVIDIA to "supplement its response to Interrogatory No. 20 *only* as to the data already produced." NVIDIA's phased supplementation— beginning with materials already produced and continuing as additional materials are identified and produced—is consistent with rolling production obligations and with Rule 26(e). NVIDIA will amend its responses—including Interrogatory No. 20—as its investigation and production continues.

Moreover, NVIDIA is entitled to object to Plaintiffs' interrogatories. Interrogatory No. 20 seeks broad catch-all categories, such as "all datasets or files containing books" that NVIDIA "downloaded or torrented," without adequate definitions, reference to Plaintiffs' works, or tethering the request to any data, model, or training process. Plaintiff's interrogatory mistakenly further assumes materials referenced by name in public discourse correspond to singular, fixed, and readily identifiable corpora. NVIDIA objected to those assumptions. Training data may consist of mixed formats, subsets, transformations, and internal blends maintained in various forms over time. Nor do internal labels resolve questions of source or composition.

**NVIDIA's Proposed Resolution**. NVIDIA is actively producing materials responsive to the FAC and supplementing its responses. The parties' dispute concerns timing and scope and the physical limits of data transfer speeds—not refusal. Court intervention is unnecessary. NVIDIA also opposes Plaintiffs' request for monthly status conferences, which are unnecessary given NVIDIA's ongoing compliance and efforts.

1    DATED:  March 4, 2026

2    By:  _/s/ Rohit Nath_____            By:  _/s/ Rachael L. McCracken_____
     Rohit Nath                                  Rachael L. McCracken
3    Joseph R. Saveri (CSB No. 130064)           **QUINN EMANUEL URQUHART &**
     Christopher K.L. Young (CSB No. 318371)      **SULLIVAN, LLP**
4    Evan Creutz (CSB No. 349728)
5    Elissa A. Buchanan (CSB No. 249996)          Sean S. Pak (SBN 219032)
     William Waldir Castillo Guardado (CSB No.    seanpak@quinnemanuel.com
6    294159)                                      50 California Street, 22nd Floor
     **JOSEPH SAVERI LAW FIRM, LLP**              San Francisco, CA 94111
7    601 California Street, Suite 1505            Telephone: (415) 875-6600
     San Francisco, CA 94108                      Facsimile: (415) 875-6700
8    Telephone:    (415) 500-6800
9    Facsimile:    (415) 395-9940                 Andrew H. Schapiro (admitted *pro hac vice*)
     jsaveri@saverilawfirm.com                    andrewschapiro@quinnemanuel.com
10   cyoung@saverilawfirm.com                     191 N. Wacker Drive, Suite 2700
     ecreutz@saverilawfirm.com                    Chicago, Illinois 60606
11   eabuchanan@saverilawfirm.com                 Telephone: (312) 705-7400
     wcastillo@saverilawfirm.com                  Facsimile: (312) 705-4001
12
                                                  Kevin P.B. Johnson (Bar No. 177129)
13   Bryan L. Clobes (admitted *pro hac vice*)    kevinjohnson@quinnemanuel.com
     Mohammed Rathur (admitted *pro hac vice*)    555 Twin Dolphin Drive, 5th Floor
14   Nabihah Maqbool (admitted *pro hac vice*)    Redwood Shores, CA 94065-2139
     **CAFFERTY CLOBES MERIWETHER &**             Telephone: (650) 801-5000
15   **SPRENGEL LLP**                             Facsimile: (650) 801-5100
16   135 South LaSalle Street, Suite 3210
     Chicago, IL 60603                            Brian Biddinger (Bar No. 224604)
17   Tel: 312-782-4880                            brianbiddinger@quinnemanuel.com
     bclobes@caffertyclobes.com                   295 Fifth Avenue
18   asweatman@caffertyclobes.com                 New York, NY 10016
     mrathur@caffertyclobes.com                   Telephone: (212) 849-7000
19   nmaqbool@caffertyclobes.com                  Facsimile: (212) 849-7100
20
     Justin A. Nelson (admitted *pro hac vice*)   Rachael L. McCracken (SBN 252660)
21   Alejandra C. Salinas (admitted *pro hac vice*)  rachaelmccracken@quinnemanuel.com
     **SUSMAN GODFREY L.L.P.**                    865 South Figueroa Street, 10th Floor
22   1000 Louisiana Street, Suite 5100            Los Angeles, CA 90017
     Houston, TX 77002-5096                       Telephone: (213) 443-3000
23   Telephone: (713) 651-9366                    Facsimile: (213) 443-3100
     jnelson@susmangodfrey.com
24   asalinas@susmangodfrey.com                   *Attorneys for Defendant NVIDIA Corporation*
25
     Rohit D. Nath (SBN 316062)
26   **SUSMAN GODFREY L.L.P**
     1900 Avenue of the Stars, Suite 1400
27   Los Angeles, CA 90067-2906
     Telephone: (310) 789-3100
28   RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan B. Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com

Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**

485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:     (415) 395-9940
mb@butericklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

**ATTESTATION OF CONCURRENCE IN FILING PURSUANT TO CIVIL L.R. 5-1(i)(3)**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Dylan B. Salzman. By his signature, Dylan B. Salzman attests that he has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: March 4, 2026

By:  /s/ Dylan Salzman
Dylan B. Salzman