QUINN EMANUEL URQUHART & SULLIVAN, LLP

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (SBN 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Brian Biddinger (SBN 224604)
brianbiddinger@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
Rachael L. McCracken (SBN 252660)
rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant NVIDIA Corporation*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ABDI NAZEMIAN et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Master File Case No. 4:24-cv-01454-JST (SK)<br><br>**DEFENDANT NVIDIA CORPORATION'S SUPPLEMENTAL BRIEF ADDRESSING *COX COMMUNICATIONS*** |

## I.    INTRODUCTION

The Supreme Court's unanimous decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. ___, 2026 WL 815823 (2026), confirms that Plaintiffs' contributory copyright infringement claim (Count II) fails as a matter of law. *Cox* holds that the intent required for contributory liability can be established "only if" a provider actively induced the infringement or the provided service is tailored to that infringement. *Cox*, 2026 WL 815823, at *6. Plaintiffs' FAC fails to satisfy either prong. Plaintiffs do not allege promotional conduct, advertising, or specific acts of encouragement directed at inducing users to infringe. And the NeMo Megatron Framework, as the FAC itself describes it, is a general-purpose AI development platform with substantial legitimate uses that cannot be deemed "tailored to infringement" under *Cox*. The FAC instead contends NVIDIA was aware of its Framework's capabilities and failed to prevent customers from potentially using it to download The Pile. *Cox* rejected liability based on knowledge and inaction alone—the same theory Plaintiffs advance here. This decision confirms that Count II must be dismissed with prejudice.

## II.    ARGUMENT

### A.    *Cox* Establishes a Two-Part Standard for Contributory Infringement That Plaintiffs Cannot Satisfy

*Cox* resolves any ambiguity about the intent requirement for contributory copyright infringement. The Court held: "[t]he provider of a service is contributorily liable for the user's infringement *only* if it intended that the provided service be used for infringement. The intent required for contributory liability can be shown *only* if [1] the party induced the infringement or [2] the provided service is tailored to that infringement." 2026 WL 815823, at *6 (emphasis added). Plaintiffs have not adequately alleged, and cannot establish, either prong.

First, a provider "induces infringement if it actively encourages infringement through specific acts." *Id.* The paradigm case addressing inducement is *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), where the defendants "promoted and marketed their software as a tool to infringe copyrights," the "principal object" of which was to facilitate infringing downloads. *Id.* (quoting *Grokster*, 545 U.S. at 926). Active encouragement of infringing uses

through specific promotional or instructional acts—not mere provision of a product capable of being used to aid infringement—is required. *Id.*

Second, a service is "tailored to infringement" only if it is "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). *Cox* thus reaffirms the Court's holding in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449, 456 (1984): if a product or service has substantial noninfringing uses, the provider cannot be liable, regardless of its knowledge of infringement.

*Cox* expressly forecloses any theory premised on knowledge of infringing uses alone. The Court held that "mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Cox*, 2026 WL 815823, at *6. And the Court reaffirmed *Grokster*'s holding that "a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Id.* (quoting *Grokster*, 545 U.S. at 939 n.12). Applying this framework, the Court unanimously reversed the Fourth Circuit's decision upholding a billion-dollar judgment against Cox, which was premised on the theory that "supplying a product with knowledge that the recipient will use it to infringe copyrights is . . . sufficient for contributory infringement." *Id.* at *7.

**B.      Plaintiffs Have Not Alleged That NVIDIA Induced Infringement Through Specific Acts**

Under *Cox*, inducement occurs when a provider "actively encourages infringement through specific acts," such as affirmative, outward-facing promotion of the product as a tool for infringement. *Id.* at *6. The FAC contains no such allegations.

The FAC does not allege that NVIDIA promoted or marketed the NeMo Megatron Framework as a tool to download copyrighted content. As NVIDIA demonstrated in its Motion to Dismiss and Reply, the FAC's contributory infringement theory rests entirely on allegations that NVIDIA (1) included an optional configuration in its NeMo Megatron Framework that *could* be used to download The Pile dataset *if a user chose* to modify the script to include that functionality, and (2) provided the overall Framework to certain customers to be used as they chose as part of their own AI model development. MTD at 13-15; Reply at 10-12. Plaintiffs do not allege that NVIDIA

promoted the Framework, or any part of it, as a tool for copyright infringement, affirmatively marketed it to users of known infringing services, or instructed customers to use it for infringing purposes. Nor could they since the portion of the Framework they refer to must be modified to download anything and can be used with any dataset, including the user's own dataset(s). The FAC acknowledges the substantial non-infringing purposes. Indeed, the FAC alleges that the purpose of the Framework was to help customers "create and build their own AI models." FAC ¶ 69. In other words, Plaintiffs allege that NVIDIA offered the Framework for general-purpose AI development assistance—precisely what the Supreme Court recognized cannot give rise to contributory liability. Just as Cox "simply provided Internet access, which is used for many purposes other than copyright infringement," *Cox*, 2026 WL 815823, at *7, NVIDIA simply provided a software framework for building AI models, which is used for many purposes other than copyright infringement.

Plaintiffs' opposition argued that NVIDIA's Framework tools were "specifically designed" for infringement and therefore distinct from the general-purpose platforms in cases like *Luvdarts LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013), and *Davis v. Pinterest, Inc.*, 2021 WL 879798 (N.D. Cal. Mar. 9, 2021). Opp. at 23. But that (untrue and unsupported) assertion in a brief is not enough to sustain a claim, especially in the context of Plaintiffs' actual FAC allegations. Under *Cox*, inducement requires evidence that the product or service was promoted or marketed as a tool for infringement; *i.e.*, what the provider *said and did* to encourage users to infringe, not whether the product happens to be—or even was designed to be—capable of facilitating infringement. *Cox*, 2026 WL 815823, at *6. The FAC's allegations that NVIDIA developed efficient data-processing tools, unconnected to any statement from NVIDIA, fall far short of the advertising campaigns, infringement-focused marketing, and deliberate promotion that supported the inducement finding in *Grokster*. This Court should reach the same conclusion the Supreme Court did in *Cox* and find that Plaintiffs failed to allege NVIDIA induced third-party infringement.

**C.**   **The NeMo Megatron Framework Has Substantial Noninfringing Uses and Was Not "Tailored to Infringement"**

Plaintiffs also failed to allege the NeMo Megatron Framework was "tailored to infringement." Under *Cox*, a service "tailored to infringement" is one that is "*not capable* of

'substantial' or 'commercially significant' noninfringing uses." *Id.* (citation omitted) (emphasis added). The NeMo Megatron Framework, according to Plaintiffs' own allegations, is not tailored to infringement.

The FAC establishes the point. Plaintiffs allege that the Framework was designed to help customers "create and build their own AI models." FAC ¶ 69. NVIDIA's Motion to Dismiss detailed the Framework's legitimate applications: it enables users to pre-process non-infringing datasets, train LLMs on licensed or public-domain content, optimize and fine-tune models across a wide range of text and non-text modalities, and perform automatic speech recognition, natural language processing, and biomolecular analysis, among many other functions. MTD at 15. Plaintiffs do not deny that these noninfringing uses exist. Instead, they attempt to argue that some of the Framework's other use cases could hypothetically infringe under particular use cases. Opp. at 21. That is beside the point. The *Cox* inquiry is whether the service is *capable* of substantial noninfringing uses—not whether every conceivable use of the service is noninfringing. *Cox*, 2026 WL 815823, at *6. Plaintiffs' unsupported speculation that some uses of the Framework could potentially also involve copyright infringement under particular circumstances does not transform a general-purpose AI development platform into a service "tailored to infringement." Plaintiffs' theory would collapse the distinction *Cox* preserves between lawful tools and unlawful inducement. Any general-purpose software—cloud platforms, compilers, or data tools—could give rise to liability based solely on downstream misuse. *Cox* rejects that expansion.

*Cox* instead confirms what *Sony* and *Grokster* established: the relevant inquiry is whether the service is designed for infringement, not whether it can be used for it. The NeMo Megatron Framework is precisely the type of technology *Cox* protects—a general-purpose platform whose capacity for lawful uses forecloses any inference of intent to infringe. *Id.* at *6-7.

> **D.      *Cox* Rejects the Knowledge-Based Theory Underlying Plaintiffs' Remaining Contributory Infringement Arguments**

Without any plausible allegation of the requisite degree of intent, Plaintiffs' contributory infringement claim, at bottom, rests on a knowledge-based theory: that because NVIDIA allegedly knew The Pile contained copyrighted works and allegedly knew that customers could use the

Framework to download The Pile, NVIDIA is contributorily liable for any resulting infringement. *See* FAC ¶ 85 ("NVIDIA knew or had reason to know of the direct infringement by others using the NeMo Megatron framework, because NVIDIA is fully aware of the capabilities of its own product, platforms and tools . . . ."). *Cox* unanimously rejected precisely this theory of liability.

"[M]ere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Cox*, 2026 WL 815823, at *6. The Court recounted a consistent line of authority from *Kalem Co. v. Harper Brothers*, 222 U.S. 55 (1911), through *Sony* and *Grokster*, all of which reject knowledge as a sufficient basis for contributory liability. *Id.* Under *Cox*, the FAC's allegation that NVIDIA "knew or had reason to know" of infringement based solely on awareness of its own tools' capabilities, FAC ¶ 85, is insufficient as a matter of law. Awareness of the capabilities of a product or service does not equal intent to infringe.

Lastly, *Cox* forecloses any theory premised on NVIDIA's failure to disable or restrict the optional download configuration. The Court confirmed that "a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Cox*, 2026 WL 815823, at *6 (citation omitted). This holding squarely rejects any theory that NVIDIA's failure to disable or restrict the optional download configuration somehow gives rise to liability. NVIDIA's prior briefing demonstrated that the download functionality was not included in default operation and was instead optional, that users independently chose whether and how to use it, and that no NVIDIA customer is alleged to have actually downloaded The Pile through any NVIDIA-provided tool. MTD at 13-15; Reply at 9-11. Under *Cox*, even if NVIDIA had failed to take certain steps to prevent infringement, that failure cannot give rise to contributory liability. *Cox*, 2026 WL 815823, at *6

The FAC does not meet the controlling legal standard: *Cox*'s tailoring prong for contributory infringement stems from 35 U.S.C. § 271(c), which limits liability to products that the developer makes available "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity suitable for substantial noninfringing use . . . ." 35 U.S.C. § 271(c); *see Cox*, 2026 WL 815823, at *6. The FAC does not

allege that NVIDIA knowingly made its tool for infringement, and it is undisputed that the Framework has substantial noninfringing uses.

**E.** ***Cox* Does Not Alter the Analysis of Plaintiffs' Vicarious Infringement Claim, Which Independently Fails Under Ninth Circuit Precedent**

The Supreme Court denied certiorari on vicarious liability in *Cox*, leaving in place the Fourth Circuit's ruling for the defendant on that issue—a ruling grounded in the absence of a "direct financial benefit" causally tied to infringing conduct. *See Cox*, 2026 WL 815823, at *5. Count III should be dismissed for the reasons set forth in NVIDIA's briefs, which are unaffected by *Cox*. MTD at 15-16; Reply at 13-15.

## III. CONCLUSION

This Court should dismiss Counts II and III of the FAC with prejudice under *Cox*.

Dated: April 3, 2026                                 Respectfully Submitted,


By:    */s/ Rachael L. McCracken*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Kevin P.B. Johnson (SBN 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Biddinger (SBN 224604)
brianbiddinger@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
Rachael L. McCracken (SBN 252660)
rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100


*Attorneys for Defendant,*
*NVIDIA Corporation*