[Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ABDI NAZEMIAN, et al., | Master File Case No. 4:24-cv-01454-JST (SK) Consolidated with Case No. 4:24-cv-02655-JST (SK) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *COX COMMUNICATIONS, INC. v. SONY MUSIC ENTERTAINMENT*** |
| NVIDIA CORPORATION, | |
| Defendant. | Date        April 16, 2026<br>TIME:       2:00 p.m.<br>PLACE:    Videoconference only |

## I.    Introduction

*Cox Communications, Inc. v. Sony Music Entertainment* addressed a claim of contributory copyright infringement against an internet service provider. No. 24-171, 2026 WL 815823, at *4–5 (U.S. March 25, 2026). The contributory infringement theory was that the defendant—which provided internet to about six million subscribers—was liable because it did not cut off service to subscribers who were illegally downloading copyrighted music. *See id.* at *4. The Supreme Court held that a general service provider cannot be held liable for contributory infringement unless the plaintiff shows that it "intended its service to be used for infringement." *Id.* at *3. The Court explained that a copyright owner can establish intent by showing that the provider "affirmatively 'induc[ed]' the infringement … [or] sold a service tailored to infringement," and concluded that the *Cox* defendant had not committed contributory infringement. *Id.* at *3.

*Cox* has little impact on the law of the Ninth Circuit, at least as it relates to this case. *See* dkt. 254 at 14 (Plaintiffs' Opposition to NVIDIA's Motion to Dismiss, hereinafter "Opp.") (outlining two Ninth Circuit "strands" of contributory liability: inducement and distribution of a service used to infringe). Well before *Cox*, this Circuit established that service companies are not liable for contributory infringement when they do not induce or tailor their services to infringement. *See, e.g., Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 796–802 (9th Cir. 2007) (holding credit card company not liable when credit cards used for infringement; no inducement or material contribution to infringement).

*Cox*, if anything, confirms why NVIDIA's Motion to Dismiss should be denied. The *Cox* Court specifically reaffirmed that it *is* contributory infringement to provide software designed to distribute copyrighted materials. 2026 WL 815823, at *6 (highlighting *Grokster*, which involved file-sharing software, as the primary example of inducement) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 941 (2005)); *id.* at *4 (users of peer-to-peer file sharing networks commit copyright infringement) (citing *Sony BMG Music Entertainment v. Tenenbaum*, 660 F.3d 487, 490 (1st Cir. 2011)). Those are the allegations here: NVIDIA provided customers with bespoke "scripts to automatically download and preprocess The Pile dataset," containing roughly 200,000 pirated books. Dkt. 235 (FACC) ¶¶ 70, 32, 35. Plaintiffs further allege that

1

NVIDIA's automatic-Pile-downloading scripts were "developed to help [NVIDIA's] customers access these pirated datasets more quickly and easily." FACC ¶ 70. That is both inducement of infringement and delivery of a service tailored to an infringing use. *Cox*, 2026 WL 815823, at *6–7.

Cox would have been a different case if the defendant had delivered, along with their generalized internet service, software that automatically downloaded pirated movies or otherwise specifically directed its subscribers to pirate sites. That is, in essence, what NVIDIA is alleged to have done here. FACC ¶ 70. *Cox* confirms that this is contributory copyright infringement, and NVIDIA's motion to dismiss should be denied.

## II.    *Cox* Confirms That NVIDIA Contributed to Infringement

Cox does not alter controlling law in this case. In Plaintiffs' Opposition to NVIDIA's Motion to Dismiss, Plaintiffs explained that Ninth Circuit precedent has established two "strands" of contributory copyright infringement liability. Opp. at 14. Those two strands are (1) "actively encouraging (or inducing) infringement through specific acts" and (2) "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007). Those strands are identical to the two methods of showing contributory infringement set forth in *Cox*. 2026 WL 815823, at *3; 6.[1]

Cox also confirmed the distinction already recognized in the Ninth Circuit between providing a general-purpose service (such as internet or credit cards)—which does not, alone, support a finding of contributory infringement—and providing a service tailored to facilitate copyright infringement, which does support contributory infringement. *See Cox*, 2026 WL 815823, at *6 ("The intent required for contributory liability can be shown only if the party induced the

---

[1] Critically, *Cox* deals *only* with contributory infringement claims. *See* 2026 WL 815823, at *5 (noting that the plaintiffs brought contributory and vicarious liability claims and that the Court granted certiorari as to only the contributory claim). Accordingly, *Cox* does not alter the law governing Plaintiffs' direct or vicarious infringement claims. *See* Opp. at 4-14 (explaining why Plaintiffs have stated a claim for direct infringement); 22-25 (explaining why Plaintiffs have stated a claim for vicarious infringement).

2

infringement or the provided service is tailored to that infringement."). Plaintiffs drew *exactly that distinction* in their opposition brief. *See* Opp. at 16–17 (distinguishing between cases involving "platforms of general application" and cases involving tools specifically designed to facilitate copyright infringement); Opp. at 21–22 (noting under *Grokster*, products with non-infringing uses may induce infringement, allowing contributory liability); *see also A&M Recs., Inc. v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir. 2001) (affirming injunction against contributory copyright infringement when platform provided technical framework used for copyright infringement).

To illustrate this distinction, *Cox* specifically emphasizes that it is contributory copyright infringement to provide bespoke software designed to distribute copyrighted works, as NVIDIA did here. The *Cox* Court pointed to *Grokster* as the primary example of inducement of infringement, 2026 WL 815823, at *6, where the defendants provided software allowing users to directly share files—a service that was, in practice, used for "staggering" amounts of copyright infringement. *Grokster*, 545 U.S. at 920–23. The *Grokster* Court concluded that a jury could find intent to induce infringement through the provision of this service. *Id.* at 941. NVIDIA's alleged conduct is substantively identical to this canonical example of inducement: NVIDIA designed scripts to allow customers to automatically download, preprocess, and train Large Language Models ("LLMs") on 200,000 copyrighted books with the click of a button. FACC ¶¶ 69–73. *Cox* confirms that this is a paradigmatic example of inducement of infringement.

The *Cox* decision provides further support for the proposition that providing software to distribute copyrighted works is contributory infringement. *Cox* cited *Tenenbaum*, 660 F.3d at 490, for the principle that copyright owners can sue individuals who use file-sharing networks to upload and download their copyrighted works. *See Cox*, 2026 WL 815823, at *4. It is black-letter copyright law that *providing* this peer-to-peer file-sharing software—enabling actors like Tenenbaum—is contributory copyright infringement. *See Napster*, 239 F.3d at 1022; *Grokster*, 545 U.S. at 924–25, 941 (jury could find contributory infringement by Napster successors).

NVIDIA provided similar software here. Far from simply providing internet access like Cox, NVIDIA gave its customers specific scripts that *necessarily entailed* copyright infringement because, when executed, they automatically copied Plaintiffs' works from a pirated dataset online.

3

There was no way for NVIDIA's customers to use these tools without downloading Plaintiffs' works—and therefore infringing Plaintiffs' copyrights. *Cox* does not reshape the law in this area, but it further demonstrates why NVIDIA's motion to dismiss should be denied.

### a. Plaintiffs allege contributory copyright infringement under the inducement prong from *Cox.*

The Pile-downloading scripts provided by NVIDIA support Plaintiffs' claim of contributory infringement under the inducement theory outlined in *Cox.* Under *Cox*, a company induces infringement "if it actively encourages infringement through specific acts." *Cox*, 2026 WL 815823, at *6 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). Plaintiffs allege that NVIDIA took specific acts to facilitate infringement: NVIDIA was concerned that "downloading pile files" would be too time-consuming for its customers, so it "developed and distributed code to 'download and extract extract[] 30 pile files [in] ~70 minutes[.]'" FACC ¶ 70. In other words: ordinary copyright infringement took too long, so NVIDIA developed tools to allow customers to do it faster. That is inducement.

*Cox* confirms that NVIDIA's motion to dismiss is meritless. In its motion, NVIDIA cursorily argued that the purpose of its Nemo-Megatron framework was to "create and build" AI models, not to "promote infringement of works in The Pile." Dkt. 240 at 15. Plaintiffs responded that under *Grokster*, "[e]vidence of 'active steps taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe…" Opp. at 20 (quoting *Grokster*, 545 U.S. at 936).

NVIDIA did not respond to this argument. It did not even acknowledge *Grokster* in its reply brief. *See generally* dkt. 255 (no mention of *Grokster*).[2] NVIDIA's failure to distinguish *Grokster* is a critical omission because—as explained above—*Cox* relies on *Grokster* to explain "inducement." *See Cox*, 2026 WL 815823, at *6. Again, *Cox* reiterates *Grokster*'s conclusion that software companies are liable for contributory infringement under an inducement theory when the

---

[2] NVIDIA's failure to address *Grokster* constitutes abandonment of any argument that *Grokster* does not control. *See Nguyen v. Nissan N. Am., Inc.,* 487 F. Supp. 3d 845, 856 (N.D. Cal. 2020) (failure to address argument in reply brief is abandonment). NVIDIA should not be able to use its supplemental brief on *Cox* to argue that *Grokster* does not apply.

4

"principal object" of the service is "use of their software to download copyrighted works." *Id.* (quoting *Grokster*, 545 U.S. at 926). That is precisely what the FACC alleges NVIDIA did here.

NVIDIA will likely argue that it provided a general platform for AI training, making it more like the defendant in *Cox* (which provided general internet access) than the defendant in *Grokster* (which provided software enabling copyright infringement). *See* dkt. 240 at 15 (making a version of this argument). But that's not what Plaintiffs have alleged. *See* Opp. at 18–22. Plaintiffs' allegations are tailored to the scripts NVIDIA provided to its customers to "automatically download and preprocess The Pile dataset," not NVIDIA's NeMo-Megatron training platform as a whole. FACC ¶ 70. As stated in Plaintiffs' opposition: "Not only did NVIDIA know that its [scripts] would be put to infringing uses, it designed them to facilitate infringement." Opp. at 22 (citing FACC ¶ 70 ("[The] scripts were developed to help their customers access these pirated datasets more quickly and easily.")). Future discovery may reveal that NVIDIA encouraged customers to use its NeMo-Megatron framework to develop and train LLMs using pirated books; that would be further evidence of inducement. But that issue is not before the Court. The FACC specifically implicates book-downloading scripts. NVIDIA's misdirection—focusing on the higher-level training platform, rather than the specifically-accused scripts—does not warrant dismissal of the FACC.

b. **Plaintiffs allege contributory copyright infringement under the "service tailored to infringement" prong from *Cox*.**

Finally, Plaintiffs have also stated a claim of contributory copyright infringement under the "service tailored to infringement" theory. In *Cox*, the Court explained that the defendant could not be liable for contributory infringement because it "did not tailor its service to make copyright infringement easier." *Cox*, 2026 WL 815823, at *7. NVIDIA, by contrast, did exactly that. Plaintiffs allege that NVIDIA was concerned it would take too long for its customers to download and preprocess the datasets containing Plaintiffs' copyrighted works, so it developed software tools "to help [its] customers access these pirated datasets more quickly and easily." FACC ¶ 70. In plain terms, NVIDIA tailored its service to assist its customers with infringement.

NVIDIA will likely re-hash its argument that the NeMo Megatron framework was capable of substantial non-infringing uses. Dkt. 255 at 11. Again, that is misdirection. Plaintiffs allege that

5

NVIDIA provided specific scripts that necessarily facilitated copyright infringement, not that the *whole framework* was designed to facilitate infringement. There is no support in *Cox* for the idea that a tool *specifically* designed for copyright infringement is shielded from liability when it is offered as part of a framework with additional non-infringing functions. The FACC focuses on NVIDIA's Pile-downloading scripts, which are standalone tools "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cox*, 2026 WL 815823, at *6 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).

Cox also does not lend legal weight to NVIDIA's argument that the scripts were "optional" pieces of its broader framework. Again, these scripts were designed to assist with infringement. If NVIDIA provides a tool to facilitate piracy, it cannot say that it did not *intend* to facilitate piracy because the ultimate act of piracy depends on a third party's choice to use the tool. In NVIDIA's Reply, NVIDIA analogizes its training platform to "Microsoft Word and Adobe Acrobat"—tools that "allow users to view and edit documents," regardless of whether those documents contain copyrighted material. Dkt. 255 at 11. The analogy misses the mark because NVIDIA is the one *providing access to the pirated content*. A better analogy would be if Microsoft Word provided a function allowing users to automatically download and import pirated copyrighted material directly into the document. Under *Cox*, provision of this software would clearly constitute contributory infringement because the provider has "tailor[ed] its service to make copyright infringement easier." *Cox*, 2026 WL 815823, at *7.

◆    ◆    ◆

NVIDIA's motion to dismiss was without merit before *Cox* and it has even less force now. NVIDIA provided customers with scripts to "automatically download and preprocess The Pile," and those scripts were "developed to help their customers access these pirated datasets more quickly and easily." FACC ¶ 70. *Cox* confirms that this is contributory copyright infringement under both theories of liability. NVIDIA's motion should be denied.

6

DATED:  April 3, 2026

By:  /s/ Rohit D. Nath

Joseph R. Saveri (CSB No. 130064)
Christopher K.L. Young (CSB No. 318371)
Evan Creutz (CSB No. 349728)
Elissa A. Buchanan (CSB No. 249996)
William Waldir Castillo Guardado (CSB No. 294159)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com

Bryan L. Clobes (admitted *pro hac vice*)
Mohammed Rathur (admitted *pro hac vice*)
Nabihah Maqbool (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312-782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com
nmaqbool@caffertyclobes.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)

7

Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan B. Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com

Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001

8

New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:    (415) 395-9940
mb@butcoricklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

9