[Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ABDI NAZEMIAN, et al., | Master File Case No. 4:24-cv-01454-JST (SK) |
| Plaintiffs, | Consolidated with Case No. 4:24-cv-02655-JST (SK) |
| vs. | **JOINT STATUS REPORT** |
| NVIDIA CORPORATION, | Date:        April 20, 2025 |
| Defendant. | Time:        2:30 p.m. |
| | Location:   Zoom |
| | Judge:      Hon. Sallie Kim |

Pursuant to the Court's Minute Order, Dkt. 281, counsel for Plaintiffs Abdi Nazemian, Brian Keene, Stewart O'Nan, Andre Dubus III, Susan Orlean, and the proposed Class (together "Plaintiffs") and Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") (collectively the "Parties"), respectfully submit this Joint Status Report in advance of the Discovery Hearing on April 20, 2026 addressing the status of fact discovery, including written discovery and document production, privilege logs, depositions, and third-party discovery.

## 1. Format of Future Status Reports

The Parties respectfully request the Court's guidance regarding the content and format of these monthly status reports, so that the Parties can conform their future submissions to the Court's preferences.

The Parties also respectfully request the Court's guidance as to whether the monthly status report and conference procedure alters the Court's Standing Order requirements for discovery disputes and, if so, how they are altered.

***NVIDIA's Position:*** During the Parties' pre-conference meet-and-confer, the Parties agreed that this first Joint Status Report would include only updates on the status of discovery, not requests for Court relief, so that the parties could first receive guidance from the Court on whether and how disputes are to be presented at future status conferences. Notwithstanding that agreement, Plaintiffs included several requests for Court orders in this Joint Status Report. For the reasons discussed below, NVIDIA does not believe that any of these issues are ripe or appropriately presented for decision at least because the parties have not reached impasse, and in many cases, have not met and conferred. The discovery responses on which Plaintiffs purport to seek relief relate to a deadline that is ten months away. As detailed below, NVIDIA has timely made significant productions on a rolling basis following the stay hearing and will continue to work expeditiously to address the August 2026 substantial completion deadline. Plaintiffs' concerns about the substantial completion deadline ring hollow given their recent attempt to increase the number of ESI custodians by nearly 50%.

***Plaintiffs' Position:*** Plaintiffs have provided a detailed description of the status of discovery issues currently under discussion and, where applicable, requested appropriate deadlines to ensure

that the parties continue to make progress to meet the August 7, 2026 substantial completion deadline (allowing time to take depositions before the February 12, 2027 fact discovery cutoff). The August 7, 2026 substantial completion deadline is just four months away, and any further delay in document production and discovery responses will directly erode the time available for depositions and expert preparation. The specific interim deadlines requested below will preserve the integrity of the existing schedule. For future reports and discovery disputes, Plaintiffs defer to the Court's preference.

NVIDIA misrepresents the parties' discussions. Plaintiffs agreed not to include substantive briefing in this Joint Status Report. Plaintiffs' portions below accurately summarize the status of discovery and request interim deadlines where necessary to ensure progress towards the substantial completion deadline.

### 2. NVIDIA's Document Production

#### a. Data production on hard drives and remote servers

***Plaintiffs' Position.*** Since the Court's Order directing NVIDIA to respond to discovery, ECF No. 247, NVIDIA has produced some model checkpoints and training data and made certain data available for inspection on a remote terminal. But NVIDIA has neither fully identified the datasets and data sources containing pirated books that it intends to produce, nor the full scope of its production. This information is requested by Interrogatory 20, which seeks identification of NVIDIA datasets containing pirated books (see below). Plaintiffs have requested but not received a timeline for the production of this data. Plaintiffs respectfully request the Court order NVIDIA to produce this data on a weekly rolling basis (together with a response to Interrogatory 20, discussed below).

NVIDIA's statement below incorrectly blames Plaintiffs for the slow progress of production. For over a month, NVIDIA helped itself to a self-imposed stay. Between January 16, 2026 and March 1, 2026, Plaintiffs sought to meet and confer with NVIDIA about the details of training data productions, including whether portions of such productions would be produced by hard drive and, if produced in an inspection environment, the location of the inspection environment (in the initial phone call that NVIDIA mentions, Plaintiffs expressed their preference for Chicago,

IL), and other technical details. NVIDIA refused to engage. Then, after the Court twice rejected NVIDIA's requests to stay discovery, NVIDIA abruptly notified Plaintiffs that it had unilaterally placed a large quantity of data in an inspection environment in Quinn Emmanuel's Silicon Valley office. Within 24 hours, Plaintiffs sent a representative to inspect the data, but quickly learned that the isolated inspection environment that NVIDIA set up—and the file formats provided—made it entirely infeasible to review and search the training data. Several weeks later, NVIDIA again produced data in the same inspection environment, with the same technical limitations and constraints.

Since then, Plaintiffs have made every effort to work with NVIDIA on the efficient production of training data in a usable format. To that end, Plaintiffs asked NVIDIA to produce basic information that would enable Plaintiffs to identify particular datasets that should be prioritized or produced on a hard drive. In particular, Plaintiffs asked NVIDIA to respond to Interrogatory No. 20 (which requests information about shadow library downloads), or produce file directories for NVIDIA's voluminous training data (which would enable Plaintiffs to identify particular datasets by name). NVIDIA has largely failed to respond to both requests, which were designed to enable Plaintiffs to *reduce* the discovery burden on NVIDIA. The August 2026 substantial completion deadline rapidly approaches, and NVIDIA refuses to provide a production timeline, meaningful response to Interrogatory 20, usable inspection format, or simple explanation of what it is that NVIDIA plans to produce.

*NVIDIA's Position*. NVIDIA has produced hard drives with approximately 17 TB of non-custodial data in the last few weeks, expects to produce another 2 hard drives with 23 TB on a rolling basis before the next status conference, and expects to continue to produce hundreds of additional terabytes on a rolling basis. Plaintiffs themselves have recognized NVIDIA's production efforts. Salzman Email, 3/6/2026.

Immediately following the stay hearing, NVIDIA contacted Plaintiffs' counsel by phone to discuss an efficient production plan. Plaintiffs indicated they wanted data prioritized, and NVIDIA indicated the production would be made by review computer because it allowed for significantly faster production. NVIDIA indicated it was producing in Silicon Valley (Plaintiffs had requested

NVIDIA send all hard drives to a Bay Area address), but would work with Plaintiffs on location if they had an alternate request.  Plaintiffs indicated they would discuss internally and make an alternate request if needed.  Plaintiffs did not make an alternate request for a review computer in Chicago until March 10, 2026, so beginning on February 27, 2026, NVIDIA made its initial productions available in Silicon Valley for inspection on a review computer to speed up the process.  To date, over 50 TB of data has been made available on the review computer.  Plaintiffs have spent less than three days inspecting it, have not returned since March 17, and have not scheduled an inspection in the second location that Plaintiffs asked NVIDIA to set up.  Plaintiffs then requested that NVIDIA re-produce the data on the review computers, and produce any additional data on hard drives instead, even though it would take much longer to acquire sufficient hard drives, copy the data to those drives, review the data on the drives, and then ship the drives to Plaintiffs.  Plaintiffs agreed that they would accept the slower production time and not raise an objection to it.  Salzman Email, 3/10/2026.  NVIDIA also installed specialized software tools that Plaintiffs requested for the review computer within two days of their March 11 request, and explained why Plaintiffs' concerns about the "file format" were unfounded.  Plaintiffs have since confirmed that the "file format" issue has been resolved.

Plaintiffs' assertion that NVIDIA has "refused to engage" in meet-and-confers regarding these productions is simply false.  The parties met and conferred on February 25 and March 2, and exchanged nearly two dozen emails regarding the logistics of the production.  NVIDIA has worked to accommodate Plaintiffs at every turn—making the data available as fast as possible on a review computer in Silicon Valley (after NVIDIA asked Plaintiffs to select their preferred convenient location) given Plaintiffs' demand that NVIDIA expedite these productions; making a second review computer available in Chicago after Plaintiffs belatedly insisted *that* location was more convenient; and making arrangements for the more complicated process of transferring the data to hard drives as soon as Plaintiffs switched their preference to hard drives and producing those drives on a rolling basis.

NVIDIA has also been clear about the models and datasets it has searched for and intends to produce, including identifying the specific models, checkpoints, and any files labeled with

iterations of names of identified datasets. *See* ECF 269 at 7. The identity of the materials produced is also apparent from the data itself, which Plaintiffs have had the opportunity to examine on the review computer and can examine on hard drives when they receive it.

Producing hundreds of terabytes of data is a technically complex undertaking subject to real physical constraints. To illustrate the challenge, for NVIDIA's counsel to transfer approximately 20 TB of data to a large hard drive for production takes approximately 60 hours of computer run time, and that does not include the time, labor, or expense for NVIDIA to obtain the data from the data center so that it may be provided to counsel. NVIDIA is working quickly and efficiently to produce all this data and will continue to provide delivery estimates for each set of hard drives shipped to Plaintiffs, as soon as possible, on a rolling basis. Plaintiffs' assertion that supplementing NVIDIA's response to Interrogatory 20 before NVIDIA can review the data necessary to provide an accurate response, or creating a document that does not exist, would somehow reduce the discovery burden on NVIDIA is nonsensical and unsupported.

An order compelling weekly rolling productions is unnecessary, not to mention impractical given that some of the datasets are so large that it may take longer than a week of computer time to copy them onto hard drives.

### b. ESI Production and Search Terms

*Plaintiffs' Position.* Before April 10, NVIDIA had not produced any custodial ESI since February 10, when it produced 74 documents. On March 3, the parties reached agreement on operative search terms, and NVIDIA confirmed that it would "review documents that hit on Plaintiffs' new search terms and will produce documents" while the parties negotiated an expanded timeframe reflecting dates relevant to the FACC. S. Schlafer Email, 3/3/2026. On March 30, the parties agreed on an expanded operative timeframe (December 2020 through July 1, 2024). Now, 24 hours after Plaintiffs served an initial draft of this report, NVIDIA has committed to producing documents. NVIDIA should be required to make rolling productions beginning on April 30, 2026.

*NVIDIA's Position.* On March 3, 2026, the Parties agreed on search terms, but Plaintiffs then sought to expand the previously agreed-upon cutoff date for the Relevant Period by more than *2 years*, from March 8, 2024 to "the present." Djordjevic Email, 9/3/2025; Nystrom Email,

3/3/2026. On March 10, 2026—a month before Plaintiffs served a draft of this status report—NVIDIA confirmed that it would proceed with review and production of documents based on those search terms. Schlafer Email, 3/10/2026. On March 30, 2026, after almost a month of negotiations, the Parties finally agreed that the relevant period ended on July 1, 2024, so that ESI could be collected and produced. Schlafer Email, 3/30/2026. Ten days later, NVIDIA made an additional custodial production based on its review of documents hitting on the new search terms. NVIDIA is actively reviewing documents to make additional productions on a rolling basis. As the amended Relevant Period applies to both sides, NVIDIA expects that Plaintiffs will do the same, but Plaintiffs have not done so nor confirmed that they will do so.

At this point, NVIDIA does not think that a Court order is necessary. That said, any order requiring weekly productions should apply equally to both parties.

### c.  Custodians

*Plaintiffs' Position.* Plaintiffs have identified 21 custodians out of 24 allotted by the current ESI Order. ECF No. 98. On April 8, Plaintiffs requested an additional three custodians. Plaintiffs also requested nine custodians above the default 24-custodian limit. The request for an increase in the 24-custodian limit is justified given that on March 12 NVIDIA identified ten new individuals with knowledge of the allegations and claims in the FACC. NVIDIA has not yet responded to Plaintiffs' request, other than in its portion below. Plaintiffs are available to meet and confer to address this issue.

*NVIDIA's Position.* NVIDIA does not consent to any increase to the 24-custodian cap, which was the product of extensive negotiation and briefing. It was Plaintiffs who requested 24 custodians, over NVIDIA's objection. At the time Plaintiffs drafted the FACC, they had only selected 10 custodians. Nonetheless, Plaintiffs chose to use 11 of their 14 remaining allocated custodians prior to receiving ESI responses updated based on the FACC. Plaintiffs have not established good cause to modify the limit, but NVIDIA is prepared to meet and confer on this issue.

### d. Hyperlink Requests

***Plaintiffs' Position.*** On February 18, Plaintiffs requested NVIDIA produce two hyperlinked files. On March 13, NVIDIA promised to provide an update within a week, but sent nothing. Plaintiffs followed up multiple times and received no information about the delay.  On April 10, almost two months after Plaintiffs' initial request, NVIDIA produced the hyperlinked files. On March 31, Plaintiffs requested that NVIDIA produce five additional hyperlinked files. NVIDIA has not yet responded. Plaintiffs request that the Court order NVIDIA to respond to these requests within three business days going forward.

***NVIDIA's Position***.  Plaintiffs' first request for hyperlinked files sought two hour-long video presentation files that required extensive privilege review and redaction of videos, which is a time consuming and burdensome process.  NVIDIA produced the requested videos on April 10, 2026.  NVIDIA has been working internally to collect the documents from Plaintiffs' second hyperlink request and will review and produce them promptly.  No Court order is necessary.

### e. Metadata Issue

***Plaintiffs' Position.*** On January 15, Plaintiffs wrote to NVIDIA regarding issues with NVIDIA's custodial metadata fields—an issue first raised in December 2025. On January 26, NVIDIA wrote that it was investigating the issue. Plaintiffs followed up on February 20, requesting a response and sent several follow up emails. NVIDIA responded on March 25 (more than two months later). The parties are meeting and conferring on this issue. Plaintiffs intend to respond to NVIDIA's letter this week.

***NVIDIA's Position***. On March 25, NVIDIA responded to Plaintiffs' metadata inquiry as soon as it completed its investigation into the detailed, document-specific issues Plaintiffs purported to identify.  Plaintiffs have not followed up since NVIDIA's detailed response.

### 3. Plaintiffs' Discovery Requests

***Plaintiffs' Position.*** Plaintiffs have served 80 requests for production, 54 requests for admission, and 23 interrogatories. NVIDIA has timely served objections.

Master File Case No. 4:24-cv-01454-JST
JOINT STATUS REPORT

*NVIDIA's Position*.  Plaintiffs' 23 interrogatories were improperly compound, containing multiple unrelated, separate, and distinct subparts.  NVIDIA's position is that Plaintiffs have served 68 distinct interrogatories.

### a.  Requests for Production

*Plaintiffs' Position.*  The parties recently met and conferred regarding NVIDIA's responses to RFPs 53-79. The parties have reached agreement on the scope of many of these requests and are continuing to meet and confer regarding the other requests.

*NVIDIA's Position*.  On February 6, 2026, Plaintiffs requested that NVIDIA amend all 80 of its responses to requests for production.  Salzman Email, 2/6/2026.  NVIDIA has been working to serve its first batch of amended responses promptly, and will continue to supplement on a rolling basis.  NVIDIA has also met and conferred with Plaintiffs in good faith to resolve disputes over the scope of requests for production.

### b.  Requests for Admission

*Plaintiffs' Position.*  NVIDIA informed Plaintiffs that it expected to serve a supplemental response to RFA 49 the week of March 16. NVIDIA has neither supplemented this response nor provided an updated timeline for doing so. Plaintiffs respectfully request that the Court enter an order requiring NVIDIA to serve a supplemental response to RFA 49 by April 30, 2026.

*NVIDIA's Position.*  On February 6, 2026, Plaintiffs requested that NVIDIA amend all 54 requests for admission responses to account for the FACC.  Salzman Email, 2/6/2026.  NVIDIA has been working to supplement its responses on a rolling basis.  NVIDIA has agreed to supplement its response to RFA 49; no order is necessary.

### c.  Interrogatories

*Plaintiffs' Position.*  The parties have met and conferred regarding NVIDIA's responses to Interrogatory Nos. 14, 16, and 19-23. On March 4, NVIDIA told the Court in response to Plaintiffs' motion to compel that "NVIDIA will amend its responses—including Interrogatory No. 20—as its investigation and production continues." Dkt. 269 at 8. NVIDIA has not supplemented these responses nor provided a timeline for doing so. NVIDIA is now taking the inconsistent position that Plaintiffs' interrogatories exceed the limit while also continuing to promise responses.

Plaintiffs respectfully request that the Court enter an order requiring NVIDIA to serve complete supplemental interrogatory responses to Interrogatory Nos. 14, 16, and 19-23 no later than April 30, 2026.

*NVIDIA's Position.* On February 26, 2026, Plaintiffs requested that NVIDIA amend all 68 interrogatory responses to account for the FACC. Salzman Email, 2/6/2026. Even though Plaintiffs' interrogatories exceed the limit permitted under Federal Rule of Civil Procedure 33(a)(1), NVIDIA has been preparing supplemental and amended responses in the interest of compromise. However, NVIDIA's supplements are dependent on its current investigation and ongoing document production efforts. Indeed, many of the responses will cite NVIDIA's productions pursuant to Rule 33(d), which is ongoing. NVIDIA will supplement its responses to Interrogatory Nos. 14, 16, and 19-23 once it has reviewed the responsive documents necessary to accurately supplement (many of which are queued and processing for production); no order is necessary.

### d. ESI Requests

*Plaintiffs' Position.* The parties met and conferred regarding ESI Requests 4 and 6 on March 26, 2026. The parties continue to discuss ESI Request 6. ESI Request 4 asks NVIDIA to identify internal names of datasets containing pirated books. Plaintiffs requested supplementation on January 20, and NVIDIA waited until March 26, during a meet and confer, to object to ESI Request 4 as improper. Plaintiffs proposed a narrowing compromise on March 30, attempting to resolve the issue, but NVIDIA appears unwilling to compromise. NVIDIA's "abandonment" argument is incorrect given that discovery is continuing and open. This delay prejudices Plaintiffs' ability to identify additional search terms and conduct discovery. Plaintiffs are available to continue meeting and conferring regarding these requests.

*NVIDIA's Position.* The Parties are meeting and conferring on ESI Request Nos. 4 and 6. The Parties had reached tentative agreement on the Requests on March 26, 2026, but Plaintiffs then modified their agreement on March 30, 2026. As written, ESI Request 4 is not a proper ESI request under the ESI Order, which limits such requests to identifying "the proper custodians, proper search terms, and proper time frame for email production requests." ECF No. 98 ¶ 9. NVIDIA objected

on this basis a year ago and Plaintiffs then abandoned the Request. Plaintiffs then attempted to raise it anew on March 13, 2026, in the case management conference statement. ECF No. 275. Plaintiffs' most recent proposed modification still asks NVIDIA to identify which datasets "contain or may contain pirated books" and which "data sources provid[e] pirated books"—information which is not appropriately sought through an ESI request. NVIDIA has explained that it is willing to provide information in response to an amended ESI request that properly seeks information related to custodians and search terms; not factual information that should be addressed through interrogatories. No Court order is necessary.

### 4. Defendant's Discovery Requests

NVIDIA has served 31 requests for production, 112 requests for admission, and eight interrogatories. Plaintiffs have timely served objections.

### a. Requests for Production

***NVIDIA's Position.*** RFP 23 seeks "Documents sufficient to identify the revenue allocation between YOU and any holder of rights or interests in" the asserted works. Despite the relevance of the documents sought under the request's full scope, Plaintiffs' position regarding their forthcoming responses remain ambiguous, and they have not made a complete production of the materials sought. NVIDIA has raised the lack of documents responsive to RFP No. 23 for months. *See, e.g.*, 12/30/2025 McCracken Letter; 3/16/2026 Szendrey Email (identifying Plaintiffs' failure to produce documents in response to RFP 23). NVIDIA has raised that it is improper for Plaintiffs, who share the same legal counsel with many of the publisher entities, to take the position that the publishers maintain responsive documents—but that seeking such documents from those publishers would be unduly burdensome.

***Plaintiffs' Position.*** Plaintiffs agreed to supplement their response to RFP 23 and anticipate supplementing by April 20, 2026. Plaintiffs have already produced documents in response to RFP 23. Plaintiffs are available to meet and confer to resolve any additional issues that may arise. .

### b. Requests for Admission

***NVIDIA's Position.*** The Parties conferred regarding Plaintiffs' responses to NVIDIA's Requests for Admission Nos. 97-108, and 112, and NVIDIA again raised Plaintiffs' deficient

responses through an April 9, 2026 email memorializing the parties' meet-and-confers when Plaintiffs did not provide their promised responses. Plaintiffs have not agreed to supplement their responses. NVIDIA will continue to meet and confer and reserves all rights to seek relief if necessary.

*Plaintiffs' Position.* Plaintiffs have explained that these RFAs are premature. Plaintiffs remain available to meet and confer.

### c. Interrogatories

*NVIDIA's Position.* NVIDIA has identified numerous shortcomings in Plaintiffs' responses to NVIDIA's interrogatories, including responses to Interrogatory Nos. 3, 5, 6, and 8, which the parties have discussed at length. Plaintiffs have uniformly refused to provide a full narrative explanation of the rights they allegedly held in the Asserted Works at critical points in time, such as during the proposed class period. NVIDIA awaits both the supplemental response to Interrogatory No. 6 that the Court ordered Plaintiffs to provide, ECF No. 277, and Plaintiffs' promised supplement to Interrogatory No. 5. Plaintiffs' current response to Interrogatory No. 5, which seeks Plaintiffs' factual contentions that NVIDIA's alleged use of the Works is not fair use, merely recites the legal standard and refuses to provide more detail because doing so would supposedly require citing to confidential information.

*Plaintiffs' Position.* The Court ordered Plaintiffs to supplement Interrogatory No. 6 at ECF No. 274. Plaintiffs Orlean and Dubus supplemented on April 13; Plaintiffs Nazemian, Keene, and O'Nan will supplement by April 14, 2026. The parties recently met and conferred regarding Plaintiffs' responses to Interrogatory Nos. 3 and 5. Plaintiffs agreed to supplement Interrogatory No. 5. Plaintiffs Orlean and Dubus supplemented on April 13; Plaintiffs Nazemian, Keene, and O'Nan will supplement by April 14, 2026. The parties continue to meet and confer regarding Interrogatory No. 3. Plaintiffs have not "refused to provide an explanation of the rights they allegedly held in the Asserted Works." Plaintiffs have provided supplemental interrogatory responses that provide such information.

### 5. Plaintiffs' Document Production

***NVIDIA's Position***.  Plaintiffs have long maintained that they will collect only custodial ESI.  Plaintiffs have not produced documents like key agreements, royalty statements, drafts of the works or notes on their development, and other non-ESI documents that are squarely responsive, without explanation.  Instead, Plaintiffs have produced thousands, if not tens of thousands, of completely irrelevant emails, personal scheduling emails, images of fights from a hockey game, records of personal purchases of alcohol, and automatic notices that bear no relationship to this case.  In other words, Plaintiffs did not conduct a relevance review.  In fact, only a fraction of the 413,042 pages Plaintiffs produced contain even arguably relevant information, despite using a relevance review as the basis for their burden argument to this Court to narrow search terms.

Plaintiffs' failure to conduct a relevance review does not explain their failure to produce key documents related to ownership, *i.e.*, publishing and licensing agreements with ebook and audiobook publishers.  Plaintiffs have not yet produced any documents related to the FACC (outside of those required by Court order), despite the expanded allegations and new date range.  These would include, at a minimum, documents relevant to the expanded nature of both NVIDIA's alleged use and the "shadow libraries" now at issue.  NVIDIA served additional RFPs targeted at facts related to NVIDIA's fair use case, but despite agreeing to search for responsive documents on March 6, Plaintiffs have yet to produce ***any*** documents or even confirm whether ***any*** additional documents will be produced.

Plaintiffs' productions remain deficient and despite demanding weekly rolling productions from NVIDIA, who has made two productions of materials under the new search parameters, they failed to make a single production of materials under this scope and expanded relevant time period, or commit to a production date, let alone weekly productions.  Plaintiffs cannot credibly make demands of NVIDIA given their own refusal to comply with them.  NVIDIA has made clear to Plaintiffs that the expanded relevant period for ESI discovery (through July 1, 2024) must apply to Plaintiffs, too.  Schlafer Email, 3/30/2026.  But Plaintiffs have not committed to making any additional productions.  NVIDIA need not further identify additional documents it seeks based on the expanded scope for Plaintiffs to comply with their existing discovery obligations.

*Plaintiffs' Position*. Plaintiffs made their first document production on February 7, 2025 and have since made rolling productions and substantially completed production on November 24, 2025. Plaintiffs produced 35,343 documents, totaling 413,042 pages. As Plaintiffs have advised NVIDIA, they have identified (and, to the extent necessary, will continue to identify) documents showing their legal and beneficial rights in the works at issue. The parties recently agreed to an expanded Relevant Period for production of documents. Plaintiffs will collect and review documents covering that expanded period.

Plaintiffs ran NVIDIA's search terms as requested. The parties met and conferred over NVIDIA's "relevance review" concerns months ago, and NVIDIA never followed up. Months ago, Plaintiffs produced the very documents NVIDIA claims have not been produced, including agreements, royalty statements, and other non-ESI documents related to their Asserted Works— and Plaintiffs identified many of these documents in response to Interrogatories 2 and 3. For example, Plaintiff Susan Orlean has identified over 300 documents in response to NVIDIA's Interrogatories Nos. 2–3 concerning ownership of the Asserted Works, including financial statements, royalty statements and licensing, publishing, and option agreements. NVIDIA has not identified what additional documents it seeks from Plaintiffs based on the expanded scope of the case, which entirely concerns NVIDIA's broader piracy and copyright infringement. Plaintiffs are available to discuss this whenever NVIDIA pleases. Plaintiffs are not withholding documents relating to their ownership of the Asserted Works, nor any documents relating to the allegations and claims in the FACC.

**6. Privilege Logs**

The parties have corresponded regarding claimed deficiencies in the other party's privilege logs. The parties exchanged supplemental privilege logs addressing these issues on April 10. The parties continue to meet and confer regarding outstanding issues regarding privilege logs.

**7. Depositions**

**a. Rule 30(b)(1) Depositions**

No depositions have been taken.

Master File Case No. 4:24-cv-01454-JST                    13

*NVIDIA's Position.* NVIDIA responded to Plaintiffs' email regarding scheduling depositions for the five Plaintiffs and explained that there are unresolved production and written discovery deficiencies that must be resolved in advance of depositions, and directed Plaintiffs to correspondence regarding those deficiencies. Once resolved, NVIDIA will work with Plaintiffs to schedule depositions.

Regarding Plaintiffs' depositions of NVIDIA's witnesses, NVIDIA notified Plaintiffs that the one re-noticed deposition was noticed for the wrong location but confirmed the witness' availability for the requested date. NVIDIA also sought confirmation that Plaintiffs would not seek to re-depose the witness later given that NVIDIA's production is not complete. Plaintiffs indicated they would not pursue the deposition until NVIDIA had completed its custodial document production for that witness. Plaintiffs otherwise withdrew all their other 30(b)(1) notices.

*Plaintiffs' Position.* Plaintiffs have provided the availability of all five Plaintiffs. Plaintiffs noticed the depositions of 15 current and former NVIDIA employees but are deferring them due to outstanding written and document discovery from NVIDIA, including data production.

### b. Rule 30(b)(6) Depositions

Plaintiffs served an initial 30(b)(6) notice on December 18, 2025 on topics relating to the FACC, and NVIDIA served its objections and responses on January 20, 2026. Plaintiffs are deferring scheduling this deposition pending NVIDIA's response and outstanding written and document discovery from NVIDIA.

*NVIDIA's Position.* Plaintiffs then noticed their second Rule 30(b)(6) deposition as "a preliminary deposition" on "documents, data, and custodians related to NVIDIA's piracy," "without prejudice to later Rule 30(b)(6) deposition on merits topics." Salzman Email, 3/18/2026. Although not required by the Federal Rules, NVIDIA intends to serve written responses and objections to Plaintiffs' second Rule 30(b)(6) notice—as it did in response to Plaintiffs' first notice—to facilitate a productive conference among counsel regarding the appropriate scope of topics for examination.

Plaintiffs' request for "an order requiring NVIDIA to provide witness availability" in a Joint Status Report is therefore premature and unripe because NVIDIA has not yet served its responses

and objections and the Parties have not yet met and conferred.  That meet and confer process, as well as any motion for a protective order pursuant to Rule 26(c), will inform the timing and scope of any eventual deposition.

*Plaintiffs' Position*. On March 18, Plaintiffs served a second 30(b)(6) notice regarding NVIDIA's acquisition, storage, and location of pirated books datasets.  On March 30, Plaintiffs requested a response from NVIDIA and its availability to meet and confer, reminding NVIDIA that Rule 30(b)(6) requires the parties to confer "promptly after the notice or subpoena is served" about the "matters for examination." This status report constitutes NVIDIA's first comment on Plaintiffs' 30(b)(6) notice, confirming that Court oversight is improving discovery progress. But still, NVIDIA has neither provided a timeline for serving its responses and objections, nor its availability to meet and confer.

### 8.  Third-Party Subpoenas

*NVIDIA's Position*: NVIDIA served Rule 45 subpoenas on each of the named Plaintiffs' publishers and agents in November 2025.  Plaintiffs' counsel inserted themselves into the subpoena process and now represent four of the twelve subpoenaed entities, and at least two more entities served nearly identical objections that appear to have been cut and pasted from those represented by Plaintiffs' counsel.  At first, every entity represented by Plaintiffs' counsel outright refused to produce anything.  To minimize burden and in the spirit of compromise, NVIDIA identified key categories of documents that Plaintiffs' publishers and agents are likely to possess and asked that they perform simple searches of their central repositories for such documents.  The group of publishers and agents represented by Plaintiffs' counsel initially refused, claiming that it would be burdensome and that such central repositories may not exist.  NVIDIA's discovery efforts are thus being stymied on both fronts.  Plaintiffs do not deny that additional ownership documents exist, likely with their agents and publishers, and even lodged objections to NVIDIA's RFPs to that effect.  But those same entities, represented by Plaintiffs' counsel, now contend that producing such documents is unduly burdensome.  Other third parties, namely Creative Artists Agency and Penguin Random House, have, however, produced these types of responsive documents; indicating that they can be located after a reasonable search, without undue burden.  Despite this evident attempt at a

shell game, with counsel asserting non-possession on one hand and burden on the other, NVIDIA continues to seek ownership documents related to the Works—and is prepared to move the Court for relief if it proves necessary.

   *Plaintiffs' Position.* NVIDIA served subpoenas on several non-party agents and publishers. There have been several meet-and-confers over the scope of those subpoenas. On Tuesday April 7, counsel agreed to review and produce specific categories of documents requested by NVIDIA.

DATED: April 13, 2026

By:     /s/ *Diane S. Rice*
          Diane S. Rice

Joseph R. Saveri (CSB No. 130064)
Diane S. Rice (CSB No. 118303)
Christopher K.L. Young (CSB No. 318371)
Evan Creutz (CSB No. 349728)
Elissa A. Buchanan (CSB No. 249996)
William Waldir Castillo Guardado (CSB No. 294159)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone:      (415) 500-6800
Facsimile:      (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                drice@saverilawfirm.com
                cyoung@saverilawfirm.com
                ecreutz@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                wcastillo@saverilawfirm.com

Bryan L. Clobes (admitted pro hac vice)
Mohammed Rathur (admitted pro hac vice)
Nabihah Maqbool (admitted pro hac vice)
**CAFFERTY CLOBES MERIWETHER
   & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312-782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com
nmaqbool@caffertyclobes.com

By:    /s/ *Rachael L. McCracken*
          Rachael L. McCracken

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Biddinger (Bar No. 224604)
brianbiddinger@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
Rachael L. McCracken (SBN 252660)

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan B. Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com

Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant NVIDIA
Corporation*

275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
mb@butoricklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Diane S. Rice.  By their signature, Diane S. Rice attests that she has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: April 13, 2026                    By:  _/s/ Diane S. Rice_____
                                              Diane S. Rice