UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDI NAZEMIAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 24-cv-01454-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 240 |

Before the Court is Defendant NVIDIA Corporation's ("NVIDIA") motion to dismiss. ECF No. 240.  The Court will grant the motion in part and deny it in part.

## I.      BACKGROUND

Authors Abdi Nazemian, Brian Keene, and Stewart O'Nan filed this proposed class action against NVIDIA alleging that it has trained Large Language Models (LLM) on unauthorized copies of Plaintiffs copyrighted books.  ECF No. 235 ("FCAC") ¶¶ 1–5.  Plaintiffs allege that NVIDIA has trained many of its Artificial Intelligence LLM models using unlawfully copied materials available on illegal pirating websites called shadow libraries.  *Id*.  ¶¶ 23, 27.  Plaintiffs assert that NVIDIA used their copyrighted works that were contained in shadow libraries such as Anna's Archive and other datasets.  *Id.* ¶¶ 5, 33, 42, 46–47.  Plaintiffs allege that the copyrighted works were used to develop multiple LLMs in the Megatron family, including Megatron 345M (also known as Megatron GPT2 345m), Nemo GPT-3 10B, InstructRetro-48B, Retro-48B, and Nemotron-4 15B.  *Id*. ¶¶ 9, 38–39, 41, 59.  Plaintiffs also allege that NVIDIA provided various scripts and tools that enabled its customers to download and preprocess "the Pile," a dataset containing their copyrighted books, through the NeMo Megatron Framework and BigNLP platforms.  *Id*. ¶¶ 70–72.

United States District Court<br>Northern District of California

Plaintiffs filed this lawsuit on March 9, 2024. ECF No. 1. Plaintiffs filed a motion to amend the scheduling order and for leave to amend the complaint on October 17, 2025. The Court granted the motion on January 15, 2026. ECF No. 232. Plaintiffs filed the First Amended Consolidated Complaint on January 16, 2025. ECF No. 235. NVIDIA filed a motion to dismiss on January 29, 2026. ECF No. 240. Plaintiffs filed their opposition on February 12, 2026. ECF No. 254. NVIDIA filed its reply on February 18, 2026. ECF No. 255. On March 6, 2026, NVIDIA filed a notice narrowing the issues to be decided, informing the Court that it was no longer seeking the dismissal of claims based on the Nemotron-4 15B and Nemotron-4 340 B models or the Anna's Archive, Z-Library, LibGen, SciHub, and Slimpajama datasets. ECF No. 271 at 2. On March 25, 2026, both parties filed a statement of recent decision regarding *Cox Communications, Inc. v. Sony Music Entertainment*, No. 24-171, 2026 WL 815823 (U.S. March 25, 2026). ECF Nos. 285, 286. The Court ordered supplemental briefing on the impact of that case on Plaintiffs' contributory infringement claim, which parties filed on April 3, 2026. ECF Nos. 287, 288, 289. The Court held a hearing on the motion on April 16, 2026.

## II.     JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

## III.    LEGAL STANDARD

In considering a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Federal Rule of Civil Procedure 12(f), the court may strike from the pleadings "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Rule 12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits." *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1263 (W.D. Wash. 2023), *aff'd*, No. 24-5176, 2025 WL 2268252 (9th Cir. Aug. 8, 2025). If a claim is stricken, the court should freely grant leave to amend when doing so would not cause prejudice to the opposing party. *Wyshak*, 607 F.2d at 826.

IV.    DISCUSSION

NVIDIA moves the Court to: (1) dismiss or strike allegations about the newly added Megatron 345M model and any unidentified models; (2) dismiss allegations about the shadow libraries Pirate Library Mirror and Bibliotik, as well as those concerning any "unspecified" library; (3) dismiss allegations that NVIDIA infringed using the BitTorrentProtocol; and (4) dismiss claims that NVIDIA engaged in contributory and vicarious infringement. ECF Nos. 240, 271. The Court addresses each issue in turn.

A.    Models

NVIDIA moves to dismiss allegations concerning its Megatron 345M model and dismiss or strike references to other "unidentified models." ECF No. 240 at 11–14.[1]

1.    Megatron 345M

Plaintiffs allege that NVIDIA used a dataset containing their copyrighted works, known as "The Pile" "as training data for an LLM known as Megatron 345M." FCAC ¶ 41. The Pile dataset included another dataset called Books3. *Id.* ¶ 42. Books3 is derived from another dataset called Bibliotek. *Id.* ¶ 33. Books3 contains approximately 196,640 books, *id.* ¶ 35, and comprises 12% of The Pile dataset, *id.* ¶ 33. NVIDIA argues that Plaintiffs' Megatron 345M allegations should be dismissed because Megatron 345M was trained on portions of The Pile other than

---

[1] NVIDIA also argues that the FCAC fails to connect the newly named models specifically to infringement of Plaintiffs' works. ECF No. 240 at 13. As evidence, NVIDIA references Plaintiffs' discovery requests that ask for information related to all datasets or files containing books and defining NVIDIA's LLMs as broadly including all LLMs by NVIDIA. *Id.* at 7, 13–14. Plaintiff's discovery requests have no bearing on whether the complaint's allegations are sufficiently pleaded. Nor does this order express a view on the appropriate scope of discovery.

*United States District Court*
*Northern District of California*

Books3, the dataset that includes the copyrighted works belonging to Plaintiffs.  ECF No. 240 at 14.  As evidence, NVIDIA asks the court to take judicial notice of a screenshot of a model card[2] on NVIDIA's website, which states that The Pile was trained on text sourced from Wikipedia, RealNews, OpenWebtext, and CC-Stories.  *Id*. (citing ECF No. 206-8 at 2).  Plaintiffs object to the taking of judicial notice.  ECF No. 254 at 11.  In the alternative, they argue that just because NVIDIA has publicly proclaimed that Megatron 345M was trained on certain parts of The Pile, it does not mean that it was not trained on other parts of The Pile that included Books3.  *Id.* at 11–12.

NVIDIA's request for judicial notice is denied.  "Ordinarily, the court considers only the complaint and documents attached thereto in deciding a motion to dismiss; however, the court may also take judicial notice of matters of public record."  *Chavez v. City of California*, No. 1:19-cv-00646-CAC-JLT, 2020 WL 1234503, at *3 (E.D. Cal. Mar. 13, 2020) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001)).

This Court has previously "reject[ed] the notion that a document is judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document."  *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018); *see also In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1040 (N.D. Cal. Jan. 5, 2021) (quoting *Rollins*).  The Ninth Circuit has also warned that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."  *Id.* at 998.

Thus, the Court is left only with the allegations of the complaint.  Plaintiffs allege that over 12% of the dataset of The Pile is comprised of Books3, that Books3 contains Plaintiffs' copyrighted material, and that Megatron 345M was trained on The Pile.  FCAC ¶¶ 32–36.  At this stage of the litigation, Plaintiffs have adequately alleged that Megatron 345M was trained on a dataset that contained Plaintiffs' work.  FCAC ¶ 41.  Courts have routinely declined to dismiss

---

[2] "A model card is a standardized documentation framework for machine learning models that describes a model's intended use, performance characteristics, training data, evaluation metrics, ethical considerations, and limitations."  Model Card, AI Wiki, https://aiwiki.ai/wiki/model_card [https://perma.cc/G6TY-9HUP].

allegations where plaintiffs alleged that their copyrighted material was present in datasets that contained their work.  *See In re Google Generative AI Copyright Litig.*, 809 F.Supp.3d 903, 914 (N.D. Cal. 2025) ("The Court concludes that Plaintiffs plausibly allege copyright infringement as to the following models: PaLM, GLaM, LaMDA, Bard, Gemini, and Imagen. Plaintiffs have identified specific copyrighted works that were allegedly included in datasets used to train these models."); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 864 (N.D. Cal. 2023) (approving claims that defendant "downloaded or otherwise acquired copies of billions of copyrighted images without permission").  Therefore, the Court denies NVIDIA's motion to dismiss Plaintiffs' allegations concerning Megatron 345M.

### 2.    Unidentified NVIDIA Models

NVIDIA moves to dismiss or strike any allegations that reference "unidentified models" beyond ones in the Megatron family and the five models that the Court granted leave to include. ECF No. 240 at 11.

As became clear during the hearing on this motion, Plaintiffs are not presently accusing any unidentified model of infringement, other than the checkpoints for the models they do identify.  Accordingly, because NVIDIA agrees that "the proper scope of the FAC is . . . the five listed LLMs *and any checkpoints* for those five models," ECF No. 255 at 8 (emphasis added), NVIDIA's motion as to any unidentified models is denied.

### B.    Datasets

NVIDIA seeks to dismiss Plaintiffs' allegations of infringement from the shadow libraries known as Pirate Library Mirror and Bibliotik, as well as any references to unidentified datasets or shadow libraries.  ECF No. 240 at 16.

The complaint's references to Pirate Library Mirror are either historical or relate to the use of those libraries by other AI firms.  FCAC ¶¶ 47 ("The successor to Z-library, Anna's Archive began existence as 'Pirate Library Mirror[.]'"); 51 (stating that "it is an industry-wide practice to use shadow libraries such as . . . Pirate Library Mirror"); 51 n.9 (referring to Anthropic's use of Pirate Library Mirror).  Because Plaintiffs do not presently allege that NVIDIA downloaded copyrighted material from Pirate Library Mirror, that portion of the motion to dismiss is denied.

United States District Court
Northern District of California

The references to Bibliotik are also largely historical, but the complaint does contain one allegation that NVIDIA copied copyrighted works from Bibliotik.  FCAC ¶ 5.  Given other allegations in the complaint concerning the history and contents of Bibliotik, 33, 34, 35, the Court finds this allegation plausible and denies the motion to dismiss concerning Bibliotik.

Because Plaintiffs do not currently allege that NVIDIA infringes by the use of unidentified libraries, ECF No. 254 at 17–18, that portion of NVIDIA's motion is denied.

### C.    BitTorrent Protocol

NVIDIA seeks to dismiss allegations concerning its "use of any [sic] 'BitTorrent Protocol.'"  ECF No. 240 at 24.  There is only one reference to BitTorrent Protocol in the complaint:  "Bibliotik is one of a number of notorious 'shadow library' websites which make, store, and distribute huge quantities of pirated copyrighted works via the BitTorrent Protocol."  FCAC ¶ 34.

"BitTorrent is a communication protocol for peer-to-peer file sharing (P2P), which enables users to distribute data and electronic files over the Internet in a decentralized manner."  BitTorrent, Wikipedia, https://en.wikipedia.org/wiki/BitTorrent [https://perma.cc/Y23K-H2YP].  In other words, BitTorrent is merely a tool, not a library or dataset.  Asking to dismiss allegations concerning BitTorrent is like asking to dismiss allegations concerning paintbrushes in a case about a dolphin painting.  *See Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 771 (9th Cir. 2018).

The motion to dismiss the allegation concerning BitTorrent is denied.

### D.    Third Party Infringement

NVIDIA seeks to dismiss the contributory infringement and vicarious infringement claims.  ECF No. 240.

Preliminarily, both contributory liability and vicarious liability require, "an underlying act of direct infringement."  *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1158 (N.D. Cal. 2013).  "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster,* 545 U.S. 913, 930 (2005) (internal citations omitted).  Plaintiffs allege that NVIDIA provided its customers Writer,

Persimmon AI Labs, Amazon, and "numerous other customers" with scripts "to automatically download and preprocess The Pile dataset."  FCAC ¶¶ 70–71.  "Meaning, NVIDIA provided tools and resources for its customers to use the NVIDIA platform to download The Pile, thereby infringing on Plaintiffs' copyrights."  *Id.*  ¶ 70.  NVIDIA also provided the hardware for these downloads:  "Using the NeMo Framework, a customer could expect to quickly develop a language model trained on The Pile in only 9.8 days using NVIDIA's servers."  *Id.*  ¶ 72.

NVIDIA argues that Plaintiffs' allegations about third-party infringement based "on information and belief" are insufficient and that the complaint fails to identify any specific instance in which a customer downloaded or used The Pile.  ECF No. 240 at 18.  NVIDIA cites *Concord Music Grp., Inc. v. Anthropic PBC* for the proposition that a plaintiff must allege a clear act of direct third-party infringement, rather than identify what third parties could theoretically have done with the product.  *Id.* at 18–19 (citing *Concord*, No. 24-cv-03811-EKL, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025)).

First, allegations on information and belief are sufficient where they are "based on factual information that makes the inference of culpability plausible," particularly where the relevant facts are within the defendant's control.  *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) (citing *Arista Record LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010)).  Such is the case here.  Second, Plaintiffs have identified specific completed instances of infringement by specific customers.

Accordingly, the Court finds that Plaintiffs have plausibly alleged predicate acts of direct infringement by third parties.

### 1.     Contributory Infringement

NVIDIA moves to dismiss contributory infringement claim, arguing that Plaintiffs fail to plead the remaining elements of that claim.  ECF No. 240 at 19.

To state a claim for contributory infringement, Plaintiffs must plausibly allege that NVIDIA (1) had knowledge of a third party's infringement; and (2) induced that infringement or provided a service that was tailored to that infringement.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).  Furthermore, "[t]he provider of a service is contributorily

liable for the user's infringement only if it intended that the provided service be used for infringement. The intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026). The Court finds that Plaintiffs have adequately alleged contributory infringement.

### a.    Knowledge of Specific Infringing Acts

NVIDIA argues that Plaintiffs fail to allege the requisite knowledge because Plaintiffs rest their allegations only on "generalized awareness of product capabilities" as opposed to specific instances of infringement or direction to infringe. ECF No. 240 at 19. Plaintiffs respond that they allege concrete facts about NVIDIA's assistance to specific customers who used NVIDIA scripts to download The Pile, supporting a plausible inference of NVIDIA's knowledge of third-party infringement. ECF No. 254 at 22–24. The Court agrees with Plaintiffs.

The knowledge prong requires more than a generalized awareness of the possibility of infringement. *See Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Knowledge of a product's capability to be used for infringement is insufficient absent awareness by the defendant of actual infringing activity by third parties utilizing the product. *See Grokster*, 545 U.S. at 933. But Plaintiffs allege such awareness. They allege that NVIDIA itself downloaded, stored, and repeatedly used The Pile to develop and train several LLMs. ECF No. 235 ¶¶ 38–42. Plaintiffs further allege that NVIDIA provided scripts to customers designed to enable the acquisition and pre-processing of The Pile to develop their own LLMs. *Id.* ¶¶ 54–58, 69–72. In short, Plaintiffs have alleged that NVIDIA knew that its scripts and other assistance were directly contributing to infringement by third parties. This satisfies the knowledge element. *See Napster*, 239 F.3d at 1021–22.

NVIDIA cites several inapposite cases in which plaintiffs either alleged only a product's abstract capability to infringe or made conclusory assertions untethered to factual allegations of actual infringing use. *See e.g. Luvdarts*, 710 F.3d at 1072–73 (notices failed to identify "which of [the] titles were infringed, who infringed them, or when"); *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021) (allegations that defendant had "specific knowledge" were

"threadbare" and unsupported by facts); *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, 2014 WL 280391, at *6 (N.D. Cal. Jan. 24, 2014) ("There are no alleged facts plausibly suggesting that Defendant was on any notice . . . of the infringing [content] on its website."). By contrast, the allegations here are neither abstract nor conclusory. The Court finds that Plaintiffs have plausibly alleged that NVIDIA had knowledge of infringing activity.

### b.    Inducement Theory

NVIDIA claims that Plaintiffs have failed to establish that it induced infringement through specific acts because "[t]he FAC does not allege that NVIDIA promoted or marketed the NeMo Megatron Framework as a tool to download copyrighted content." ECF No. 288 at 3 (citing *Cox*, 146 S.Ct. at 967). NVIDIA emphasizes that the complaint lacks allegations NVIDIA promoting the NeMo Framework in its entirety as a tool for copyright infringement, instead alleging only that an optional configuration in the Framework permitted downloading and preprocessing of the Pile. *Id*. at 3–4. Plaintiffs respond that NVIDIA misrepresents the complaint by framing Plaintiffs' allegations in terms of the entire NeMo Framework as opposed to the specific scripts that NVIDIA provided to automatically download and preprocess The Pile. ECF No. 289 at 6. Plaintiffs allege that these scripts are tools "specifically designed for copyright infringement," which induces infringement by NVIDIA's customers. *Id*. at 7

To allege contributory infringement under an inducement theory, a plaintiff must allege that the defendant "actively encourages infringement through specific acts." *Cox*, 2026 WL 815823, at *6 (citing *Grokster*, 545 U.S. at 936). Plaintiffs allege that NVIDIA took the specific steps of "develop[ing] and distribut[ing] code to 'download and extract'" copyrighted files to its customers. FCAC ¶ 70. That is sufficient to allege that NVIDIA induced infringement. That the NeMo Megatron Framework as a whole may have other, non-infringing uses does not alter this conclusion.

NVIDIA also contends Plaintiffs have failed to allege inducement because they did not plead that NVIDIA advertised these infringing uses or promoted the NeMo Framework as a tool for infringement. ECF No. 280 at 3. Advertising or promotion, however, is an example of an inducing act, not a pre-requisite for alleging inducement. See *Cox* at 967 (citing *Grokster*, 545

United States District Court
Northern District of California

9

United States District Court
Northern District of California

U.S. 914, 941) ("A provider induces infringement if it actively encourages infringement through specific acts. . . .  For example, in *Grokster*, we held that a jury could find two file-sharing software companies liable for inducement . . . [when t]he companies promoted and marketed their software as a tool to infringe copyrights.").  It is sufficient that Plaintiffs allege that defendant "instruct[ed] how to engage in an infringing use" and "express[ed] an affirmative intent that the product be used to infringe," such as by designing a tool specifically to promote the infringement.  *Grokster*, 545 U.S. 914, 915.  Therefore, the Court finds that Plaintiffs have alleged that NVIDIA engaged in contributory liability by inducing infringement.

### c.     "Service Tailored to Infringement" Theory

NVIDIA also argues that Plaintiffs' contributory infringement claim fails because the NeMo Megatron Framework is capable of substantial non-infringing uses and is not a service tailored to infringement.  ECF No. 240 at 21; ECF No. 288 at 6.  Plaintiffs again argue that NVIDIA misrepresents the scope of the complaint as applying to the entire Framework rather than the specific tools NVIDIA utilized to infringe.  Plaintiffs argue that the scripts and material assistance provided by NVIDIA to its customers is the service tailored to infringement, as it had no purpose except to infringe.  ECF No. 254 at 27–28.  The Court agrees with Plaintiffs.

To allege that a defendant is committing copyright infringement by providing a service tailored to infringement, the complaint must allege that the defendant offered products "not capable of 'substantial' or 'commercially significant' noninfringing uses."  *Cox*, 146 S.Ct. at 967 (quoting *Grokster*, 545 U.S. 914, 942 (Ginsburg, J., concurring)).  Further, a product that is "capable of substantial noninfringing uses" does not give rise to contributory liability based solely on its distribution.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984). Here, Plaintiffs allege that NVIDIA provided scripts that enabled customers to download The Pile, a dataset alleged to contain copyrighted works.  FCAC ¶¶ 31–38, 70–71.  The scripts are alleged to have no other purpose than to speed up the process of infringement, unlike the digital video recorder systems at issue in *Sony Corp.* or the internet service provided in *Cox*.  464 U.S. at 442; 146 S.Ct. at 968.  Therefore, the Court finds that Plaintiffs allege a contributory liability claim under both the "inducement "and "service tailored to infringement" theories and denies NVIDIA's

motion to dismiss the contributory infringement claim.

### 2.      Vicarious Infringement

Plaintiffs also allege that NVIDIA is liable for vicarious infringement of their copyrighted material.  "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Visa*, 494 F.3d at 802 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)).  Stated differently, "[o]ne . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  *Id.* (quoting *Grokster*, 545 U.S at 930).

#### a.      Right and Ability to Control Infringement

NVIDIA first argues that Plaintiffs fail to plausibly allege that NVIDIA had the right and ability to control the alleged infringement because NVIDIA's ability to design or modify its own tools does not confer a legal right to control independent conduct by third-party users.  ECF No. 240 at 21–22.  Plaintiffs respond that NVIDIA exercised control by designing and providing scripts that enabled customers to automatically download and process The Pile.  ECF No. 254 at 29.

To establish vicarious liability, Plaintiffs must allege that NVIDIA had both the legal right to stop or limit the directly infringing conduct and the practical ability to do so.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).  To allege that defendants have the legal right to stop infringement, Plaintiffs must allege that "the defendant exercises the requisite control over the direct infringer."  *Id.*  The Ninth Circuit has made clear that the ability to control one's own systems or services, even if doing so could affect infringement "to some degree," does not establish the right and ability to control the infringing acts of third parties.  *Visa*, 494 F.3d 788 at 803.  Nor is it enough to allege that a defendant could take steps having the "indirect effect of reducing infringing activity;" the defendant must be able to supervise and control the infringement itself and "not just affect it."  *Id.* at 803–05.

The Court finds that Plaintiffs have not alleged that NVIDIA had the requisite ability to control third-party infringement.  Plaintiffs assert that "NVIDIA had the right and ability to

United States District Court
Northern District of California

control the direct infringements of customers." ECF No. 235 ¶ 88. The allegation is conclusory and fails to identify *how* NVIDIA could exercise that control. Plaintiffs' allegations are unlike those in *Napster*, where the defendant maintained centralized control over the infringing activity and possessed the ability to police or block user access to the very system through which infringement occurred. *Napster, Inc.*, 239 F.3d at 1023–24 (9th Cir. 2001). Plaintiffs' reliance on *Unicolors, Inc. v. Joy 153, Inc.* is also misplaced. 2016 WL 3462128, at *5 (C.D. Cal. June 24, 2016). The defendant there manufactured and sold garments bearing the infringing design to retailers and thus "had the right and ability to not engage in these transactions . . . and . . . could have prevented further infringement." *Id*. Plaintiffs do not identify any legal right by which NVIDIA could prevent or limit its customers' independent decisions to access or use The Pile from third-party sources.

Plaintiffs argue that NVIDIA controlled its training platform, including scripts that automatically downloaded The Pile, which provided it with the legal ability to control infringement. ECF No. 254 at 28–29. However, those allegations only establish control over NVIDIA's own tools. The complaint does not plausibly allege that NVIDIA had the legal right or practical ability to stop users from obtaining or using infringing materials. *See Visa*, 494 F.3d at 803 (allegations that defendant was aware of the infringement and had the ability to stop processing payments to infringing websites were not "sufficient to establish vicarious liability because even with all reasonable inferences drawn in Perfect 10's favor, Perfect 10's allegations of fact cannot support a finding that Defendants have the right and ability to control the infringing activity"). In *Grokster*, the Supreme Court explained that the "control" element focuses on the defendant's "right and ability to supervise the direct infringer." *Grokster*, 545 U.S. 914, 930 n.9. No comparable ability to supervise the alleged infringement is plausibly alleged here. Plaintiffs' allegations are insufficient to satisfy this element of vicarious liability.

### b.　　Financial Interest

NVIDIA also argues that Plaintiffs fail to plausibly allege that NVIDIA derived a direct financial benefit from any alleged infringement. ECF No. 240 at 22. It contends that the NeMo Megatron Framework and associated scripts were offered for free, that the platform has substantial

12

United States District Court
Northern District of California

non-infringing uses, and that Plaintiffs failed to allege any concrete connection between the alleged infringement and NVIDIA's revenue. *Id.* Plaintiffs respond that NVIDIA financially benefited by attracting customers through tools that facilitate access to datasets such as The Pile and by promoting the platform's ability to enable rapid AI model development. ECF No. 254 at 29.

To state a claim for vicarious liability, Plaintiffs must plausibly allege that NVIDIA received a direct financial benefit from the infringing activity. A direct financial benefit exists where the availability of infringing material "acts as a draw for customers." *Napster*, 239 F.3d at 1023 (citing *Fonovisa*, 76 F.3d at 263–64). The essential inquiry is whether there is a causal relationship between the alleged infringement and the financial benefit received. *Ellison*, 357 F.3d at 1079. The size of the benefit is immaterial; rather, the question is whether infringement itself serves as a customer draw. *See Ellison*, 357 F.3d at 1079; *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017). It is not sufficient to allege that customers were drawn "to obtain access to infringing material in general"; customers must be drawn to "the *plaintiff's* copyrighted material, rather than general infringement." *Perfect 10*, 847 F.3d at 673 (emphasis added).

The complaint alleges that "NVIDIA has directly benefitted financially from the direct infringement of its customers because NVIDIA generated revenue from customers using the NeMo Megatron Framework to download The Pile (and Books3) dataset (and potentially other datasets containing copyrighted books as well)." ECF No. 235 ¶ 89. But this does not plead the required causal relationship between the alleged infringement and any financial benefit. *Ellison*, 357 F.3d at 1079 (requiring a "causal relationship between the infringing activity and any financial benefit a defendant reaps."). Similarly, Plaintiffs' allegation that "NVIDIA also caused numerous third parties to download and store Plaintiffs' copyrighted works by encouraging, facilitating, and promoting its customers to download copies of The Pile dataset," ECF No. 235 ¶ 7, says nothing about whether access to The Pile "acts as a 'draw' for customers." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263–64 (9th Cir. 1996). The "central question … is whether the infringing activity constitutes a draw … not just an added benefit." *Ellison*, 357 F.3d at 1079.

13

Finally, Plaintiffs' allegation that, "[i]n short, The Pile (and Books3) was key to NVIDIA attracting customers, and NVIDIA materially aided its customers to infringe Plaintiffs copyrights," ECF No. 235 ¶ 73, without supporting factual content, also does not satisfy this standard.

Accordingly, Plaintiffs claim for vicarious liability is dismissed with leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court denies NVIDIA's motion to dismiss claims about Megatron 345M, unidentified NVIDIA LLMs, Pirate Library Mirror, Bibliotik, unidentified datasets, BitTorrent, and contributory infringement.  The Court grants the motion to dismiss Plaintiffs' vicarious infringement claim.  Leave is granted solely to correct the deficiencies identified in this order.  Any amended complaint must be filed with 21 days of this order.

**IT IS SO ORDERED.**

Dated: May 5, 2026



_____
JON S. TIGAR
United States District Judge