[Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ABDI NAZEMIAN, et al., | Master File Case No. 4:24-cv-01454-JST (SK) |
| Plaintiffs, | Consolidated with Case No. 4:24-cv-02655-JST (SK) |
| v. | |
| NVIDIA CORPORATION, | **JOINT STATUS REPORT** |
| Defendant. | Date: May 18, 2026 |
| | Time: 2:30 p.m. |
| | Location: Zoom |
| | Judge: Hon. Sallie Kim |

Pursuant to the Court's Order, ECF No. 281, counsel for Plaintiffs Abdi Nazemian, Brian Keene, Stewart O'Nan, Andre Dubus III, Susan Orlean, and the proposed Class ( "Plaintiffs") and Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") (collectively the "Parties"), respectfully submit this Joint Status Report in advance of the May 18, 2026 Discovery Conference.

### 1. Meet and Confer Efforts

*Plaintiffs' Position.* Plaintiffs propose weekly lead counsel meet-and-confer calls to address the many outstanding disputes efficiently and cooperatively between the parties. NVIDIA has rejected Plaintiffs' request, instead proposing a once-monthly standing lead counsel call. A standing call between the parties would 1) motivate the parties to timely identify and resolve ongoing and complex discovery issues, and 2) reduce the difficulty associated with scheduling lead counsel calls for both sides. For example, although multiple requests for meet and confers have been exchanged since the prior discovery conference, the parties have only had one substantive conferral. Now, in this status report, NVIDIA newly raises issues regarding discovery responses that Plaintiffs served more than six months ago, without any preceding correspondence or conferral with Plaintiffs. A weekly standing call between the parties—which can, of course, be taken off calendar if there is nothing to discuss—would encourage parties to timely identify discovery issues and avoid the difficulties the parties have had scheduling and keeping on calendar lead counsel meet and confers. Plaintiffs respectfully request the Court order such calls.

*NVIDIA's Position.* Weekly lead-counsel meet-and-confers are unnecessary. The Parties have one standing lead-counsel call per month and can convene additional calls as needed. That approach is working: the Parties exchange correspondence regarding discovery disputes (week 1); lead counsel confer and the parties exchange correspondence and drafts of the JSR to narrow issues (week 2); file the JSR and continue efforts to resolve issues (week 3); and hold the discovery conference (week 4). This cadence has allowed the parties to raise issues in correspondence, confer with their clients, and crystallize their positions in writing before meeting and conferring. Plaintiffs appear to endorse this approach below in Section 5: where NVIDIA raised issues with Plaintiffs' discovery on a meet and confer and Plaintiffs request a written explanation of NVIDIA's positions before agreeing to substantively confer. Additional standing conferences will impede discovery,

not streamline it, by forcing premature conferences before the parties have had the opportunity to fully correspond and consider each other's positions.

### 2. NVIDIA's Document Production

#### a. Data production on hard drives and remote servers

Since the April 20 conference, NVIDIA has produced additional hard drives containing datasets and additional data on a remote terminal at counsel's office, which Plaintiffs are inspecting.

*Plaintiffs' Position.* Plaintiffs' preliminary review of NVIDIA's hard drives has revealed that NVIDIA acquired ███████████████████████████ Notorious Markets for Counterfeiting and Piracy ██████████ https://ustr.gov/sites/default/files/files/Press/Releases/2026/2025%20Notorious%20Markets%20List%20(final).pdf (accessed May 8, 2026). Recent documents confirm that NVIDIA ██████ ██████████████████████████████████ And data produced on the remote terminal has revealed that ███████████████████████████ █████████████████████ Plaintiffs requested a complete production of these materials. NVIDIA has not provided a timeline for the production of additional responsive data.

The newly revealed information underscores the need for NVIDIA to respond to gatekeeping interrogatories, which are necessary for Plaintiffs to understand the scope of NVIDIA's infringement. The Court has already given NVIDIA a date certain to respond to Interrogatories 16 and 20. But NVIDIA has still not provided substantive responses to interrogatory 17 (requesting identification of datasets containing torrented books); 19 (requesting identification of platforms and file locations used to store pirated books); 21 (requesting the names of persons who trained the relevant models); and 22 (requesting the names of customers to whom NVIDIA provided pirated datasets). All of these requests were initially served on or before January 2026. NVIDIA states that it plans to supplement its responses by June 1 (four months after Plaintiffs filed the FACC). Plaintiffs welcome the supplemental responses and respectfully request that NVIDIA serve complete responses to these requests by this date, as previously ordered for Interrogatory 20.

*NVIDIA's Position.* NVIDIA has produced six hard drives with approximately 50 TB of data since March 19, 2026, and will produce at least hundreds of terabytes more through rolling

productions.  Since the last conference, NVIDIA produced 27 terabytes of data.  Plaintiffs acknowledge the production will take longer because Plaintiffs insisted on hard drive productions. 3/10/2026 Salzman email ("[W]e would prefer to receive these materials on hard drives. We will not contend that NVIDIA is delaying production if NVIDIA will provide a date by which it will provide these materials on hard drives.").

Plaintiffs no longer appear to take issue with the size or pace of NVIDIA's data productions. Instead, Plaintiffs make baseless mischaracterizations on the merits that are not appropriate for a discovery status report.  NVIDIA will address the nature and legality of its data acquisition in the appropriate context.

Plaintiffs ask in the "Data production" section that NVIDIA supplement responses to several interrogatories.  NVIDIA already committed to supplement and expects to do so by June 1, if not sooner.  NVIDIA will continue to supplement interrogatory responses as discovery progresses.

**b.  ESI Production and Search Terms**

Since three days before the last status conference, NVIDIA produced 4,664 custodial documents.

***Plaintiffs' Position.*** Plaintiffs anticipate proposing additional search terms to run on NVIDIA's ESI, but cannot do so until NVIDIA responds to amended ESI Request No. 4 ("Identify all names and code-names for Your datasets containing pirated books and all names and code-names for data sources You used to acquire pirated books, including shadow libraries."). NVIDIA's May 4 consisted solely of objections and a request to "meet and confer regarding the propriety and scope of this Request." This was not unique. For virtually every discovery request served on NVIDIA since January 2026, in NVIDIA's initial set of responses and objections it has declined to provide substantive responses, served only objections, and offered to "meet and confer." NVIDIA has not responded to Plaintiffs' request to meet and confer on ESI Request 4. As noted above, recently produced data and documents has confirmed that NVIDIA obtained books from shadow library sources beyond those Plaintiffs previously knew about. NVIDIA must explain how its engineers internally referred to those datasets and data sources to allow Plaintiffs to proceed with discovery. The purpose of ESI Request 4 is to obtain NVIDIA's assistance identifying relevant

Master File Case No. 4:24-cv-01454-JST        3

search terms related to activity that NVIDIA managed to conceal from discovery until now. NVIDIA argues that Plaintiffs' search terms are creating irrelevant hits. But the point of ESI requests are to allow the parties to exchange information that will enable both sides to make informed decisions and compromises that target ESI searches on relevant documents.

Plaintiffs are still waiting for significant ESI production. For context, NVIDIA's Eighth Search Term Hit Report served on February 19 identifies **430,674** documents with families hitting on Plaintiffs' 13 search terms across 21 custodians. Plaintiffs have requested the addition of three more custodians (identified through NVIDIA's document production) and the parties expanded the relevant time period to July 1, 2024. NVIDIA has not provided an updated hit report.

Plaintiffs have also identified several major issues with NVIDIA's production: NVIDIA has not produced any Slack chats since it began producing documents after Plaintiffs filed their amended complaint. Of the 2,273 recently-produced documents, over half (1,469) appear to be weekly Zoom call invite links containing no useful information.

***NVIDIA's Position.***   The scope of Plaintiffs' requests for non-custodial data has been a moving target that is causing production delays.  In March 2026, Plaintiffs requested an expansion of the relevant time period, followed by a request to add three custodians for a total of 24, the max allowed under the ESI order.  As NVIDIA prepared to serve that hit report, Plaintiffs sought to substitute a custodian.  Now, Plaintiffs are threatening to ask for additional search terms and leave to add additional custodians.  Plaintiffs should not be permitted to continually expand the scope of discovery, requiring serial collections and repetitive work.

The ESI Order provided for limited "ESI requests" to help identify "the proper custodians, proper search terms, and proper time frame for email production requests."  ECF No. 98 ¶ 9.  They are not interrogatories.  *Id.*  After the Parties discussed a modification of ESI Request No. 4 to conform with the ESI Protocol, Plaintiffs served a different, "amended" request that is improper under the ESI Order.  Permitting Plaintiffs to use ESI requests to extract substantive facts would circumvent the Federal Rules' limits on the number of interrogatories and response time.  *See* Fed. R. Civ. P. 33(a)(1).  NVIDIA remains willing to work with Plaintiffs to identify appropriate search terms through the process the ESI Order contemplates.  This Statement is the first time Plaintiffs

have raised any "issues" with NVIDIA's recent custodial productions. These "issues" are premature as NVIDIA's productions remain ongoing. Slack messages and other custodial ESI have been and will continue to be produced.

### c. Sources of ESI and Document Preservation

***Plaintiffs' Position.*** The parties have a percolating dispute regarding ESI production. Plaintiffs seek confirmation whether relevant and responsive ESI exists within "chat logs and user records of any AI model used by NVIDIA employees for work." For example, if an NVIDIA employee asked an AI chat bot about the legality of using the Books3 dataset, that chat log would be responsive to Plaintiffs' requests. Separately, Plaintiffs seek confirmation that Defendant preserves any logs showing access to or from NVIDIA file storage repositories containing copies of pirated books. For example, if the Books3 dataset was stored on an Oracle cloud repository, an access log would show whether the dataset was copied, deleted, or provided to third parties.

Plaintiffs request this information under Section 3 of the ESI Order, ECF No. 98, which obliges parties to provide a "disclosure of data sources … that contain information relevant to this litigation." Section 5 of the ESI Order further notes that "[t]he Parties and their respective counsel have an obligation to take reasonable steps to preserve discoverable information in the Parties' possession, custody, or control." *Id.* NVIDIA has refused to confirm or deny whether AI chat logs and user records were a data source containing relevant ESI, as well as confirm or deny whether it has preserved logs showing access to NVIDIA's datasets containing pirated books.

Plaintiffs have followed up on both potential sources of ESI, but NVIDIA has not responded. Plaintiffs respectfully request the Court order NVIDIA to respond to Plaintiffs' requests regarding (1) AI chat logs, and (2) the preservation of logs to datasets containing pirated books.

***NVIDIA's Position.*** Plaintiffs concede this "dispute" is only "percolating." If it ripens for Court intervention, NVIDIA respectfully requests that, given the potential importance, the Parties follow the Court's discovery briefing procedures. This will allow the Court to rule on a full record and preserve the Parties' right to seek relief under Civil Local Rule 72-2 and Federal Rule of Civil Procedure 72(a).

Plaintiffs' assertion that NVIDIA "has not responded" to their requests is inaccurate.  The Parties have exchanged multiple emails on Plaintiffs' requests and the purported relevance of this requested information.  Plaintiffs frame their requests as seeking "confirmation whether relevant and responsive ESI exists" within certain sources as though this were a routine obligation under the ESI Order.  It is not.  Section 3 requires disclosure of "data sources and categories of documents or ESI that contain information relevant to this litigation," as part of the initial *planning* for discovery—a process that concluded 18 months ago.  ECF No. 98 at 1.  At no point did Plaintiffs even mention, "AI chat logs," "user records," or "access logs" as relevant ESI sources.  And Section 5 addresses preservation obligations for the "discoverable information" that the Parties identified pursuant to Sections 3 and 4.  Despite significant briefing on the ESI Order and ESI sources (*see, e.g.*, ECF Nos. 73-76, 88, 89), neither Plaintiffs' proposal nor the ESI Order refers these categories..  Indeed, Plaintiffs first raised "chat logs and user records of any AI model used by NVIDIA employees" on March 23, 2026, which then evolved to "access logs" on April 27.  3/23/2026 and 4/27/2026 Salzman emails.  This case previously proceeded through the deadline for substantial completion of document production before the FAC, without Plaintiffs ever raising AI chat logs or access logs.  Tellingly, Plaintiffs have refused to state whether they have been preserving and producing from similar sources—undercutting the reasonableness of their demands.

Plaintiffs' belated attempt to add these sources is wholly improper and contradictory to the spirit of Section 3 (on which Plaintiffs themselves rely), which seeks to crystallize relevant ESI sources as the parties "*plan* for discovery" (*id.*)—not, as Plaintiffs suggest, allow the introduction of new ESI sources more than a year-and-a-half later.  Plaintiffs' requests are also disproportionate to any marginal relevance.  Plaintiffs have not articulated specific "AI chat logs" they believe are relevant or why: they offer only a hypothetical of negligible relevance ("if an NVIDIA employee asked an AI chat bot about the legality of using the Books3 dataset").  Plaintiffs' reference to "access logs" is similarly speculative and vague ("if the Books3 dataset was stored on an Oracle cloud repository.")  NVIDIA's objection is to the scope, relevance, and burden of the request, not an attempt to conceal responsive information.

### d.  Custodians

*Plaintiffs' Position.* Following the April 20 conference, the parties agreed on three additional NVIDIA custodians that bring the total to the 24 permitted by the ESI Order. ECF No. 98. NVIDIA has not provided hit reports for the three additional custodians, or to account for the expanded relevant period. Plaintiffs anticipate requesting custodians above the 24-custodian limit but are mindful of the Court's guidance that it wants to address this issue once. On April 30, Plaintiffs served ESI Request No. 7, asking NVIDIA to identify all individuals "responsible for acquiring, using, curating, or doing research with data acquired from Shadow Libraries[.]" NVIDIA's response is due on May 14. Plaintiffs will make their request after receiving NVIDIA's responses to Interrogatories 17, 20, and 21, and ESI Request No. 7.

NVIDIA's position seems to be that Plaintiffs should be sitting on their hands—not naming any custodians—until whenever NVIDIA finally responds to Plaintiffs' interrogatories and ESI Requests. Plaintiffs are doing their best to proceed with custodial discovery given the limited information that NVIDIA has provided. The goalposts have been clearly set since Plaintiffs filed their FACC. Search terms have not changed since February 19, and the relevant time period has not changed since March 30. The sole recent change is the substitution of a single individual based on information recently disclosed by NVIDIA. Plaintiffs await NVIDIA's cooperation.

*NVIDIA's Position.* Plaintiffs have identified all 24 custodians permitted under the ESI order and asked NVIDIA to proceed with those productions.  Plaintiffs could have reserved some custodians (as they did before the FAC) until NVIDIA serves supplemental interrogatory responses, but declined to do so.  NVIDIA objects to any request to impose the additional burden of further custodial collections, to negotiate further search terms, and review additional documents.  The Court rejected the approach of continual new requests:  "I'd like to decide on a number and keep it set. I don't want the Defendants to have to keep on going back and forth.  That's my concern.  And I think 24 is a pretty hefty number, even in a case like this."  4/20/2026 Tr. at 18:8-16.  NVIDIA is preparing a custodial ESI hit report but has not yet completed that, in part, given Plaintiffs' shifting goal posts for search terms, timeframe, and custodians.

    **e.  Hyperlink Requests**

Plaintiffs requested twelve hyperlinked files. NVIDIA has produced eight of those documents in response. One hyperlink led to a defunct file path and was not produced; NVIDIA is reviewing two documents for privilege (two hyperlinks lead to the same document).

***Plaintiffs' Position.*** NVIDIA produced two "redacted" Zoom recordings—that is, recordings that have been altered to blur certain images in the video or that have had certain portions of the video removed. Each video is an approximately hour-long recording of a Zoom meeting about NVIDIA's strategy for acquiring LLM training data. NVIDIA00202312; NVIDIA00202313. In both videos, NVIDIA blurs the screen whenever a meeting participant screen-shares a document. In one of the videos, the screen turns entirely black and the audio ceases at multiple points. Plaintiffs cannot determine how much or the subject of the content removed. On April 13, Plaintiffs requested an explanation for the redactions. NVIDIA responded that "[i]f those [redacted screen-shared] documents hit on operative search terms and are responsive and non-privileged, then they will be produced separately." On April 16, Plaintiffs challenged NVIDIA's decision to withhold portions of the video pursuant to § 19 of the ESI Protocol (allowing a party to challenge a producing party's claim of privilege at any time, and requiring a response in 14 days). ECF No. 98 § 19. In response, NVIDIA refused to provide any privileged basis for the redactions and blurring, writing instead that the video recordings "***may*** contain privileged content," and that it was conducting a review "expeditiously." A. Szendrey 4/27/2026 email (emphasis added).

On May 8, 2026, NVIDIA reproduced the video at NVIDIA00202312 without any blurred content, nearly a month after first producing it. As to the other video, NVIDIA redacted documents that it had not even determined are privileged, hedged on whether those documents actually are privileged, and refused to provide a basis for its decision to withhold the documents despite Plaintiffs specifically challenging that claim under the ESI Order. Plaintiffs initially requested these video recordings some three months ago. Finally, On May 8, NVIDIA explained that the redactions were "based on attorney-client privilege because those portions reflect a discussion of legal advice provided by NVIDIA's in-house lawyers." As discussed below, Plaintiffs request that NVIDIA produce a privilege log so that Plaintiffs can determine whether to challenge any claim of privilege.

*NVIDIA's Position*.  There are three outstanding hyperlinked files that NVIDIA has not produced in full because it is redacting them for privilege.  NVIDIA informed Plaintiffs that the information is being redacted because it reflects attorney-client privileged communications.

One file at issue is an hour-long Zoom recording with limited audio redactions for privilege.  NVIDIA's note that it "may" contain privileged material referred to whether specific portions of the documents displayed in the video reflect privileged advice—not whether any privilege exists at all.  The video was initially produced with the screen-shared documents fully redacted: NVIDIA is now conducting a frame-by-frame review of the documents screen-shared in the video to narrow the redactions to the privileged portions.  This also includes a close manual review of a 200-page document and a detailed Excel file, which are the other two hyperlinked files Plaintiffs have requested.  Once the redactions are finalized, NVIDIA will re-produce the video file and documents with redactions.  NVIDIA is prioritizing this specialized review.

There is no basis to depart from the Parties' established practice of serving privilege logs after substantial completion.  *See* Section 6 *supra.*  Serial logging is burdensome and inefficient.  .  To the extent the Court is inclined to rule on Plaintiffs' request, NVIDIA respectfully requests the issue be briefed so that the Court can rule on a full record and the Parties' right to seek relief from any order is preserved.

### f.   Metadata Issue

*Plaintiffs' Position.*  On January 15, Plaintiffs raised concerns about deficiencies in NVIDIA's custodial metadata fields. On January 26, NVIDIA wrote that it was investigating the issue. Despite several Plaintiff follow-up emails, NVIDIA did not respond again until March 25. Its response did not resolve the issues, though, so Plaintiffs wrote again on April 17 identifying additional concerns. Plaintiffs followed up again on April 24. NVIDIA responded to Plaintiffs on May 11. Plaintiffs will meet and confer to attempt to resolve any remaining issues.

*NVIDIA's Position*. Plaintiffs appear to misunderstand metadata and the ESI Order. NVIDIA believes that its March 25 letter resolved all of the "issues" raised by Plaintiffs regarding metadata.   Plaintiffs' April 17 letter does not "identify additional concerns," but asks for unnecessary metadata beyond what is required by the ESI Order or any document request.  ECF

JOINT STATUS REPORT

No. 99 ¶ 14 (requiring metadata "to the extent it exists and was captured at the time of the collection," and "To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any Party to extract, capture, collect or produce such metadata."). NVIDIA responded to Plaintiffs' letter on May 11 and will meet and confer if any dispute remains.

### 3. Plaintiffs' Discovery Requests

Plaintiffs have served 90 requests for production, 54 requests for admission, and 23 interrogatories. NVIDIA has timely responded; its responses to RFP Nos. 81-90 are due May 25.

### a. Requests for Production

***Plaintiffs' Position.*** The parties met and conferred multiple times in March regarding NVIDIA's responses and objections to RFPs 53-79. Despite those meet-and-confers, to date, NVIDIA has not stated the extent to which it will produce documents responsive to Plaintiffs' RFPs based on the scope of the FACC (despite the fact that Plaintiffs filed the amended complaint nearly four months ago). For RFPs 53-64, NVIDIA either stated that it would produce documents related to "the Pile and the training of the Nemo Megatron model family" or that it would meet and confer over the request. For RFPs 65-68, NVIDIA stated only objections. For RFPs 69-79, NVIDIA stated a list of objections and that it would "meet and confer to discuss the relevance and scope of this Request." NVIDIA recently stated that "NVIDIA has already produced and is continuing to produce documents and data responsive to *at least some of these Requests*" (emphasis added). This is a critical issue. Plaintiffs have requested key documents and communications, including documents relating to acquisition, use, and distribution of copyrighted content from shadow libraries. *See e.g.,* RFPs 57, 68, 69, 77, 80. Plaintiffs are happy to provide copies of these RFPs upon request from the Court. Plaintiffs cannot know what NVIDIA is withholding, because NVIDIA refuses to respond to Plaintiffs' RFPs. NVIDIA's failure to state the extent to which it will produce documents is a violation of Your Honor's Standing Order (pages 5-6). Plaintiffs welcome NVIDIA's agreement to supplement its responses to these RFPs by June 1, 2026, revealed to Plaintiffs for the first time during the exchange of this status report.

***NVIDIA's Position***.  As Plaintiffs acknowledge, NVIDIA has produced and will continue to produce responsive documents and data.  Conferring on these specific RFPs, Plaintiffs confirmed there was no dispute about RFP No. 53, the Parties discussed an appropriate scope for the other RFPs, and NVIDIA agreed to supplement its responses to those RFPs after an opportunity to confer internally.  NVIDIA plans to serve those supplemental responses by  June 1, 2026.

### b.  Requests for Admission

NVIDIA served a supplemental response to RFA No. 49 on May 4.  Plaintiffs are reviewing NVIDIA's response and will schedule a meet and confer if necessary.

### c.  Interrogatories

***Plaintiffs' Position.*** On April 20, the Court ordered NVIDIA to provide a preliminary supplemental response to Interrogatory 20 by May 20, 2026, and to provide a final response by June 22, 2026. The Court also ordered NVIDIA to serve a supplemental response to Interrogatory 16 based on the prior scope of the case by May 11, and to supplement based on the current scope of the case by May 25, 2026. Following the April 20 status conference, Plaintiffs reached out to NVIDIA to meet and confer regarding Interrogatories 19, 21, 22, and 23. In the May 4 meet and confer, NVIDIA refused to provide a timeline by which it would supplement its responses to provide information relevant to the amended complaint. Plaintiffs welcome NVIDIA's promise to supplement by June 1 (provided for the first time during the exchange of this status report).

On May 5, Plaintiffs informed NVIDIA that its April 28 response to Interrogatories 1-15 addressed only The Pile and the Nemo Megatron models, reflecting only the datasets and models at issue in the original complaint (and none of the additional datasets and models at issue in the FACC). NVIDIA has not responded. Plaintiffs respectfully request an Order requiring NVIDIA to supplement its interrogatory responses by June 1, 2026.

***NVIDIA's Position.***  Consistent with the Court's guidance at the April 20, 2026 status conference, NVIDIA has provided supplemental responses by the dates set by the Court and will continue to do so.  NVIDIA is also preparing supplemental responses to Interrogatory Nos. 17, 19 and 21-23 and, as noted above, expects to serve them by June 1, 2026.

Master File Case No. 4:24-cv-01454-JST

JOINT STATUS REPORT

As to Plaintiffs' request regarding "interrogatories 1-15," served before the FAC, Plaintiffs first asked NVIDIA to supplement Interrogatory Nos. 1, 3, 4(c-d), 5, 7, 8, 9, 11, 12, and 14 (not 2, 6, 10, 13 or 15) in their May 5 request (less than a week ago) and to confer within three days. Plaintiffs did not substantiate their request or indicate what supplementation they sought. NVIDIA will respond after it completes its investigation, considering the expanded scope of the FAC, and the Parties can then meet and confer if there are any disputes as to the scope of requested supplementation. NVIDIA expects any remaining issues can be raised through the Court's standard procedure for joint letter briefs if needed.

### 4.  Defendant's Discovery Requests

*NVIDIA's Position.* More than two years into this litigation, and more than six months after Plaintiffs' certified substantial completion, Plaintiffs still have not provided complete and accurate disclosures of the most critical discovery, including (1) rightsholders in the Asserted Works, (2) agents and publishers for the Asserted Works, and (3) all entities involved in the generation of revenues related to the Asserted Works. NVIDIA has repeatedly identified these deficiencies, and Plaintiffs continue to fail to meaningfully supplement. Unlike Plaintiffs' requests to expand the scope of discovery, NVIDIA's concerns relate to Plaintiffs' failure to comply with their existing discovery obligations and issues that have been raised since at least August 2025.

Plaintiffs have demonstrated a troubling pattern of providing incomplete answers or incorporating fragmented document productions in response to basic discovery requests. Plaintiffs claim that NVIDIA should sift through and reconcile inconsistent information to discern their responses. Not so. To begin, it flips the Federal Rules on their head: it is *Plaintiffs'* obligation, not NVIDIA's, to provide complete and accurate discovery responses reflecting a thorough investigation. *Full Tilt Boogie LLC v. Kep Fortune LLC*, 2021 WL 7285992, at *4 (C.D. Cal. Dec. 28, 2021) (citing Fed. R. Civ. P. 26(g) Advisory Committee Notes (1983)); *see, e.g., UAB "Planner5D" v. Meta Platforms, Inc.,* 746 F. Supp. 3d 806, 808 (N.D. Cal. 2024) (Kim, M.J.) ("the system of discovery is based on trust that a party produces documents after a review and assessment for relevance and responsiveness").

Even haphazard information provided shows Plaintiffs omitted critical information, such as:

- Plaintiffs have failed to identify all agents, publishers, and third parties involved in revenue generation. *See* ESI Requests Nos. 2 and 3. For example, until last week, Mr. Nazemian identified only one agent, Curtis Brown. On April 23, 2026, third-party discovery showed that Curtis Brown has not represented Mr. Nazemian since April 2019. *See* Szendrey 4/29/2026 Email. Plaintiffs' failure to identify this mistake is troubling, at best. If NVIDIA had not sought third-party discovery, these omissions may never have been discovered.

- Plaintiffs still have not identified all rightsholders in the Asserted Works, the subject of several of NVIDIA's core discovery requests. *See* Interrogatory Nos. 2 and 8; ESI Request Nos. 2, 3, and 8. Plaintiffs inexplicably left out relevant rightsholders, including entities ***formed by Plaintiffs themselves.*** It was NVIDIA's own investigation that revealed these errors. For example, it discovered documents identifying "Wordy Bird Inc." as the royalty recipient and "proprietor" for Ms. Orlean's *The Library Book*, indicating that the entity must have some rights in the Work. ORLEAN-NVIDIA-0000119-146; -1270-1314. But Wordy Bird is not disclosed anywhere in Plaintiffs' discovery responses.

- NVIDIA's ESI Request No. 8 seeks the "[i]dentif[ication] of all Persons that requested, offered, registered, or obtained any rights in any Asserted Work." Plaintiffs identified documents under Rule 33(d) in response, but these are facially incomplete. For example, Ms. Orlean's operative response does not identify the option agreement that must exist for the famous movie based on *The Orchid Thief*, *Adaptation*, nor does it identify the agreements with Paramount that her documents reveal exist for *The Library Book*. ORLEAN-NVIDIA-0000088 at -89-91.

Plaintiffs' failure to diligently engage in discovery has prejudiced NVIDIA's ability to develop its defenses, which is especially salient for NVIDIA's ESI Requests, whose purpose is to identify the proper custodians, search terms, and time frame for email production. ECF No. 98 at 3. Given the repeated deficiencies, NVIDIA asks that the Court order Plaintiffs to re-review each of their affected discovery responses and confirm their accuracy and completeness by May 29.

***Plaintiffs' Position.*** NVIDIA has served thirty-one requests for production, 112 requests for admission, and eight interrogatories. Plaintiffs have timely served objections.NVIDIA's lengthy discussion highlights several key points: (1) whenever NVIDIA identifies a deficiency, Plaintiffs promptly address it; (2) NVIDIA has not yet met and conferred with Plaintiffs about any of its claimed deficiencies; and (3) Plaintiffs' discovery responses are substantially complete and accurate. Plaintiffs have thoroughly investigated and disclosed all relevant information and are available for weekly lead counsel calls with NVIDIA to address any outstanding issues.

What Defendant characterizes as "incomplete" responses and "inaccuracies" in Plaintiffs' responses are misunderstandings of Defendant's own making. NVIDIA first raised the above issues in an exchange of this status report on May 8. If Defendant raises these issues directly with

Master File Case No. 4:24-cv-01454-JST                13

Plaintiffs—such as through the proposed weekly meet and confers—Plaintiffs can continue to help inform Defendant's understanding. In response to ESI Request No. 8, Plaintiffs objected in writing that the information sought by the request was duplicative of ESI responses already provided, and offered to meet and confer; if NVIDIA accepted that offer, Plaintiffs would have informed Defendant that the film studios responsible for adapting Plaintiff Orlean's works were already identified in ESI No. 3, and that Plaintiff Orlean had already produced all documents in her possession, custody, or control for the film *Adaptation* based on *The Orchid Thief*. *See e.g.* option agreement produced as ORLEAN-NVIDIA-0000038-70. Plaintiffs similarly welcome the opportunity to educate Defendant on Wordy Bird, Inc., a California S-Corp solely held by Susan Orlean that has no copyright ownership over her works, just as Plaintiffs previously exchanged productive correspondence with Defendant to answer their questions regarding other entities formed by other Plaintiffs for Plaintiffs' benefit. Plaintiffs remain available to meet and confer.

### a. Requests for Production

*NVIDIA's Position.* NVIDIA anticipates serving additional RFPs, and continues to follow up on gaps in Plaintiffs' productions for existing RFPs as described, *infra*.

*Plaintiffs' Position.* Plaintiffs served a supplemental response to RFP No. 23 on April 20, 2026. Plaintiffs welcome NVIDIA's supplementary discovery requests.

### b. Requests for Admission

*NVIDIA's Position.* NVIDIA is reviewing Mr. Nazemian's recent RFA supplement and will raise any issues with Plaintiffs. NVIDIA also anticipates serving RFAs to address the FAC.

*Plaintiffs' Position.* Plaintiff Abdi Nazemian served supplemental responses to RFA Nos. 82-96 on May 5, 2026. Plaintiffs welcome NVIDIA's supplementary discovery requests.

### c. Interrogatories and ESI Requests

*NVIDIA's Position.* Plaintiffs rely on Rule 33(d) for several of their responses, but fail to identify documents that answer the requests. Most pressingly, Plaintiffs' failure to identify all agreements affecting ownership interests in the Asserted Works prejudices NVIDIA's ability to build its class certification and fair use arguments and pursue third-party discovery.

For example, Plaintiffs' documents cited under Rule 33(d) in response to ESI Request No. 8, which seeks identification of "all Persons that requested, offered, registered, or obtained any rights," are inconsistent with those cited in response to Interrogatory No. 6, where Plaintiffs purported to identify the sources of monetization for each of their Works. In addition, Mr. Keene's operative response to Interrogatory No. 6 identifies "[d]ramatic adaptation rights, including both theatrical stage productions and film/television Adaptations" as a source of monetization. The documents Mr. Keene cited in his 33(d) response to both Interrogatory No. 6 and ESI Request No. 8, however, fail to identify any relevant theatrical, television, or film adaptation agreements.

While Mr. O'Nan identified "Speaking engagements" and "Special edition reprints" as monetization sources in his Interrogatory No. 6 response, the Rule 33(d) documents cited do not substantiate that assertion. Further, Mr. O'Nan identified foreign rights distribution and theatrical adaptation agreements by Bates number in his Interrogatory No. 6 supplemental response, but his ESI Request No. 8 response fails to identify the "Persons that requested, offered, registered, or obtained any rights in" his Work outside of one option agreement. Notably, public searches reveal that *Last Night at the Lobster* is now being adapted into a film, yet Mr. O'Nan's responses contain no reference to this.

Plaintiffs' discovery responses are thus inconsistent and incomplete. Plaintiffs should be required to thoroughly review their operative responses to ensure compliance with their obligations under the Federal Rules and, as stated above, commit or be ordered to confirm their accuracy and completeness by May 29. It is not NVIDIA's burden to raise repeated factual deficiencies; Plaintiffs must complete a thorough investigation in the first place. Plaintiffs' conduct has already prejudiced NVIDIA's ability to seek targeted follow-up discovery and may necessitate additional third-party subpoenas.

***Plaintiffs' Position.*** NVIDIA first raised the above issues in an exchange of this status report on May 8. As explained above, Plaintiffs are happy to work with NVIDIA to resolve any issues involving perceived deficiencies in Plaintiffs' discovery responses and production. As Plaintiffs highlighted during the April status conference, the ability to store and maintain accurate records varies by Plaintiff. Plaintiffs expect to provide a response to NVIDIA by May 18, 2026.

### 5. Plaintiffs' Document Production

***NVIDIA's Position***.    Plaintiffs' productions to date have significant shortcomings, including: (a) missing royalty statements for entire date ranges for the Asserted Works, *i.e.,* for 2025 and 2026; and (b) a litany of *partial* documents that are missing large gaps of pages.  Plaintiffs have the burden to identify and address any systemic issues causing these gaps: particularly in the case of ownership and licensing documents, which should be relatively simple to locate and produce.  Nonetheless, NVIDIA will provide a written accounting of the affected documents that it has identified to date and confer with Plaintiffs thereafter, but reserves the right to seek judicial relief if these deficiencies are not promptly addressed.

Plaintiffs have also failed to update their production of specific documents to fully cover the expanded date range agreed to for the FAC.  Plaintiffs must commit or be ordered to cure these deficiencies by May 29.

***Plaintiffs' Position***. Plaintiffs made their first document production on February 7, 2025 and have since made rolling productions. Plaintiffs substantially completed their document production on November 24, 2025. Plaintiffs have produced 35,325 documents. Plaintiffs advised NVIDIA they have identified (and, if needed, will continue to identify) documents showing their legal and beneficial rights in the works at issue. Plaintiffs have reviewed documents through the new relevant time period of July 1, 2024 and have no additional documents to produce based on the expanded timeframe. No Order is required to re-review these documents. During the Parties' May 4 meet and confer, Defendant initiated a new discussion regarding Plaintiffs' royalty statements. Plaintiffs requested that NVIDIA provide more detail in writing, so that Plaintiffs could work cooperatively to identify, collect, and produce any missing royalty statements. Plaintiffs look forward to receiving and reviewing this correspondence. A standing weekly call would assist the Parties to resolve hiccups precisely like these. Separately, a preliminary review of data recently produced by NVIDIA confirms that NVIDIA acquired significantly more pirated books than publicly known. Plaintiffs are investigating the full extent to which additional works by Plaintiffs were infringed by NVIDIA. Plaintiffs reserve all rights.

### 6. Privilege Logs

On April 10, 2026, the Parties exchanged supplemental privilege logs addressing the issues identified in the Parties' January 30, 2026 privilege logs. The Parties have corresponded and continue to meet and confer regarding claimed deficiencies in their respective privilege logs.

*Plaintiffs' Position.* Plaintiffs respectfully request that the Court enter an order requiring the parties to produce supplemental privilege logs no later than 30 days after a document is withheld from or redact in a production. NVIDIA's plan to serve its next privilege log after the substantial completion deadline in August (nearly three months from now) is immediately prejudicial. It will postpone all privilege challenges and delay depositions. Without the timely production of supplemental privilege logs, the receiving party cannot effectively challenge a producing party's claim of privilege, as shown by the dispute over the hyperlinked video records above. This is both (1) immediately prejudicial to the receiving party's discovery efforts and (2) will have the effect of postponing all privilege challenges until after the substantial production deadline, delaying depositions and burdening the Court with disputes that could have been resolved earlier. NVIDIA's intent to serve a privilege log months after its assertion of privilege is also inconsistent with Your Honor's Standing Order, which requires the producing party to "*promptly* prepare and provide a privilege log that is sufficiently detailed and informative for the opposing party to assess whether a document's designation as privileged is justified." Standing Order for M.J. Sallie Kim at 6–7 (emphasis added).

*NVIDIA's Position.* Every prior stipulated scheduling order in this case required privilege logs *after* the substantial completion deadline. ECF No. 71 (privilege logs due 2.5 weeks after the substantial completion deadline); ECF No. 159 (parties stipulating to privilege log deadline four weeks after the substantial completion deadline); ECF No. 219 (privilege logs due almost eight weeks after the substantial completion deadline). For each prior schedule modification, Plaintiffs jointly proposed that privilege logs would be due after substantial completion. ECF No. 159; ECF No. 219. While the privilege log deadline appears to have been unintentionally omitted from the most recent scheduling order (ECF No. 279), that is no reason to depart from the already agreed-upon procedure, especially where Plaintiffs have never previously claimed any prejudice from serving privilege logs after substantial completion (nor can they now, where under NVIDIA's

proposal Plaintiffs will have NVIDIA's privilege log four months prior to the close of fact discovery). NVIDIA proposes an October 2, 2026 deadline for privilege logs, eight weeks after the August 7 substantial completion date, so that privilege issues can be resolved efficiently well before the February 12, 2027 fact discovery cutoff. Plaintiffs' monthly privilege log proposal is inefficient and disproportionately burdensome for NVIDIA, the party producing tens of thousands of documents. NVIDIA would need to divert significant time and resources from document productions and other discovery to redacting and logging privileged documents. Disputes over privilege issues would be inefficiently addressed piecemeal.

### 7. Depositions

#### a. Rule 30(b)(1) Depositions

*NVIDIA's Position.* Plaintiffs served deposition notices on April 21 and 28, 2026 for two NVIDIA employees. For one deposition, Plaintiffs inquired whether it was feasible for NVIDIA to complete the custodial production "no later than two weeks prior to the deposition" noticed for June 29, 2026 (NVIDIA is considering Plaintiffs' request regarding the other, later noticed deposition). Elmasry Email 4/28/26. NVIDIA agreed to prioritize those productions, but responded that not necessarily "all" of those documents would be produced by June 12. NVIDIA also agreed to promptly inform Plaintiffs if it anticipated that would not be the case. Given the ongoing document productions and outstanding discovery from both sides, NVIDIA will confer with Plaintiffs on a mutually agreeable deposition schedule with the shared goal of avoiding the need for witnesses to sit for deposition more than once.

*Plaintiffs' Position.* Since the April 20 status conference, Plaintiffs served deposition notices of two current NVIDIA employees. Mindful of the Court's guidance, Plaintiffs have requested that NVIDIA inform them whether it can substantially complete document production for these witnesses at least two weeks before the noticed dates. If not, Plaintiffs are amenable to moving the deposition dates to avoid the necessity of multiple depositions of the same witness. Plaintiffs appreciate that NVIDIA is amenable to this approach and will continue to look for NVIDIA's updates as to whether it will be feasible to proceed with the depositions as-scheduled. Since the April 20 status conference, NVIDIA has not requested Plaintiffs' deposition availability.

### b.   Preliminary Rule 30(b)(6) Deposition on Shadow Library Sources

*Plaintiffs' Position*. On March 18, Plaintiffs served a second 30(b)(6) notice with the following topics related to pirated books datasets:

1. The acquisition, existence, organization, preservation, storage, reproduction, and deletion of Your Pirated Books Datasets.

2. The tools and systems used to acquire and process Pirated Books Datasets.

3. The location and storage of Your documents related to compensation or consideration provided to acquire any Pirated Books Datasets.

4. Identification of Persons who were directly involved in or otherwise have knowledge of the acquisition, existence, organization, preservation, storage, reproduction, and deletion of Your Pirated Books Datasets.

On April 20, the Court ordered this 30(b)(6) deposition be taken no later than July 6, 2026. 4/20/2026 Status Conf. Tr. 14:25-15:2. Only during the exchange of this status report did NVIDIA state that it would respond by June 1. Plaintiffs respectfully request an Order requiring NVIDIA to respond with objections and responses to this notice no later than May 20, 2026, so that the parties can have sufficient time to work toward agreement on the acceptable parameters of the 30(b)(6) deposition in advance of the deposition and the June conference. NVIDIA's June 1 proposal gives the parties a little more than a month to negotiate those objections and, if necessary, litigate any issues as to scope, and then prepare for the deposition according to the resulting scope. This compressed timeframe is unworkable and entirely unnecessary: NVIDIA has had months to respond to a narrow set of four topics, and there is no reason to postpone the meet and confer process on the scope of this deposition until less than two weeks before the June conference and a month before the deposition.

*NVIDIA's Position.*  NVIDIA will serve its objections and responses to Plaintiffs' second 30(b)(6) notice by June 1, 2026, which will provide more than a month for the Parties to confer and address disputes, if any.  Rule 30 does not set a time for serving objections and responses.  Nor do Plaintiffs articulate any basis for their arbitrary May 20 deadline.

### c.   Substantive Rule 30(b)(6) Deposition Notice (served December 18. 2025; objections and responses served January 20. 2026)

Plaintiffs are deferring scheduling its initial 30(b)(6) deposition pending NVIDIA's outstanding written and document discovery, and pending the preliminary 30(b)(6) deposition, discussed above.

### 8. Third-Party Subpoenas

*NVIDIA's Position*: NVIDIA continues to pursue highly relevant discovery through third-party subpoenas to Plaintiffs' publishers and agents. For the third parties that Plaintiffs' counsel represent, ambiguity remains as to whether Plaintiffs or their agents/publishers possess the critical documents NVIDIA seeks. The Parties continue to meet and confer on those determinations, as the most efficient way for NVIDIA to obtain these relevant agreements is for Plaintiffs' counsel— wearing whatever hat they choose—to work with their clients to locate and produce the documents.

*Plaintiffs' Position.* Plaintiffs anticipate serving subpoenas on third parties to which NVIDIA provided (or facilitated acquiring) pirated books. Again, though, NVIDIA has not responded to Plaintiffs' interrogatories requesting this information. *See* Interrogatory No. 22 (requesting NVIDIA to identify "all Persons you provided resources, tools, or guidance to in connection with obtaining any dataset containing books"). Plaintiffs will proceed with third party discovery as soon as NVIDIA provides the required information.

Plaintiffs remain available to discuss with NVIDIA which entities possess responsive documents, to whatever (limited) extent those documents have not already been produced.

DATED: May 11, 2026

| | |
|---|---|
| By:      /s/ *Diane S. Rice* <br>        Diane S. Rice | By:    /s/ *Brian Biddinger* <br>      Brian Biddinger |
| Joseph R. Saveri (CBS No. 130064) <br> Diane S. Rice (CSB No. 118303) <br> Christopher K.L. Young (CSB No. 318371) <br> Evan Creutz (CSB No. 349728) <br> Elissa A. Buchanan (CSB No. 249996) <br> William Waldir Castillo Guardado (CSB No. 294159) <br> Drew Moss Morgan (CSB No. 366901) <br> **SAVERI LAW FIRM, LLP** <br> 550 California Street, Suite 910 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br><br> Sean S. Pak (SBN 219032) <br> seanpak@quinnemanuel.com <br> 50 California Street, 22nd Floor <br> San Francisco, CA 94111 <br> Telephone: (415) 875-6600 <br> Facsimile: (415) 875-6700 <br><br> Andrew H. Schapiro (admitted *pro hac vice*) |

San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:
jsaveri@saverilawfirm.com
drice@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
dmorgan@saverilawfirm.com

Avery M. Wolff (admitted pro hac vice)
**SAVERI LAW FIRM, LLP**
780 Third Avenue, Suite 1200
New York, NY 10017
Telephone: (212) 970-0300
Facismile: (212) 970-0301
Email:
awolff@saverilawfirm.com

Bryan L. Clobes (admitted pro hac vice)
Mohammed Rathur (admitted pro hac vice)
Nabihah Maqbool (admitted pro hac vice)
**CAFFERTY CLOBES MERIWETHER
  & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312-782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com
nmaqbool@caffertyclobes.com

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Biddinger (Bar No. 224604)
brianbiddinger@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
Rachael L. McCracken (SBN 252660)
rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant NVIDIA
Corporation*

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan B. Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com

Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001

Master File Case No. 4:24-cv-01454-JST                    22

New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:    (415) 395-9940
mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Diane S. Rice.  By their signature, Diane S. Rice attests that she has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: May 11, 2026                                      By:  _/s/ Diane S. Rice_____
                                                                               Diane S. Rice

Master File Case No. 4:24-cv-01454-JST                    24

JOINT STATUS REPORT