[Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *Abdi Nazemian, et al.*,<br>Plaintiffs,<br>v.<br>*NVIDIA Corporation*,<br>Defendant. | Master File Case No. 4:24-cv-01454-JST (SK)<br>Consolidated with Case No. 4:24-cv-02655-JST (SK)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>CMC Date: September 11, 2026<br>Time: 1:30 p.m.<br>Location: via Zoom<br>Judge: Hon. Jon S. Tigar |

Pursuant to Civil Local Rule 16-9(d), the Standing Order for All Judges Of The Northern District Of California (updated Nov. 30, 2023), and the Court's Minute Order, ECF No. 331, counsel for Plaintiffs Abdi Nazemian, Brian Keene, Stewart O'Nan, Andre Dubus III, Susan Orlean, and the proposed Class (together "Plaintiffs") and Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") (collectively the "Parties"), have met and conferred and respectfully submit this Joint Case Management Statement in advance of the Case Management Conference on September 11, 2026. The parties are prepared to appear remotely before the Court on September 11, 2026.[1] The parties provide updates for the Court at Sections 2-5, 8, 15, 17.

**2. <u>FACTS</u>**

**a. Plaintiffs' Statement**

NVIDIA's "[redacted]" for 2024 was to "[redacted] It did so, torrenting roughly [redacted]. In the process of torrenting, it appears that NVIDIA also [redacted]. After torrenting [redacted] NVIDIA also [redacted] NVIDIA maintained its [redacted] "Such piracy of otherwise available copies is inherently, irredeemably infringing[.]" *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1025 (N.D. Cal. 2025).

**b. NVIDIA's Statement**

Following the Court's instruction to focus on "issues requiring management at a case management conference," ECF No. 326, at 1, NVIDIA hereby incorporates its prior statement of facts, ECF No. 350 at 3-5.

---

[1] The parties are currently appearing before Magistrate Judge Kim for monthly discovery status conferences, with the next status conference scheduled on September 21, 2026. ECF No. 281.

NVIDIA otherwise disputes Plaintiffs' new characterizations of NVIDIA's data acquisition and use practices because they are inaccurate and inflammatory, especially Plaintiffs' unsupported assertions about an "[redacted]." Such characterizations are particularly inappropriate for this joint statement, given the Court's guidance that "future case management statements will be more fit for their intended purpose." ECF No. 326 at 1-2. NVIDIA will continue to address the substance of Plaintiffs' mischaracterizations of evidence in the appropriate fora. *See, e.g.*, ECF No. 388 at 3-4 (addressing Plaintiffs' characterizations of the documents in its request for leave to file an amended complaint).

**3. <u>Legal Issues</u>**

**a. Plaintiffs' Statement**

This is a straightforward case of mass copyright infringement. While NVIDIA cannot dispute it copied Plaintiffs' works and the works of putative class members, it claims its conduct was "fair use." Long before artificial intelligence, however, courts held that downloading free copies of works in lieu of paying a purchase price is a manifestly unfair use. *See, e.g.*, *BMG Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. 2005) (Easterbrook, J.) ("downloading full copies of copyrighted material without compensation to authors cannot be deemed 'fair use.'"); ; *United States v. Slater*, 348 F.3d 666, 669 (7th Cir. 2003) (affirming criminal copyright infringement conviction when defendants made "vast amounts of copyrighted software freely—and thus unlawfully—available"; fair use arguments "barely pass the straight-face test"). NVIDIA's actions are no different. *Bartz v. Anthropic PBC*, 787 F. Supp. 3d at 1026 ("Pirating copies to build a research library without paying for it, and to retain copies should they prove useful for one thing or another, was its own use—and not a transformative one.").

This class action seeks relief for copyright holders whose books NVIDIA stole for its [redacted] Mass piracy cases like this one "exemplif[y] the classic litigation that should be certified as a representative action, for the entire class stands aggrieved by defendant's downloading of their books from pirate libraries on the internet." *Bartz*, 791 F. Supp. 3d 1038, 1045 (N.D. Cal. 2025); *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7 (N.D. Cal. June 1, 2005) ("while it is

true that proof of ownership, registration, and actual damages ultimately requires a work-by-work inquiry, viewing these determinations as purely 'individual issues' ignores the fact that the claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work by Napster users").

**b. NVIDIA's Statement**

This case raises the following legal questions concerning the application of copyright law to the training of LLMs, as well as related class certification issues:

- Whether NVIDIA's alleged downloading and use of data for research, development, and training of LLMs, which purportedly contained copies of Plaintiffs' works, constituted a protected fair use under 17 U.S.C. § 107._ *See, e.g.*, *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1022 (N.D. Cal. 2025) (purpose and character of use factor favored fair use where copies were used to train LLMs); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1046 (N.D. Cal. 2025) ("no serious question" that Meta's use of the plaintiffs' books to train LLMs was "highly transformative"); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015) (noting use for "new, transformative purposes" "serves copyright's goal of enriching public knowledge"); *In re OpenAI, Inc. Copyright Infringement Litigation*, No. 25-md-3143, ECF No. 316 (Dept. of Justice Statement of Interest) (S.D.N.Y., filed Sept. 1, 2026) (noting a "narrow fair-use doctrine" that excluded training large language models "would be inconsistent with basic copyright law principles and severely hamper 'the Progress of Science and useful Arts.'").

- Whether copyright law permits authors to control the use of uncopyrightable information—such as facts, grammatical relationships, and language patterns—to train an LLM. *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (" facts and ideas [] are free for the taking"); *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (holding that "a depiction of two dolphins crossing under sea" is not protectable).

- Whether Plaintiffs can prove that NVIDIA contributed to infringement by others through the provision of an optional configuration tool within a framework capable of substantial noninfringing uses when NVIDIA did not promote infringing uses or engage in specific acts directed at encouraging infringement. *See, e.g.*, *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026).

- Whether certifying a class is appropriate where liability, ownership, registration, licensing history, and market-effect inquiries all require individualized proof. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-52 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013); *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 722 (N.D. Cal. 2023); *Authors Guild, Inc. v. Google Inc.*, 721 F.3d 132, 134 (2d Cir. 2013).

NVIDIA will refrain from legal argument in this section given the Court's guidance but strongly disagrees with Plaintiffs' legal argument.

**4. Motions**

**a. Recent Orders and Stipulations**

Since the parties' June 5, 2026 Joint Case Management Statement, the Court has entered the following orders:

- On June 8, 2026, Magistrate Judge Kim denied NVIDIA's request for a telephonic conference but invited briefing on the discovery cutoff. ECF No. 318.
- On June 11, 2026, the Court entered a Case Management Order. ECF No. 326.
- On June 22, 2026, Magistrate Judge Kim denied without prejudice Plaintiffs' motion to compel NVIDIA to identify the names and code names of all "mirrors" from which NVIDIA acquired pirated books in response to Plaintiffs' ESI Request 4; granted NVIDIA's motion to "confirm that the relevant time period for discovery ends July 1, 2024"; denied without prejudice Plaintiffs' request that NVIDIA "explain whether it has preserved various sources of electronically stored information"; and granted in part and denied in part NVIDIA's motion to set deadlines for Plaintiffs' production of documents and responses to interrogatories and ESI requests. ECF No. 340.
- On June 22 and June 29, Magistrate Judge Kim granted unopposed administrative motions to seal information NVIDIA designated as protected under the Protective Order. ECF Nos. 341 & 343.
- On July 9, 2026, the Court ordered NVIDIA to file a response to Plaintiffs' Motion for Relief from Magistrate Judge Kim's Order regarding the discovery timeframe. ECF No. 347.
- On July 13, 2026, the Court denied Plaintiffs' administrative motion to consider whether NVIDIA's material should be filed under seal. ECF No. 348.
- On July 29, 2026, Magistrate Judge Kim granted Plaintiffs' request to add two custodians to the list of custodians whose files NVIDIA must search. ECF No. 363.
- On August 5, 2026, the Court issued an order requesting supplemental briefing on Plaintiffs' Motion for Relief from Magistrate Judge Kim's Order regarding the discovery time period. ECF No. 373.
- On August 17, 2026, Magistrate Judge Kim denied as moot Plaintiffs' joint letter brief regarding the preparedness of NVIDIA's Rule 30(b)(6) witnesses and granted Plaintiffs two additional hours of Rule 30(b)(6) deposition time; ordered Plaintiffs to provide, by September 8, 2026, the locations in NVIDIA's productions where they have found their infringed works; and denied Plaintiffs' request for a deadline for NVIDIA's response to Plaintiffs' request for  extracted text versions of its tokenized training data. ECF No. 389.

**b. Pending Motions**

The following motions are pending:

- Plaintiffs' Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge Kim. ECF Nos. 345, 346, 347, 358, 373, 384, 385.

- Plaintiffs' Administrative Motions to Consider Whether NVIDIA's Material Should be Sealed. ECF Nos. 355, 357, 359, 367, 369, 379, 382, 383, 384, 394, 399.
- Plaintiffs' Motion to Modify the Scheduling Order and for Leave to File Second Consolidated Amended Complaint. ECF Nos. 368, 388, 395, 396.
- NVIDIA's Administrative Motions to Seal Material. ECF Nos. 387, 392, 393.

**c. Anticipated Motions**

The parties are meeting and conferring on several discovery disputes. They hope to resolve future discovery disputes without judicial intervention but anticipate that the Court may need to decide some issues. The Court has referred this case to Magistrate Judge Sallie Kim for discovery (ECF Nos. 104, 105). The parties also anticipate filing and briefing class certification, *Daubert*, and summary judgment motions.

***Plaintiffs' Position***: In light of recent unanticipated technical issues related to accessing voluminous data productions (discussed below in the "Scheduling" section), Plaintiffs anticipate seeking a 90-day extension of the case schedule so they can fully download and review NVIDIA's datasets in advance of the expert discovery and class certification deadlines. Plaintiffs contacted NVIDIA about their proposed schedule extension on September 1 and await NVIDIA's response.

***NVIDIA's Position***: This statement and Plaintiffs' September 1 email is the first time NVIDIA was made aware that Plaintiffs may seek an extension of the case schedule. NVIDIA responded to Plaintiffs' September 1 email seeking information regarding the basis for their requested extension. *See* 9/3/2026 Huddle Email. Specifically, Plaintiffs have not articulated what "technical issues" they have encountered, the date they began transfer efforts, how much data they have transferred and still need to transfer, why they require a wholesale schedule extension, or how much additional time they need. On September 3, Plaintiffs responded and provided a proposed schedule, which NVIDIA is assessing.

**5. <u>Amendment Of Pleadings</u>**

The deadline to amend the pleadings passed on April 15, 2025. *Nazemian* ECF No. 71; *Dubus* ECF No. 59. On October 18, 2025, Plaintiffs filed a Motion to Modify Scheduling Order and for Leave to File First Amended Consolidated Complaint. ECF No. 193. On January 15, 2026, the

Court granted Plaintiffs' motion. ECF No. 232. On May 5, 2026, the Court granted-in-part and denied-in-part NVIDIA's motion to dismiss Plaintiffs' FACC, providing Plaintiffs leave to amend by May 26, 2026. ECF No. 303. Plaintiffs did not file an amended complaint by that deadline.

On July 31, 2026, Plaintiffs filed a Motion to Modify Scheduling Order and for Leave to File a Second Amended Consolidated Complaint. ECF No. 368. That motion is fully briefed. ECF Nos. 388 (Opposition), 395 (Reply). Plaintiffs noticed the hearing for November 19, 2026, pursuant to Local Rule 7-2(a) and the Court's calendar.

**8. Discovery**

The deadline for substantial completion of document production passed on August 7, 2026. For two particular custodians added on the eve of the deadline, NVIDIA's deadline for substantial completion was August 28, 2026. ECF No. 363. The deadline to serve written discovery is November 13, 2026. Fact discovery closes on February 12, 2027. ECF No. 279.

*Depositions*

***Plaintiffs' Position*****:** Plaintiffs have requested deposition dates for fourteen NVIDIA witnesses (including four former employees) and hope to start taking these depositions in September. Plaintiffs are waiting for NVIDIA to provide witness availability. Plaintiffs served a Rule 30(b)(6) notice on July 24 and—six weeks later—await NVIDIA's responses and objections.

***NVIDIA's Position*****:** NVIDIA will timely respond to Plaintiffs' Rule 30(b)(6) notice and provide deposition availability. NVIDIA proposed and Plaintiffs accepted a deadline of September 4 for NVIDIA's response to the July 24 Rule 30(b)(6) notice. After that deadline was set, Plaintiffs subsequently withdrew their July 24 Rule 30(b)(6) notice and served a different notice on August 26.

*Advice of Counsel*

***Plaintiffs' Position*****:** Plaintiffs have requested that NVIDIA elect whether it will (1) advance a defense or present evidence at trial about advice-of-counsel or its subjective state of mind, or (2) forgo such defenses and refrain from presenting related evidence. If NVIDIA elects the former,

Plaintiffs are entitled to "disclosure of the otherwise privileged material and to test the credibility of those subjective beliefs." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2025 WL 860505, at *3 (N.D. Cal. Mar. 19, 2025).

NVIDIA says it can wait until the end of discovery to make this decision. But if NVIDIA elects to maintain its defenses, Plaintiffs need to ask its witnesses about these beliefs in depositions, which Plaintiffs hope to begin this month. If NVIDIA can foreclose such questions based on privilege and later advances a defense based on its subjective beliefs, Plaintiffs may need to re-take depositions—jeopardizing the case schedule. NVIDIA has not explained what additional information it needs to make this election, and should make its decision before fact witness depositions begin. *See Oklahoma Firefighters Pension & Ret. Sys. v. Musk,* 807 F. Supp. 3d 255, 259 (S.D.N.Y. 2025) (granting motion to compel election when "[d]ocument discovery is underway, and depositions are expected to happen soon"); *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 523-24 (S.D.N.Y. 2002) (ordering defendant to elect whether to assert an advice-of-counsel defense by "August 1, 2002," where fact discovery closed on "December 12, 2002"). None of NVIDIA's case law addresses whether a party must make its required election before critical depositions begin—and most of its cases agree that it must do so with sufficient time remaining to allow the opposing party to take critical discovery, including depositions. *See Brown v. Toscano,* 630 F. Supp. 2d 1342, 1351 (S.D. Fla. 2008) (compelling election: parties do "not have 'an unfettered right to determine when to raise the [advice-of-counsel] defense'" and courts "have required defendants to choose whether to assert such a defense by a date certain."); *Flex Prods. Inc. v. BASF Corp.*, 1998 WL 425475, at *2 (E.D. Mich. May 13, 1998) (compelling production of privileged communications and agreeing that plaintiff could pursue such discovery after the close of fact discovery).

***NVIDIA's Position*:** Plaintiffs' attempt to force NVIDIA to decide whether to rely on advice of counsel is premature. Whether to rely on advice of counsel and waive the attorney-privilege is a decision of "great importance not only to the parties but to the fundamental values sought to be preserved by the attorney client privilege," and it therefore requires "careful consideration" before NVIDIA is "forced to choose" between waiving that privilege and risking a willfulness finding.

*Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991). Accordingly, NVIDIA is entitled to take "discovery on other aspects of the case before it is compelled to decide whether to assert an advice-of-counsel defense." *WhitServe LLC v. Computer Patent Annuities N. Am., LLC*, 2006 WL 6654877, at *4 (D. Conn. Aug. 11, 2006) (requiring decision and production after summary judgment).

Nothing requires NVIDIA to elect before fact witness depositions begin or to provide privileged information detailing the discovery it believes relevant to the determination. Plaintiffs do not point to any in circuit authority for the proposition that this election must be made prior to the beginning of fact depositions. To the contrary, courts in this district and in the Ninth Circuit routinely set such deadlines within weeks of the close of fact discovery or after the close of fact discovery. *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-CV-01891-CRB (LB), 2022 WL 16856349, at *2 (N.D. Cal. Nov. 10, 2022) (defendant required to make an election regarding reliance on advice of counsel after the close of fact discovery); *In re: Xyrem (Sodium Oxybate) Antitrust Litigation*, Case 3:20-md-02966-RS (July 7, 2023, ECF No. 527) at 3 (deferring ruling on interrogatories related to subjective beliefs concerning company processes after fact discovery); *Dey, L.P. v. Ivax Pharms., Inc.*, 233 F.R.D. 567, 571-72 (C.D. Cal. 2005) (no evidence preclusion where defendant disclosed reliance on advice of counsel more than a month before the fact discovery cut off); *Flex Prods., Inc. v. BASF Corp.*, No. 97-cv-60233, 1998 U.S. Dist. LEXIS 22028, at *6-7 (E.D. Mich. 1998) (requiring decision and production two weeks before close of discovery). Plaintiffs' own authority confirms as much: *Musk* held that "[t]he proper time to determine whether fairness requires disclosure of privileged material is *before the discovery period concludes*," and compelled election there only because the defendants did "not dispute their obligation to make an election at th[at] stage" and already "ha[d] all the information they need[ed] to make an informed decision." *Okla. Firefighters Pension & Ret. Sys. v. Musk*, 807 F. Supp. 3d 255, 259 (S.D.N.Y. 2025) (emphasis added). Not so here.

Courts addressing claims of prejudice by plaintiffs based on the potential need to retake depositions have found them "outweighed by Defendants' prejudice in waiving the attorney-client

privilege should they choose to assert the defense." *Brown v. Toscano*, 630 F. Supp. 2d 1342, 1352 (S.D. Fla. 2008). This is especially true here, where Plaintiffs required NVIDIA to redo document and written discovery entirely based on the decision to pursue an FAC and took the position that it caused no prejudice. ECF No. 212 at 14 ("While NVIDIA catalogs the discovery it has already provided, such as custodial documents or written discovery, this does not transform ordinary litigation effort into undue prejudice"); *id.* at 2 (referring to prejudice based on additional discovery as an "an inflated (unsubstantiated) claim of prejudice").

Although NVIDIA does not dispute it should convey its election with time remaining for Plaintiffs to take targeted discovery on this issue, it is premature to do so when only two witnesses have been deposed for a total of five hours, and with nearly six months of discovery remaining (and Plaintiffs requesting a further extension).

**15. <u>Scheduling</u>**

In the most recent Case Management Order, ECF No. 326, the Court directed the parties to submit a stipulated proposed schedule amending the Scheduling Order. On August 3, the parties submitted that stipulation, which made all opening expert reports (on issues for which the party bears a burden of proof) due on March 11, 2027; all rebuttal expert reports due on May 6, 2027; *Daubert* motions due on June 10, 2027; *Daubert* oppositions due on July 1, 2027; and *Daubert* replies due on July 22, 2027. *See* ECF No. 370. The Court entered the stipulation on September 3. ECF No. 403.

**a. Plaintiffs' Statement**

NVIDIA has produced a large volume of data that Plaintiffs have been unable to download and access in a timely manner, despite substantial efforts to do so. Up until July 12, NVIDIA produced reasonably-sized data files—all of which Plaintiffs were able to quickly download and review. But between July 12 and July 25, NVIDIA produced 51 data files comprising several hundred terabytes of data to two Plaintiff-provided IP addresses via Secure File Transfer Protocol (SFTP). These datasets contain hundreds of terabytes of data ([redacted]). On July 23, Plaintiffs began downloading those new, massive datasets around the

clock—7 days per week, 24 hours per day—but given the size of the datasets, downloading via SFTP using two IP addresses is like trying to drain a swimming pool with two straws. For example, one of the files alone is 120 terabytes, requiring 48 days to download assuming a non-stop download process using all possible downloading power. Bandwidth limitations (which could be mitigated if NVIDIA would agree to whitelist additional IP addresses) prevent simultaneous downloading of other datasets, which are also hundreds of terabytes large.

Plaintiffs made extensive efforts to expedite downloading, including (1) bringing in outside consultants to review best practices; (2) consulting with retained experts; (3) downloading across multiple machines; and (4) asking NVIDIA on July 17 and July 22 to share access to its AWS buckets so that the parties could reduce "time burden on both sides." On July 24, NVIDIA rejected Plaintiffs' proposal, citing data security concerns. On August 15, Plaintiffs followed up again, requesting AWS access for specific Plaintiff buckets or—in the alternative—requesting that NVIDIA whitelist several plaintiff-specific IP addresses (akin to giving Plaintiffs more straws to drain the ever-growing pool of data). Plaintiffs followed up again on August 19 and *again* on August 26. NVIDIA did not respond until August 31, rejecting Plaintiffs' proposal absent extensive modifications to the Protective Order—which will take weeks to resolve.

And NVIDIA's proposed additions to the Protective Order do not make sense. NVIDIA has asked Plaintiffs to list every individual with access to the whitelisted IP addresses and to maintain a log of the individuals that access its pirated books—despite that these books have already been designated as "Attorney's Eyes Only" under the Protective Order, a designation that requires no such audit measures. For that reason, NVIDIA has not requested these draconian measures for its prior data productions using the same SFTP method. NVIDIA's proposed revisions to the Protective Order bear no relationship to any security concerns.

Regardless of whether NVIDIA's data security concerns are well-founded, the fact remains that Plaintiffs have proposed multiple methods of expediting data transfer, none of which are agreeable to NVIDIA. As a result, Plaintiffs are left with a swimming pool to drain, and only two straws. This has jeopardized Plaintiffs' ability to download and review this data before depositions

begin later this month.

The problem is particularly acute given that NVIDIA is not done producing data. Despite the substantial completion deadline—which elapsed on August 7—NVIDIA made two additional data productions on August 31 and September 1, and still has not produced the extracted text versions of many of its largest datasets, composed of [redacted] of books (datasets that NVIDIA must have, assuming they used this data for LLM training, because text extraction is a necessary component of the LLM training process). NVIDIA's continued data production—along with the technical issues associated with downloading—leave Plaintiffs with no way to accommodate NVIDIA's data deluge.

NVIDIA will not be prejudiced by any schedule extension, given its admission that it will need an extension to complete production of documents related to its distribution of Plaintiffs' works —discovery that it must provide under the currently-operative scope of the case regardless of whether the Court grants Plaintiffs leave to file a Second Amended Consolidated Complaint.

**b. NVIDIA's Statement**

NVIDIA has produced the volume of data it committed to six months ago, on a rolling basis. The bulk of that production, based on NVIDIA's investigation to date and current Relevant Period, was complete by mid-July, and no disproportionately large data production has been made since. Until this statement, a month and a half later, Plaintiffs never raised a need to modify the case schedule. Then, the day before this case management statement was due, Plaintiffs added a two-page detailed description of supposed "technical issues" they never raised before. While NVIDIA is still considering those issues, it notes that Plaintiffs have been unwilling to substantiate their diligence by providing the date they started to download data or their download rate.

Plaintiffs have known that NVIDIA expected to produce large volumes of data under the First Amended Complaint ("FAC") for months. In the April 13, 2026 Joint Status Report, NVIDIA advised that it expected to produce "hundreds of additional terabytes" of data. ECF No. 291 at 3. By the April 20 discovery hearing, NVIDIA estimated it would need to review nearly a petabyte (one thousand terabytes, or one million gigabytes) of potentially responsive data. ECF No. 319-3 at

2 (quoting 4/20/2026 H'g Tr. at 9:20-25). That number has grown to over 1.5 petabytes, due in large part to Plaintiffs' added demands for additional data, and NVIDIA's investigation is ongoing (as are Plaintiffs' production requests). NVIDIA produced over 600 terabytes of data between June 23 and June 29. For comparison, NVIDIA's July 12 production was only a little larger: 650 terabytes. Given Plaintiffs' purported "technical difficulties" in downloading NVIDIA's production, it is unclear how they can characterize NVIDIA's data production "[redacted]."

Plaintiffs have known the capabilities and limitations of the SFTP protocol for months, if not years. NVIDIA originally made its productions of data and source code via review computer in its counsel's offices. Plaintiffs requested that NVIDIA instead produce the data via hard drive, AWS bucket, or "ShareFile," which is similar to SFTP. 3/6/2026 Salzman Email. NVIDIA began producing the data via hard drive, which Plaintiffs had acknowledged were a slower means of production. ECF No. 305 at 3 (quoting 3/10/2026 Salzman Email). On June 4, 2026, NVIDIA notified Plaintiffs that it would begin producing data via SFTP given logistical and technical issues associated with hard-drive production. 6/4/2026 Adickman Email. NVIDIA made its first SFTP production on June 23. 6/23/2026 Adickman Email. Plaintiffs appear to have waited a full month to begin any download, representing to NVIDIA that they started downloading materials on July 23. To the extent Plaintiffs had attempted to timely download in June and experienced low download speeds, it would have been apparent immediately. But Plaintiffs never raised the issue until two days ago, nor did they explain what is different about their experience using SFTP to download NVIDIA's productions compared to the productions of the defendants in other cases.

Plaintiffs did not ask NVIDIA to produce data via AWS bucket until July 17. That was a request to give Plaintiffs direct access to NVIDIA's AWS storage and share costs, presumably by sharing the costs of having AWS transmit the data to Plaintiffs' buckets. Plaintiffs did not mention download delays in their July 17 email, which requested cost sharing by direct access to NVIDIA's AWS storage, presumably by sharing the costs of having AWS transmit the data to Plaintiffs' buckets. Plaintiffs' email did not mention download delays. 7/17/2026 Shaver Email. NVIDIA explained that direct access to NVIDIA's AWS storage "presents a significant security risk and is

not permitted by NVIDIA's information security processes." NVIDIA also noted that "[t]he current production method was *requested by Plaintiffs* and identified as the method they used in other litigations." 7/24/2026 Schlafer Email. Plaintiffs did not respond to NVIDIA's email. After Plaintiffs repeated their request for direct access to NVIDIA's AWS storage under separate cover, without acknowledging NVIDIA's July 24 response identifying security concerns (8/15/2026 Salzman Email), NVIDIA reiterated its security concerns but agreed to consider whitelisting Plaintiffs' AWS IP addresses so long as Plaintiffs commit to reasonable, necessary safeguards, including amending the Protective Order to provide protections for their proposed process. 8/31/2026 Adickman Email. Plaintiffs' description of their download difficulties confirms a lack of diligence.

First, Plaintiffs' complaints that they only have two "straws" rings hollow as they have never asked for additional accounts or clearance to use those two accounts on multiple computers (*i.e.*, additional "straws"). Notably, Plaintiffs do not detail what issues they encountered in their efforts to expedite downloading or how many machines they attempted to use to download concurrently. Nor have Plaintiffs made any other efforts with NVIDIA to address the download process before abandoning the process in favor of their current proposal.

Second, Plaintiffs ignore the complexity of their request. The current SFTP protocol provides protections analogous to those protecting Source Code materials (ECF No. 99), by limiting access to accounts for specific individuals associated and IP addresses. Plaintiffs' new request goes materially further: they do not request IP addresses for Plaintiffs' counsel's office or Plaintiffs' experts—they request that AWS servers "within Plaintiffs' control" be given access to NVIDIA's data productions. Under Plaintiffs' request, there are no limitations on who can use and access the AWS servers—presenting exponentially higher security concerns that the Protective Order does not currently address.

To find a compromise, NVIDIA agreed to whitelist the AWS IP addresses that Plaintiffs requested if they agreed to reasonable and necessary additional protections for these materials by a joint amendment to the Protective Order. As Plaintiffs concede, the Protective Order does not

require identification of individuals with access; that is why an amendment is necessary.

NVIDIA strongly disagrees that it will not be prejudiced by a schedule extension (amounting to three years of fact discovery) but is willing to consider a reasonable, tailored accommodation, if warranted. A three month extension of all fact discovery is not warranted.

**17. <u>Disclosure Of Non-Party Interested Entities Or Persons</u>**

**a. Plaintiffs' Statement**

The *Nazemian* Plaintiffs filed a Certification of Interested Entities or Persons along with the Complaint on March 8, 2024. *Nazemian* ECF No. 4. The *Dubus* Plaintiffs filed their Certification of Interested Entities or Persons on June 17, 2024. *Dubus* ECF No. 43. NVIDIA filed a Certification of Interested Entities or Persons on March 28, 2024. *Nazemian* ECF No. 26. Plaintiffs have complied with Civil Local Rule 16-9 and Paragraph 17 of the Standing Order and have no further information to disclose. As Plaintiffs have repeatedly explained to NVIDIA, they are not using third-party litigation funding (*see* ECF No. 275 at 25), and expenses are advanced by counsel who have appeared for Plaintiffs in this action—as is the case in nearly every class action.

**b. NVIDIA's Statement**

Plaintiffs have now confirmed that Plaintiffs' Certifications of Interested Entities or Persons are indeed deficient, an issue which NVIDIA has raised in previous Case Management Statements. ECF Nos. 165; 221; 350. Each of the Certifications (ECF Nos. 4, 43, 26) state: "other than the named parties, there is no such interest to report." On September 3, Plaintiffs admitted to the existence of "counsel funding the prosecution of this action," but did not identify who "counsel" may be. Nor have they amended their Certifications to identify these entities who have some "interest that could be substantially affected by the outcome of the proceeding" as required by Civil Local Rule 3-15. Not only is this information required under the Local Rules, it is also necessary for NVIDIA to address each named Plaintiff's adequacy as a class representative. Relatedly, Plaintiffs have refused to produce documents in response to NVIDIA's Request for Production seeking documents related to each Plaintiff's ability to control or participate in the case. NVIDIA reserves all rights.

DATED: September 4, 2026

By: /s/ *Diane S. Rice*
Diane S. Rice

Joseph R. Saveri (CBS No. 130064)
Diane S. Rice (CSB No. 118303)
Christopher K.L. Young (CSB No. 318371)
Elissa A. Buchanan (CSB No. 249996)
William Waldir Castillo Guardado (CSB No. 294159)
Drew Moss Morgan (CSB No. 366901)
Regina Wang (CSB No. 326262)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
drice@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
wcastillo@saverilawfirm.com
dmorgan@saverilawfirm.com
rwang@saverilawfirm.com

Avery M. Wolff (admitted *pro hac vice*)
**SAVERI LAW FIRM, LLP**
780 Third Avenue, Suite 1200
New York, NY 10017
Telephone: (212) 970-0300
awolff@saverilawfirm.com

Bryan L. Clobes (admitted pro hac vice)
Mohammed Rathur (admitted pro hac vice)
Nabihah Maqbool (admitted pro hac vice)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312-782-4880
bclobes@caffertyclobes.com
mrathur@caffertyclobes.com
nmaqbool@caffertyclobes.com

By: /s/ *Shon Morgan*
Shon Morgan

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-4001

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Biddinger (Bar No. 224604)
brianbiddinger@quinnemanuel.com
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
Rachael L. McCracken (SBN 252660)
rachaelmccracken@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant NVIDIA Corporation*

Justin A. Nelson (admitted *pro hac vice*)
Alejandra C. Salinas (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
jnelson@susmangodfrey.com
asalinas@susmangodfrey.com

Rohit D. Nath (SBN 316062)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Elisha Barron (admitted *pro hac vice*)
Craig Smyser (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 51st Floor
New York, NY 10019
Telephone: (212) 336-8330
ebarron@susmangodfrey.com
csmyser@susmangodfrey.com

Jordan W. Connors (admitted *pro hac vice*)
Trevor D. Nystrom (admitted *pro hac vice*)
Dylan B. Salzman (admitted *pro hac vice*)
**SUSMAN GODFREY L.L.P**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
jconnors@susmangodfrey.com
tnystrom@susmangodfrey.com
dsalzman@susmangodfrey.com

Rachel J. Geman (*pro hac vice*)
Danna Z. Elmasry (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212.355.9500
rgeman@lchb.com
delmasry@lchb.com

Anne B. Shaver
**LIEFF CABRASER HEIMANN &**

**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel.: 415.956.1000
ashaver@lchb.com

Betsy A. Sugar (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue S. Suite 1640
Nashville, TN 37201
Tel.: 615.313.9000
bsugar@lchb.com

David A. Straite (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel. (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted *pro hac vice*)
Nada Djordjevic (admitted *pro hac vice*)
James A. Ulwick (admitted *pro hac vice*)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com

Brian O'Mara (SBN 229737)
**DiCELLO LEVITT LLP**
4747 Executive Drive
San Diego, California 92121
Telephone: (619) 923-3939
Facsimile: (619) 923-4233
briano@dicellolevitt.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Diane S. Rice. By their signature, Diane S. Rice attests that she has obtained concurrence in the filing of this document from each of the attorneys identified in the above signature block.

Dated: September 4, 2026

By: *____/s/ Diane S. Rice____*
Diane S. Rice